# Exhibit "B"

Dockets.Justia.com



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:05-CV-48-F(1)

| | |
|---|---|
| RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J. K. BATALONA, <br><br> Plaintiff, <br><br> v. <br><br> BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation, JUSTIN L. McQUOWN, an individual; and THOMAS POWELL, an individual, <br><br> Defendants. | NOTICE OF REMOVAL |

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Blackwater Security Consulting, LLC, Blackwater Lodge and Training Center, Inc., Justin L. McQuown, and Thomas Powell ("Defendants") file this Notice of Removal to remove civil action 05-CVS-000173 from the Superior Court of North Carolina to the United States District Court for the Eastern District of North Carolina.

1.     On January 5, 2005, Plaintiff filed a Complaint in the Superior Court of Wake County, North Carolina in the civil action *Richard P. Nordan, et al. v. Blackwater Security Consulting, LLC, et al.*, case 05-CVS-000173. A true and correct copy of all process, pleadings, and orders of said civil action are attached hereto as Exhibit A.

2.     The Complaint purports to present two claims: Wrongful Death and Fraudulent Misrepresentation in Contract. Plaintiff seeks to hold Defendants liable for the murders of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (hereinafter "Decedents") by Iraqi insurgents in Iraq, while the Decedents were providing security services in support of the United States Armed Forces in Iraq.

3.     Plaintiff's pleadings do not state that a federal question exists or inform the Court of certain facts. However, applicable law under the facts of this case mandates that this Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. Removal is therefore proper. 28 U.S.C. §§ 1331 and 1441.

4.     The summons and complaint were served first upon Defendant Blackwater Lodge and Training Center, Inc. on January 11, 2005. Because this Notice of Removal is filed within thirty (30) days after service of the summons and complaint upon the first-served defendant, it is timely under 28 U.S.C. § 1446(b).

## FACTUAL BACKGROUND

5.     Kellogg Brown & Root, Inc. ("KBR") provides services to the United States Armed Forces and other U.S. agencies in Iraq and Kuwait pursuant to contract. ESS Support Services Worldwide, Eurest Support Services (Cyprus) International Ltd. ("ESS"), KBR's subcontractor, provides catering, design, and build support services to the United States Armed Forces and other United States contracting agencies in Iraq and Kuwait. ESS subcontracted some of these services to Regency Hotel & Hospital Company ("Regency").

6.     On March 12, 2004, Regency entered into an Agreement for Security Services, in support of its contract with ESS, with Blackwater ("Primary Agreement").

2

7.    Under the Primary Agreement, Blackwater supported the United States Armed Forces and other United States contracting agencies by providing "certain security services in support" of Regency's and ESS' contracts with the United States.

8.    Blackwater is a subcontractor to the United States Armed Forces.

9.    Among other relevant provisions, Article 6.1.2 of the Primary Agreement requires Blackwater "to maintain Defense Base Act ('DBA') insurance on all of its employees working in the provision of Security Services."

10.    Blackwater maintained DBA insurance on behalf of the Decedents, among others.

11.    Blackwater provided Security Services in support of the United States Armed Forces pursuant to the Primary Agreement.

12.    Decedents agreed to provide certain of those Security Service obligations in Iraq.

13.    The agreements governing the relationship between Blackwater and each Decedent were identical in all pertinent respects.

14.    Iraqi insurgents in Fallujah, Iraq murdered Decedents on March 31, 2004 while Decedents were providing Security Services in support of the Unites States Armed Forces, pursuant to the Primary Agreement.

15.    The Security Services provided by Decedents at the time they were murdered were identical in all pertinent respects.

16.    Decedent Helvenston's widow, Ms. Patricia Irby, filed a Claim for Death Benefits under the DBA with the Department of Labor ("DOL") on April 23, 2004. Benefits in excess of $1,000 per week have been paid and continue to be paid.

17.    Decedent Batalona's widow, June Batalona, filed a Claim for Death Benefits with DOL prior to May 10, 2004. Benefits in excess of $1,000 per week have been and continue to be paid.

18.    Decedent Teague's widow, Rhonda Teague, has not yet filed a Claim for Death Benefits. Nonetheless, Death Benefits in excess of $1,000 per week have been paid and continue to be paid, in light of the statutory obligation to make such payments in the absence of a valid basis to controvert or deny DBA coverage.

19.    Decedent Zovko had no statutory beneficiaries. On October 18, 2004, the District Director, Office of Workers' Compensation Programs, Division of Longshore and Harbor Workers' Compensation, determined in its Compensation Order, Award of Compensation that Mr. Zovko "while performing service as an employee for the employer, sustained injuries resulting in his death and that such death comes within the purview of the above Act." Pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), a statutory payment of $5,000 was made to the Special Fund.

20.    The other Decedents performed the same services under the same relationship with Blackwater as Decedent Zovko had. Consequently, a similar determination of coverage under the LHWCA and DBA in those cases is expected from the DOL, although the award of Compensation will differ because the other Decedents have statutory beneficiaries.

## COMPLETE PREEMPTION

21.    The DBA extends the LHWCA to provide an exclusive and comprehensive scheme of compensation for "the injury or death of any employee engaged" in certain listed forms of employment.[1]   42 U.S.C. §§ 1651(a) and 1651(c); 33 U.S.C. § 905(a).

---

[1] Except as modified within the DBA, the provision of the LHWCA, as amended, 33 U.S.C. § 901 *et seq.*, "shall apply." 42 U.S.C. § 1651(a)

4

22.    Section 1651(a)(4) specifically notes that DBA shall apply with respect to the injury or death of any employee who works "under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States)" and for those who work under "any subcontract, or subordinate contract with respect to such contract."

23.    The Primary Agreement falls within the DBA because it is a subordinate contract with respect to a contract entered into with the United States to provide services outside the continental United States. 42 U.S.C. § 1651(a).

24.    Decedents all worked in support of Blackwater's obligation to provide Security Services, pursuant to the Primary Agreement.

25.    The DBA and LHWCA provide the exclusive means by which "an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor)" may be held liable for injuries or death arising out of employment covered under the DBA. 42 U.S.C. §§ 1651(a) and 1651(c); 33 U.S.C. § 905(a).

26.    This liability is exclusive, and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor. *Id.*

27.    This exclusivity of remedy further extends to injuries or death alleged to be attributable to "the negligence or wrong of any other person or persons in the same employ." 33 U.S.C. 933(i).

28.    DOL already entered a Compensation Order with respect to Decedent Zovko.

29.    A compensation award under the DBA is exclusively committed to the jurisdiction of the DOL or a federal Administrative Law Judge. 33 U.S.C. § 919.

5

30.    Appeal of any such award is committed exclusively to the federal Benefits Review Board, 33 U.S.C. § 921(b), and reviewable only in a United States Court of Appeals. *Id.* § 921(c).

31.    Federal district courts have exclusive jurisdiction to hear proceedings to either: (a) compel enforcement of a Compensation Order, *id.* § 921(d); or (b) enjoin a compensation order made pursuant to the DBA. 42 U.S.C. § 1653(b) (such proceedings "*shall* be instituted in the United States district court").

32.    Congress established the DBA to "provide uniformity and certainty in availability of compensation for injured employees" in select employment contexts outside the United States. *Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000).

33.    The question whether the LHWCA or DBA applies and provides an exclusive remedy is "exclusively a federal question which Congress never intended for state courts to resolve." *See In re CSX Transportation Inc.*, 151 F.3d 164, 167 (4th Cir. 1998).

34.    Plaintiff's claims seek to hold Defendants liable under state common law for deaths arising out of employment covered under the DBA and are completely preempted by the DBA. *See Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232–233 (4th Cir. 1993) (preemption transforms a state-law complaint into a complaint stating a federal claim for purposes of the well-pleaded complaint rule).

35.    Consequently, removal is proper pursuant to 28 U.S.C. §§ 1331, 1441, 1367, and 1446.

## PLAINTIFF'S CLAIMS IMPLICATE IMPORTANT FEDERAL INTERESTS

36.    Even aside from the preemptive effect of the DBA, Plaintiff's claims directly implicate unique federal interests in the utilization of and reliance on contractors and

6

subcontractors, residents of all states, who support the United States Armed Forces and other United States agencies in a foreign war zone.

37.    The efforts of the United States Armed Forces in Iraq depend on, and are supported by, an unprecedented level of work contracted to private companies by the Federal Government -- and its contractors' subcontractors.

38.    Furthermore, the interests of the United States flow directly from the sovereign to the subordinate contractors who carry out the government's interests in the critical and hazardous environment of a war zone.  An independent contractor performing its obligation under a government contract or subcontract implicates the same interests in getting the Government's work done as if done directly by the Government.

39.    If state law were applied to the claims in this case, uniquely federal interests would be frustrated.  Indeed, it would result in a direct and significant conflict with the objectives of federal policy and applicable federal legislation.

40.    DBA completely preempts state law.  Even if it did not, it reveals that Congress intended to avoid the possibility of state law inconsistencies in assessing claims for injury or death incurred in the course of work on behalf of the United States "performed outside the continental United States."  42 U.S.C. § 1651(a)(4); *see also* 42 U.S.C. § 1651(c); 33 U.S.C. § 905(a).

41.    Moreover, if, despite DBA coverage, contractors and subcontractors could nonetheless be required to defend themselves in state courts under state tort law, and potentially be held liable for state tort claims for harms covered by the DBA, the Federal Government will be directly and adversely affected.

7

42.    Blackwater, as well as other contractors supplying similar services in war zones, would be forced to either discontinue providing such services or prohibitively increase the cost of such contracts to the Government.

43.    Such interests are so important that the federal common law supplants state law, irrespective of Congress' intent to preempt the field, and provides an independent basis for federal jurisdiction.

44.    Consequently, removal is proper due to the aforementioned substantial and unique federal interests pursuant to 28 U.S.C. §§ 1331, 1441, 1367, and 1446.

## THE REMAINING REMOVAL PREREQUISITES HAVE BEEN SATISFIED

45.    As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of Wake County, North Carolina and served upon Plaintiff's counsel.

46.    All properly joined and served Defendants join in this removal.[2]

47.    Defendants have not sought similar relief.

48.    The prerequisites for removal under 28 U.S.C. § 1441 have been met.

49.    The allegations of this Notice are true and correct and within the jurisdiction of the United States District Court for the Eastern District of North Carolina, and this case is removable to the United States District Court for the Eastern District of North Carolina.

50.    If any question arises as to the propriety of the removal of this action, the Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is proper for removal.

---

[2] See Exhibit B. Defendant Thomas Powell has not been served. By filing this notice of removal, no defendant waives service or submits to the personal jurisdiction of this Court.

8

WHEREFORE, the Defendants, desiring to remove this case to the United States District Court for the Eastern District of North Carolina, Western Division, being the district and division of said Court for the County in which said action is pending, pray that the filing of this Notice of Removal shall effect the removal of said suit to this Court.

This the 24ᵗʰ day of January, 2005.

WILEY REIN & FIELDING LLP

By: _____
Fred. F. Fielding
D.C. Bar No. 099296
Margaret A. Ryan
CO Bar No. 034687
1776 K Street NW
Washington, DC 20006
(202) 719-7000 (O)
(202) 719-7049 (F)

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP

By: _____
Kirk G. Warner
N.C. State Bar No. 16238
Mark A. Ash
N.C. State Bar No. 13967
P.O. Box 2611
Raleigh, North Carolina 27602
(919) 821-1220 (O)
(919) 821-6800 (F)

*Attorneys for Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc.*

9

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause by U.S. Mail, addressed to the following parties:

> David F. Kirby
> William B. Bystrynski
> Kirby & Holt, LLP
> Post Office Box 31665
> Raleigh, North Carolina  27622
>
> Daniel J. Callahan
> Brian J. McCormack
> Marc P. Miles
> Callahan & Blaine, APLC
> 3 Hutton Centre Drive, Suite 900
> Santa Ana, California  92707
> *Attorneys for Plaintiff*

This the 24th day of January, 2005.

_____
Kirk G. Warner

WRFMAIN 12290498.1

10

# Exhibit "C"

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

LEXSEE 382 F.SUPP.2D 801


Analysis
As of: Jan 10, 2007

**RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J.K. BATALONA, Plaintiff, v. BLACKWATER SECURITY CONSULTING, LLC; BLACKWATER LODGE AND TRAINING CENTER, INC., and JUSTIN L. McQUOWN, Defendants.**

No. 5:05-CV-48-FL(1)

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA, WESTERN DIVISION**

*382 F. Supp. 2d 801; 2005 U.S. Dist. LEXIS 24131*

**August 11, 2005, Decided
August 11, 2005, Filed**

**SUBSEQUENT HISTORY:** Appeal dismissed by, Motion to strike denied by, Writ of mandamus denied *McQuown v. Blackwater Sec. Consulting, LLC (In re Blackwater Sec. Consulting), 2006 U.S. App. LEXIS 21600 (4th Cir. N.C., Aug. 24, 2006)*

**COUNSEL:** [**1] For RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, ESTATE OF STEPHEN S. HELVENSTON, ESTATE OF MIKE R. TEAGUE, ESTATE OF JERKO GERALD ZOVKO, ESTATE OF WESLEY J.K. BATALONA, plaintiff: Daniel J. Callahan, Brian J. McCormack, Marc P. Miles, Callahan & Blaine, Santa Ana, CA; David F. Kirby, William B. Bystrynski, Kirby & Holt, Raleigh, NC.

For BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company, BLACKWATER LODGE & TRAINING CENTER, INC., a Delaware corporation, defendants: Kirk G. Warner, Mark A. Ash, Smith Anderson Blount Dorsett Mitchell & Jernigan, Raleigh, NC.

For JUSTIN L. McQUOWN, an individual, defendant: Rachel Beaulieu Esposito, Patricia L. Holland, Cranfill, Sumner & Hartzog, Raleigh, NC.

**JUDGES:** LOUISE W. FLANAGAN, Chief United States District Judge.

**OPINION BY:** LOUISE W. FLANAGAN

**OPINION:**

[*803] ORDER

This matter is before the court on defendants' motions to dismiss (DE #'s 5 & 8), and plaintiff's motion to remand (DE # 12). Plaintiff responded in opposition to the motions to dismiss, and defendants responded in opposition to the motion to remand. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants [**2] plaintiff's motion to remand and denies as moot defendants' motions to dismiss.

STATEMENT OF THE CASE

Plaintiff commenced this action on January 5, 2005, in the Superior Court of Wake County, North Carolina, asserting claims arising out of the deaths of four security personnel assigned to work in the vicinity of Fallujah, Iraq. In the complaint, plaintiff asserts two state law claims for wrongful death and fraud.

On January 24, 2005, defendants filed a notice of removal in this court asserting federal question jurisdiction on the basis of "complete preemption" and "unique federal interests." (Notice of Removal, PP 34, 36). On January 31, 2005, defendants Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc. ("Blackwater") filed a motion to dismiss, pursuant to *Federal Rules of Civil Procedure*

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

*12(b)(6)* and *9(b)*, on the basis of a defense of preemption under the Defense Base Act ("DBA"), and for failure to state a claim. On February 1, 2005, defendant Justin L. McQuown ("McQuown") filed a motion to dismiss, pursuant to *Rule 12(b)(6)*, also asserting a defense of preemption under [**3] the DBA or the related Longshore and Harbor Workers' Compensation Act (LHWCA).

On February 11, 2005, plaintiff filed a motion to remand to state court, arguing that the complaint only asserts state law claims, and that the DBA and LHWCA do not completely preempt the asserted claims. On March 7, 2005, defendants responded in opposition to the motion to remand, attaching copies of contracts referenced in the complaint and compensation benefits decisions by the United States Department of Labor, pertaining to the decedents in this action. Plaintiff replied on March 17, 2005, objecting to consideration [*804] of evidence outside the complaint, and arguing that neither complete preemption nor unique federal interests served to establish jurisdiction in this case. Plaintiff also responded to defendants' separate motions to dismiss, to which defendants have replied.

STATEMENT OF ALLEGED FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. On March 8, 2004, defendant Blackwater, and another entity, Regency Hotel and Hospital Company ("Regency") entered into a contract ("security contract") with ESS Support Services Worldwide ("ESS") to provide security services "for ESS's [**4] catering operations in the Middle East." (Compl., P21). On March 12, 2004, defendant Blackwater entered into a sub-contract ("sub-contract") with Regency, which gave defendant Blackwater control over security details. On March 25, 2004, Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona (hereinafter the "decedents") entered into "Independent Contractor Service Agreements" with Blackwater, which expressly incorporated the terms of the sub-contract and contract.

At the time the decedents entered into the Independent Contractor Service Agreements, Blackwater representatives told them that they would be performing security services in Iraq, with the following precautions mandated by the primary contract:

> A. "Each security mission would be handled by a team of no less than six (6) members."
> B. "Each security mission would be performed in armored vehicles."
> C. "Security teams would be comprised of at least two armored vehicles, with at least three security contractors in each vehicle,

which would provide for a driver, a navigator, and a rear-gunner.
> D. "The rear-gunner would have a heavy automatic weapon, such as a 'SAW Mach 46,' which could fire [**5] up to 850 rounds per minute, allowing the gunner to fight off any attacks from the rear."
> E. There would be "at least 24-hours notice prior to any security mission."
> F. "Each security detail mission would be subject to a Risk Assessment completed prior to the mission, and that if the threat level was too high, they would have the option of not performing the mission."
> G. There would be an "opportunity to review the travel routes, gather intelligence about each mission, do a pre-trip inspection of the route and determine the proper logistics to carry out the security detail."
> H. The security detail "would arrive in the Middle East and have at least 21 days prior to any operations to become acclimated to the area, learn the lay of the land, gather intelligence, and learn safe routes through the area."

(Compl., P13). The decedents relied upon these representations in entering into the Independent Contractor Security Agreements.

In preparing decedents for work under the Independent Contractor Security Agreements, Blackwater representatives conducted training and preparation programs for security missions in Iraq. One of the representatives who conducted training, defendant [**6] McQuown, "failed to provide adequate training and intelligence data" to decedents, (Compl., P28), and "harbored extreme animosity toward decedent Scott Helvenston relating to Helventson's superior credentials, abilities, training, education, experience and knowledge." (Compl., P40).

[*805] Furthermore, plaintiff alleges that the training programs and preparations provided for decedents were compromised by defendant Blackwater's interest in higher profits. Decedents were not given twenty-one (21) days preparation time prior to operations in Iraq, and, as such, were not permitted to become acclimated to the area, learn the lay of the land, gather intelligence, or learn safe routes through Iraq. Rather, on March 27, 2004 they "were advised that they would be leaving in two days for Baghdad to start their first mission." (Compl., P43). Specifically, although decedent Helvenston was physically ill, defendant McQuown ordered Helvenston to depart for Baghdad at 5:00 a.m. on March 29, 2004, to join the three other decedents for a

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

security mission.

On March 30, 2004, Helvenston, Teague, Zovko and Batalona were directed to conduct a security mission for Blackwater. Pursuant to mission directions, [**7] the decedents were required to "escort three ESS flatbed trucks" carrying food supplies, "from the City of Taji to a U.S. Army base in Iraq," known as Camp Ridgeway, on the outskirts of the City of Fallujah. (Comp., PP 21, 57, 59). At the time, Fallujah was "universally known to be extremely hostile territory in control of Iraqi insurgents." (Compl., P59).

Even though the decedents were entering hostile territory, defendant Blackwater failed to provide the decedents with the protections, tools and information that it initially promised to provide. Specifically, a Blackwater representative refused to provide maps of the area and told decedents that it was "too late for maps." (Compl., P55). In addition, defendant did not provide them with the minimum number of six members on the security detail team, although six members were available. Defendant did not provide them with armored vehicles, and defendant did not permit them to have three team members in each vehicle, which resulted in each vehicle containing only a driver and a navigator, but no rear-gunner to quell any attacks.

Moreover, it is alleged, defendant did not provide them with heavy automatic machine guns, but instead merely [**8] with semi-automatic rifles, which had not even been tested or sighted. Likewise, defendant did not provide decedents with twenty-four (24) hours notice or a Risk Assessment prior to the March 30, 2004 security mission. Finally, defendant did not provide them with the opportunity to gather intelligence concerning the travel route or to do a pre-route inspection. In sum, the decedents were obligated to set out on their mission grossly under-prepared for the risks they faced.

Because the decedents "had not been able to perform a pre-trip analysis of their route and [were] denied maps and logistical information concerning the area, they set out toward Camp Ridgeway on a road which led directly through the heart of the hostile Fallujah." (Compl., P60). "Unbeknownst to them, there was an alternative, safer route which led around the outskirts of Fallujah and would have only taken them approximately two and a half hours longer to get to Camp Ridgeway." (Id.).

"Without having any information about the route or even a map of the area, they became lost and ended up driving through the center of the City of Fallujah." (Compl., P17). "While stopped in traffic, several armed Iraqi insurgents [**9] walked up behind these two unarmored vehicles and repeatedly shot these four Americans at point blank range, dragged them from their vehicles, beat, burned and disfigured them and desecrated their remains." (Id.). In particular, "two of the

burnt bodies were strung up from a bridge over the Euphrates River for all of the world to see." (Compl., P61).

[*806]  In support of the wrongful death claim, plaintiff alleges that "when the Defendants sent Helvenston, Teague, Zovko and Batalona out on this security mission in this condition, without the proper protections, tools and information, they knew that they were sending them into the center of Fallujah with very little chance that they would come out alive." (Compl., P70). Plaintiff also alleges that "as a proximate result of the Defendants' intentional conduct, willful and wanton conduct, and/or negligence, as alleged herein above, Helvenston, Teague, Zovko and Batalona . . . were killed March 31, 2004."

In support of the fraud claim, plaintiff alleges that defendants represented that the decedents would receive protections guaranteed by the primary contract, which induced the decedents to enter into the Independent Contractor Service [**10] Agreements. Plaintiff further alleges that when defendants made these representations they knew that they were false and concealed true facts with the intent to induce the decedents to enter into the Independent Contractor Service Agreements.

Plaintiff seeks compensatory damages for wrongful death of the decedents, recision of the Independent Contractor Service Agreements, as well as punitive damages from each defendant, including damages for "mental anguish, fear and terror of being forced to travel into the center of Fallujah . . . and the physical pain and suffering of being shot, beaten, burned, tortured and dismembered." (Compl., P93).

DISCUSSION

I. Removal Jurisdiction

The party seeking removal has the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)*. The court must strictly construe removal jurisdiction, and resolve all doubts in favor of remand. Id. The right to remove a case from state to federal court derives solely from *28 U.S.C. § 1441*, which provides in relevant part:

> Any civil action brought in a state court of which the district courts [**11] of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending.

*28 U.S.C. § 1441(a)*. In this case, there is no allegation

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

of diversity of citizenship between the parties. Accordingly, the propriety of removal depends on whether the suit raises a federal question, that is, whether it is an action "arising under the Constitution, laws, or treaties of the United States." *28 U.S.C. § 1331.*

Ordinarily, under the "well-pleaded complaint" rule, a suit raises a federal question "only when the plaintiff's statement of his own cause of action shows that it is based" on federal law. *Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152, 53 L. Ed. 126, 29 S. Ct. 42 (1908).* A defense is not part of a plaintiff's properly pleaded statement of his claim. *Rivet v. Regions Bank, 522 U.S. 470, 475, 139 L. Ed. 2d 912, 118 S. Ct. 921 (1998).* Therefore, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 14, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983).* [**12]

A limited exception to the well-pleaded complaint rule exists where the state law claim has been "completely preempted" by federal law. *Beneficial National Bank v. Anderson, 539 U.S. 1, 7, 8, 156 L. Ed. 2d 1, 123 S. Ct. 2058 (2003); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987).* In such a case, even a complaint [*807] that only purports to raise a state law claim may be removed to federal court because it necessarily raises a federal question. See *Beneficial National Bank, 539 U.S. at 7-8;* 10; *Franchise Tax Bd., 463 U.S. at 22.*

Here, defendants do not dispute that plaintiff's complaint raises only state law causes of action. Defendants argue, however, that the statutory and regulatory scheme of the DBA completely preempts plaintiff's state law claims. In the alternative, defendants argue that this lawsuit concerns a "unique federal interest" in the remedies available to individuals working in support of national defense or war-zone efforts. The court will address each argument in turn.

### A. Complete Preemption

A federal statute completely preempts a state law claim if it "provide[s] the exclusive cause of action for the claim asserted" [**13] and "set[s] forth procedures and remedies governing that cause of action." *Beneficial National Bank, 539 U.S. at 8.* To have complete preemption, not only must the state law claim come "within the scope of the federal cause of action" created in the statute, *Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987),* but also Congress must have manifested an intent to make the federal cause of action "exclusive." *Beneficial National Bank, 539 U.S. at 9, n.5;* see *Metropolitan Life, 481 U.S. at 66-67* (holding that state law claims which fall within the scope of the federal civil enforcement provision of

ERISA were completely pre-empted); *Franchise Tax Bd., 463 U.S. 1, 23-24, 77 L. Ed. 2d 420, 103 S. Ct. 2841* (noting that state law claims which fall within the scope of the provision describing federal court procedures and remedies for suits under the LMRA were completely pre-empted); *Rosciszewski v. Arete Assocs., 1 F.3d 225, 232 (4th Cir. 1993)* (holding that the "grant of exclusive jurisdiction to the federal district courts over civil actions arising under the Copyright Act, combined with the preemptive force of *§ 301(a)* [**14] [of the Copyright Act], compels the conclusion that Congress intended" to preempt state law actions).

The Fourth Circuit recently held that there is a "presumption" against complete preemption, and that defendants' burden "is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter." *Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005).* Specifically, "the congressional intent that the state law be entirely displaced must be clear in the text of the statute." *Id. at 441* (citing *Metropolitan Life, 481 U.S. at 65-66*). Reviewing Supreme Court precedent, the court further affirmed that "the *sine qua non* of complete preemption is a pre-existing federal cause of action that can be brought in the district courts." *Id. at 442.* Accordingly, "Congress's allocation of authority to an agency and away from district courts defeats a complete preemption claim." *Id. at 443.*

With these principles in mind, the court turns to an analysis of whether the DBA completely preempts state law claims falling within its scope. The DBA is a federal statute that incorporates and extends the comprehensive [**15] worker's compensation scheme established by the Longshore and Harbor Worker's Compensation Act (LHWCA) to select forms of employment outside of the United States. *Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464, 468 (1st Cir. 2000).* In relevant part, the DBA provides:

> Except as herein modified, the provisions of the [LHWCA] as amended, shall apply in respect to the injury or death of [*808] any employee engaged in any employment -
>
>        * * *
>
> under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States . . . for the purpose of engaging in public work . . . .

*42 U.S.C. § 1651(a)*. By reference, the LHWCA provides for the exclusivity of remedy against a qualifying employer for injury or death:

The liability of an employer prescribed in section 4 [*33 U.S.C. § 904*] shall be exclusive and in place of all other liability [**16] of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

*33 U.S.C. § 905(a)*. In addition to this LHWCA exclusion provision, the DBA expressly excludes liability to employers under "the workmen's compensation law of any state." *42 U.S.C. § 1651(c)*.

In place of recovery under state worker's compensation and tort law, the liability of an employer for the death of an employee under the DBA is limited to statutory death benefits. See *33 U.S.C. § 904(a)* (referencing *§ 909*, death benefits). These include funeral expenses and monthly payments set according to a statutory percentage rate of average wages of the decedent. See *33 U.S.C. § 909 (a)-(b)*.

The DBA provides a comprehensive federal framework for adjudication and administration of claims for statutory death benefits. Specifically, a claim must be filed with the United States Department of Labor:

Except as otherwise provided in this [**17] section, the right to compensation for disability or death under this Act shall be barred unless a claim therefore is filed within one year after the injury or death . . . . Such claim shall be filed with the deputy commissioner [of the Department of Labor] in the compensation district in which such injury or death occurred.

*33 U.S.C. § 913(a)*. Jurisdiction over such claims is vested exclusively with United States Secretary of Labor:

a claim for compensation may be filed with the deputy commissioner in accordance with regulations prescribed by the commission [Secretary of Labor] at any time after the first seven days of disability following any injury, or at any time after death, and the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim.

*33 U.S.C. § 919(a)*; see also *§ 939(a)* (providing that the "Secretary [of Labor] shall administer the provisions of this Act.").

In turn, the statute sets out a detailed procedure by which the Secretary of Labor must adjudicate claims for compensation:

(b) **Notice of claim.** Within ten days [**18] after such claim is filed the deputy commissioner, in accordance with regulations prescribed by the commission [Secretary of Labor], shall notify the employer and any other person (other than the claimant), whom the deputy commissioner considers an interested party, that a claim has been filed. Such notice may be served personally upon the employer or other person, or sent to such employer or person by registered mail.

[*809] (c) **Investigations; order for hearing; notice; rejection or award.** The deputy commissioner shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon. If a hearing on such claim is ordered the deputy commissioner shall give the claimant and other interested parties at least ten days' notice of such hearing, served personally upon the claimant and other interested parties or sent to such claimant and other interested parties by registered mail or by certified mail, and shall within twenty days after such hearing is had, by order, reject the claim or make an award in respect of the

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

claim. If no hearing is ordered within twenty days after notice [**19] if given as provided in subdivision (b), the deputy commissioner shall, by order, reject the claim or make an award in respect of the claim.

(d) **Provisions governing conduct of hearing; administrative law judges.** Notwithstanding any other provisions of this Act, any hearing held under this Act shall be conducted in accordance with the provisions of *section 554 of title 5 of the United States Code.* Any such hearing shall be conducted by a [an] administrative law judge qualified under *section 3105* of that title. All powers, duties, and responsibilities vested by this Act, on the date of enactment of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 [Oct. 27, 1972], in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges.

*33 U.S.C. § 919.* In other words, the Secretary of Labor, through a deputy commissioner or administrative law judge, is responsible for making an initial order rejecting a claim or making an award of compensation. See *33 U.S.C. § 919(c).* "A compensation order shall become effective when filed in the office of the deputy [**20] commissioner as provided in section 19 [*33 USCS § 919*], and, unless proceedings for the suspension or setting aside of such order are instituted, . . . shall become final at the expiration of the thirtieth day thereafter." *33 U.S.C. § 921(a).*

Proceedings for review of compensation orders must begin with an appeal to the United States Department of Labor Benefits Review Board:

The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this Act and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole . . . .

The Board may, on its own motion or at

the request of the Secretary, remand a case to the administrative law judge for further appropriate action.

*33 U.S.C. § 921(b).* Finally, "any person adversely affected or aggrieved by a final order of the Board may obtain a review of that [**21] order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside." *§ 921(c).*

Upon review of the exclusive comprehensive scheme set out by the DBA for compensation claims, the court is compelled to find that the DBA does not completely preempt state law claims. As the Fourth Circuit recently reiterated, "the *sine qua non* of complete preemption is a pre-existing federal cause of action that can be brought in the district courts." [*810] *Lontz, 413 F.3d at 442* (emphasis added). Notably missing from the DBA statutory scheme is any provision for a "federal cause of action that can be brought in the district courts." Id. Rather, as noted above, the DBA provides for the exclusive filing of a claim for wrongful death benefits with the Secretary of Labor, the adjudication of such claims by a deputy commissioner or administrative law judge, the review of claims by the Benefits Review Board, and appellate review by a federal court of appeals. See *42 U.S.C. § 1651(a),* [**22] *33 U.S.C. §§ 913, 919, 921.* United States District Courts are not involved in the claims adjudication process. See id. Consequently, this court lacks subject matter jurisdiction to consider plaintiff's claims, however much they involve coverage issues under the DBA. See *Lontz, 413 F.3d at 443* ("Congress's allocation of authority to a agency and away from district courts defeats a complete preemption claim.").

In their argument, defendants cite several cases holding that either the DBA or LHWCA provides a sweeping defense of preemption against state tort claims. See e.g., *Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464 (1st Cir. 2000); Smither & Co. v. Coles, 100 U.S. App. D.C. 68, 242 F.2d 220 (D.C. Cir. 1957); Pulley v. Peter Kiewit Son's Co., 223 F.2d 191 (7th Cir. 1955); Schmidt v. Northrop Grumman Systems, Corp., 2005 U.S. Dist. LEXIS 24688, No. 3:04-CV-042-JTC (unpublished, attached to Def's Notice of Subsequently Decided Authority) (N.D. Ga., March 2, 2005); Colon v. United States Dep't of Navy, 223 F. Supp. 2d 368 (D.P.R. 2002).*

These cases, however, are inapposite to the question of removal jurisdiction through [**23] complete preemption, and concern only the defense of preemption. See *Davila-Perez, 202 F.3d at 468* (dismissing action

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

originally filed in federal district court on grounds that DBA administrative scheme provided exclusive remedy); *Smither & Co.*, 242 F.2d at 221, 223 (same); *Pulley*, 223 F.2d at 192 (dismissing negligence claims as preempted by the DBA); *Schmidt, No. 3:04-CV-042-JTC* (dismissing plaintiff's tort claims filed in federal court due to preemption under the *DBA); Colon*, 223 F. Supp. 2d at 370 (same). Regardless of whether the comprehensive federal compensation scheme set up by the DBA defensively preempts any and all state law claims for death benefits, defensive preemption does not act to establish federal district court jurisdiction over state law claims. See *Franchise Tax Bd.*, 463 U.S. at 14 ("[A] case may not be removed to federal court on the basis of a federal defense, including the defense of preemption."); *Aaron v. Nat'l Union Fire Ins. Co., 876 F.2d 1157, 1166 (5th Cir. 1989)* (rejecting argument that LHWCA completely preempts state claims, without reaching [**24] the question of defensive preemption).

Defendants also cite to *Shives v. CSX Transportation, 151 F.3d 164 (4th Cir. 1998)*, in which the Fourth Circuit discussed preemption under the LHWCA. Although Shives is an important case bearing on the final disposition of this case in federal district court, it provides no assistance to defendants on the complete preemption issue. Indeed, the court's discussion in Shives only further undermines defendants' argument in favor of complete preemption.

In Shives, plaintiff brought suit in state court asserting a Federal Employers' Liability Act (FELA) claim regarding an injury suffered while unloading a flatbed rail car at an intermodal marine terminal. *151 F.3d at 166*. Although federal statute expressly precluded removal of the FELA claim, defendant removed on grounds that the LHWCA, rather than FELA, covered plaintiff's injuries. Id. Upon review of the motion to remand by plaintiff, the district court found that plaintiff's injuries were [*811] not covered under the LHWCA, and remanded to state court. *Id. at 167*. The court of appeals, however, vacated the judgment of the district court, noting [**25] that "interpretation of the LHWCA is a matter for the federal executive and federal appeals courts." *151 F.3d at 167*. In addition, the court undertook its own analysis of the coverage issue and concluded that plaintiff's injuries were covered under the LHWCA. *Id. at 171*. Given the limited statutory jurisdiction over LHWCA claims, the court of appeals directed outright dismissal of the action for lack of subject matter jurisdiction, so that the plaintiff could "proceed through the administrative process" rather than a civil action in state or federal district court. Id.

Shives undermines defendants' argument in favor of complete preemption, by confirming that even a claim falling under the scope of the LHWCA "is not an action over which the district courts have original jurisdiction."

*Shives, 151 F.3d at 171*. Rather, such a claim can "only be filed in the first instance with the Secretary of Labor." Id. Accordingly, where the DBA (incorporating the LHWCA) does not provide a cause of action in the federal district courts, removal based upon complete preemption by the DBA is foreclosed. See *Lontz, 413 F.3d at 442, 443*; [**26] *Rosciszewski, 1 F.3d at 232* (noting "grant of exclusive jurisdiction to the federal district courts" in finding complete preemption). Indeed, the court in Shives anticipated this result by noting that, even though plaintiffs' claim fell under LHWCA, it was "not removable under *28 U.S.C. § 1441(b)*." Id.

In sum, defendants' argument that this case is removable by virtue of complete preemption under the DBA is without merit.

**B. Unique Federal Interest**

As an alternative basis for removal jurisdiction, defendants argue that this lawsuit presents a "unique federal interest," specifically concerning the remedies available to individuals working in support of national defense or war-zone efforts. (Blackwater Def's Mem. in Opp. to Remand, p. 17; Def. McQuown Mem. in Opp. to Remand, pp. 16, 17). In response, plaintiff argues that a "unique federal interest" is not, in itself, a viable ground for removal jurisdiction. Under the circumstances presented by this case, the court finds that defendants' asserted "unique federal interest" is insufficient to confer federal jurisdiction.

The sole case upon which defendants rely that applied the [**27] "unique federal interest" doctrine for purposes of removal jurisdiction is *Caudill v. Blue Cross and Blue Shield of North Carolina, 999 F.2d 74 (4th Cir. 1993)*. In Caudill, plaintiff received health insurance benefits as a federal employee under an insurance policy provided by defendant, which provided insurance to government employees "pursuant to the Federal Employees Health Benefits Act." *Caudill, 999 F.2d at 76*. Under the statutory framework then in place, benefits decisions were decided by the United States Office of Personnel Management. Id. In Caudill, plaintiff brought an action in state court, based upon breach of contract, seeking to enjoin defendants from notifying a hospital that defendant did not provide coverage for the specific treatment she sought. Id. Defendant filed a notice of removal, asserting federal jurisdiction on grounds of complete preemption, and on grounds that the action "arises from a federal contract, giving rise to a uniquely federal interest so important that the 'federal common law' supplants state law." *Id. at 77*.

[*812] Upon motion to remand in Caudill, the Fourth Circuit did not analyze [**28] the complete preemption issue, but rather agreed with defendant that the case fell within a narrow category of cases presenting a "'uniquely federal interest' so important that the 'federal

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

common law' supplants state law either partially or entirely regardless of Congress' intent to preempt the area involved." *Caudill, 999 F.2d at 77* (citing *Boyle v. United Tech. Corp., 487 U.S. 500, 504, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988)).* In reaching this conclusion, the court noted that "the federal government is a party to the contract" with health insurers, and that federal common law was in significant conflict with state law. *Id. at 78.*

Although Caudill remains binding precedent in this Circuit, the case has been criticized on the issue of removal jurisdiction. Importantly, the primary Supreme Court case upon which Caudill derived its analysis, Boyle v. United Tech. Corp., did not address the question of removal jurisdiction, but rather only addressed the defense of preemption in a case that had been brought in Federal District Court. See *Boyle, 487 U.S. at 502.* Concerning this distinguishing factor, the Second Circuit noted recently:

> The Caudill [**29] court conflated the preemption and jurisdiction analyses by holding that a significant conflict with uniquely federal interests was sufficient to confer subject matter jurisdiction on the federal court. See *999 F.2d at 78-79.* We agree with the criticism Caudill has received for giving short shrift to the well-pleaded complaint rule. See *Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 314-15 (3d Cir. 1994)* (rejecting Caudill's reasoning); 15 James Wm. Moore, et al., *Moore's Federal Practice § 103.45[3][c]* (3d ed. 2004) (commenting that Caudill is "fatally flawed if the validity of the well-pleaded complaint rule . . . [is] accepted").

*Empire Healthchoice Assur., Inc. v. McVeigh, 396 F.3d 136, 142-143 (2d Cir. 2005)*; see also *Reveal v. Stinson, 115 F. Supp. 2d 688, 691 (D. W. Va. 2000)* ("Caudill has been roundly criticized by courts and commentators as an aberration.").

Moreover, after Caudill was decided, the Supreme Court has stated without qualification that "a state claim may be removed to federal court in only two circumstances – when Congress expressly [**30] so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8, 156 L. Ed. 2d 1, 123 S. Ct. 2058 (2003)* (emphasis added). In addition, Fourth Circuit analysis of removal jurisdiction more recent than Caudill is consistent with

this Supreme Court approach. In Lontz, the court noted that a case may be removed to federal court only on three separate grounds: 1) diversity jurisdiction, 2) a federal question as "an element, and an essential one, of the plaintiff's cause of action," or 3) complete preemption. *Lontz, 413 F.3d at 439, 440.* Notably missing from the court's discussion was any mention of "unique federal interest" as a basis for removal jurisdiction.

This more recent precedent provides reason to doubt whether removal on the basis of "unique federal interests," outside the specific facts of Caudill, is proper. Given the questionable authority of Caudill, well-established precedent requires resolution of such doubt in the favor of remand. See *Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).*

Moreover, even assuming [**31] that "unique federal interests" may provide a basis for jurisdiction in some cases, application of such doctrine here is unavailing. In this case, the Blackwater defendants claim that this case involves a unique federal interest [*813] "in the remedies available to individuals killed or injured working under federal prime, subcontracts, and subordinate contracts in support of national defense or war zone efforts." (Blackwater Def's Mem. in Opp. to Remand, pp. 17-18). In similar terms, defendant McQuown claims that the "DBA advances a unique federal interest . . . to provide uniformity and certainty in the availability of compensation of injured non-military employees . . . performing public work," and that this federal interest in an exclusive DBA remedy is raised by plaintiff's claims. (Def. McQuown Mem. in Opp. to Remand, pp. 17).

This asserted unique federal interest, however, being based upon coverage under the DBA, assumes the very conclusion which this court lacks jurisdiction to reach, namely that the decedents in this case are covered as employees under the DBA. As discussed above, pursuant to Shives, although this issue is plainly a federal question, it is not an issue which [**32] this court has jurisdiction to address. See *Shives, 151 F.3d at 167* (stating that the "question of whether the LHWCA applies to a workrelated injury is exclusively a federal question . . . for the federal executive and federal appeals courts" to resolve).

Moreover, this case does not present circumstances which fall under the "unique federal interest" test as applied by the court in Caudill. Unlike in Caudill, plaintiff's cause of action does not involve the direct interpretation of "a federal contract," such that "federal common law" supplants state law. See *Caudill, 999 F.2d at 77.* Indeed, the application of "federal common law" is not even asserted by defendants in this case. Rather, defendants assert a federal interest in "the remedies" that are available to individuals killed while working in warzones. (Blackwater Def's Mem. in Opp. to Rem., p. 17;

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

see also Def. McQuown's Mem. in Opp. to Rem., p. 18). The determination of such remedies depends upon coverage under the DBA, which is not a federal contract, but rather a federal statute. While there is no doubt that there exists a federal interest in uniform application of the DBA, this [**33] interest is not sufficient to provide removal jurisdiction.

In summary, under the circumstances of this case, this court lacks subject matter jurisdiction over this cause of action, whether asserted on the basis of complete preemption or "unique federal interests." Having found no basis for subject matter jurisdiction the court turns to the remaining question of the ultimate disposition of this case.

## II. Disposition

Concerning the proper procedure following removal, 28 U.S.C. § 1447(c) provides that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Accordingly, where the court finds no basis for subject matter jurisdiction, § 1447(c) compels the court to remand this action to state court.

In opposition to remand, defendants raise an important point concerning the disposition in Shives following removal which must be addressed here. In Shives the court recognized that the "question of whether the LHWCA applies to a workrelated injury is . . . [a] question which Congress never intended for state courts to [**34] resolve." Shives, 151 F.3d at 167. Rather, any "interpretation of the LHWCA is a matter for the federal executive and federal appeals courts." Id. Accordingly, after finding that the LHWCA applied to the facts of that case, the Fourth Circuit noted that, regardless of whether the district court lacked jurisdiction upon removal, remand to the state court was not proper. [*814] See id. at 171. Specifically, the court explained:

> While the only intuitive remedy might nevertheless be to remand this case to the state court to decide the coverage question, if we were to do so, we would be committing the federal question of LHWCA coverage to the state court when Congress intended that it be decided exclusively in federal court. In the peculiarities of this case, we believe that the district court should not have remanded the case to state court, but should have dismissed it. Accordingly, we vacate the district court's remand order and remand this case to the district court with instructions to dismiss the case for lack of subject matter jurisdiction. In this

way, [plaintiff] will be able to proceed through the administrative process before the Department [**35] of Labor with his protectively filed LHWCA claim.

Shives, 151 F.3d at 171 (emphasis added).

At first blush, where this court, like the court in Shives, is facing a "federal question of LHWCA coverage," Shives 151 F.3d at 167, it appears that the appropriate course of action is to dismiss the action outright for lack of subject matter jurisdiction rather than remand to the state court. Such a disposition, however, is premature. Notably, in Shives, the Fourth Circuit directed dismissal only after that court, sitting as a federal court of appeals, had determined the coverage issue under the LHWCA. Specifically, the Fourth Circuit devoted several pages of its opinion to discussing the question of coverage under the LHWCA. See 151 F.3d at 167-171. Although the Fourth Circuit in Shives was in a position to resolve the question of coverage, "a matter for the federal executive and federal appeals courts," id. at 167, this court is not. Accordingly, where this case is distinguishable from Shives, remand, rather than dismissal for lack of subject matter jurisdiction, is proper.

Lacking jurisdiction, [**36] this court does not reach defendants' arguments in support of dismissal for failure to state a claim, under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Finally, finding the jurisdictional issues raised by this case to be novel and complex, the court rejects plaintiff's argument in favor of attorney's fees and costs resulting from removal. See In re Lowe, 102 F.3d 731, 733 n.2 (4th Cir. 1996) (rejecting request for attorney's fees where basis for remand is not "obvious").

## CONCLUSION

Based upon the foregoing, the court GRANTS plaintiff's motion to remand, pursuant to 28 U.S.C. § 1447(c). (DE # 12). Where the court lacks subject matter jurisdiction over this action, the court DENIES AS MOOT defendants' motions to dismiss brought under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (DE #'s 5 & 8). This case is hereby REMANDED to the Superior Court of Wake County, North Carolina. The Clerk is DIRECTED to serve a copy of this order on the Clerk of Superior Court of Wake County, [**37] North Carolina.

SO ORDERED, this 11th day of August, 2005.

LOUISE W. FLANAGAN

Chief United States District Judge

382 F. Supp. 2d 801, *; 2005 U.S. Dist. LEXIS 24131, **

# Exhibit "D"

Page 1

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

LEXSEE 2006 U.S. APP. LEXIS 21600



Analysis
As of: Jan 10, 2007

In Re: BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited
Liability Company; BLACKWATER LODGE AND TRAINING CENTER,
INCORPORATED, a Delaware Corporation, Petitioners. IN RE: JUSTIN L.
MCQUOWN, Petitioner. RICHARD P. NORDAN, as Ancillary Administrator for
the separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko
and Wesley J.K. Batalona, Plaintiff-Appellee, and ESTATE OF STEPHEN S.
HELVENSTON; ESTATE OF MIKE R. TEAGUE; ESTATE OF JERKO GERALD
ZOVKO; ESTATE OF WESLEY J.K. BATALONA, Plaintiffs, v. BLACKWATER
SECURITY CONSULTING, LLC, a Delaware Limited Liability Company;
BLACKWATER LODGE AND TRAINING CENTER, INCORPORATED, a
Delaware Corporation, Defendants-Appellants, and JUSTIN L. MCQUOWN, an
individual; THOMAS POWELL, Defendants. PROFESSIONAL SERVICES
COUNCIL; INTERNATIONAL PEACE OPERATIONS ASSOCIATION;
AMERICAN INTERNATIONAL GROUP, INCORPORATED, Amici Supporting
Appellants. RICHARD P. NORDAN, as Ancillary Administrator for the separate
Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley
J.K. Batalona, Plaintiff-Appellee, and ESTATE OF STEPHEN S. HELVENSTON;
ESTATE OF MIKE R. TEAGUE; ESTATE OF JERKO GERALD ZOVKO;
ESTATE OF WESLEY J.K. BATALONA, Plaintiffs, v. JUSTIN L. MCQUOWN, an
individual, Defendant-Appellant, and BLACKWATER SECURITY CONSULTING,
LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND
TRAINING CENTER, INCORPORATED, a Delaware Corporation; THOMAS
POWELL, Defendants. PROFESSIONAL SERVICES COUNCIL;
INTERNATIONAL PEACE OPERATIONS ASSOCIATION; AMERICAN
INTERNATIONAL GROUP, INCORPORATED, Amici Supporting Appellants.

No. 05-1949, No. 05-1992, No. 05-2033, No. 05-2034

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*460 F.3d 576; 2006 U.S. App. LEXIS 21600*

March 14, 2006, Argued
August 24, 2006, Decided

**PRIOR HISTORY:**  [**1]  Appeals from the United
States District Court for the Eastern District of North
Carolina, at Raleigh. Louise W. Flanagan, Chief District
Judge. (CA-05-48-5; CA-05-48-5-FL).   *Nordan v.
Blackwater Sec. Consulting, LLC, 382 F. Supp. 2d 801,
2005 U.S. Dist. LEXIS 24131 (E.D.N.C., 2005)*

**DISPOSITION:** APPEAL DISMISSED; PETITION
FOR WRIT OF MANDAMUS DENIED; MOTION TO
STRIKE DENIED AS MOOT.

**COUNSEL:** ARGUED: C. Allen Foster, GREENBERG
TRAURIG, L.L.P., Washington, D.C., for
Petitioners/Appellants.

Marc Phillip Miles, CALLAHAN & BLAINE, A.P.L.C.,
Santa Ana, California, for Appellee.

ON BRIEF: Michael P. Socarras, Joe R. Reeder,
GREENBERG TRAURIG, L.L.P., Washington, D.C.,
Kirk G. Warner, Mark A. Ash, SMITH, ANDERSON,
BLOUNT, DORSETT, MITCHELL & JERNIGAN,
Raleigh, North Carolina, for Blackwater Security

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

Consulting, L.L.C., a Delaware Limited Liability Company, and Blackwater Lodge and Training Center, Incorporated, a Delaware Corporation; William C. Crenshaw, Ralph J. Caccia, Don R. Berthiaume, POWELL & GOLDSTEIN, L.L.P., Washington, D.C., Patricia L. Holland, Rachel Esposito, CRANFILL, SUMNER & HARTZOG, L.L.P., Raleigh, North Carolina, for Justin L. McQuown.

Daniel J. Callahan, Brian J. McCormack, CALLAHAN & BLAINE, A.P.L.C., Santa Ana, California, David F. Kirby, William B. Bystrynski, KIRBY & HOLT, L. [**2] L.P., Raleigh, North Carolina, for Richard P. Nordan, as Ancillary Administrator for the separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona.

David C. Hammond, Amy E. Laderberg, CROWELL & MORING, L.L.P., Washington, D.C., for Professional Services Council and International Peace Operations Association, Amici Supporting Appellants.

Keith L. Flicker, FLICKER, GARELICK & ASSOCIATES, L.L.P., New York, New York, for American International Group, Incorporated, Amicus Supporting Appellants.

JUDGES: Before SHEDD and DUNCAN, Circuit Judges, and James P. JONES, Chief United States District Judge for the Western District of Virginia, sitting by designation. Judge Duncan wrote the opinion, in which Judge Shedd and Judge Jones joined.

OPINION BY: DUNCAN

OPINION: [*580] DUNCAN, Circuit Judge:

This appeal and petition for writ of mandamus require us to consider the extent to which we can review a district court order remanding a case to state court for lack of subject matter jurisdiction. Concluding that the limited exceptions to the congressional proscription of our ability to review such orders are not applicable here, we dismiss the appeal for lack of [**3] jurisdiction and decline to issue a writ of mandamus.

I.

Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona (collectively, "decedents") entered into independent contractor service agreements with Blackwater Security Consulting, L.L.C., and Blackwater Lodge and Training Center, Inc., (collectively, "Blackwater") to provide services in support of Blackwater's contracts with third parties in need of security or logistical support. Blackwater assigned the decedents to support its venture with Regency Hotel and Hospital Company ("Regency") to

provide security to ESS Support Services Worldwide, Eurest Support Services (Cyprus) International, Ltd. ("ESS"). ESS had an agreement to provide catering, build, and design support to the defense contractor firm Kellogg, Brown & Root, which, in turn, had arranged with the United States Armed Forces to provide services in support of its operations in Iraq.

According to the complaint, at the time the decedents entered into the independent contractor service agreements on or [*581] about March 25, 2004, Blackwater represented that certain precautionary measures would be taken with respect to the performance of their security [**4] functions in Iraq. For example, they were told that each mission would be handled by a team of no fewer than six members, including a driver, navigator, and rear gunner, and would be performed in armored vehicles; they would have at least twenty-one days prior to the start of a mission to become familiar with the area and routes to be traveled; and they would have an opportunity to do a pre-trip inspection of their anticipated route.

Instead, the complaint alleges, Blackwater failed to provide the decedents with the armored vehicles, equipment, personnel, weapons, maps, and other information that it had promised, or with the necessary lead time in which to familiarize themselves with the area. On March 30, 2004, the decedents' supervisor, Justin McQuown, directed them to escort three ESS flatbed trucks carrying food supplies to a United States Army base known as Camp Ridgeway. Lacking the necessary personnel and logistical support, the decedents ultimately became lost in the city of Fallujah. Armed insurgents ambushed the convoy; murdered the decedents; and beat, burned, and dismembered their remains. Two of the mutilated bodies were hung from a bridge.

Richard Nordan, in his capacity [**5] as administrator for the decedents' estates, sued Blackwater and McQuown (hereinafter referred to collectively as "Blackwater") in the Superior Court of Wake County, North Carolina, alleging causes of action for wrongful death and fraud under North Carolina tort law. Blackwater removed Nordan's action to federal district court. It asserted that *28 U.S.C. § 1441(a) (2000)* permitted removal both because the Defense Base Act ("DBA"), *42 U.S.C. § § 1651-1654 (2000)*, completely preempted Nordan's state-law claims, and because the issues in the case presented unique federal interests sufficient to create a federal question. Once in federal court, Blackwater moved to dismiss the case, arguing that the district court lacked subject matter jurisdiction because the DBA covered Nordan's claims and, therefore, that Nordan could litigate his claims only before the Department of Labor, which decides DBA claims in the first instance.

The district court first considered whether Blackwater had met its burden of establishing federal removal jurisdiction. *Nordan v. Blackwater Sec. Consulting, 382 F. Supp. 2d 801, 806 (E.D.N.C. 2005).* [**6] In concluding that Blackwater had not met this burden, the district court rejected both of Blackwater's asserted bases for removal jurisdiction. The court reasoned that, because the DBA grants the Secretary of Labor exclusive original jurisdiction over DBA claims, the statute does not completely preempt state-law claims; the hallmark of complete preemption, the district court concluded, is the presence of original jurisdiction over the matter in federal district court. *Id. at 807-10* (citing *Lontz v. Tharp, 413 F.3d 435, 442-43 (4th Cir. 2005)*). Further, the court determined that Blackwater's assertion of removal jurisdiction by way of a unique federal interest in the adjudication of Nordan's claims "assume[d] the very conclusion which [the] court lack[ed] jurisdiction to reach, namely that the decedents in this case are covered as employees under the DBA." *Id. at 813.*

Finding no basis for removal, the district court concluded that it lacked subject matter jurisdiction and, citing *28 U.S.C. § 1447(c) (2000),* n1 determined that it must remand the case. *Nordan, 382 F. Supp. 2d at 813-14.* Although Blackwater [**7] encouraged [*582] the district court to remedy its lack of jurisdiction by dismissing the case rather than remanding it, the district court further concluded that it lacked the authority to dismiss. The court reasoned that federal district courts play no role in the adjudication or review of DBA claims n2 and, therefore, that it had no jurisdiction to decide whether the DBA applied to Nordan's claims. *Id. at 814.* The district court thus remanded the case to state court without reaching the merits of Blackwater's motion to dismiss.

n1 *Section 1447(c)* provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . . The State court may thereupon proceed with such case."

N2 The district court incorrectly concluded that the federal district courts play no role in the adjudication of DBA claims. The federal district courts, followed by the federal courts of appeals and the United States Supreme Court, review DBA claims after they have been initially adjudicated in the Department of Labor. *See 42 U.S.C. § 1653(b) (2000); see also Lee v. Boeing Co., Inc., 123 F.3d 801, 803-05 (4th Cir. 1997)* (describing agency and judicial review of DBA claims).

[**8]

Blackwater now seeks review, via both an ordinary appeal and a petition for a writ of mandamus. For the reasons that follow, we hold that we lack jurisdiction to hear the appeal and decline to issue a writ of mandamus. n3

n3 Nordan moved to strike a portion of the record that Blackwater submitted on appeal. Because we dismiss the appeal and the petition for lack of jurisdiction, we deny this motion as moot.

II.

We first address the issue of our authority to review this case by appeal. Blackwater faces a formidable hurdle in this regard because Congress has severely circumscribed federal appellate review of certain orders remanding a case to the state court from which it was removed. We begin our analysis with a review of the body of law related to and developed from that jurisdictional circumscription. We then address whether the principles inherent in that body of law allow us to exercise appellate jurisdiction in this case.

A.

1.

The legal principles that govern appellate jurisdiction in this case derive [**9] from Congress's limitation on our authority to review remand orders. A district court order "remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." n4 *28 U.S.C. § 1447(d) (2000).* This limitation on review applies even if the remand order is "manifestly, inarguably erroneous." *Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1450 (4th Cir. 1996)* (Phillips, J., specially concurring and delivering the opinion of the court on the issue of subject matter jurisdiction) (citing *Gravitt v. Sw. Bell Tel. Co., 430 U.S. 723, 97 S. Ct. 1439, 52 L. Ed. 2d 1 (1977) (per curiam)).* If the plain language of the statute were all that we had to consult, we might not tarry long with the notion that we could entertain a review of the merits of this case. Several cases, however, provide for limited exceptions to the reach of § 1447(d). n5

n4 The full text of § 1447(d) is as follows:

An order remanding a case to the State court from which it was

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to *section 1443* of this title shall be reviewable by appeal or otherwise.

[**10]

n5 In addition to the judicially developed exceptions upon which we focus today, *§ 1447(d)* itself permits review of a remand order in a case removed to federal court pursuant to *28 U.S.C. § 1443 (2000)*, which concerns removal of state civil and criminal actions involving civil rights claims. In addition, a separate statute allows review of remand orders in cases concerning certain land restrictions applicable to the Five Civilized Tribes of Oklahoma. *See* Act of Aug. 4, 1947, ch. 458, sec. 3(c), 61 Stat. 731, 732, *25 U.S.C. § 355* note (2000); *see also 28 U.S.C. § 1447* note (2000) (Exception to Subsection (d)). Neither statutory provision is at issue in this case.

[*583] First, the Supreme Court has interpreted *§ 1447(d)* to prohibit review only when the order of remand was based upon *§ 1447(c)*, which requires remand when the district court determines that it lacks subject matter jurisdiction. *See Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 346, 96 S. Ct. 584, 46 L. Ed. 2d 542 (1976)* ("[O]nly remand orders [**11] issued under *§ 1447(c)* and invoking the grounds specified therein . . . are immune from review under *§ 1447(d)*."), *overruled on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 714-15, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996)*.

Second, *§ 1447(d)* does not prohibit review of a collateral decision that is severable from the remand order. *See City of Waco v. U.S. Fid. & Guar. Co., 293 U.S. 140, 143, 55 S. Ct. 6, 79 L. Ed. 244 (1934)* (holding *§ 1447(d)* inapplicable to the portion of a remand order that dismissed a cross-claim because the dismissal "in logic and in fact . . . preceded [the order] of remand and was made by the District Court while it had control of the cause . . . . [A]nd, if not reversed or set aside, [the dismissal] is conclusive upon the petitioner"); *see also Nutter v. Monongahela Power Co., 4 F.3d 319, 321 (4th Cir. 1993)* ("[W]here portions of a remand order are 'in logic and in fact' severable from the court's determinations regarding remand, we may review the severable portions of the order on appeal.") (citing *Waco, 293 U.S. at 143*).

Finally, *§ 1447(d)* does not prohibit review of a remand order if [**12] that order exceeds the scope of the district court's authority. *See Thermtron, 423 U.S. at 351* (holding that *§ 1447(d)* does not bar review of a remand order based on "grounds that [the district court] had no authority to consider" because such action "exceed[s] [the court's] statutorily defined power"); *Borneman v. United States, 213 F.3d 819, 826 (4th Cir. 2000)* (" *§ 1447(d)* prohibits review of district courts' determinations of whether jurisdictional statutes have been satisfied, not review of determinations where district courts exceed their jurisdictional authority") (citing *Thermtron, 423 U.S. at 351*). The issue before us is whether one of these limited exceptions to the broad jurisdictional proscription of *§ 1447(d)* applies to the district court's actions in this case.

2.

In order to determine whether an exception to *§ 1447(d)* allows us to exercise appellate jurisdiction in this case, we draw from a related body of statutory text and jurisprudence governing removal of cases from state court to federal district court. Except as federal law may otherwise provide, when a defendant removes a state civil action to federal [**13] district court, federal removal jurisdiction exists if the action is one "of which the district courts of the United States have original jurisdiction." *§ 1441(a)*. Among other categories of cases, the federal district courts possess original jurisdiction over civil cases raising federal questions, which are "all civil actions arising under the Constitution, laws, or treaties of the United States." *28 U.S.C. § 1331 (2000)*. Removal jurisdiction is not a favored construction; we construe it strictly in light of the federalism concerns inherent in that form of federal jurisdiction. *See Lontz, 413 F.3d at 440*. The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper. *See Mulcahey v. Columbia [*584] Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)*.

Under what has become known as the well-pleaded complaint rule, *§ 1331* federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law; actions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question. *See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908)*. [**14] In other words, a defendant may not defend his way into federal court because a federal defense does not create a federal question under *§ 1331*.

The doctrine of complete preemption provides a corollary to the well-pleaded complaint rule. This doctrine recognizes that some federal laws evince such a strong federal interest that, when they apply to the facts

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

underpinning the plaintiff's state-law claim, they convert that claim into one arising under federal law. *See, e.g., Caterpillar, Inc. v. Williams, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).* Because complete preemption transforms a state-law claim into one arising under federal law, "the well pleaded complaint rule is satisfied" even though the complainant never intended to raise an issue of federal law. *Lontz, 413 F.3d at 441.* However, "the sine qua non of complete preemption is a preexisting federal cause of action that can be brought in the district courts. . . . Congress's allocation of authority to an agency and away from district courts defeats a complete preemption claim . . . ." *Id. at 442-43.* The doctrine of complete preemption, therefore, concerns itself with the uniquely [**15] jurisdictional inquiry into whether a purportedly state-law claim actually arises under federal law so as to create federal jurisdiction over that claim.

By contrast, under the principles of "ordinary" preemption, some federal laws may simply provide either a substantive defense to a plaintiff's state-law claims or a right to adjudication of those claims in a federal administrative forum or according to a federal scheme. *See generally id. at 440.* "Complete preemption is a jurisdictional doctrine, while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim." *Id.* (internal quotation marks and citation omitted). The presence of ordinary federal preemption thus does not provide a basis for federal question jurisdiction, and, in a case removed from state court on the basis of federal question jurisdiction, is relevant only after the district court has determined that removal was proper and that it has subject matter jurisdiction over the case.

B.

We now turn our attention to the district court's actions in this case to determine whether § 1447(d) removes our ability to hear it.

1.

As we have explained, § 1447(d) [**16] bars appellate review of a remand order only if that order was issued pursuant to § 1447(c)'s instruction to remand removed cases over which the district court possesses no subject matter jurisdiction. *See Thermtron, 423 U.S. at 346.* However, a district court's mere citation to § 1447(c) is insufficient to bring a remand order within the purview of that provision. We must instead look to the substantive reasoning behind the order to determine whether it was issued based upon the district court's perception that it lacked subject matter jurisdiction. *See, e.g., Borneman, 213 F.3d at 824-25* ("Whether a district court's remand order is reviewable under § 1447(d) is not determined by whether the order explicitly [*585] cites § 1447(c) or not. The bar of § 1447(d) applies to

any order invoking substantively one of the grounds specified in § 1447(c).") (internal citation omitted).

The district court's remand order in this case clearly falls within the ambit of § 1447(c)'s requirement of remand in the absence of subject matter jurisdiction. The court first concluded that the DBA did not completely preempt overlapping state law and thus did not create a federal [**17] question. *Nordan, 382 F. Supp. 2d at 807-11.* It then reasoned that Blackwater's assertion of a unique federal interest in the adjudication of Nordan's claims likewise did not confer federal removal jurisdiction. *Id. at 811-13.* The district court cited the untenability of these two suggested jurisdictional bases as the source of its decision to remand the case. "[T]his court lacks subject matter jurisdiction over this cause of action . . . . [W]here the court finds no basis for subject matter jurisdiction, § 1447(c) compels the court to remand this action to state court. . . . Accordingly . . . remand, rather than dismissal for lack of subject matter jurisdiction, is proper." *Id. at 813-14.*

To conclude that the remand order was issued pursuant to § 1447(c), we need not delve into whether the district court was correct to hold that it lacked subject matter jurisdiction over the removed action. Rather, an order is issued pursuant to section § 1447(c) if the district court *perceived* that it was without jurisdiction over the cause. *See, e.g., Mangold, 77 F.3d at 1450* (holding that courts must "look past contextually [**18] ambiguous allusions and even specific citations to § 1447(c) to determine by independent review of the record the actual grounds or basis upon which the district court considered it was empowered to remand"). Furthermore, as we have noted, § 1447(d)'s jurisdictional bar applies with equal force to unassailably correct and "manifestly, inarguably erroneous" orders of remand. *Id.* Because the reasoning behind the district court's remand order in this case indicates the court's belief that it lacked subject matter jurisdiction upon removal, we conclude that the remand order was issued pursuant to § 1447(c) and, consequently, that § 1447(d) prohibits our review of that order.

2.

Having determined that the order before us was, indeed, predicated upon § 1447(c), and therefore within the purview of § 1447(d), we turn now to a consideration of whether one of the other judicially created exceptions to § 1447(d) applies. The severable order exception to § 1447(d) set forth in *Waco* allows appellate review of certain distinct component decisions that may be issued as part of a remand order. We first discuss the contours of the *Waco* severable order exception and then consider [**19] whether *Waco* permits review of two constituent aspects of the district court's remand order.

a.

The Supreme Court in *Waco* construed § 1447(d) not to prohibit categorically appeals of certain orders in cases that had been remanded to state court. In that case, the district court dismissed the claim upon which the court's removal jurisdiction had been based; it then remanded the case to the state court because, once the claim was no longer part of the case, no basis for federal jurisdiction existed. The Supreme Court held that § 1447(d)'s prohibition of appellate review did not apply to the order dismissing the claim, even though it clearly applied to the remand order itself. *Waco, 293 U.S. at 143-44.* The order dismissing the claim was appealable, the Court reasoned, because "in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had [*586] control of the cause. Indisputably this order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner." *Id. at 143.* The Court concluded that, though action on the order of dismissal "cannot affect the order of [**20] remand . . . it will at least, if the dismissal of the petitioner's complaint was erroneous, remit the entire controversy . . . to the state court . . . ." *Id. at 143-44.*

This circuit has construed *Waco* to require, at a minimum, that the purportedly reviewable order have a conclusive effect upon the parties' substantive rights. *See Nutter, 4 F.3d at 321.* We have interpreted this conclusiveness requirement to mean that the challenged order must have a preclusive effect in subsequent proceedings. *See id.*

As the Supreme Court recently reiterated, *Waco* also requires that the reviewable decision be able to be "disaggregated" from the remand order itself because "the order of remand cannot be affected notwithstanding any reversal of a separate order." *Kircher v. Putnam Funds Trust, 126 S. Ct. 2145, 2156 n.13, 165 L. Ed. 2d 92 (2006)* (internal quotation marks and citation omitted). Similarly, other circuits have had occasion to recognize as a key component of *Waco* the requirement that the reviewable decision be logically and factually antecedent to the remand order. *See, e.g., Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1052 (8th Cir. 2006)* [**21] (holding that *Waco* requires that the reviewed decision be both conclusive on the parties and logically and factually precedent to the remand order); *Hernandez v. Seminole County, 334 F.3d 1233, 1241 (11th Cir. 2003)* (construing *Waco* to require the challenged decision to be both conclusive on the parties and logically and factually precedent to the remand order); *Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 99 (1st Cir. 2001)* (holding *Waco* applicable to a decision that was not "inextricably intertwined with" or essential to the remand order); *Carr v. Am. Red Cross, 17 F.3d 671, 675 (3d Cir. 1994)* (explaining that *Waco* requires the reviewed portion of a remand order to be

"both logically precedent to, and separable from, the remand decision" and measuring the severability of an issue by whether the district court reached it as part of an inquiry into the existence of subject matter jurisdiction); *see also Kimbro v. Velten, 308 U.S. App. D.C. 134, 30 F.3d 1501, 1503 (D.C. Cir. 1994)* (concluding that *Waco* applies to decisions that "logically precede[] the question of remand") (internal quotation [**22] marks and citation omitted). Our precedent also suggests that *Waco* applies to orders that are logically and factually "antecedent" to the order of remand. *See Borneman, 213 F.3d at 825* (holding § 1447(d) inapplicable to two "antecedent components of the district court's remand order"). We therefore conclude that logical and factual severability, along with conclusiveness, are central requirements of *Waco*'s exception to § 1447(d).

b.

i.

Blackwater argues that *Waco* permits appellate review of the district court's choice of remedy for its lack of removal jurisdiction. Specifically, the district court denied as moot Blackwater's motion to dismiss for lack of jurisdiction, choosing instead to cure its lack of removal jurisdiction by remanding Nordan's claims to state court. According to Blackwater, the district court's denial of its motion to dismiss is reviewable because it conclusively decided Blackwater's assertion that the DBA and the Constitution's foreign affairs and war powers clauses convey upon it an immunity from suit in either state or federal court. This position relies heavily on [*587] our decision in *Shives v. CSX Transp., Inc. (In re CSX Transp., Inc.), 151 F.3d 164 (4th Cir. 1998).* [**23] For the reasons that follow, its reliance is misplaced.

*Shives* concerned a railroad employee's action in state court under the Federal Employers' Liability Act ("FELA"), *45 U.S.C.A. §§ 51-60 (West 1986 & Supp. 2006)*, against his employer for injuries that he had sustained while unloading a train at a marine terminal. The employer removed the case to federal court, claiming that the case raised a federal question. The employer then moved to dismiss the case, arguing that, because the employee had been injured while performing maritime work, he could receive compensation for that injury only by filing a claim with the United States Department of Labor under the Longshore and Harbor Workers Compensation Act ("LHWCA"), *33 U.S.C.A. §§ 901-950 (West 2001 & Supp. 2006).* Because *28 U.S.C. § 1445(a) (2000)* prohibited removal of FELA claims that had been initiated in state court, the district court first had to determine whether the FELA or the LHWCA covered the employee's claims. The district court concluded that the employee had not been engaged in maritime work and, therefore, [**24] that the LHWCA did not apply. Because the LHWCA did not

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

apply, the court concluded, the claim had been properly filed under the FELA. The district court then remanded the case to state court because § 1445(a) prohibited removal of the case.

"[W]ith some delicacy," we exercised appellate jurisdiction of the employer's appeal of the remand order. *Shives, 151 F.3d at 168.* We first concluded that the remand was not based on the district court's perceived lack of subject matter jurisdiction and, therefore, that it had not been issued pursuant to § 1447(c). *Id. at 167.* The district court, we reasoned, had not perceived that it lacked subject matter jurisdiction over the employee's FELA claim because federal and state courts have concurrent original jurisdiction over such claims. *Id.* Instead, it had remanded the case because § 1445(a) prohibited removal in that instance. *Id.*

Alternatively, we concluded that the district court's decision concerning the LHWCA's applicability to the employee's claim was a "conceptual antecedent" to the order of remand. *Id.* We noted that letting the remand order stand would

> commit to the state courts [**25] the decision of whether the LHWCA provided coverage to the employee. To follow that course would thus deprive the federal courts of their proper role in resolving this important issue and would circumvent Congress' intent that LHWCA coverage issues be resolved in the first instance by the Department of Labor and ultimately in the federal courts of appeals.

*Id.*

The procedural posture of this case distinguishes it from *Shives* in two critical particulars. First, as already noted, in *Shives* we exercised appellate jurisdiction over an appeal of a remand order that we somewhat hesitantly construed to be predicated upon § 1445(a)'s prohibition against removal of state-filed FELA claims, *not* upon § 1447(c)'s mandate to remand in the absence of subject matter jurisdiction. *See id. at 167-68.* Because the Supreme Court has clarified that § 1447(d)'s restriction on review applies only to remand orders made pursuant to § 1447(c), *see Thermtron, 423 U.S. at 346,* we concluded that § 1447(d) did not prohibit appellate jurisdiction, *see Shives, 151 F.3d at 167.* In other words, appellate jurisdiction existed in *Shives* [**26] because the district court's order did not rest upon lack of subject matter jurisdiction, the ground set forth in § 1447(c). n6 By contrast, as we [*588] have explained, the district court remanded this case under § 1447(c) for lack of subject matter jurisdiction.

n6  We drew a similar conclusion in *Mangold, 77 F.3d at 1452,* a decision that Blackwater misguidedly cites to ameliorate its jurisdictional position in this case. In that case, we concluded that § 1447(d) did not prohibit appellate review of the district court's remand order because that order did not arise from the district court's perception that it lacked subject matter jurisdiction, and thus was not issued pursuant to § 1447(c). *Id.*

The second distinction that defeats Blackwater's reliance on *Shives* to support appellate jurisdiction in this case is the existence in *Shives* of a "conceptual antecedent" to the district court's remand order. As we have noted, a key component of *Waco*'s collateral order exception is that [**27] the challenged order "in logic and in fact . . . preceded that of remand." *Waco, 293 U.S. at 143.* The district court in *Shives* faced, on the one hand, § 1445(a), which prohibited removal of state-filed FELA claims, and, on the other hand, a notice of removal claiming that the plaintiff's claim was not brought under the FELA but was instead preempted by the LHWCA. We concluded in *Shives* that the district court remanded the case because § 1445(a) prohibited removal of FELA claims. *See 151 F.3d at 167.* In order to reach its conclusion that § 1445(a) prohibited removal, the district court in *Shives* had to determine whether the LHWCA applied to the employee's claim. If the LHWCA was applicable, it would erase § 1445(a)'s protection of state-filed FELA claims from removal. *Shives* thus presented the court of appeals with an LHWCA coverage decision by the district court, a distinct determination that was not entangled with the jurisdictional analysis supporting the remand order. *Shives* itself does not cite to *Waco* or explain how the LHWCA coverage decision at issue in that case satisfied *Waco*'s severability standard. It [**28] is nevertheless clear that we took appellate jurisdiction in *Shives* because the district court made a decision that was a "conceptual antecedent" to the remand order. That conceptual antecedent took the form of the district court's substantive ruling that, because the plaintiff had not been engaged in maritime employment, the application of the LHWCA had not been triggered in that case. *See id.*

No such conceptual antecedent exists here. The district court made no DBA coverage decision that might form the basis of our review. In *Shives,* the district court reached the issue of the LHWCA's application to the plaintiff's claim, but not because it needed help deciding how to remedy its lack of removal jurisdiction. Rather, a determination of LHWCA coverage in *Shives* was a necessary step in the district court's inquiry into the permissibility of removal. Here, the district court

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

appropriately did *not* decide whether the DBA applied to Nordan's claims because such an inquiry was both unnecessary to its jurisdictional analysis and unreachable on the merits once the court had determined that removal jurisdiction was absent. n7

> n7 Another case upon which Blackwater significantly relies is also distinguishable on this basis. In *Jamison v. Wiley, 14 F.3d 222, 233 (4th Cir. 1994),* we concluded that *Waco's* exception permitted review of the district court's refusal to substitute the United States as a defendant. We so concluded because the district court decided to deny substitution *"before it decided to remand the case to state court, while it still had control of the case." Id.*

**[**29]**

The fact that the district court's order made no determination of DBA coverage has significance beyond serving to distinguish the facts before us from those in *Shives.* It also supports our conclusion that the denial of Blackwater's motion to dismiss was not conclusive upon its substantive **[*589]** rights. We note again the caution in *Nutter* that, for the purpose of determining whether an order meets the criteria of *Waco,* "[a]t a minimum, the challenged portion of the order must affect the parties' substantive rights" by having a preclusive effect in subsequent proceedings. *Nutter, 4 F.3d at 321.* Here, the district court made no determination with respect to whether the DBA covered Nordan's claims. One of the first principles of preclusion, however, is that the precluding order either actually determined the issue sought to be precluded (in the case of issue preclusion) or issued a final judgment on the merits (in the case of claim preclusion). *See, e.g., Martin v. Am. Bancorporation Ret. Plan, 407 F.3d 643, 650, 653 (4th Cir. 2005).* Therefore, neither the district court's refusal to decide whether the DBA applies to Nordan's claims, nor its **[**30]** concurrent conclusion that it lacked jurisdiction to reach the merits of the case will have any preclusive effect on Blackwater's ability to assert in state court its arguments concerning ordinary federal preemption.

We further note that remanding despite a potential federal defense does not hamstring the litigation of that defense in state court. In *Lontz, 413 F.3d 435,* we decided a similar case in which the defendant had removed a state labor dispute to federal court, claiming federal question jurisdiction via complete preemption. The *Lontz* defendant had claimed complete preemption on the theory that Sections 7 and 8 of the National Labor Relations Act ("NLRA"), *29 U.S.C. § § 157-158 (2000),* required resolution of certain labor disputes before the National Labor Relations Board ("NLRB") rather than in

state or federal court. We concluded that the NLRA provisions do not completely preempt state law and that the district court consequently lacked federal question removal jurisdiction. *Lontz, 413 F.3d at 442-43.* We directed the district court to remand, rather than dismiss, claims that, if the NLRA applied **[**31]** to them, would not be justiciable in state court. *See id. at 443-44.* We recognized in *Lontz* that, to the extent that the NLRA applied to the plaintiff's claims, the statute entitled the defendant to adjudication of those claims solely before the NLRB. *See id.* Nevertheless, that possible entitlement did not transform a defense of ordinary federal preemption into a right to a federal forum in which to raise and litigate that defense on the merits. Furthermore, "the futility of a remand to [state court] does not provide an exception to the plain meaning of § 1447(c)." *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth., 74 F.3d 46, 49 (4th Cir. 1996).* We therefore see no reason why Blackwater's possible entitlement to adjudication before the Department of Labor should allow it to characterize the district court's denial of its motion to dismiss as a conclusive denial of a substantive right.

Finally, once a district court determines that it lacks subject matter jurisdiction over a removed case, *§ 1447(c)* directs that the case "shall be remanded." This mandate is so clear that, once a district court has found that it lacks subject matter jurisdiction **[**32]** in a removed case, no other fact-finding, legal analysis, or exercise of judicial discretion is necessary in order to follow the congressional directive; the decision to remand a case to remedy a lack of subject matter jurisdiction is purely ministerial. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 89, 111 S. Ct. 1700, 114 L. Ed. 2d 134 (1991)* (noting that *§ 1447(c)* grants "no discretion to dismiss rather than remand [a removed] action" in which subject matter jurisdiction is lacking (internal quotation marks and citation omitted)), *superseded on other grounds by 28 U.S.C. § 1442(a)(1) (2000).* We therefore conclude that the district court's "decision" to remand instead of dismiss is not only not **[*590]** conclusive, but also intimately enmeshed with and unseverable from the remand order.

ii.

We similarly do not have jurisdiction under *Waco's* severable order exception to review the district court's conclusions that neither complete preemption nor a unique federal interest created a federal question for the purposes of removal. Our decision in *Nutter, 4 F.3d 319,* forecloses the possibility.

The *Nutter* defendant **[**33]** had claimed that removal jurisdiction was proper because two federal statutes completely preempted the plaintiff's state-law claims and, therefore, presented federal questions. The district court rejected this complete preemption argument

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

and remanded the case to state court for lack of removal jurisdiction. We concluded that this determination that the federal statutes did not completely preempt Nutter's state-law claims would have no preclusive effect in subsequent proceedings and thus that it was not a decision that was conclusive upon the parties. *Id. at 321-22.*

Similarly here, the district court's findings regarding complete preemption could foreclose state-court litigation of Blackwater's DBA and constitutional claims only if principles of preclusion prevented Blackwater from later raising a defense of ordinary federal preemption. Here, as we did in *Nutter*, we conclude that the district court's finding that complete preemption did not create federal removal jurisdiction will have no preclusive effect on a subsequent state-court defense of federal preemption. We conclude that *Nutter's* reasoning applies with equal force to the district court's companion [**34] conclusion that Blackwater's asserted unique federal interest could not convey federal removal jurisdiction.

In addition, the district court's complete preemption and unique federal interest analysis cannot be disengaged from the remand order itself. In *Nutter*, we concluded that the district court's complete preemption conclusion was unseverable from its determination that it lacked removal jurisdiction: "the [district] court's findings regarding preemption and jurisdiction are indistinguishable. The preemption findings were merely subsidiary legal steps on the way to its determination that the case was not properly removed." *Id. at 321* (internal quotation marks and citation omitted). Indeed, the district court's conclusions here with respect to complete preemption and the presence of a unique federal interest cannot be severed from the remand order, as they are simply the necessary legal underpinning to the court's determination that the case was not properly removed. n8

n8 Blackwater additionally argues that it is the functional equivalent of a federal officer and that removal jurisdiction therefore existed in the district court under *28 U.S.C. § 1442(a) (2000)*. Blackwater failed to raise this issue before the district court. Citing *28 U.S.C. § 1653 (2000)*, Blackwater nevertheless invites us to deem its notice of removal to be amended to include *§ 1442(a)* as an asserted basis for removal, to interpret the district court's failure to consider that basis as severable from its remand order under *Waco*, and thereby to create jurisdiction to review an issue that the district court never considered.

While "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," *§ 1653*, Blackwater did not

simply omit to cite to *§ 1442(a)*. Rather, it failed to argue before the district court that the provision supported removal. This court generally declines to consider issues raised for the first time on appeal absent a fundamental miscarriage of justice. *See, e.g., Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993)*. Even if it were appropriate, at this point, to deem an action taken that Blackwater never sought to take, it would not cure Blackwater's waiver of the possible jurisdictional basis by failing to marshal arguments and evidence in support of it below. *See Venkatraman v. REI Sys., Inc., 417 F.3d 418, 421-22 (4th Cir. 2005)* (holding that a miscarriage of justice had not occurred, so as to require appellate review, when the district court failed to consider a cause of action not presented to it). We therefore do not consider whether *§ 1447(d)* bars our review of this newly raised issue.

[**35]

[*591] 3.

As we have explained, *§ 1447(d)* also does not apply to remand orders based upon factors that the district court was not statutorily authorized to consider. *See Thermtron, 423 U.S. at 351*. A district court exceeds its statutory authority when it remands a case "on grounds that seem justifiable to [the court] but which are not recognized by the controlling statute." *Id.* For example, in *Thermtron* the Supreme Court held that *§ 1447(d)* does not prohibit review of a remand order based on the district court's assessment that its docket was too crowded to hear the case. *Id.*

Blackwater argues that the court exceeded its authority by remanding the case instead of dismissing it. The district court declined to dismiss the case as an alternative to remand because it determined that it did not have the authority to decide whether the DBA applied to Nordan's claims. *Nordan, 382 F. Supp. 2d at 814*. It based this determination upon the erroneous belief that district courts play no role in the federal judicial review of DBA claims. n9 *Id.* Blackwater claims that this error concerning the pipeline of review of DBA claims demonstrates that the [**36] district court exceeded its authority by remanding and that the order is therefore not subject to *§ 1447(d)*'s prohibition of review. It contends that the district court's remand order had nothing to do with its stated lack of removal jurisdiction and was instead based on an erroneous interpretation of the DBA's judicial review provisions.

n9 As we have noted, the federal district courts, followed by the federal courts of appeals

460 F.3d 576, *; 2006 U.S. App. LEXIS 21600, **

and the United States Supreme Court, review DBA claims after they have been initially adjudicated in the Department of Labor. *See 42 U.S.C. § 1653(b) (2000); see also Lee v. Boeing Co., Inc., 123 F.3d 801, 803-05 (4th Cir. 1997)* (describing agency and judicial review of DBA claims).

The district court did not remand on statutorily unauthorized grounds. Rather, as we have already explained, the remand order was based upon the district court's judgment that removal jurisdiction was not present. Of course, we need look no further than *§ 1447(c)* [**37] to conclude that Congress has not only authorized remand under such a circumstance, but also emphatically required it. The district court's error concerning the mechanism of judicial review of DBA claims is a non sequitur to its determination that remand was necessary because it lacked subject matter jurisdiction to reach any issue other than the removability of the action.

The correctness of the district court's jurisdictional analysis is irrelevant under *§ 1447(d). See Mangold, 77 F.3d at 1450.* If it were not, we could circumvent the statute simply by declaring the remand order to be wrong. Such an interpretation of *§ 1447(d)* would eviscerate the congressional policy of limiting litigation over the procedural matters that give rise to remand orders. We also need not decide whether, possessing a proper understanding of the district court's role in the judicial review of DBA claims, the district court would have been correct to dismiss the case rather than remand it. For the purposes of *§ 1447(d)*, the only relevant aspect of the district court's decision not to dismiss the case is that it was grounded upon a perceived lack of subject matter jurisdiction to decide [**38] DBA claims. The presence of an error in that analysis does not change its jurisdictional character. *Thermtron's* exception to *§ 1447(d)* for ultra [*592] vires remands thus does not apply in this case.

4.

Finally, Blackwater argues that *§ 1447(d)* does not prohibit appellate review in this case because the district court's decision to remand undermines the constitutional sequestration of foreign affairs and war powers within the political branches of the federal government, out of reach of both the federal and the state judiciaries. Specifically, it contends that:

> Even if the DBA is not applicable, the constitutional separation of powers would preclude judicial intrusion into the manner in which the contractor component of the American military deployment in Iraq is

trained, armed, and deployed. Decedents were performing a classic military function -- providing an armed escort for a supply convoy under orders to reach an Army base -- with authorization from the Office of the Secretary of Defense that classified their missions as "official duties" in support of the Coalition Provisional Authority. Federal courts, and *a fortiori* state courts, may not impose liability for casualties [**39] sustained in the battlefield in the performance of these duties. A North Carolina trial court may not adjudicate national political questions that the Supreme Court has deemed non-justiciable by federal courts.

Br. of Appellant pp. 10-11.

Blackwater overstates both the extent of our decision today and the state of the record. What we have before us is a complaint alleging that the decedents were independent contractors working for a security company, a notice of removal, a motion to dismiss, and a remand order. Without intending to diminish the magnitude of the concerns that Blackwater articulates, we are unprepared to say at this juncture that the Constitution overrides Congress's ability to prescribe the limits of federal appellate jurisdiction in matters such as these.

Blackwater's argument that neither federal nor state courts may decide decedents' claims also proves too much. Distilled to their essence, Blackwater's arguments appear to be that we must have jurisdiction because we have no jurisdiction and that our founding document simultaneously creates and prohibits jurisdiction in this case. Both constitutional interpretations are too extravagantly recursive for us [**40] to accept. It is, in fact, axiomatic under our federalist system of government that state courts have the authority to decide federal constitutional issues. Blackwater may assert in state court, subject to review by the United States Supreme Court, its defenses regarding the constitutional exclusivity of a federal administrative remedy. As we recently noted in *Lontz*, the ability of a state court "to determine its own jurisdiction is a serious obligation, and not something that federal courts may easily take for themselves." *413 F.3d at 442.* For these reasons, we decline to graft a new exception onto the already significantly burdened text of *§ 1447(d).*

III.

Blackwater alternatively claims that, even if *§ 1447(d)* prohibits appellate jurisdiction, we should issue a writ of mandamus to the district court. We are unpersuaded.

We may issue a writ of mandamus if the petitioner

has no other adequate means to obtain relief to which there is a "clear and indisputable" right. *Media Gen. Operations, Inc. v. Buchanan, 417 F.3d 424, 433 (4th Cir 2005).* "Mandamus is a drastic remedy to be invoked only in extraordinary situations." *United States v. Moussaoui, 333 F.3d 509, 516 (4th Cir. [\*593] 2003)* [\*\*41] (internal quotation marks and citation omitted). Before we may determine whether Blackwater has met these stringent requirements, however, we must first inquire whether we have the authority to issue the writ.

A.

Congress's restriction on review of remand orders applies to review "on appeal or otherwise." *§ 1447(d).* The Supreme Court has interpreted this language to forbid the use of mandamus to circumvent the requirements of *§ 1447(d). Thermtron, 423 U.S. at 343.* Given that *§ 1447(d)* precludes our ability to review the district court's order by appeal, precedent dictates that it applies to preclude our review by mandamus as well.

Further, given the state of the record at this juncture, reflecting only cursory, untested factual allegations, mandamus would still be inappropriate under these circumstances. Mandamus is an extraordinary remedy whose issuance depends upon the discretion of the court considering the petition. *United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 502, 511 (4th Cir. 1999)* (citing *Kerr v. U.S. Dist. Court for the N. Dist. of Cal., 426 U.S. 394, 40396 S. Ct. 2119, 48 L. Ed. 2d 725 (1976)*). As the Supreme Court has instructed, we [\*\*42] refrain from issuing a writ of mandamus in all but the most extraordinary circumstances to avoid circumventing congressional judgments about the proper scope of appellate jurisdiction. *See Kerr, 426 U.S. at 403* ("A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by [the] judgment of Congress.").

B.

Blackwater argues, however, that we may issue a writ of mandamus because this case presents a conflict between *§ 1447(d)* and the DBA. We held in *Borneman* that *§ 1447(d)* could not "be read categorically when other statutes in tension with it are considered." *213 F.3d at 825.* Because we interpreted the statute creating that tension to prohibit absolutely the district court's remand of the case, we concluded that this tension alternatively permitted review via mandamus. *Id. at 826.* However, the statute "in tension" with *§ 1447(d)* in *Borneman* declared that certain state-court actions brought against federal employees "shall be removed." *28 U.S.C. § 2679(d)(2) (2000).* n10 That statute [\*\*43] thus directly and specifically addressed the removability of the relevant class of claims and contained language that channeled the district court's authority to remand in such

cases. This absence of discretion to remand created the tension of which we spoke in *Borneman. 213 F.3d at 825.* By contrast, Blackwater has not identified any portion of the DBA that similarly addresses either the removability to federal district court of state court actions purportedly preempted by the DBA or the district [\*594] court's peculiar lack of discretion with respect to remand of such cases. n11

> n10 The tension-creating statute in *Borneman* was a portion of the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("the Westfall Act"). Sections 5 and 6 of the Westfall Act, *28 U.S.C. § 2679(b), (d) (2000)*, give federal employees absolute immunity from liability in tort for actions within the scope of their employment and create a procedural mechanism by which this immunity is enforced. When a federal employee is sued for a tort committed within the scope of his or her employment, the Attorney General may issue a certification that the facts underlying the claim did in fact arise within the scope of the defendant's federal employment. *§ 2679(d)(1)-(2).* If such a certification is issued in a case brought in state court, the case "shall be removed without bond . . . to the [appropriate federal] district court," where the court must substitute the United States as the sole defendant. *§ 2679(d)(2).*

[\*\*44]

> n11 Indeed, the statutory authority under which Blackwater sought removal in this case simply allows that state-court actions raising a federal question "may be removed" to federal district court. *§ 1441(a).*

C.

Blackwater next argues that we may issue a writ of mandamus because the remand order risks unnecessary tension between state and federal judicial fora on an extraordinarily important question of federal law. Blackwater attempts to characterize our opinions in *Mangold, Jamison,* and *Shives* as authority for the proposition that a writ of mandamus may issue despite the applicability of *§ 1447(d)* simply because the remand will have the practical effect of allowing a state court to decide a federal issue. Blackwater misapprehends the import of our jurisprudence in two fundamental respects.

First, Blackwater contorts the meaning of *Thermtron,* in which the Supreme Court held that federal appellate courts may review via mandamus remand orders that are not covered by *§ 1447(d).* The *Thermtron*

Court concluded that, even though *§ 1447(d)* did not apply to the remand order at issue, [**45] the order was nevertheless unreviewable by appeal because it was not a final judgment. *423 U.S. at 352-53, overruled by Quackenbush, 517 U.S. at 714-15* (holding that remand orders are final for the purposes of appellate review). *Thermtron*, therefore, established mandamus as a means to circumvent not *§ 1447(d)*'s proscription against review of certain remand orders, but the finality requirement of *28 U.S.C. § 1291 (2000)*. *423 U.S. at 352-53*. Similarly, in *Mangold* and *Jamison*, we referred to the use of the writ of mandamus not as an end-run around *§ 1447(d)* but as an alternative to satisfaction of *§ 1291* or membership in the narrow class of collateral orders reviewable under *Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949)*. See *Mangold, 77 F.3d at 1453*; *Jamison, 14 F.3d at 233-34*. Because we conclude that Blackwater has not overcome the hurdle of *§ 1447(d)*, we have no occasion to consider whether the doctrine of finality has been satisfied in this case.

Second, Blackwater fails to acknowledge a key difference between the [**46] record before us today and the record before us in *Shives*. We expressed in *Shives* some doubt about our ability to exercise appellate jurisdiction, but concluded that we could, in the alternative, issue a writ of mandamus "[t]o avoid forfeiting the federal courts' role of reviewing LHWCA coverage issues." *151 F.3d at 167*. As we have explained, in *Shives*, the district court decided whether the employee's claim, which had been filed in state court under the FELA, was in fact covered by the LHWCA. If the FELA provided the employee with his cause of action, then removal was improper because *§ 1445(a)* prohibits removal of state-filed FELA claims. However, if the LHWCA governed the claim instead, the employee could not proceed under the FELA and *§ 1445(a)* would

not apply. Determination of the applicability of the LHWCA to the employee's claims was, therefore, a critical step in the district court's inquiry into the propriety of removal in that case. Furthermore, the parties had stipulated to the facts relevant to the question of whether the LHWCA applied to the employee's claim. *Shives* thus presented the court of appeals with an order in which the district [**47] court actually decided, on an uncontested factual record and as part of its inquiry [*595] into the permissibility of removal, whether the LHWCA covered the plaintiff's claims.

Here, as we have explained, we have no coverage question to review -- and rightfully so, as the district court did not need to reach that issue as part of its removal jurisdiction analysis -- nor do we have a factual record in which the legally material facts are uncontested. Given the preliminary nature of the proceedings below and the resulting lack of adversarial development of the factual allegations in this case, as well as the absence of an independently reviewable order, mandamus is not only not compelled by *Shives* but is also particularly inappropriate. We therefore decline to expand *Shives* so far afield of the original congressional intent embodied in *§ 1447(d)*.

IV.

For the foregoing reasons, we conclude that we lack jurisdiction to hear this case and grant Nordan's motion to dismiss Blackwater's appeal. We also deny Blackwater's petition for a writ of mandamus. Finally, we deny as moot Nordan's motion to strike.

*APPEAL DISMISSED; PETITION FOR WRIT OF MANDAMUS DENIED; MOTION TO STRIKE DENIED* [**48] *AS MOOT*

# Exhibit "E"

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED
September 28, 2006

No. 05-1949
CA-05-48-5

In Re: BLACKWATER SECURITY CONSULTING, LLC, a Delaware
Limited Liability Company; BLACKWATER LODGE AND
TRAINING CENTER, INCORPORATED, a Delaware Corporation

       Petitioners

No. 05-1992
CA-05-48-5

In Re: JUSTIN L. MCQUOWN

       Petitioner

No. 05-2033
CA-05-48-5-FL

RICHARD P. NORDAN, as Ancillary Administrator for the
separate Estates of Stephen S. Helvenston, Mike R. Teague,
Jerko Gerald Zovko and Wesley J.K. Batalona

       Plaintiff - Appellee

    and

ESTATE OF STEPHEN S. HELVENSTON; ESTATE OF MIKE R. TEAGUE;
ESTATE OF JERKO GERALD ZOVKO; ESTATE OF WESLEY J.K. BATALONA

       Plaintiffs

    v.

BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited
Liability Company; BLACKWATER LODGE AND TRAINING CENTER,
INCORPORATED, a Delaware corporation

       Defendants - Appellants

    and

JUSTIN L. MCQUOWN, an individual; THOMAS POWELL

        Defendants

------------------------------

PROFESSIONAL SERVICES COUNCIL; INTERNATIONAL PEACE
OPERATIONS ASSOCIATION; AMERICAN INTERNATIONAL GROUP,
INCORPORATED

        Amici Supporting Appellant


              No. 05-2034
                CA-05-48-5-FL


RICHARD P. NORDAN, as Ancillary Administrator for the
separate Estates of Stephen S. Helvenston, Mike R. Teague,
Jerko Gerald Zovko and Wesley J.K. Batalona

        Plaintiff - Appellee


      and

ESTATE OF STEPHEN S. HELVENSTON; ESTATE OF MIKE R. TEAGUE;
ESTATE OF JERKO GERALD ZOVKO; ESTATE OF WESLEY J.K. BATALONA

        Plaintiffs


   v.

JUSTIN L. MCQUOWN, an individual

        Defendant - Appellant


      and

BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited
Liability Company; BLACKWATER LODGE AND TRAINING CENTER,
INCORPORATED, a Delaware corporation; THOMAS POWELL

        Defendants


------------------------------

PROFESSIONAL SERVICES COUNCIL; INTERNATIONAL PEACE
OPERATIONS ASSOCIATION; AMERICAN INTERNATIONAL GROUP,
INCORPORATED

Amici Supporting Appellant

----------------------

On Petition for Rehearing and Rehearing En Banc

----------------------

The appellants' petition for rehearing and rehearing en banc was submitted to this Court. As no member of this Court or the panel requested a poll on the petition for rehearing en banc, and

As the panel considered the petition for rehearing and is of the opinion that it should be denied,

IT IS ORDERED that the petition for rehearing and rehearing en banc is denied.

IT IS FURTHER ORDERED that the amici motions filed by AIG, Professional Services Council, the International Peace Operations Association and Kellogg Brown & Root Services, Incorporated, for leave to file briefs in support of the petition for rehearing and rehearing en banc are denied.

Entered for a panel composed of Judge Shedd, Judge Duncan, and Judge Jones, Chief U. S. District Court Judge, sitting by designation.

For the Court,

/s/ Patricia S. Connor

------------------------
CLERK

# Exhibit "F"

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED
October 6, 2006

No. 05-1949
CA-05-48-5

In Re: BLACKWATER SECURITY CONSULTING, LLC, a Delaware
Limited Liability Company; BLACKWATER LODGE AND
TRAINING CENTER, INCORPORATED, a Delaware Corporation

       Petitioners

No. 05-1992
CA-05-48-5

In Re: JUSTIN L. MCQUOWN

       Petitioner

No. 05-2033
CA-05-48-5-FL

RICHARD P. NORDAN, as Ancillary Administrator for the
separate Estates of Stephen S. Helvenston, Mike R. Teague,
Jerko Gerald Zovko and Wesley J.K. Batalona

       Plaintiff – Appellee

    and

ESTATE OF STEPHEN S. HELVENSTON; ESTATE OF MIKE R. TEAGUE;
ESTATE OF JERKO GERALD ZOVKO; ESTATE OF WESLEY J.K. BATALONA

       Plaintiffs

    v.

BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited
Liability Company; BLACKWATER LODGE AND TRAINING CENTER,
INCORPORATED, a Delaware corporation

       Defendants – Appellants

and

JUSTIN L. MCQUOWN, an individual; THOMAS POWELL

        Defendants

------------------------

PROFESSIONAL SERVICES COUNCIL; INTERNATIONAL PEACE
OPERATIONS ASSOCIATION; AMERICAN INTERNATIONAL GROUP,
INCORPORATED

        Amici Supporting Appellant


                   No. 05-2034
                   CA-05-48-5-FL


RICHARD P. NORDAN, as Ancillary Administrator for the
separate Estates of Stephen S. Helvenston, Mike R. Teague,
Jerko Gerald Zovko and Wesley J.K. Batalona

        Plaintiff - Appellee


and

ESTATE OF STEPHEN S. HELVENSTON; ESTATE OF MIKE R. TEAGUE;
ESTATE OF JERKO GERALD ZOVKO; ESTATE OF WESLEY J.K. BATALONA

        Plaintiffs


   v.

JUSTIN L. MCQUOWN, an individual

        Defendant - Appellant


and

BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited
Liability Company; BLACKWATER LODGE AND TRAINING CENTER,
INCORPORATED, a Delaware corporation; THOMAS POWELL

        Defendants

------------------------

PROFESSIONAL SERVICES COUNCIL; INTERNATIONAL PEACE

OPERATIONS ASSOCIATION; AMERICAN INTERNATIONAL GROUP,
INCORPORATED

Amici Supporting Appellant

---------------
O R D E R
---------------

Appellants have filed a motion to stay the mandate
pending application to the United States Supreme Court for a writ
of certiorari.

The Court denies the motion.

Entered at the direction of Judge Duncan, with the
concurrence of Judge Shedd and District Judge Jones.

For the Court,

/s/ Patricia S. Connor
_____
CLERK

# Exhibit "G"

Exhibit "G"

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

October 24, 2006

Mr. Daniel J. Callahan
Callahan & Blaine, APLC
3 Hutton Centre Drive
Suite 900
Santa Ana, CA  92707

Re:  Blackwater Security Consulting, et al.
     v. Richard P. Nordan, et al.
     Application No. 06A396

Dear Mr. Callahan:

The application for a stay pending filing and disposition of a petition for a writ of certiorari in the above-entitled case has been presented to The Chief Justice, who on October 24, 2006 denied the application.

This letter has been sent to those designated on the attached notification list.

Sincerely,

**William K. Suter**, Clerk

by

Danny Bickell
Staff Attorney