# EXHIBIT 1

LEXSEE 1992 US APP LEXIS 28843


Analysis
As of: Jan 18, 2007

SILKWORM SCREEN PRINTERS, INCORPORATED, Plaintiff-Appellee,
v. ROBERT ABRAMS; LIMITED GENCO INTERNATIONAL; JAMES Y.
CHEN; LIMITED AMCHI TRADING; LIMITED EASTERN COMMODITIES,
Defendants-Appellants.

No. 91-1631

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

1992 U.S. App. LEXIS 28843

April 9, 1992, Argued
November 4, 1992, Decided

**NOTICE:** [*1]

RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported as Table case at 1992 U.S. App. LEXIS 34443

**PRIOR HISTORY:** Appeal from the United States District Court for the District of South Carolina, at Charleston. Solomon Blatt, Jr., Senior District Judge. (CA-90-1785-2-8).

**DISPOSITION:** VACATED AND REMANDED

**COUNSEL:** Argued: David Michael Collins, BUIST, MOORE, SMYTHE & MCGEE, Charleston, South Carolina, for Appellants.

Argued: Peter Wieler Fudali, SANDLER, TRAVIS & ROSENBERG, P.A., Miami, Florida, for Appellee.

On Brief: Edward M. Joffe, SANDLER, TRAVIS &ROSENBERG, P.A., Miami, Florida; Frank Cisa, WOODDY, BARGMANN, CISA, STYLES & DODDS, Charleston, South Carolina, for Appellee.

**JUDGES:** Before NIEMEYER, Circuit Judge, BUTZNER, Senior Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation. Senior Judge Butzner wrote the opinion, in which Judge Niemeyer and Senior Judge Ward joined.

**OPINION BY:** BUTZNER

**OPINION:** OPINION

BUTZNER, Senior Circuit Judge:

Robert Abrams, Genco International, Ltd., James Y. Chen, Amchi Trading, Ltd., and Eastern Commodities, Ltd., appeal an order of the district court denying [*2] their motion to dismiss an action brought by Silkworm Screen Printers, Inc., for breach of contract, actual and constructive fraud, negligent misrepresentation, and unfair trade practices. Silkworm seeks compensatory and punitive damages. The motion to dismiss is predicated on the claim that the controversy should be arbitrated. Abrams and his codefendants also appeal the district court's denial of their motion to stay Silkworm's action pending arbitration.

Jurisdiction for Silkworm's action is based on diversity of citizenship, 28 U.S.C. § 1332. Appellate jurisdiction is based on 9 U.S.C. § 16(a) (1990), which allows appeals of orders denying arbitration or denying stays of proceedings at law pending arbitration. See Jerke v. Brooks, 875 F.2d 71, 73-74 (4th Cir. 1989)

(discussing 9 U.S.C. § 15 which has since been recodified as § 16). The district court also denied the defendants' motion to dismiss for lack of personal jurisdiction; as the parties recognize, this aspect of the district court's order is not appealable.

We vacate the portion [*3] of the district court's order that denied dismissal of the complaint and a stay pending arbitration and remand for further fact finding and proceedings consistent with this opinion.

I

Eastern Commodities, designated as "seller," and Silkworm, designated as "buyer," contracted to purchase black cotton t-shirts manufactured in China. James Y. Chen, an officer of Amchi, signed the contract on behalf of Eastern Commodities. Thomas Pickhardt, an officer of Silkworm, signed on behalf of Silkworm. Silkworm claims that when the first shipment of shirts arrived at the Port of Charleston, South Carolina, the defendants failed to provide the necessary documents for the shirts to clear customs. Moreover, according to Silkworm, the shirts failed to conform to specifications.

The Eastern Commodities-Silkworm contract provided "sellers to present original contract with PRC Mfgrs. which forms a part of this contract." The defendants contend that this provision refers to the contract between Shenzhen Foreign Trade Group and Queenkit. The Shenzhen-Queenkit contract contains a broad form arbitration clause:

> All disputes arising from the execution of, or in connection with this contract, shall [*4] be settled amicably through friendly negotiation. In case no settlement can be reached through negotiation, the case shall be submitted to the Foreign Economic & Trade Arbitration Commission of the Chinese Council for the Promotion of International Trade, Beijing, for arbitration with its procedural rules of procedure. The arbitrable award is final and binding upon both parties.

Chen identified Queenkit as a Hong Kong trading company that contracted with Shenzhen for some of the t-shirts and delivered 1,580 dozen. He identified Montage as another Hong Kong trading company that also contracted with Shenzhen for some of the t-shirts and delivered 13,000 dozen. The manufacturers, Chen testified, were affiliated with Shenzhen, and the Shenzhen-Queenkit contract was the standard China manufacturers' contract that the purchase agreement incorporated.

Chen testified that Eastern Commodities had contracts with Queenkit and Montage for the shirts. Chen also testified that he presented the Shenzhen-Queenkit contract to Pickhardt and that he discussed the arbitration clause with him. He did not present the Shenzhen-Montage contract or the Eastern Commodities contracts with Queenkit and [*5] Montage. Eastern Commodities had no contract with Shenzhen; it dealt with the two Hong Kong trading houses.

Pickhardt executed an affidavit in which he denied that the Shenzhen-Queenkit contract was ever presented to him or to anyone else at Silkworm. He asserted that neither arbitration nor an arbitration clause was ever discussed with him or anyone at Silkworm, and he claims that Silkworm never agreed with any of the defendants to arbitrate matters arising out of the purchase of the t-shirts. Silkworm also contends that Shenzhen trading group is not a manufacturer, so the Shenzhen-Queenkit contract does not comply with the provision in the Eastern Commodities-Silkworm contract incorporating the China manufacturers' contract.

The district court did not resolve the conflicting testimony of Chen and Pickhardt or the dispute over whether the Shenzhen-Queenkit contract was the China manufacturers' contract mentioned in the Silkworm-Eastern Commodities agreement. Instead, the court said in its oral opinion:

> I just don't feel that there is--as ambiguous as it is,

as limited as it is, that on a motion to dismiss on the grounds that they're bound to arbitration. They disputed it. [*6] There is a dispute about it. It's conflicting and ambiguous, and I'm going to overrule the motion to dismiss on that ground.

Later in the oral opinion, the court said that, although it had held arbitration was inapplicable, it might reconsider this decision. Nevertheless, it denied a stay of the proceedings and set the case for trial. The defendants then noted their appeal.

II

Courts must address questions of arbitration "with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). In view of this policy, the district court should not have denied arbitration or a stay pending arbitration without resolving the conflicting evidence about the agreement to arbitrate.

The obligation to arbitrate must be based on a contract. Par-Knit Mills, Inc. v. Stockbridge Fabrics & Co., 636 F.2d 51, 54 (3d Cir. 1980). One cannot be required to arbitrate in the absence of agreement to do so. Peoples Security Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 808, 813 (4th Cir. 1989). A duty to arbitrate can [*7] be based on the doctrine of incorporation. Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 978 (1985). Nevertheless, before the China manufacturers' contract could be incorporated, the purchase contract required Eastern Commodities to present the manufacturers' contract to Silkworm. This was a condition precedent to incorporation of the manufacturers' contract and to Silkworm's obligation to arbitrate.

Title 9 U.S.C. § 4 authorizes a district court to empanel a jury to determine whether the parties agreed to arbitrate. By submitting the question of arbitration to the court without the intervention of a jury, Silkworm waived a jury. Its waiver, however, did not compromise its demand for a jury on other triable issues. The issues at this stage of the proceedings are (1) the credibility dispute between Chen and Pickhardt and (2) whether the Shenzhen-Queenkit contract is the China manufacturers' contract to which the Eastern Commodities-Silkworm contract refers.

The burden of proving an agreement to arbitrate rests upon the party seeking arbitration. In re Mercury Construction Co., 656 F.2d 933, 939 (4th Cir. 1981), [*8] aff'd by implication sub nom. Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1, 29 (1983); Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992). On remand Eastern Commodities and its codefendants have the burden of proving that Silkworm entered into a contract to arbitrate the disputes arising out of the purchase of the t-shirts.

III

In addition to denying that it agreed to arbitrate, Silkworm raises other objections, which the district court did not address. The same situation confronted us in In re Mercury Construction Co., 656 F.2d 933 (4th Cir. 1981). In that case we reversed the district court's order that denied arbitration, and we also disposed of objections to arbitration that the district court had not considered. Upon review the Supreme Court approved this procedure:

> Title 28 U.S.C. § 2106 gives a court of appeals some latitude in entering an order to achieve justice in the circumstances. The Arbitration Act calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses. [*9] The Court of Appeals had in the record full briefs and evidentiary submissions from both parties on the merits of arbitrability, and held that there were no disputed issues of fact requiring a jury trial before a § 4 order could issue.

Moses H. Cone Memorial Hospital, 460 U.S. at 29.

We will follow this precedent. The parties have fully briefed and argued the issues raised by Silkworm's objections to arbitration. The material facts are not in dispute, and resolution of the issues presents only questions of law.

IV

Silkworm protests that arbitration in China would be "unreasonable." It relies primarily on The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18-19 (1972), in which the Court allowed a party an opportunity to carry its heavy burden of showing that litigation in the High Court of Justice in London pursuant to a forum selection clause would be unreasonable. Silkworm complains about the lack of discovery, lack of due process as guaranteed in the United States, interrupted proceedings that may require more than one session, lack of provision for punitive and treble damages in Chinese law, expense, and inconvenience.
 [*10]
Silkworm's reliance on The Bremen is misplaced. That case dealt with judicial forum selection, not arbitration. See Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 680-81 (5th Cir. 1976) (distinguishing The Bremen). The United States and China are parties to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517. The Convention is reproduced in a note to 9 U.S.C.A. § 201 (Supp. 1992). Enforceability of this arbitration clause is governed by Article II, Paragraph 3 of the Convention, which provides that a court should enforce a contract to arbitrate "unless if finds that the said agreement is null and void, inoperative or incapable of being performed." 21 U.S.T. 2519.

A proceeding falling under the Convention arises under the laws and treaties of the United States, and district courts have original jurisdiction regardless of the amount in controversy. 9 U.S.C. § 203. The Federal Arbitration Act expressly authorizes a district court to order arbitration outside of the United States. 9 U.S.C. § 206. [*11] It also provides for immediate appellate review of an order denying an application for arbitration sought pursuant to section 206. 9 U.S.C. § 16(a)(1)(C).

The Supreme Court has admonished federal courts to give effect to contractual provisions requiring the parties to submit their arbitrable dispute to the foreign forum designated in the contract. For example, the Court reversed a judgment that denied enforcement of a contractual clause providing for arbitration before the International Chamber of Commerce in Paris of disputes arising out of the sale of a business, saying:

> A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction.

Scherk v. Alberto-Culver Co., 417 U.S. 506, 516 (1974).

Concerned that some trial and appellate courts were still hesitant to enforce foreign arbitration of statutory claims, the Court again emphasized the importance of giving effect to agreements [*12] providing for international arbitration. In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985), the Court reversed an order denying arbitration of an antitrust claim before the Japan Commercial Arbitration Association. The Court reiterated:

> We conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, andsensitivity to the need of the international commercial system for predictability in

the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

473 U.S. at 629. The emphasis that the Supreme Court has placed on the enforcement of foreign arbitration clauses is especially compelling in this case because China and the United States have agreed to apply the Convention only on the basis of reciprocity. 9 U.S.C.A. § 201, note, PP 7a, 43.

The objections that Silkworm has raised about arbitration in China do not differ substantially from general objections unsuccessfully raised to forestall foreign arbitration. The objections [*13] do not rise to the level of the standards set forth in the Convention. Consequently, the fact that the arbitration clause contemplates arbitration in Beijing does not preclude enforcement.

V

We cannot accept Silkworm's argument that any order enforcing arbitration should be limited to the breach of contract claim and that it should exclude the tort claims. All of the facts giving rise to the dispute between the parties arose from the same commercial transaction. The arbitration clause that Eastern Commodities seeks to incorporate into the purchase agreement provides for arbitration of "all disputes arising from the execution of, or in connection with this contract." Doubts about the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Memorial Hospital, 460 U.S. at 24-25. This precept brings within the scope of such a broad arbitration clause both the breach of contract and the torts that Silkworm alleged. See Neal v. Hardee's Food System, Inc., 918 F.2d 34, 38 (5th Cir. 1990); J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 318-22 (4th Cir. 1988). [*14] In like vein, the Convention provides for the enforcement of an agreement to arbitrate all disputes "in respect of a defined legal relationship, whether contractual or not." Art. II, para. 1, 21 U.S.T. at 2519.

Nor does Silkworm's protest that Chinese law does not recognize punitive and treble damages warrant denial of enforcement of the arbitration clause. In Mitsubishi, the Supreme Court, referring to American antitrust law, observed that a foreign arbitrator "should be bound to decide dispute in accord with the national law giving rise to the claim." 473 U.S. at 637. The same rule, we believe, should apply to Silkworm's claims which are based on United States custom laws and regulations and South Carolina law. If the district court decides that the parties must be referred to arbitration, it will have an opportunity afforded by Article V of the Convention to insure that legitimate issues of domestic law have been addressed. See Mitsubishi, 473 U.S. at 614. For this purpose the district court may stay its proceedings pending arbitration instead of dismissing Silkworm's complaint. 9 U.S.C. § 3.
[*15]

VI

Silkworm argues that its claims against Amchi, Genco, Chen, and Abrams should not be subject to arbitration, even if the court reaches a contrary determination with respect to Eastern Commodities, as only Eastern Commodities contracted with Silkworm.

We have held that a nonsignatory parent company may arbitrate a claim if its subsidiary is a signatory to an arbitration agreement and the charges against the parent and subsidiary involve inherently inseparable facts. J.J. Ryan & Sons, 863 F.2d at 320-21. In Arnold v. Arnold, 920 F.2d 1269, 1281-82 (6th Cir. 1990), the Sixth Circuit adopted the "majority view" that nonsignatories of arbitration agreements may benefit from arbitration clauses under ordinary contract and agency principles.

Because Amchi represents Eastern Commodities in the United States and Chen is an officer of Amchi, we hold that Amchi and Chen are proper parties to arbitration proceedings. Robert Abrams is an officer of Genco International, Ltd. Abrams and Chen negotiated with Silkworm about the purchase of the shirts. Abrams sent

Silkworm samples, and Silkworm placed an order with him for the [*16] shirts. The contract, which Abrams prepared, identified Eastern Commodities as the seller. Abrams then sent the contract, which Chen had signed, to Silkworm for Pickhardt's signature. Abrams acted as an agent of the seller. Moreover, his conduct is inseparable from the conduct of Chen and Eastern Commodities. Abrams and his company, Genco, are proper parties to the arbitration. See J.J. Ryan & Sons, 863 F.2d at 320-21; Sam Reisfeld & Son, 530 F.2d at 681.

Silkworm relies on Lorber Industries v. Los Angeles Printworks Corp., 803 F.2d 523, 525 (9th Cir. 1986), for the proposition that arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." Lorber, however, involved a nonsignatory who, the court found, was not an agent of the signatory. Because Lorber is distinguishable, it does not support the defendants.

VII

We vacate the district court's order denying the defendants' motions to dismiss and to stay the proceedings, and we remand the case for proceedings consistent with this opinion. The district [*17] court is directed to conduct an evidentiary hearing to determine whether Chen presented to Silkworm the manufacturers' contract as specified for incorporation in the purchase contract. This involves a credibility finding, and the burden rests on Eastern Commodities and its codefendants to prove that Silkworm agreed to arbitrate.

If the district court finds no agreement to arbitrate, it may reinstate the orders we have vacated. If the district court finds that Silkworm agreed to arbitrate, it should enter an order directing arbitration in accordance with the agreement. It may either dismiss Silkworm's complaint for lack of subject matter jurisdiction or stay its proceedings pending arbitration and consideration of the award pursuant to Article V of the Convention.

VACATED AND REMANDED