# EXHIBIT "A"

Dockets.Justia.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:06-CV-49-F

| | | |
|---|---|---|
| BLACKWATER SECURITY | ) | |
| CONSULTING, LLC and BLACKWATER | ) | |
| LODGE AND TRAINING CENTER, INC., | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| RICHARD P. NORDAN, as Ancillary | ) | |
| Administrator for the Separate Estates of | ) | |
| STEPHEN S. HELVESTON, MIKE R. | ) | |
| TEAGUE, JERKO GERALD ZOVKO, and | ) | |
| WESLEY J. K. BATALONA, | ) | |
| Respondent. | ) | |

This matter is before the court on a petition for order directing arbitration [DE-1] filed

by Petitioners Blackwater Security Consulting, LLC and Blackwater Lodge Training Center,

Inc. [collectively, "Blackwater"] and a motion to dismiss the petition [DE-6] filed by Richard

P. Nordan, as Ancillary Administrator for the separate estates of Stephen S. Helveston, Mike

R. Teague, Jerko Gerald Zovko and Wesley J. K. Batalona [collectively, "Decedents"]. These

matters are now ripe for disposition.

## I. BACKGROUND

This matter arises out of four Independent Contractor Service Agreements ["Service

Agreements"] entered into by Blackwater and each of the Decedents. Section 20.1 of the

Service Agreement provides:

> Contractor and BSC hereby agree that any dispute regarding interpretation or
> enforcement of any of the parties' rights or obligations under this Agreement
> shall be resolved by binding arbitration according to the rules of the American
> Arbitration Association and shall be conducted in Currituck or Camden
> County in North Carolina.

Petition [DE-1] Exs. A, B, C and D at § 20.1. On March 31, 2004, Decedents were brutally

murdered in Fallujah, Iraq while working for Blackwater in support of the United States Armed Forces.

On January 5, 2005, Nordan filed an action in the Superior Court of North Carolina in Wake County alleging state law claims of fraud and wrongful death against Blackwater and Blackwater employees Justin L. McQuown and Thomas Powell. *See* Petition [DE-1] Ex. E.  In the complaint, Nordan alleges that Decedents entered into the Service Agreements in reliance upon the representations of Blackwater and its employees that Decedents would be afforded certain protections, tools and information while working as security contractors in the Middle East. Although Decedents were working in hostile territory, Nordan alleges that Blackwater failed to provide the protective measures as promised.  Nordan seeks relief, including compensatory damages for the wrongful death of Decedents, recision of the Service Agreements and punitive damages.

On January 24, 2005, Blackwater removed the action to the Eastern District of North Carolina on the basis of federal question jurisdiction.  The action was remanded on August 11, 2005, by Chief United States District Court Judge Louise Flanagan and on August 24, 2006, the Fourth Circuit Court of Appeals concluded that it lacked appellate jurisdiction to review the remand.  Pending review of the remand issue, the proceedings in Superior Court were stayed, including consideration of a motion to dismiss filed by Blackwater.

On November 27, 2006, the Superior Court lifted the stay imposed during appellate review of the remand order.  Since the stay was lifted, the Superior Court has not ruled on Blackwater's motion to dismiss, but has allowed a motion by Nordan to proceed in discovery with the deposition of a witness in Alaska.

On December 14, 2006, Blackwater initiated an arbitration in Currituck County, North Carolina against Nordan. *See* Petition [DE-1] at Ex. F.  Six days later, Blackwater filed a

petition in this court seeking an order pursuant to Section 4 of the Federal Arbitration Act

["FAA"], 9 U.S.C. § 4, directing Nordan to proceed with arbitration in accordance with the

terms of the Service Agreements. Nordan subsequently filed a motion to dismiss the petition,

arguing that the court must abstain from consideration of the matter on the basis of *Colorado*

*River Water Conservation District v. United States*, 420 U.S. 800 (1976). In the alternative,

Nordan maintains that Blackwater's petition must be dismissed pursuant to Federal Rules of

Civil Procedure 12(b)(3), 12(b)(6) and 13(a) because Blackwater's claim is a compulsory

counterclaim to the pending state action.

On April 13, 2007, Superior Court Judge Donald Stephens granted a motion for a

temporary restraining order enjoining the parties from further participating in the arbitration

proceedings.

Blackwater's petition and Nordan's motion to dismiss are now ripe for disposition.

## II. MOTION TO DISMISS

### A. Standard

An action will be dismissed for failing to state a claim if it appears that the plaintiff

can prove no set of facts that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41,

45-46 (1957). When reviewing a motion to dismiss, the court assumes the facts alleged in the

complaint are true, *see McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996),

and construes the allegations in the light most favorable to the pleader. *See Scheur v. Rhodes*,

416 U.S. 232, 236 (1974).

In his motion to dismiss, Nordan maintains that Blackwater's petition must be

dismissed on the following grounds: (1) the court must abstain from consideration of the

petition on the basis of *Colorado River* abstention; and (2) Blackwater's petition must be

dismissed pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6) and 13(a) because

the claim is a compulsory counterclaim to the pending state action.

## B. *Colorado River* Abstention

The court is not persuaded by Nordan's argument that the court should abstain from exercising jurisdiction in this action under the doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* abstention is appropriate "in exceptional circumstances where a federal case duplicates contemporaneous state proceedings and wise judicial administration . . . clearly favors abstention." *Vulcan Chem. Tech., Inc., v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002) (internal quotations omitted). Prior to considering whether *Colorado River* abstention is appropriate, there is a threshold requirement of parallel proceedings in state and federal court. Once the requirement is met, the following six factors are used in analyzing whether abstention is appropriate:

> (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Id.* at 341. Here, the court concludes that even if the federal and state court actions can be considered parallel, application of these six factors does not counsel in favor of abstention.

The first factor is not relevant because this dispute does not involve property. The second factor does not weigh in favor of abstention because both the federal court and the state court are located in North Carolina. Nordan argues that the federal forum is inconvenient because this court is likely to require arbitration in New York. This argument is unpersuasive, as the Service Agreements provide that arbitration must take place in North Carolina.

With respect to the third factor, Nordan maintains that an order compelling arbitration would result in piecemeal litigation. The court finds that this factor does not counsel in favor of abstention. Even if an order compelling arbitration would create piecemeal litigation, "[t]hat misfortune . . . is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)(emphasis in original). Here, it is not the interplay of the parallel federal and state actions that could result in piecemeal litigation, but the arbitration provision in the Service Agreements. As such, any risk of piecemeal litigation does not weigh in favor of abstention. *See Eastern Associated Coal Corp. v. Skaggs*, 272 F. Supp. 2d 595, 600 (S.D.W.Va. 2003).

The fourth factor requires consideration of the order in which the courts obtained jurisdiction and the progress achieved in each action. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.

Nordan instituted the state court action on January 5, 2005, almost two years before the instant petition was filed in federal court on December 20, 2006. As described above, the state court action was stayed until November 27, 2006. Since removal of the stay, the state court has allowed limited discovery and entered a temporary restraining order preventing further steps toward arbitration. The state court has not ruled on Blackwater's motion to dismiss, which includes as grounds for dismissal the fact that Nordan's claim for recision is subject to arbitration. Analyzing these circumstances from a practical perspective, the state court action was initiated first, but has not progressed on the issue of arbitration. Consequently, it does not appear that the fourth factor weights in favor of abstention.

Moreover, abstention by this court could delay arbitration of this matter and subvert "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22 (holding that abstention by a district court "frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements").

The fifth factor concerns whether state or federal law provides the rule of decision on the merits. The instant action is governed by both North Carolina law and the FAA. Although "the presence of state-law issues may weigh in favor of . . . surrender [of jurisdiction]," the Supreme Court has provided that "the presence of federal-law issues must always be a major consideration weighing *against* surrender." *Id.* at 26 (emphasis added). Consequently, because the FAA is applicable, this factor does not weigh in favor of abstention.

Finally, the court must consider the adequacy of the state proceeding in protecting the parties' rights. Here, there is room for doubt concerning the state court's ability to compel arbitration, as the state court has allowed limited discovery before ruling on the arbitration issue. This factor, therefore, weighs against abstention.

Having carefully considered the parties' motions and the applicable law, the court concludes that *Colorado River* is not appropriate in this action and Nordan's motion to dismiss on this basis is DENIED.

## C. Compulsory Counterclaim

Nordan also seeks dismissal of Blackwater's petition pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6) and 13(a) on the grounds that the FAA petition constitutes a compulsory counterclaim in the pending state action. Nordan has not cited, nor can the court find, any legal precedent in support of this argument. Consequently, Nordan's motion to

dismiss the petition on this basis is DENIED.

### III. PETITION

The court now turns to Blackwater's petition seeking relief pursuant to § 4 of the FAA,

which provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to
> arbitrate under a written agreement for arbitration may petition any United
> States district court which, save for such agreement, would have jurisdiction
> under Title 28, in a civil action or in admiralty of the subject matter of a suit
> arising out of the controversy between the parties, for an order directing that
> such arbitration proceed in the manner provided for in such agreement. . . . .
> The court shall hear the parties, and upon being satisfied that the making of
> the agreement for arbitration or the failure to comply therewith is not in issue,
> the court shall make an order directing the parties to proceed to arbitration in
> accordance with the terms of the agreement.

9 U.S.C. § 4. The FAA itself does not create an independent basis for federal jurisdiction. *See*

*Moses H. Cone Mem. Hosp.*, 460 U.S. at 26 n. 32. Accordingly, in examining an FAA petition,

the court must first consider the issue of subject matter jurisdiction.

The court concludes that it would have jurisdiction over this action pursuant to 28

U.S.C. § 1332, as this is a civil matter between citizens of different states wherein the amount

in controversy exceeds $75,000. Specifically, Blackwater Security Consuling, LLC and

Blackwater Lodge Training Center, Inc. are both organized under the laws of the State of

Delaware, with principal places of business in North Carolina. Nordan is a resident of North

Carolina and the Decedents were, at the time of death, residents of California, Hawaii,

Tennessee and Ohio. There is complete diversity of citizenship, as Nordan's personal

citizenship as administrator is disregarded. *See* 28 U.S.C. § 1332(c)(2) ("the legal

representative of the estate of a decedent shall be deemed to be a citizen only of the same

State as the decedent"). The parties do not dispute that the amount in controversy exceeds

$75,000, therefore the court has subject matter jurisdiction over this action.

Having concluded that jurisdiction is proper, the court must next determine whether

to stay the instant proceedings and direct the parties to proceed to arbitration in accordance
with the Service Agreements.[1]  A petitioner can compel arbitration by establishing:

> (1) the existence of a dispute between the parties, (2) a written agreement that
> includes an arbitration provision which purports to cover the dispute, (3) the
> relationship of the transaction, which is evidenced by the agreement, to
> interstate or foreign commerce, and (4) the failure, neglect or refusal of the
> defendant to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Whiteside v. Teltech
Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

The court finds that Blackwater has satisfied each of these four factors.  The first factor
has been met, as there is undoubtedly a dispute between the parties.  Second, as described
above, there are written Service Agreements purporting to cover the dispute that include an
arbitration provision providing that "any dispute regarding interpretation or enforcement of
any of the parties' rights or obligations under this Agreement shall be resolved by binding
arbitration."  A written arbitration provision "shall be valid, irrevocable, and enforceable,
save upon such grounds as exist at law or in equity for the revocation of any contract."  9
U.S.C. § 2.

The court is not persuaded by Nordan's argument that this action is not subject to
arbitration because "this federal proceeding concerns an attempt to enforce a contractual
provision of a contract which itself is the subject of a fraud in the inducement cause of action
in state court that could render the entire contract rescinded."  Mem. in Support of Mot. to
Dimiss [DE-7] at p. 6.  The fact that Nordan has filed a claim fraud in the inducement claim in
state court is no bar to arbitration proceedings.

In both state and federal court, "an arbitration provision is severable from the

---

[1]The court declines to hold a jury trial or hearing before issuing the instant order, as
there are no disputed issues of material fact concerning the merits of arbitrability.

issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). Here, Nordan does not allege fraudulent inducement of the arbitration clause itself, but alleges fraud in the inducement of the Service Agreements generally. In this circumstance, the issue of fraud in inducement must be considered by the arbitrator, not a state or federal court. See *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813-14 (4th Cir. 1989)(examining Supreme Court precedent and noting that a claim of "fraud in the inducement of the contract generally" is an issue "for the arbitrator").

Finally, the court also finds that there is no dispute as to the third and fourth factors required to compel arbitration. As to the third factor, the transaction between Blackwater and Decedents related to interstate or foreign commerce. As the fourth factor, it is plain that Nordan has refused to arbitrate the dispute by seeking recision of the Service Agreements in state court.

The court therefore finds that Blackwater has established the requisite factors in favor of compelling arbitration in this case and concludes that "a valid agreement to arbitrate exists between the parties and covers the matter in dispute." *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999). In this circumstance, "the FAA commands the federal courts to stay any ongoing judicial proceedings . . . and to compel arbitration." *Id.*; see 9 U.S.C. § 3 (providing that a court must stay any suit "referable to arbitration under an agreement in writing for such arbitration."). "This stay-of-litigation provision is mandatory. A district court therefore has no choice but to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500. Accordingly, the court finds that this matter must be stayed and the parties directed to proceed with

arbitration in accordance with the Service Agreements.[2]

### IV. CONCLUSION

Based upon the foregoing , it is therefore ORDERED that:     .

1. Blackwater's petition for order directing arbitration [DE-1] is ALLOWED and the parties are ORDERED to proceed with arbitration in the manner provided for in the Service Agreements.

2. This action is STAYED pending completion of the required arbitration.

3. Nordan's motion to dismiss [DE-6] is DENIED.


SO ORDERED.
This the 20 day of April, 2007.

James C. Fox
Senior United States District Judge

---

[2]The court declines to allow Blackwater's request to enter a stay of the underlying state court action as this court "believes that the parties and the [state court] will likely conform their conduct to the expectations of law." *United Service Protection Corp. v. Lowe*, 354 F. Supp. 2d 651, 659 (S.D.W.Va. 2005) (internal citations omitted).

# EXHIBIT "B"

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
05 CVS 173

RICHARD P. NORDAN, as Ancillary    )
Administrator for the Separate Estates of    )
STEPHEN S. HELVENSTON, MIKE R.    )
TEAGUE, JERKO GERALD ZOVKO, and    )
WESLEY J. K. BATALONA,    )
    )
          Plaintiff,    )
    )
    )
    v.    )
    )
BLACKWATER SECURITY    )
CONSULTING, LLC, a Delaware Limited    )
Liability Company; BLACKWATER    )
LODGE AND TRAINING CENTER, INC.,    )
a Delaware Corporation; and JUSTIN L.    )
McQUOWN, an individual,    )
    )
          Defendants.    )

## MEMORANDUM OF LAW IN OPPOSITION TO ISSUANCE OF TRO

      Defendants Blackwater Security Consulting, LLC and Blackwater Lodge and Training

Center, Inc. (together "Blackwater") hereby oppose Plaintiff's Motion for Temporary

Restraining Order ("TRO Motion") seeking, without any lawful right or factual basis to do so, to

enjoin a federal arbitration which has been underway since December 14, 2006. The Court

should deny the TRO Motion. In opposition to the TRO Motion, Blackwater submits the

following Memorandum.

      1.     The exclusive forum the decedents and Blackwater contractually agreed upon is

an arbitration in Currituck or Camden County, North Carolina. The exclusivity of that forum is

protected by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, because the controversy concerns

events outside the United States involving contracts entered in support of a national war effort.

North Carolina law, moreover, uniformly upholds and respects the binding nature of such arbitration clauses. *See, e.g., Raper v. Oliver House, LLC*, 637 S.E.2d 551, 554 (N.C. Ct. App. 2006) (upholding enforceability of binding arbitration clause in contract signed by resident of assisted living facility who claimed unconscionability). Plaintiff Richard P. Nordan ("Nordan") now seeks to enjoin proceedings in the agreed forum, while levying frivolous accusations of forum shopping against Blackwater. The Court should deny the TRO Motion, because, among other reasons, (1) it lacks jurisdiction to enjoin the arbitration due to the automatic stay provisions of N.C. Gen. Stat. § 1-294 resulting from Blackwater's appeal of the Court's final order denying immunity from suit and arbitration rights; (2) Nordan has been participating in the arbitration for almost four months, subject to objection, and the "emergency" for the TRO is artificial; and (3) there is no irreparable harm to Nordan or to the estates that will result from a preliminary conference with the arbitrators scheduled for April 16, 2007. As explained below, even if the Court were to reach the merits of the TRO Motion, the relief sought here is an "extraordinary measure" imposing a heavy burden on Nordan to show likelihood of success on the merits and likelihood of irreparable loss unless the TRO and injunction are issued. *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983). Nordan's TRO Motion would fail both requirements because there is no irreparable harm to Nordan or to the estates that will result from a preliminary conference with the arbitrators scheduled for April 16, 2007. Accordingly, the Court should deny the TRO Motion.

## BACKGROUND

2.      Nordan's groundless claim of irreparable harm includes a misleading suggestion that Blackwater expedited the arbitration (TRO Motion at 2) ("The actions of Blackwater in expediting ..."). The American Arbitration Association ("AAA"), a well-known and nationally

respected provider of third-party dispute resolution services, has not placed the arbitration on any expedited track, and no one has ever asked the AAA to place it on an expedited track. It is undisputed that the arbitration commenced almost four months ago on December 14, 2006, when Blackwater demanded that the AAA initiate an arbitration in Currituck County, North Carolina, against Nordan. The next day Blackwater was in this Court announcing the just-filed arbitration and applying for a stay of proceedings in this Court under Section Three of the Federal Arbitration Act, 9 U.S.C. § 3 ("Stay of proceedings where issue therein is referable to arbitration"). The arbitration having thus been proceeding at a measured pace for four months, and no "emergency" justifying Nordan's belated TRO motion to this Court exists, there is absolutely no excuse now for Nordan's belated claim that he is being irreparably prejudiced, especially after he stood by with full notice and allowed arbitrator selection to conclude with final appointment of the arbitration tribunal.

3.      In his filing yesterday, Nordan omitted any mention of his participation in the arbitration to date. *LAST WEEK,* Nordan sent a letter to the AAA, a copy of which is attached here as Exhibit 1, entering an appearance for Kirby & Holt and Callahan & Blaine as his official representatives in the arbitration. Even before he took that step, Nordan had been participating extensively in the arbitration through his counsel. Nordan filed objections with the AAA to every one of Blackwater's selections from the AAA list of proposed arbitrators, and succeeded in striking one arbitrator selected by Blackwater (former FBI Director William S. Sessions) on the grounds that his law firm represents Blackwater on unrelated matters. Having participated to the hilt in the AAA proceedings under objection, and thereby protracting the arbitration for now almost four months, Nordan has no basis to assert that it is impossible for him to participate in

- 3 -

the arbitration without waiving his objecting to the arbitrators' jurisdiction. Copies of Nordan's or Callahan & Blaine's letters to the AAA are attached here as Composite Exhibit 2.

4.    Nordan claims that the trigger for his belated TRO Motion is an impending conference call with the arbitrators. Nordan asserts that the arbitrators must be prevented from having an initial preliminary hearing conference call to discuss possible dates for a final hearing. There is absolutely no reason why Nordan, having interposed objections to every proposed arbitrator, could not tell the arbitrators what his lawyers' schedules might be. Indeed, Nordan will have every opportunity to have the arbitrators also consider his "jurisdictional objections" under the rules governing the arbitration. *See* Email from Michael Namias to Richard Nordan, Dated April 10, 2007, attached here as Exhibit 3. Although arbitrators determine their own jurisdiction, a preserved objection to jurisdiction of the dispute can be raised in opposition to confirmation of an arbitration award. *Ruffin Woody & Assocs., Inc. v. Person County*, 374 S.E.2d 165, 167-68 (N.C. Ct. App. 1988).

5.    Nor was December 14, 2006, the first Nordan heard about arbitration. In its Amended Motion to Dismiss filed in October 2005, Blackwater expressly signalled this arbitration. At a November 27, 2006, hearing before this Court, Blackwater invoked several times the arbitrability of the dispute at issue in this case. At no point, until now, has Nordan ever suggested to this Court that the arbitration irreparably harms him or needs to be enjoined, futher underscoring there is no emergency justifying a TRO.

6.    A further point about the arbitration that Nordan fails to bring to the Court's attention is that while it is true that the arbitration concerns "the very subject matter of this case" (TRO Motion at 2), that is not all the arbitrator concerns. Nothing that could ever happen in this case would preclude a separate set of distinct claims Blackwater has asserted against Nordan

personally in the arbitration. In this case, Nordan is suing Blackwater for damages in his capacity as ancillary administrator on behalf of the decedents' estates, alleging wrongful death and fraudulent inducement. In the arbitration, Blackwater is claiming damages against Nordan *personally* for breach of contract, including his breach of the decedents' contractually binding covenant not to sue and their duties of confidentiality and non-publicity, both of which are binding on Nordan as estate administrator. Unlike a release of liability, "a covenant not to sue is not a present abandonment or relinquishment of the right or claim, but merely an agreement not to enforce an existing cause of action. It does not have the effect of distinguishing a cause of action; a covenant not to sue . . . may not be pleaded [in bar of the action] by the covenantee, who must seek his remedy in an action for breach of the covenant. *Simpson v. Plyler*, 128 S.E.2d 843, 846 (N.C. 1963) (internal citations omitted, brackets in original). Thus, Nordan misleads this Court when he suggests that all of Blackwater's claims can be resolved in the pending case.

7.     Similarly, Blackwater's claims for breach of the duties of confidentiality and non-publicity, are neither defenses nor compulsory counterclaims to Nordan's wrongful death and fraud claims on behalf of the decedents' estates. They arose long after the events that allegedly gave rise to Nordan's state court claims. Despite this Court's admonition to counsel in chambers on December 15, 2006, against engaging in prejudicial publicity about this case, Nordan's California counsel, Daniel J. Callahan, and his associate, Marc P. Miles, promptly launched a massive publicity campaign built around Mr. Callahan's letter to the Speaker of the U.S. House of Representatives, Nancy Pelosi, asking her to hold congressional hearings on Nordan's allegations in this case against "very Republican companies." A copy of Mr. Callahan's letter to the Speaker is attached hereto as Exhibit 4. The direct result was that the House Government Affairs and Reform Committee held hearings in February 2007, with massive publicity before

and after, including press statements by Messrs. Callahan and Miles, seeking to try this case to journalists and politicians.

8.   Even before that open attempt to prejudice and politicize this case in the face of Your Honor's admonition to counsel, Blackwater had already filed on November 27, 2006, its Motion to Revoke *Pro Hac Vice* Admission of Daniel J. Callahan and Marc P. Miles, which is pending and is not affected by appeal. Messrs. Callahan and Miles called for and organized congressional hearings and related publicity on this specific case while a motion to disqualify them for pre-trial publicity has been pending. Blackwater reluctantly filed the disqualification motion, among other reasons, because the public relations firm of Levick Strategic Communications had informed Blackwater that it was hired by Marc P. Miles to work this case. Levick's website (http://www.levick.com/expertise/in/litigation.php) states that "Judges and juries read newspapers and they're influenced by what they read" followed by an email hyperlink labeled "Help me tip the scales of justice." It became clear that the Callahan & Blaine law firm has been generating prejudicial publicity about this case continuously since 2005 as a deliberate substitute for having any likelihood of success on the merits in any courtroom.

9.   In the arbitration, Blackwater claims $10 million damages from Nordan personally for breach not only of the liability provisions of the decedents' contracts with Blackwater, but also for breach of the confidentiality and non-publicity provisions of those contracts. These covenants are binding on Nordan, and he is personally liable for their breach. *Burch v. J.D. Bush & Co.,* 106 S.E. 489, 490 (1921) (the general rule is that personal representatives of a party are unquestionably bound by his contracts); *Whisnant v. Price,* 96 S.E. 27, 28 (N.C. 1918) ("Nothing is better settled than that an executor or administrator is not answerable in his official character for any cause of action that was not created by the act of the

Decedent himself. In actions against the personal representative on his own contract and engagements, though made for the benefit of the estate, the judgment is *de bonis propriis,* and he is, by every principle of legal analogy, to answer it with his personal property.") (internal quotations omitted). While Nordan's breach of the covenants not to sue could amount to attorneys fees, Nordan's breach of the confidentiality and non-publicity obligations has resulted in damages to Blackwater as a North Carolina employer, which will be assessed at the final hearing in the arbitration. Therefore there is no conceivable reason why this Court could be called upon to enjoin claims against Nordan that are not the claims at issue in this case, albeit that there are indeed other claims at issue in the arbitration that concern the very same subject matter at issue here, such as the releases and waivers of liability that accompany the covenant not to sue.

10.      Further, Blackwater reserves the right to claim damages in arbitration against Callahan & Blaine, and individual attorneys at that firm, as well as Levick, for tortious interference with decedents' contracts with Blackwater, including the confidentiality and non-publicity provisions. Blackwater may make those claims at such time as it deems appropriate. Blackwater will not disclose in advance its grounds for arbitral jurisdiction and liability, but makes this point here only to underscore that what Nordan and Callahan & Blaine are seeking is to avoid personal liabilities that in the end may have nothing to do with the estates. This TRO motion is about protecting the lawyers, not about the estates or the families of the decedents.

11.      Knowing full well that the arbitration is about Nordan's personal liability, Nordan falsely states to the Court that the arbitration is against the families. (TRO Motion at 3: "Blackwater filed a $10 million arbitration claim for breach of contract against the families of the decedents."). Who the arbitration is against can be easily verified by checking the first box

in the upper left-hand corner of the Demand for Arbitration, where it states "Name of Respondent" and says underneath "Richard P. Nordan." Nordan is trying to enjoin a claim against himself.

12.    The background facts of the arbitration therefore show that there is no basis for any claim of irreparable harm in order to enjoin a four-month-old federal arbitration in the agreed forum, some of the claims in which are not claims at issue here. They also show that there is no "emergency", as Nordan has been aware of the arbitration since it began.

## STATEMENT OF LAW

13.    The Court lacks jurisdiction to consider this TRO Motion because automatic stay provisions of N.C. Gen. Stat. § 1-294 are in effect. A denial of claims of immunity from suit and arbitration rights constitutes an immediately appealable final order. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (denial of motion to dismiss based on a colorable claim of immunity from suit must be treated as a final order); *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 554 (N.C. Ct. App. 2006) (denial of arbitration rights is immediately appealable because the right might be lost if appeal is delayed) (citing *Burke v. Wilkins*, 131 N.C. App. 687, 507 S.E.2d 913, 914 (1998)); *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (a trial court's denial of a motion to enforce arbitration rights is immediately appealable); *Corum v. University of North Carolina*, 97 N.C. App. 527, 531, 389 S.E.2d 586, 598 (N.C. Ct. App. 1990) (following *Mitchell v. Forsyth* and holding that an order denying summary judgment on a claim of absolute immunity is immediately appealable because the denial of summary judgment affected a substantial right and is subject to review), *affirmed in part and reversed in part,* 330 N.C. 761, 413 S.E.2d 276 (N.C. 1992), *certiorari denied,* 506 U.S. 985 (1992); *Sims v. Ritter Constr., Inc.*, 62 N.C. App. 52, 53, 302 S.E.2d 293 (1983). This is so as a matter of law and

- 8 -

without any showing by the aggrieved party that it is irreparably harmed, since the irreparable harm arises as a matter of law from the fact that the party denied immunity from suit and arbitration rights could never be made whole except by not having to litigate at all, ever. *See Corum*, 97 N.C. App. at 531, 389 S.E.2d at 598.

14.     Blackwater's pending appeal, following entry of the Order Upon Reconsideration, is not an interlocutory appeal.  It is rather an appeal from a final order because it appeals from a denial of Blackwater's federally-protected right to be free of any judicial proceedings beyond filing a motion to dismiss. Blackwater filed its Amended Motion to Dismiss in October 2005, in which Blackwater invoked its rights to immunity from suit under the Defense Base Act, 42 U.S.C. § 1641(c), and to arbitration under the Federal Arbitration Act, 9 U.S.C. § 1.  The Court, upon reconsideration and with briefing an argument on the parties' positions, has overruled Blackwater's objections and required Blackwater to permit its former employee, John Potter, to cooperate in discovery with the U.S. Government.  By doing so, the Court has finally adjudicated immunity from suit and arbitration rights that Blackwater could never recover or made whole for, even if the Court were to enter an order dismissing this case without any testimony or discovery beyond what has been ordered thus far.

15.     Believing it is bound by the Order Upon Reconsideration to release Mr. Potter to talk to the Government, Blackwater has informed Mr. Potter through his counsel in Alaska that Blackwater, while reserving its rights, will not seek to enforce Mr. Potter's contractual confidentiality obligations to Blackwater insofar as they would prevent him from talking to the Government about this case. Mr. Potter's counsel made clear that he would not provide the Government's lawyers even copies of Mr. Potter's contracts, which are itself confidential, unless Blackwater permitted it, and this produced a demand from Maj. Pat Gary to Blackwater's

counsel in Alaska to secure the contracts in the middle of the first meeting with Mr. Potter. Blackwater consented only because it believes is bound by the Order Upon Reconsideration. If Blackwater's understanding is mistaken and Blackwater is currently not subject to any obligation to the Court to cooperate in discovery, then Blackwater requests that clarification from the Court, whereupon Blackwater would be free to immediately instruct Mr. Potter to interrupt his dealings with the Government in relation to this case.

16.    Thus, either Blackwater will instruct Mr. Potter that he may not talk to the Government about this case except if he is bound by a valid subpoena upheld by the highest court in Alaska, or Blackwater will have the right to pursue appellate review of the final and irreversible denial of its right never to have to allow Mr. Potter to engage in the exercise in which he is now engaged to assist discovery in this action. Clarification in this sense is essential to ensure that Blackwater is at zero risk of contempt, on the one hand, or prejudice from failure to appeal from the overruling of its rights, on the other hand.

17.    For the foregoing reasons, and assuming, as Blackwater has believed, that Blackwater is bound by the Order Upon Reconsideration to cooperate in discovery despite its immunity from suit and arbitration rights, then the parties are dealing with an appeal from a final order denying immunity from suit and arbitration rights, and the automatic stay provisions of N.C. Gen. Stat. § 1-294 are in effect. The Potter deposition and arbitration rights are at the heart of the appeal. This Court therefore lacks power to order a deposition or to enjoin an arbitration. To the extent Nordan believes he should, Nordan should take his motion where jurisdiction currently lies over that subject matter, which is in the Court of Appeals of North Carolina.

18.    Rule 65(a), where applicable, permits a TRO for 10 days, and Nordan thereafter seeks a preliminary injunction, but an order preliminarily enjoining an arbitration is immediately

appealable in North Carolina. *Szymczyk v. Signs Now Corp.*, 606 S.E.2d 728 (N.C. Ct. App. 2005). Therefore, even if for the sake of argument Blackwater's appeal were lacking in appellate jurisdiction now, Blackwater would have an immediate right of appeal if the preliminary injunction Nordan seeks were granted. There is hence nothing to be accomplished in preliminarily enjoining the arbitration pending the conclusion of a discovery process because the preliminary injunction would confirm Blackwater's right to appeal the question whether discovery proceedings may go forward despite immunity from suit and arbitration rights, and no discovery could take place while this appeal is pending.

19.    Even if none of the above were applicable, the county forum selection clause in the arbitration agreements is protected by the Federal Arbitration Act, which preempts any North Carolina public policy against county forum selection clauses. *Szymczyk*, 606 S.E.2d at 731 (reversing a preliminary injunction of an arbitration because the Federal Arbitration Act preempts state law on forum selection clauses); *Boynton v. ESC Medical System, Inc.*, 566 S.E.2d 730, 732-33 (N.C. Ct. App. 2002) (Federal Arbitration Act preempts state law). The Superior Court in Wake County does not have power to touch the arbitration because the parties contractually agreed to venue in Currituck or Camden County, and that forum selection is federally protected by operation of North Carolina appellate authority.

20.    Even if the Court were to reach the merits of the TRO Motion, the relief sought here is an "extraordinary measure" imposing a heavy burden on Nordan to show likelihood of success on the merits and likelihood of irreparable loss unless the injunction is issued. *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983). Nordan's TRO Motion would fail both requirements.

21.    As explained above, the arbitration arises in large part from Nordan's efforts to try this case to journalists and politicians. Nordan and his counsel have desperately tried to prejudice and politicize the case because it otherwise has no chance of success in a courtroom. There is no such thing in North Carolina state law as a duty of reasonable care in the selection of armor, weapons, and intelligence to protect the supply lines of the U.S. Army in a foreign war. The entire case, moreover, hinges on the assertion that the decedents relied on representations about armor, weapons, intelligence, and other operational arrangements that one searches in vain in an effort to find mentioned in their service agreements with Blackwater. The latter, on the other hand, contain iron-clad disclaimers of reliance on any representations outside the documents as well as express acknowledgments by each contractor of the extreme danger undertaken by accepting the agreements. The source the alleged fraudulent misrepresentations consists of intermediary contractual arrangements up the chain of contracts above Blackwater, and there is exactly nothing in the repetitious Complaint alleging how, when, and where any of the decedents ever knew at the time he signed the service agreements the precise mission he was going to be on at any particular time, much less that any of the decedents saw any contracts between intermediary companies.

22.    Before the case could ever go through discovery, there is a long list of federal constitutional and statutory doctrines barring the door to a case of this nature. One line of defenses applies at the outset, before any discovery can be had. These are the defenses currently before the Court of Appeals of North Carolina, which we respectfully submit the Court finally overruled in its Order Upon Reconsideration without hearing argument on the Amended Motion to Dismiss.

23.    Beyond all of that, the Federal Arbitration Act cannot be bypassed through Nordan's frivolous contention that, "In response to Blackwater's petition to compel arbitration in federal court, Plaintiff filed a Motion to Dismiss, in that the claims that Blackwater is seeking to assert by its arbitration are <u>compulsory counterclaims</u> to this pending state court action" (TRO Motion at 6). Nordan does not offer any authority for that proposition. Nordan also cites no authority for his argument that "*Colorado River* abstention doctrine" (*id.*) applies to a petition in federal court to compel arbitration of a previously filed action. Those are the arguments on which Nordan maintains it is likely to succeed in opposing Blackwater' arbitration motion in federal court. As Blackwater has shown in the District Court, Nordan's arguments would mean that federal arbitration could be defeated by the mere expedient of rushing to state court first and taking cover behind state pleading practice on compulsory counterclaims. That notion would surely earn a failing grade in a law school examination because it is counter to Supreme Court and Fourth Circuit black letter law on *Colorado River* abstention, as well as contrary to the Federal Arbitration Action's preemption of state procedural law as shown above.

24.    Nordan also misapprehends the definition and nature of compulsory counterclaims. Two of Blackwater's key claims in arbitration, breach of the covenant not to sue and breach of the covenant of non-publicity and confidentiality, were not mature at the time of the filing of Nordan's action on behalf of the estates. Respectively, they arose as a result of the complaint and after the complaint. They are not compulsory counterclaims under North Carolina Rule of Civil Procedure 13(a). Where a claim is not mature at the time of the filing of the action, failure to bring it as a counterclaim does not serve as a bar to subsequent litigation on that claim. Moreover, even where the claim matures after the pleadings have been filed but during the pendency of the action, the pleader is not required to supplement the pleadings with a

- 13 -

compulsory counterclaim. *Country Club of Johnston County, Inc. v. United States Fidelity & Guaranty Company*, 150 N.C. App.. 231, 242, 563 S.E. 2d 269, 276 (N.C. Ct. App. 2002).

    25.    Blackwater's claims against Nordan for breach of the covenants in the service agreements clearly are arbitrable, regardless of whether Nordan has filed wrongful death and misrepresentation claim in this court, which is one of the breaches that Blackwater seeks to address through arbitration. A pending state court action involving issues related to the subject of the arbitration agreement does not negate arbitral jurisdiction. *See Eastern Associated Coal Corp. v. Massey*, 373 F.3d 530, 533 n.1 (4th Cir. 2004) (finding no error in district court's grant of motion to compel arbitration despite pending state court proceedings); *cf. Sloan Financial Group, Inc.v. Beckett*, 159 N.C. App. 470, 583 S.E.2d. 325 (N.C. Ct. App. 2003) (allowing both arbitrable claims and non-arbitrable claims to proceed in parallel actions). Thus, even if the Court of Appeals ultimately agrees with this court that *Nordan's* claims on behalf of the estates can be heard in the courts of North Carolina, such a ruling would have no effect on Balckwater's right to have its breach of contract claims determined by the arbitration procedures the decedents agreed would govern their contractual rights and obligations. Both can proceed in parallel. *Cf. Raper v. Oliver House, LLC*, 637 S.E.2d 551, 554 (N.C. Ct. App. 2006) (upholding enforceability of binding arbitration clause in contract signed by resident of assisted living facility who claimed unconscionability).

    26.    Rule 65(c) provides: "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the judge deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Blackwater demands posting of such security to compensate it for damages in being denied its right to arbitrate it claims. Such security should

be sufficient not only to cover the additional attorneys fees Blackwater will incur, but also the additional arbitration costs and fees that it will incur in having to resume arbitration proceedings at a subsequent time as well as the continuing damage Blackwater is incurring as a result of Nordan's and his counsels' improper attempts to seek political and media advantage in this litigation by breaching the covenant of non-publicity. Blackwater is prepared to present evidence of such damages should the court schedule a hearing for such purpose.

## CONCLUSION

For the foregoing reasons, the Court should deny the Plaintiff's Motion for Temporary Restraining Order.

This the 12th day of April, 2007.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:

Kirk G. Warner
N.C. State Bar No. 16238
Mark A. Ash
N.C. State Bar No. 13967
Post Office Box 2611
Raleigh, North Carolina 27602
Telephone:     (919) 821-1220
Facsimile:     (919) 821-6800
*Counsel for Defendants–Appellants/Petitioners*
*Blackwater Security Consulting, LLC, &*
*Blackwater Lodge and Training Center, Inc.*

By:

McDermott, Will & Emery LLP
McDermott, Will & Emery LLP
600 13th Street N.W.
Washington, DC 20005-3096
Telephone:     (202) 756-8000
Facsimile:     (202) 756-8087

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing

**MEMORANDUM OF LAW IN OPPOSITION TO TRO** in the above-entitled action upon all

other parties to this case by FACSIMILE AND ELECTRONIC MAIL, addressed as follows:

> David F. Kirby
> William B. Bystrynski
> Kirby & Holt, LLP
> 3201 Glenwood Avenue, Ste. 100
> Raleigh, NC 27612
> Attorneys for Plaintiff
>
> Daniel J. Callahan
> Brian J. McCormack
> Marc P. Miles
> Callahan & Blaine, APLC
> 3 Hutton Centre Drive, Ste. 900
> Santa Ana, CA 92707
> Attorneys for Plaintiff
>
> Patricia L. Holland
> Cranfill, Sumner & Hartzog, LLP
> P.O. Box 27808
> Raleigh, NC 27611-7808
> Attorneys for Defendant Justin McQuown
>
> William C. Crenshaw
> Powell & Goldstein, LLP
> 901 New York Avenue, NW
> Third Floor
> Washington, DC 20001-4413
> Attorney for Defendant Justin McQuown

This the 12th day of April, 2007.

Mark A. Ash

- 16 -

# EXHIBIT "C"



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

**INTERNATIONAL
CENTRE FOR DISPUTE
RESOLUTION**

1633 Broadway, 10th Floor, New York, NY 10019
Telephone: 212-484-4181 Facsimile: 212-246-7274
Internet: http://www.adr.org/ICDR

---

In the Matter of Arbitration Between:

**VIA UPS ONLY**

Re: 50 181 T 00524 06
   Blackwater Security Consulting, LLC & Blackwater
   Lodge and Training Center, Inc.
   vs
   Richard P. Nordan

---

### NOTICE OF APPOINTMENT

---

To: Hon. William H. Webster

> It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided to the AAA, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. The ICDR will call the disclosure to the attention of the parties.

You will not be able to serve until a duly executed Notice of Appointment is received and on file with the ICDR. Please review the attached *Disclosure Guidelines* and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment:

|     |     | Yes | No  |
| --- | --- | --- | --- |
| 1. | Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration? | ☐ | ☑ |
| 2. | Have you represented any person against any party to the arbitration? | ☐ | ☑ |
| 3. | Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work? | ☑ | ☐ *see disclosure* |
| 4. | Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which | ☐ | ☑ |

*A Division of the American Arbitration Association*

they work?

5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in the proceeding?

6. Have you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony?

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case, which you are assigned?

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?        ☑    ☐ *see disclosure*

Yes    No

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

11. Have you ever sued or been sued by either party or its representative?

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Should the answer to any question be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) on an attached page.

**Please indicate one of the following:**

☐    I have conducted a check for conflicts and have **nothing to disclose**.

☑    I have conducted a check for conflicts and have **made disclosures on an attached sheet**.

# THE ARBITRATOR'S OATH

~~State of~~ District of
~~County of~~ Columbia } ss:

I attest that I have reviewed the panel biography which the American Arbitration Association provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

I understand that my obligation to check for conflicts and make disclosures is ongoing for the length of my service as an arbitrator in this matter, and that failing to make appropriate and timely disclosures may result in my removal as arbitrator from the case and/or my removal from the AAA's Roster of Neutrals.

The Arbitrator being duly sworn, hereby accepts this appointment, and will faithfully and fairly hear and decide the matters in controversy between the parties in accordance with their arbitration agreement, the Code of Ethics, and the rules of the American Arbitration Association will make an Award according to the best of the arbitrator's understanding.

Dated: 2/27/07                    Signed: _William A Cerbone_

Sworn before me this 27th day of February , 2007

Clara E. Harrington
Notary Public for the District of Columbia
My Commission Expires September 30, 2008

## DISCLOSURE GUIDELINES
### for
### Neutrals serving on American Arbitration Association Cases

### General

1. The American Arbitration Association Rules and the *Code of Ethics* require you to make full disclosure.

2. Your duty to make disclosures is ongoing throughout all stages of the arbitration. The Case Manager may prompt you to conduct a subsequent conflict check during key points of the case, but you should conduct such checks and make disclosures on your own initiative whenever new information about the case participants comes to light.

3. Any doubt as to whether or not disclosure needs to be made should be resolved in favor of disclosure. You should not judge the significance of the potential conflict but rather you should make the disclosure and let the parties determine its significance.

4. As a guiding principle, *if a relationship or interest crosses your mind – disclose it.*

5. You must disclose:

- Any circumstance likely to give rise to *justifiable doubt* as to your impartiality or independence *(per AAA rules)*.
- Any interest or relationship that might create an *appearance* of partiality *(per the Code of Ethics)*.
- Any applicable statutes pertaining to arbitrator disclosures.

### Financial

As to any party, attorney, witness and other arbitrator involved in *this* case, you must disclose any:

- Financial interest that is *direct* (existing or past) or *indirect* (existing or past).

### Relational

You must disclose any *relationships* you have with any party, attorney, witness and other arbitrator involved in *this* case – this includes relationships with their:

- Families or household members
- Current employers
- Partners
- Professional and/or business associates

### How to Disclose

When disclosing, *specificity* is extremely important.  Provide enough detail in your disclosure so that the parties are fully informed of the potential conflict.  Tell us:

- Who
- What
- When
- Where
- How

Failing to provide a sufficient level of detail will delay the confirmation of your appointment, as well as the progress of the case overall, since the Case Manager will need to contact you for additional information.

All disclosures must be provided in writing.  In the rare situation where a disclosure comes to light at a hearing, you are obligated to excuse yourself from the proceeding and immediately contact the ICDR who will facilitate the process for communicating the disclosure to the parties and obtaining their response.  Pursuant to the AAA Rules, the ICDR shall determine whether or not a challenge raised by a party to an arbitrator's continued service shall be granted or denied.

### William H. Webster Disclosure Statement

### Blackwater Security Consulting, LLC & Blackwater Lodge and Training Center, Inc./Richard P. Nordan
### ICDR Case # 50 181 T 00524 06

Milbank, Tweed has a large financial practice. In this connection, there are frequently several parties to a transaction represented by counsel who may be lenders, creditors, issuers, insurers, etc. I have not participated in such cases. Moreover, as a consulting partner I have no interest in the fee revenues of such matters.

In this category are the following firms:

> Kirkland & Ellis
> Wiley, Rein & Fielding LLP
> McDermott Will & Emery LLC

I acted as one of three moot court consultants to critique an oral argument by a partner of McDermott Will & Emery (not listed on the conflicts list) in preparation for his appearance before a U.S. Appellate Court. Similarly, I acted as one of three moot court consultants to critique an oral argument by a partner of Kirkland & Ellis, Kenneth Starr.

I am acquainted professionally with some of the partners in the three firms noted above, none shown on the conflicts list provided me except Kenneth Starr and Fred Fielding.

During 2006 and prior thereto, I served on an arbitration panel in a dispute in which Wiley, Rein & Fielding represented one of the parties.

I am acquainted professionally with Fred Fielding, formerly a partner and presently counsel to the President, and also with Richard Wiley.

I know personnel in the U.S. Departments of Defense, Air Force, Army, Labor, Navy and Justice, but have no professional conflicts with any of these departments nor would I be prejudiced by such acquaintances.

I am acquainted professionally with lawyers in the Department of Justice and the Department of Defense.

I am acquainted professionally with some lawyers in the firm of Kirkland & Ellis. I know Kenneth Starr from his years in the Department of Justice, on the bench, at Kirkland & Ellis and now Dean at Pepperdine Law School. I once acted with two other panel members in a moot court proceeding to help prepare him for an oral argument in a Federal Appellate Court case.

**WILLIAM H. WEBSTER**
International Square Building
1850 K Street, N.W.
Suite 1100
Washington, D.C. 20006
202-835-7550
202-835-7596 fax
Email: wwebster@milbank.com

March 9, 2007

Ms. Bridgitte Omane
International Case Manager
International Centre for Dispute Resolution
1633 Broadway
10th Floor
New York, New York 10019

      Re:   Blackwater Security Consulting, LLC & Blackwater
             Lodge and Training Center, Inc./Richard P. Nordan
             ICDR Case # 50 181 T 00524 06

Dear Ms. Omane:

        Consistent with my continuing obligation to keep you informed of any matters which might arguably affect my impartiality in this matter, I wish to supplement my previous disclosure with the following:

        I am a member of the board of SinglePoint Inc., a small subsidiary of a British holding company, which was formed about a year ago. In September, 2006 Joseph Schmitz was elected a member of the board. Mr. Schmitz is a former government employee and now Chief Operating Officer and General Counsel for the Prince Group. Our computer conflicts search revealed nothing about either Mr. Schmitz or the Prince Group which apparently owns Blackwater. I met Mr. Schmitz at the September board meeting and again at a board meeting March 8. Our relationship is professional and is limited to SinglePoint. We have not and will not discuss the case in arbitration. I do not believe this represents a conflict but have an obligation to disclose it.

        Should you or any party request it, I am prepared to resign from the board of SinglePoint or from this arbitration.

        Sincerely,

        William H. Webster

WHW:ceh

DC1:#8132114v1

 **International Centre for Dispute Resolution**

Thomas Ventrone
Vice President

March 30, 2007

1633 Broadway, 10th Floor, New York, NY 10019
Telephone: 212-484-4181 Facsimile: 212-246-7274
Internet: http://www.adr.org/ICDR

**VIA ELECTRONIC MAIL ONLY**

Michael P. Socarras, Esq.
McDermott Will & Emery
600 Thirteenth Street, N.W.
Washington, DC  20005-3096

Richard P. Nordan (rnordan@wnslaw.com)
3605 Glenwood Avenue
Suite 240
Raleigh, NC 27612

Re: 50 181 T 00524 06
    Blackwater Security Consulting, LLC & Blackwater
    Lodge and Training Center, Inc.
    vs
    Richard P. Nordan

Dear Parties:

After careful review of the comments submitted by the parties and pursuant to our authority under the International Arbitration and Mediation Rules, the ICDR has determined that the challenge is hereby denied and Arbitrator Webster's appointment is therefore reaffirmed.

At this stage the arbitration may proceed.

Sincerely,

*B.Omane*

Brigitte Omane
International Case Manager
212 484 4036
OmaneB@adr.org

Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

*A Division of the American Arbitration Association*