# EXHIBIT "D"

Dockets.Justia.com

# CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION

DANIEL J. CALLAHAN*
STEPHEN E. BLAINE
JIM P. MAHACEK@
MICHAEL J. SACHS†
EDWARD SUSOLIK
BRIAN B. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS
JILL A. THOMAS@
JENNIE J. BLONSKA

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

3 HUTTON CENTRE DRIVE

NINTH FLOOR

SANTA ANA CALIFORNIA 92707

(714) 241-4444

FAX (714) 241-4445

WWW.CALLAHAN-LAW.COM

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
#ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURALI M. KOBAL
OFFICE ADMINISTRATOR

April 9, 2007

OUR FILE NUMBER:

2525-02

**VIA EMAIL AND MAIL**

Mr. Michael Namias
ICDR Supervisor
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

Ms. Brigitte Omane
International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

RE:     **Blackwater Security Consulting, et al. v. Nordan, etc.**
         **Arbitration No.: 05 181 T 00524 06**

Dear Mr. Namias and Ms. Omane:

Late last week I was appalled to learn that you recently ceased sending communications and notices to my office concerning Richard P. Nordan. You have been well aware that Mr. Nordan is represented by counsel as you have previously sent correspondence and notices to our office for Mr. Nordan since December of last year. In addition, I have sent correspondence to you on at least four different occasions (January 8, February 2, March 5, and March 14, 2007) indicating that our office represents Mr. Nordan with respect to the instant arbitration proceeding commenced by Blackwater. Nonetheless, the ICDR ceased sending the communications for Mr. Nordan to our office in late March, 2007. Moreover, this was done without any notification to our office whatsoever.

Even more disturbing is the fact that you apparently decided to circumvent Mr. Nordan's counsel in this case at the direction of Blackwater's counsel. In a correspondence to you from Michael P. Socarras, dated March 12, 2007, he suggests that you no longer send notices and

# CALLAHAN & BLAINE

Mr. Michael Namias
Ms. Brigitte Omane
International Centre for Dispute Resolution
April 9, 2007
Page 2

correspondence to Mr. Nordan's counsel, but instead send them directly to Mr. Nordan. Following this suggestion by Blackwater's counsel, the ICDR did not send another single notice or correspondence to us or Mr. Nordan's other counsel, Kirby & Holt.

The ICDR's conduct in this case has been unethical and biased. First, the ICDR has continued to move these arbitration proceedings along, at Blackwater's urgence, despite there being no indication whatsoever that the ICDR has any jurisdiction over this case. On December 20, 2006, Blackwater filed a Petition for Order Directing Arbitration Pursuant to the Federal Arbitration Act in the U.S. District Court for the Eastern District of North Carolina, Northern Division. On January 8, 2007, I wrote to you on behalf of Mr. Nordan, indicating that the ICDR did not have any jurisdiction over the claim filed by Blackwater, and that we would be filing a Motion to Dismiss Blackwater's Petition in federal court. On January 10, 2007, we filed said Motion to Dismiss. To date, the District Court has not granted Blackwater's petition or otherwise ordered the instant action to proceed through arbitration at the ICDR. Nonetheless, even in the absence of a ruling on its own Petition to Compel Arbitration, Blackwater is attempting to improperly litigate this arbitration claim on an ex parte basis, and is using the ICDR to do so despite its lack of jurisdiction.

Second, the ICDR has acted improperly with respect to the selection of the arbitrators in this case. One of the arbitrators selected to serve on the panel, at the urgence of Blackwater, is Mr. William H. Webster, who: (1) works for Millbank Tweed, who has current business relationships with three of Blackwater's law firms (Kirkland & Ellis, Wylie, Ryan & Fielding, and McDermott, Will & Emery); (2) knows Blackwater's counsel Kenneth Starr personally; (3) knows Blackwater's counsel Fred Fielding personally; and (4) sits on the Board of SinglePoint, Inc. with Blackwater's general counsel Joseph Schmidt. Despite these glaring conflicts, the ICDR appointed Mr. Webster to serve on the arbitration panel, along with Mr. William Sessions, who works for Holland & Knight, a firm that currently represents Blackwater.

Third, again at the urgence of Blackwater, the ICDR ceased providing notices and correspondence to Mr. Nordan's counsel, despite doing so for nearly three months and despite numerous correspondence from my office indicating that we represent Mr. Nordan in this arbitration proceeding. The mere fact that Mr. Nordan objects to this arbitration proceeding because the ICDR lacks jurisdiction over it is not a ground for refusal to communicate with his counsel, and you have clearly done so pursuant to the urgence of Blackwater. Not only has the conduct of the ICDR been unethical and biased, it may very well open the ICDR up to civil liability.

CALLAHAN & BLAINE

Mr. Michael Namias
Ms. Brigitte Omane
International Centre for Dispute Resolution
April 9, 2007
Page 3


     The agreements that Blackwater is claiming were breached do <u>not</u> contain provisions which would allow an arbitration to proceed on an ex parte basis. Thus, as a conditioned precedent to the instant arbitration proceeding moving forward, Blackwater must first obtain a court order compelling this arbitration. This concept should not be disputed, in that Blackwater filed a Petition to Compel Arbitration in federal court more than three months ago. However, in an effort to obtain a swift and ex parte arbitration award, Blackwater has pushed these proceedings along without obtaining the requested court order compelling the arbitration, and has elicited the ICDR in its efforts. It is highly irregular for an arbitration company, who is supposed to be neutral, to acquiesce to the demands of one party (the party paying the bill) and act in the absence of jurisdiction and prior to the Court ruling on a Petition to Compel the Arbitration.

     Richard P. Nordan hereby demands that the ICDR stay this entire proceeding until there is a decision from the U.S. District Court concerning Blackwater's Petition to Compel these proceedings. Not only is this the ethical and proper thing to do, it will also avoid a tremendous waste of the time of the ICDR and the arbitrators, to the extent that the District Court denies Blackwater's Petition to Compel this Arbitration.

     In addition, in that the ICDR acquiesced to Blackwater's demand that notices not be sent to Mr. Nordan's counsel, despite our office representing him for the past three months, the recent notice concerning the Preliminary Haring is ineffective. As such, we hereby demand that the Preliminary Hearing scheduled for April 16, 2007, be canceled and taken off calendar indefinitely, until such time that the U.S. District Court rules on whether this entire arbitration proceeding is even proper.

     I look forward to the ICDR acting in a neutral and unbiased manner by taking the Preliminary Hearing off calendar and staying this entire proceeding until the point in time in which the District Court rules and it is determined whether the ICDR has jurisdiction over this claim.

CALLAHAN & BLAINE

Mr. Michael Namias
Ms. Brigitte Omane
International Centre for Dispute Resolution
April 9, 2007
Page 4

Should you have any questions or comments, please do not hesitate to contact me at any time.

Very truly yours,

MARC P. MILES

MPM:jsr

cc:     Daniel J. Callahan, Esq.
        Brian J. McCormack
        Richard P. Nordan, Esq.
        David F. Kirby, Esq.
        Michael P. Socarras, Esq.

G:\2525\2525-02\Cor\Namias Omane 040907.wpd

# EXHIBIT "E"

**Marc Miles**

| | |
|---|---|
| **From:** | Michael Namias [NamiasM@adr.org] |
| **Sent:** | Tuesday, April 10, 2007 8:30 AM |
| **To:** | Marc Miles; Brigitte Omane |
| **Cc:** | David Kirby; Bill Bystrynski; Brian McCormack; MSocarras@mwe.com; Richard Nordan |
| **Subject:** | RE: Blackwater v. Nordan |
| **Attachments:** | ICDR SCAN5292_000.pdf; ICDR SCAN5295_000.pdf; ICDR SCAN5294_000.pdf |

Dear Counsel:

This will acknowledge receipt of attorney Marc P. Miles' correspondence dated April 9, 2007.

Having reviewed the file, I note that Mr. Miles was not copied on the following correspondence:

(1.) letter dated March 30, 2007 from Brigitte Omane regarding the reaffirmation of Hon. William H. Webster.

(2.) letter dated March 30, 2007 from Ms. Omane regarding the removal of Hon. William S. Sessions.

(3.) letter dated April 4, 2007 from Ms. Omane regarding the appointment of Jean E. Kalicki, Esq. as Arbitrator, with Notice of Appointment and Notice of Compensation Arrangements.

(4.) e-mail dated April 5, 2007 from Ms. Omane confirming a conference call on April 16, 2007 at 11:00 a.m ET.

(5.) letter dated April 6, 2007 from Ms. Omane, outlining the proposed agenda for the pre-hearing teleconference on April 16, 2007, with Notice of Preliminary Hearing.

All of the above items are attached hereto in one (1) PDF file. For record keeping purposes, the ICDR has previously determined to *copy* Richard Nordan on all correspondence and communications, as requested by Mr. Socarras. However, the ICDR did not determine to cease corresponding with Callahan & Blaine, APLC. To the extent that Ms. Omane neglected to transmit the attached communications to Callahan & Blaine, APLC, this was an error on our part. We apologize for any inconvenience.

On another note, is it my understanding that the ICDR should copy attorney David F. Kirby, Esq. on all future correspondence and communications? Mr. Kirby, please confirm.

Mr. Miles, the ICDR is without authority to unilaterally adjourn the pre-hearing teleconference or otherwise stay these proceedings. However, you are welcome to submit an application to the Arbitrators for their consideration and determination. Upon receipt, the ICDR will invite the written comments of Claimant. I have attached contact information for each of the Arbitrators, as well as Arbitrator Kalicki's resume.

Best regards,

**Michael F. Namias**
**ICDR - Supervisor**
**International Centre for Dispute Resolution**

**The International Division of the American Arbitration Association**
**1633 Broadway, 10th Floor**
**New York, NY 10019**
**U.S.A.**
**Phone: +01-212-484-4170**
**Facsimile: +01-212-246-7274**
**E-Mail: NamiasM@adr.org**
**Website: www.adr.org/ICDR**

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.

-----Original Message-----
**From:** Marc Miles [mailto:MarcM@callahan-law.com]
**Sent:** Monday, April 09, 2007 10:27 PM
**To:** Brigitte Omane; Michael Namias
**Cc:** David Kirby; Bill Bystrynski; Brian McCormack; MSocarras@mwe.com; Richard Nordan
**Subject:** Blackwater v. Nordan

Attached hereto please find a correspondence of today's date.

_____

Marc P. Miles
CALLAHAN & BLAINE
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
(714) 241-4444
www.callahan-law.com

# EXHIBIT "F"

FILED

NORTH CAROLINA

2007 APR 20 PM 1: 26

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

WAKE COUNTY

WAKE COUNTY, C.S.C.

05 CVS 173

BY

RICHARD P. NORDAN, as Ancillary )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO )
and WESLEY J.K. BATALONA, )
)
     Plaintiffs, )
)
    v. )
)
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware )
Limited Liability Company; )
BLACKWATER LODGE AND )
TRAINING CENTER, INC., a Delaware )
Corporation, JUSTIN L. MCQUOWN, )
an individual, )
)
    Defendants. )
_____ )

**TEMPORARY RESTRAINING
ORDER**

     This matter came on for hearing before the undersigned judge on Plaintiffs'

motion for a Temporary Restraining Order. After reading the affidavit and

submissions of counsel, and the arguments of counsel, the court concludes that

plaintiffs, and Richard P. Nordan individually, will suffer immediate and

irreparable harm if the parties participate in a Preliminary Hearing scheduled by

the International Centre for Dispute Resolution (Arbitration Case No.: 05 181 T

00524 006) scheduled on Monday, April 16.

THEREFORE, the court orders that the parties and their agents, officers, servants, employees and attorneys, along with Richard P. Nordan, individually, are hereby restrained from participating in any arbitration proceedings for a period of 10 days.

In the exercise of the Court's discretion, no security is required of the plaintiffs as the Court has determined that there is no likelihood that the Blackwater defendants will suffer material damage from the issuance of this restraining order.

All pending motions in the case will be heard on Tuesday, May 15, 2007, at 10 a.m., in a courtroom to be determined. The parties shall submit all documents, supporting materials and memoranda in support of their positions to the Court by 5 p.m. on May 10, 2007.

This temporary restraining order was entered in open court at 1 p.m. Friday, April 13, 2007.

This the _14_ day of April, 2007.  *Nunc Pro Tunc*

*Donald W. Stephens*

The Honorable Donald W. Stephens
Wake County Senior Resident Judge

*Plaintiffs' motion for Preliminary Injunction will also be heard on May 15th.*

Prdk11970.038

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was served on the parties listed below by mailing and/or hand-delivering a copy thereof to each of said parties, addressed, postage prepaid, as follows:

Patricia L. Holland
Cranfill, Sumner & Hartzog
Post Office Box 27808
Raleigh, North Carolina 27611

Mark A. Ash
Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan
Post Office 2611
Raleigh, North Carolina 27602

William B. Bystrynski
Kirby & Holt, LLP
Post Office Box 31665
Raleigh, North Carolina 27622

This, the _____ day of APRIL, 2007.

_____
Heather Cardy
Judicial Assistant
Wake County Superior Court Judges' Office

# EXHIBIT "G"

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

International Dispute Resolution PROCEDURES
(Including Mediation and Arbitration Rules)
Amended and Effective 1 May, 2006
Click here to view the summary of the rules change.

## TABLE OF CONTENTS

INTERNATIONAL DISPUTE RESOLUTION PROCEDURES

INTRODUCTION
International Mediation
International Arbitration

INTERNATIONAL MEDIATION RULES
M-1. Agreement of Parties
M-2. Initiation of Mediation
M-3. Requests for Mediation
M-4. Appointment of the Mediator
M-5. Qualifications of the Mediator
M-6. Vacancies
M-7. Representation
M-8. Date, Time and Place of Mediation
M-9. Identification of Matters in Dispute
M-10. Authority of the Mediator
M-11. Privacy
M-12. Confidentiality
M-13. No Stenographic Record
M-14. Termination of Mediation
M-15. Exclusion of Liability
M-16. Interpretation and Application of Rules
M-17. Expenses
M-18. Language


ADMINISTRATIVE FEES

INTERNATIONAL ARBITRATION RULES


R-1. Commencing the Arbitration
Notice of Arbitration and Statement of Claim
Statement of Defense and Counterclaim
Amendments to Claims

R-2. The Tribunal
Number of Arbitrators
Appointment of Arbitrators
Impartiality and Independence of Arbitrators
Challenge of Arbitrators
Replacement of an Arbitrator

R-3. General Conditions
Representation
Place of Arbitration
Language
Pleas as to Jurisdiction
Conduct of the Arbitration
Further Written Statements
Notices
Evidence
Hearings
Interim Measures of Protection
Experts
Default
Closure of Hearing
Waiver of Rules
Awards, Decisions and Rulings
Form and Effect of the Award
Applicable Laws and Remedies
Settlement or Other Reasons for Termination
Interpretation or Correction of the Award
Costs
Compensation of Arbitrators
Deposit of Costs
Confidentiality
Exclusion of Liability
Interpretation of Rules
Emergency Measures of Protection


ADMINISTRATIVE FEES
Fees
Refund Schedule
Suspension for Nonpayment
Hearing Room Rental

INTRODUCTION

The international business community uses arbitration to resolve commercial disputes arising in the
global marketplace. Supportive laws are in place. The New York Convention of 1958 has been widely
adopted, providing a favorable legislative climate that enables the enforcement of arbitration clauses.
International commercial arbitration awards are recognized by national courts in most parts of the world,
even more than foreign court judgments. A key component to the successful resolution of an
international commercial dispute is the role played by the administrative institution. The International

Centre for Dispute Resolution ® (ICDR) is the international division of the American Arbitration Association (AAA) charged with the exclusive administration of all of the AAA's international matters. The ICDR's experience, international expertise and multilingual staff forms an integral part of the dispute resolution process. The ICDR's international system is premised on its ability to move the matter forward, facilitate communications, ensure that qualified arbitrators and mediators are appointed, control costs, understand cultural sensitivities, resolve procedural impasses and properly interpret and apply its International Arbitration and Mediation Rules. Additionally, the ICDR has many cooperative agreements with arbitral institutions around the world for facilitating the administration of its international cases.

International Mediation

The parties might wish to submit their dispute to an international mediation prior to arbitration. In mediation, an impartial and independent mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. International Mediation is administered by the ICDR in accordance with its International Mediation Rules. There is no additional administrative fee where parties to a pending arbitration attempt to mediate their dispute under the ICDR's auspices.

If the parties want to adopt mediation as a part of their contractual dispute settlement procedure, they can insert the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation in accordance with the International Mediation Rules of the International Centre for Dispute Resolution before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

> *The parties hereby submit the following dispute to mediation administered by the International Centre for Dispute Resolution in accordance with its International Mediation Rules. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

The ICDR can schedule the mediation anywhere in the world and will propose a list of specialized international mediators.

International Arbitration

As the ICDR is a division of the AAA, parties can arbitrate future disputes under these rules by inserting either of the following clauses into their contracts:

> *"Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules."*

> or

*"Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules."*

The parties may wish to consider adding:

(a) "The number of arbitrators shall be (one or three)";

(b) "The place of arbitration shall be (city and/or country)"; or

(c) "The language(s) of the arbitration shall be _____."

Parties are encouraged, when writing their contracts or when a dispute arises, to request a conference, in person or by telephone, with the ICDR, to discuss an appropriate method for selection of arbitrators or any other matter that might facilitate efficient arbitration of the dispute. Under these rules, the parties are free to adopt any mutually agreeable procedure for appointing arbitrators, or may designate arbitrators upon whom they agree. Parties can reach agreements concerning appointing arbitrators either when writing their contracts or after a dispute has arisen. This flexible procedure permits parties to utilize whatever method they consider best suits their needs. For example, parties may choose to have a sole arbitrator or a tribunal of three or more. They may agree that arbitrators shall be appointed by the ICDR, or that each side shall designate one arbitrator and those two shall name a third, with the ICDR making appointments if the tribunal is not promptly formed by that procedure. Parties may mutually request the ICDR to submit to them a list of arbitrators from which each can delete names not acceptable to it, or the parties may instruct the ICDR to appoint arbitrators without the submission of lists, or may leave that matter to the sole discretion of the ICDR. Parties also may agree on a variety of other methods for establishing the tribunal. In any event, if parties are unable to agree on a procedure for appointing arbitrators or on the designation of arbitrators, the ICDR, after inviting consultation by the parties, will appoint the arbitrators. The rules thus provide for the fullest exercise of party autonomy, while assuring that the ICDR is available to act if the parties cannot reach mutual agreement. By providing for arbitration under these rules, parties can avoid the uncertainty of having to petition a local court to resolve procedural impasses. These rules, as administered by the IDCR, are intended to provide prompt, effective and economical arbitration services to the global business community.

Whenever a singular term is used in the rules, such as "party," "claimant" or "arbitrator," that term shall include the plural if there is more than one such entity.

Parties filing an international case with the International Centre for Dispute Resolution, or the AAA, may do so by directly contacting the ICDR in New York or the Dublin, Ireland office, or by contacting any one of the AAA's regional offices.

Further information about these rules can be secured by contacting the International Centre for Dispute Resolution at 888-855-9575 or by visiting the ICDR's Web site at www.icdr.org.

INTERNATIONAL MEDIATION RULES

M-1. Agreement of Parties

Whenever parties have agreed in writing to mediate disputes under these International Mediation Rules, or have provided for mediation or conciliation of existing or future international disputes under the auspices of the International Centre for Dispute Resolution, the international division of the American

Arbitration Association, or the American Arbitration Association without designating particular rules, they shall be deemed to have made these rules, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation by filing with the ICDR a submission to mediation or a written request for mediation pursuant to these rules, together with the appropriate fee (see below). Where there is no submission to mediation or contract providing for mediation, a party may request the ICDR to invite another party to join in a submission to mediation. Upon receipt of such a request, the ICDR will contact the other parties involved in the dispute and attempt to obtain a submission to mediation.

M-3. Requests for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the ICDR and one copy with every other party to the dispute.

M-4. Appointment of the Mediator

Upon receipt of a request for mediation, the ICDR will appoint a qualified mediator to serve. Normally, a single mediator will be appointed unless the parties agree otherwise or the ICDR determines otherwise. If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

M-5. Qualifications of the Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the ICDR shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the ICDR will appoint another mediator. The ICDR is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the ICDR will appoint another mediator, unless the parties agree otherwise.

M-7. Representation

Any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the ICDR.

M-8. Date, Time and Place of Mediation

The mediator shall fix the date and the time of each mediation session. The mediation shall be held at the appropriate regional office of the ICDR, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

M-9. Identification of Matters in Dispute

At least ten days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth their position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented.

The mediator may require any party to supplement such information.

M-10. Authority of the Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice. Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

M-11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

M-12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator.

All records, reports or other documents received by a mediator while serving in that capacity shall be confidential. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial or other proceeding:

(a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute;

(b) admissions made by another party in the course of the mediation proceedings;

(c) proposals made or views expressed by the mediator; or

(d) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

M-13. No Stenographic Record

There shall be no stenographic record of the mediation process.

M-14. Termination of Mediation

The mediation shall be terminated:

(a) by the execution of a settlement agreement by the parties;

(b) by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or

(c) by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

M-15. Exclusion of Liability

Neither the ICDR nor any mediator is a necessary party in judicial proceedings relating to the mediation.

Neither the ICDR nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these rules.

M-16. Interpretation and Application of Rules

The mediator shall interpret and apply these rules insofar as they relate to the mediator's duties and responsibilities. All other rules shall be interpreted and applied by the ICDR.

M-17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the ICDR, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

M-18 Language

If the parties have not agreed otherwise, the language(s) of the mediation shall be that of the documents containing the mediation agreement.

ADMINISTRATIVE FEES

The nonrefundable case set-up fee is $325 per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the ICDR shall estimate anticipated total expenses.

Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the ICDR shall render an accounting and return any unexpended balance to the parties.

INTERNATIONAL ARBITRATION RULES

Article 1

1. Where parties have agreed in writing to arbitrate disputes under these International Arbitration Rules or have provided for arbitration of an international dispute by the International Centre for Dispute Resolution or the American Arbitration Association without designating particular rules, the arbitration shall take place in accordance with these rules, as in effect at the date of commencement of the arbitration, subject to whatever modifications the parties may adopt in writing.

2. These rules govern the arbitration, except that, where any such rule is in conflict with any provision of the law applicable to the arbitration from which the parties cannot derogate, that provision shall prevail.

3. These rules specify the duties and responsibilities of the administrator, the International Centre for Dispute Resolution, a division of the American Arbitration Association. The administrator may provide services through its Centre, located in New York, or through the facilities of arbitral institutions with which it has agreements of cooperation.

R-1. Commencing the Arbitration

Notice of Arbitration and Statement of Claim

Article 2

1. The party initiating arbitration ("claimant") shall give written notice of arbitration to the administrator and at the same time to the party against whom a claim is being made ("respondent").

2. Arbitral proceedings shall be deemed to commence on the date on which the administrator receives the notice of arbitration.

3. The notice of arbitration shall contain a statement of claim including the following:

    (a) a demand that the dispute be referred to arbitration;

    (b) the names, addresses and telephone numbers of the parties;

    (c) a reference to the arbitration clause or agreement that is invoked;

    (d) a reference to any contract out of or in relation to which the dispute arises;

    (e) a description of the claim and an indication of the facts supporting it;

(f) the relief or remedy sought and the amount claimed; and

(g) may include proposals as to the means of designating and the number of arbitrators, the place of arbitration and the language(s) of the arbitration.

4. Upon receipt of the notice of arbitration, the administrator shall communicate with all parties with respect to the arbitration and shall acknowledge the commencement of the arbitration.

Statement of Defense and Counterclaim

Article 3

1. Within 30 days after the commencement of the arbitration, a respondent shall submit a written statement of defense, responding to the issues raised in the notice of arbitration, to the claimant and any other parties, and to the administrator.

2. At the time a respondent submits its statement of defense, a respondent may make counterclaims or assert setoffs as to any claim covered by the agreement to arbitrate, as to which the claimant shall within 30 days submit a written statement of defense to the respondent and any other parties and to the administrator.

3. A respondent shall respond to the administrator, the claimant and other parties within 30 days after the commencement of the arbitration as to any proposals the claimant may have made as to the number of arbitrators, the place of the arbitration or the language(s) of the arbitration, except to the extent that the parties have previously agreed as to these matters.

4. The arbitral tribunal, or the administrator if the arbitral tribunal has not yet been formed, may extend any of the time limits established in this article if it considers such an extension justified.

Amendments to Claims

Article 4

During the arbitral proceedings, any party may amend or supplement its claim, counterclaim or defense, unless the tribunal considers it inappropriate to allow such amendment or supplement because of the party's delay in making it, prejudice to the other parties or any other circumstances. A party may not amend or supplement a claim or counterclaim if the amendment or supplement would fall outside the scope of the agreement to arbitrate.

R-2. The Tribunal

Number of Arbitrators

Article 5

If the parties have not agreed on the number of arbitrators, one arbitrator shall be appointed unless the administrator determines in its discretion that three arbitrators are appropriate because of the large size, complexity or other circumstances of the case.

Appointment of Arbitrators

Article 6

1. The parties may mutually agree upon any procedure for appointing arbitrators and shall inform the administrator as to such procedure.

2. The parties may mutually designate arbitrators, with or without the assistance of the administrator. When such designations are made, the parties shall notify the administrator so that notice of the appointment can be communicated to the arbitrators, together with a copy of these rules.

3. If within 45 days after the commencement of the arbitration, all of the parties have not mutually agreed on a procedure for appointing the arbitrator(s) or have not mutually agreed on the designation of the arbitrator(s), the administrator shall, at the written request of any party, appoint the arbitrator (s) and designate the presiding arbitrator. If all of the parties have mutually agreed upon a procedure for appointing the arbitrator(s), but all appointments have not been made within the time limits provided in that procedure, the administrator shall, at the written request of any party, perform all functions provided for in that procedure that remain to be performed.

4. In making such appointments, the administrator, after inviting consultation with the parties, shall endeavor to select suitable arbitrators. At the request of any party or on its own initiative, the administrator may appoint nationals of a country other than that of any of the parties.

5. Unless the parties have agreed otherwise no later than 45 days after the commencement of the arbitration, if the notice of arbitration names two or more claimants or two or more respondents, the administrator shall appoint all the arbitrators.

Impartiality and Independence of Arbitrators

Article 7

1. Arbitrators acting under these rules shall be impartial and independent. Prior to accepting appointment, a prospective arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts as to the arbitrator's impartiality or independence. If, at any stage during the arbitration, new circumstances arise that may give rise to such doubts, an arbitrator shall promptly disclose such circumstances to the parties and to the administrator. Upon receipt of such information from an arbitrator or a party, the administrator shall communicate it to the other parties and to the tribunal.

2. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any arbitrator, or with any candidate for appointment as party-appointed arbitrator except to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability or independence in relation to the parties, or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party designated arbitrators are to participate in that selection. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any candidate for presiding arbitrator.

Challenge of Arbitrators

Article 8

1. A party may challenge any arbitrator whenever circumstances exist that give rise to justifiable doubts

as to the arbitrator's impartiality or independence. A party wishing to challenge an arbitrator shall send notice of the challenge to the administrator within 15 days after being notified of the appointment of the arbitrator or within 15 days after the circumstances giving rise to the challenge become known to that party.

2. The challenge shall state in writing the reasons for the challenge.

3. Upon receipt of such a challenge, the administrator shall notify the other parties of the challenge. When an arbitrator has been challenged by one party, the other party or parties may agree to the acceptance of the challenge and, if there is agreement, the arbitrator shall withdraw. The challenged arbitrator may also withdraw from office in the absence of such agreement. In neither case does withdrawal imply acceptance of the validity of the grounds for the challenge.

Article 9

If the other party or parties do not agree to the challenge or the challenged arbitrator does not withdraw, the administrator in its sole discretion shall make the decision on the challenge.

Replacement of an Arbitrator

Article 10

If an arbitrator withdraws after a challenge, or the administrator sustains the challenge, or the administrator determines that there are sufficient reasons to accept the resignation of an arbitrator, or an arbitrator dies, a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

Article 11

1. If an arbitrator on a three-person tribunal fails to participate in the arbitration for reasons other than those identified in Article 10, the two other arbitrators shall have the power in their sole discretion to continue the arbitration and to make any decision, ruling or award, notwithstanding the failure of the third arbitrator to participate. In determining whether to continue the arbitration or to render any decision, ruling or award without the participation of an arbitrator, the two other arbitrators shall take into account the stage of the arbitration, the reason, if any, expressed by the third arbitrator for such nonparticipation, and such other matters as they consider appropriate in the circumstances of the case. In the event that the two other arbitrators determine not to continue the arbitration without the participation of the third arbitrator, the administrator on proof satisfactory to it shall declare the office vacant, and a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

2. If a substitute arbitrator is appointed under either Article 10 or Article 11, the tribunal shall determine at its sole discretion whether all or part of any prior hearings shall be repeated.

R-3. General Conditions

Representation

Article 12

Any party may be represented in the arbitration. The names, addresses and telephone numbers of representatives shall be communicated in writing to the other parties and to the administrator. Once the tribunal has been established, the parties or their representatives may communicate in writing directly with the tribunal.

Place of Arbitration

Article 13

1. If the parties disagree as to the place of arbitration, the administrator may initially determine the place of arbitration, subject to the power of the tribunal to determine finally the place of arbitration within 60 days after its constitution. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

2. The tribunal may hold conferences or hear witnesses or inspect property or documents at any place it deems appropriate. The parties shall be given sufficient written notice to enable them to be present at any such proceedings.

Language

Article 14

If the parties have not agreed otherwise, the language(s) of the arbitration shall be that of the documents containing the arbitration agreement, subject to the power of the tribunal to determine otherwise based upon the contentions of the parties and the circumstances of the arbitration. The tribunal may order that any documents delivered in another language shall be accompanied by a translation into the language(s) of the arbitration.

Pleas as to Jurisdiction

Article 15

1. The tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

2. The tribunal shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the tribunal that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

3. A party must object to the jurisdiction of the tribunal or to the arbitrability of a claim or counterclaim no later than the filing of the statement of defense, as provided in Article 3, to the claim or counterclaim that gives rise to the objection. The tribunal may rule on such objections as a preliminary matter or as part of the final award.

Conduct of the Arbitration

Article 16

1. Subject to these rules, the tribunal may conduct the arbitration in whatever manner it considers

appropriate, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

2. The tribunal, exercising its discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute. It may conduct a preparatory conference with the parties for the purpose of organizing, scheduling and agreeing to procedures to expedite the subsequent proceedings.

3. The tribunal may in its discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

4. Documents or information supplied to the tribunal by one party shall at the same time be communicated by that party to the other party or parties.

Further Written Statements

Article 17

1. The tribunal may decide whether the parties shall present any written statements in addition to statements of claims and counterclaims and statements of defense, and it shall fix the periods of time for submitting any such statements.

2. The periods of time fixed by the tribunal for the communication of such written statements should not exceed 45 days. However, the tribunal may extend such time limits if it considers such an extension justified.

Notices

Article 18

1. Unless otherwise agreed by the parties or ordered by the tribunal, all notices, statements and written communications may be served on a party by air mail, air courier, facsimile transmission, telex, telegram or other written forms of electronic communication addressed to the party or its representative at its last known address or by personal service.

2. For the purpose of calculating a period of time under these rules, such period shall begin to run on the day following the day when a notice, statement or written communication is received. If the last day of such period is an official holiday at the place received, the period is extended until the first business day which follows. Official holidays occurring during the running of the period of time are included in calculating the period.

Evidence

Article 19

1. Each party shall have the burden of proving the facts relied on to support its claim or defense.

2. The tribunal may order a party to deliver to the tribunal and to the other parties a summary of the documents and other evidence which that party intends to present in support of its claim, counterclaim or defense.

3. At any time during the proceedings, the tribunal may order parties to produce other documents, exhibits or other evidence it deems necessary or appropriate.

Hearings

Article 20

1. The tribunal shall give the parties at least 30 days advance notice of the date, time and place of the initial oral hearing. The tribunal shall give reasonable notice of subsequent hearings.

2. At least 15 days before the hearings, each party shall give the tribunal and the other parties the names and addresses of any witnesses it intends to present, the subject of their testimony and the languages in which such witnesses will give their testimony.

3. At the request of the tribunal or pursuant to mutual agreement of the parties, the administrator shall make arrangements for the interpretation of oral testimony or for a record of the hearing.

4. Hearings are private unless the parties agree otherwise or the law provides to the contrary. The tribunal may require any witness or witnesses to retire during the testimony of other witnesses. The tribunal may determine the manner in which witnesses are examined.

5. Evidence of witnesses may also be presented in the form of written statements signed by them.

6. The tribunal shall determine the admissibility, relevance, materiality and weight of the evidence offered by any party. The tribunal shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

Interim Measures of Protection

Article 21

1. At the request of any party, the tribunal may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conservation of property.

2. Such interim measures may take the form of an interim award, and the tribunal may require security for the costs of such measures.

3. A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

4. The tribunal may in its discretion apportion costs associated with applications for interim relief in any interim award or in the final award.

Experts

Article 22

1. The tribunal may appoint one or more independent experts to report to it, in writing, on specific issues designated by the tribunal and communicated to the parties.

2. The parties shall provide such an expert with any relevant information or produce for inspection any relevant documents or goods that the expert may require. Any dispute between a party and the expert as to the relevance of the requested information or goods shall be referred to the tribunal for decision.

3. Upon receipt of an expert's report, the tribunal shall send a copy of the report to all parties and shall give the parties an opportunity to express, in writing, their opinion on the report. A party may examine any document on which the expert has relied in such a report.

4. At the request of any party, the tribunal shall give the parties an opportunity to question the expert at a hearing. At this hearing, parties may present expert witnesses to testify on the points at issue.

Default

Article 23

1. If a party fails to file a statement of defense within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

2. If a party, duly notified under these rules, fails to appear at a hearing without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

3. If a party, duly invited to produce evidence or take any other steps in the proceedings, fails to do so within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may make the award on the evidence before it.

Closure of Hearing

Article 24

1. After asking the parties if they have any further testimony or evidentiary submissions and upon receiving negative replies or if satisfied that the record is complete, the tribunal may declare the hearings closed.

2. The tribunal in its discretion, on its own motion or upon application of a party, may reopen the hearings at any time before the award is made.

Waiver of Rules

Article 25

A party who knows that any provision of the rules or requirement under the rules has not been complied with, but proceeds with the arbitration without promptly stating an objection in writing thereto, shall be deemed to have waived the right to object.

Awards, Decisions and Rulings

Article 26

1. When there is more than one arbitrator, any award, decision or ruling of the arbitral tribunal shall be made by a majority of the arbitrators. If any arbitrator fails to sign the award, it shall be accompanied by a statement of the reason for the absence of such signature.

2. When the parties or the tribunal so authorize, the presiding arbitrator may make decisions or rulings on questions of procedure, subject to revision by the tribunal.

Form and Effect of the Award

Article 27

1. Awards shall be made in writing, promptly by the tribunal, and shall be final and binding on the parties. The parties undertake to carry out any such award without delay.

2. The tribunal shall state the reasons upon which the award is based, unless the parties have agreed that no reasons need be given.

3. The award shall contain the date and the place where the award was made, which shall be the place designated pursuant to Article 13.

4. An award may be made public only with the consent of all parties or as required by law.

5. Copies of the award shall be communicated to the parties by the administrator.

6. If the arbitration law of the country where the award is made requires the award to be filed or registered, the tribunal shall comply with such requirement.

7. In addition to making a final award, the tribunal may make interim, interlocutory or partial orders and awards.

8. Unless otherwise agreed by the parties, the administrator may publish or otherwise make publicly available selected awards, decisions and rulings that have been edited to conceal the names of the parties and other identifying details or that have been made publicly available in the course of enforcement or otherwise.

Applicable Laws and Remedies

Article 28

1. The tribunal shall apply the substantive law(s) or rules of law designated by the parties as applicable to the dispute. Failing such a designation by the parties, the tribunal shall apply such law(s) or rules of law as it determines to be appropriate.

2. In arbitrations involving the application of contracts, the tribunal shall decide in accordance with the terms of the contract and shall take into account usages of the trade applicable to the contract.

3. The tribunal shall not decide as amiable compositeur or ex aequo et bono unless the parties have expressly authorized it to do so.

4. A monetary award shall be in the currency or currencies of the contract unless the tribunal considers

another currency more appropriate, and the tribunal may award such pre-award and post-award interest, simple or compound, as it considers appropriate, taking into consideration the contract and applicable law.

5. Unless the parties agree otherwise, the parties expressly waive and forego any right to punitive, exemplary or similar damages unless a statute requires that compensatory damages be increased in a specified manner. This provision shall not apply to any award of arbitration costs to a party to compensate for dilatory or bad faith conduct in the arbitration.

Settlement or Other Reasons for Termination

Article 29

1. If the parties settle the dispute before an award is made, the tribunal shall terminate the arbitration and, if requested by all parties, may record the settlement in the form of an award on agreed terms. The tribunal is not obliged to give reasons for such an award.

2. If the continuation of the proceedings becomes unnecessary or impossible for any other reason, the tribunal shall inform the parties of its intention to terminate the proceedings. The tribunal shall thereafter issue an order terminating the arbitration, unless a party raises justifiable grounds for objection.

Interpretation or Correction of the Award

Article 30

1. Within 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award.

2. If the tribunal considers such a request justified, after considering the contentions of the parties, it shall comply with such a request within 30 days after the request.

Costs

Article 31

The tribunal shall fix the costs of arbitration in its award. The tribunal may apportion such costs among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case.

Such costs may include:

(a) the fees and expenses of the arbitrators;

(b) the costs of assistance required by the tribunal, including its experts;

(c) the fees and expenses of the administrator;

(d) the reasonable costs for legal representation of a successful party; and

(e) any such costs incurred in connection with an application for interim or emergency relief pursuant to Article 21.

Compensation of Arbitrators

Article 32

Arbitrators shall be compensated based upon their amount of service, taking into account their stated rate of compensation and the size and complexity of the case. The administrator shall arrange an appropriate daily or hourly rate, based on such considerations, with the parties and with each of the arbitrators as soon as practicable after the commencement of the arbitration. If the parties fail to agree on the terms of compensation, the administrator shall establish an appropriate rate and communicate it in writing to the parties.

Deposit of Costs

Article 33

1. When a party files claims, the administrator may request the filing party to deposit appropriate amounts as an advance for the costs referred to in Article 31, paragraphs (a), (b) and (c).

2. During the course of the arbitral proceedings, the tribunal may request supplementary deposits from the parties.

3. If the deposits requested are not paid in full within 30 days after the receipt of the request, the administrator shall so inform the parties, in order that one or the other of them may make the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings.

4. After the award has been made, the administrator shall render an accounting to the parties of the deposits received and return any unexpended balance to the parties.

Confidentiality

Article 34

Confidential information disclosed during the proceedings by the parties or by witnesses shall not be divulged by an arbitrator or by the administrator. Except as provided in Article 27, unless otherwise agreed by the parties, or required by applicable law, the members of the tribunal and the administrator shall keep confidential all matters relating to the arbitration or the award.

Exclusion of Liability

Article 35

The members of the tribunal and the administrator shall not be liable to any party for any act or omission in connection with any arbitration conducted under these rules, except that they may be liable for the consequences of conscious and deliberate wrongdoing.

Interpretation of Rules

Article 36

The tribunal shall interpret and apply these rules insofar as they relate to its powers and duties. The administrator shall interpret and apply all other rules.

Emergency Measures of Protection

Article 37

1. Unless the parties agree otherwise, the provisions of this Article 37 shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after May 1, 2006.
2. A party in need of emergency relief prior to the constitution of the tribunal shall notify the administrator and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by e-mail, facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.
3. Within one business day of receipt of notice as provided in paragraph 2, the administrator shall appoint a single emergency arbitrator from a special panel of emergency arbitrators designated to rule on emergency applications. Prior to accepting appointment, a prospective emergency arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts to the arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the administrator to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.
4. The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceedings by telephone conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Article 15, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Article 37.
5. The emergency arbitrator shall have the power to order or award any interim or conservancy measure the emergency arbitrator deems necessary, including injunctive relief and measures for the protection or conservation of property. Any such measure may take the form of an interim award or of an order. The emergency arbitrator shall give reasons in either case. The emergency arbitrator may modify or vacate the interim award or order for good cause shown.
6. The emergency arbitrator shall have no further power to act after the tribunal is constituted. Once the tribunal has been constituted, the tribunal may reconsider, modify or vacate the interim award or order of emergency relief issued by the emergency arbitrator. The emergency arbitrator may not serve as a member of the tribunal unless the parties agree otherwise.
7. Any interim award or order of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.
8. A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Article 37 or with the agreement to arbitrate or a waiver of the right to arbitrate. If the administrator is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the administrator shall proceed as in Paragraph 2 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.
9. The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the tribunal to determine finally the apportionment of such costs.

ADMINISTRATIVE FEES

The administrative fees of the ICDR are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

Fees

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred.

However, if the administrator is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 * | | |
| Nonmonetary Claims** | $3,250 | $1,250 |

Fee Schedule for Claims in Excess of $10 Million .

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Refund Schedule

The ICDR offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

' 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

' 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.

' 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing. No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the ICDR will be used to calculate refunds of filing fees for both claims and counterclaims.

Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the administrator may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the ICDR may suspend the proceedings.

Hearing Room Rental

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the ICDR for availability and rates.

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

AAA175

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

# EXHIBIT "H"

# CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION

DANIEL J. CALLAHAN*
STEPHEN E. BLAINE
JIM P. MAHACEK@
MICHAEL J. SACHS†
EDWARD SUSOLIK
BRIAN J. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS
JILL A. THOMAS@
JENNIE J. BLONSKA

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

3 HUTTON CENTRE DRIVE

NINTH FLOOR

SANTA ANA CALIFORNIA 92707

(714) 241-4444

FAX (714) 241-4445

WWW.CALLAHAN-LAW.COM

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
#ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURALI M. KOBAL
OFFICE ADMINISTRATOR

April 23, 2007

OUR FILE NUMBER:

2525-02

**VIA EMAIL & U.S. MAIL**

Mr. Michael Namias
ICDR Supervisor
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

      RE:    **Blackwater Security Consulting, _et al._ v. Nordan, _etc._**
               **Arbitration No.: 05 181 T 00524 06**

Dear Mr. Namias:

      As you are aware, Richard P. Nordan, as the Ancillary Administrator for the separate Estates of Wesley J.K. Batalona, Stephen S. Helvenston, Mike R. Teague and Jerry Zovko, has objected to the jurisdiction of this arbitration, in that, up until recently, the federal court had not granted Blackwater's Petition to Compel Arbitration.

      Please be advised that last Friday, April 20, 2007, the U.S. District Court for the Eastern District of North Carolina, Northern Division, issued an order directing the parties "to proceed with arbitration in the manner provided for in the Service Agreements." [See enclosed Order]. However, the International Centre for Dispute Resolution ("ICDR") is not the proper division of the American Arbitration Association ("AAA") for the instant arbitration claim and the International Arbitration Rules are not the proper rules prescribed by the relevant contracts and the District Court's order.

CALLAHAN & BLAINE

Mr. Michael Namias
ICDR Supervisor
April 23, 2007
Page 2

As quoted in the enclosed Order and as contained in the four Independent Contractor Service Agreements which form the basis for the instant arbitration, the parties agreed that:

> "any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina." [Order: p.1; and Each Respective Contract: p.13-14].

Pursuant to the language in the contracts and the recent District Court Order, Blackwater's claim for breach of contract shall be resolved by arbitration according to the rules of the American Arbitration Association in North Carolina. Unfortunately, Blackwater erroneously filed its claim with the ICDR, claiming that the arbitration should be governed by the ICDR rules. However, the parties did <u>not</u> agree to the ICDR rules in the relevant contracts, the District Court did <u>not</u> order this matter to arbitration before the ICDR, and there are <u>no</u> facts which would justify the arbitration proceeding under ICDR rules. This is especially true in light of the ICDR's own definition of which cases belong in the ICDR. Article I, Section 1 of the International Arbitration Rules states:

> "Where parties have <u>agreed in writing</u> to arbitrate disputes under these International Arbitration Rules <u>or</u> have provided for arbitration of an <u>international dispute</u> by the International Centre for Dispute Resolution or the American Arbitration Association without designating particular rules, the arbitration shall take place in accordance with these rules, as in effect at the date of commencement of arbitration, subject to whatever modifications the party may adopt in writing." [Emphasis added.]

As indicated by the contractual arbitration language quoted above, the Agreements do <u>not</u> provide for disputes to be resolved under the International Arbitration Rules. In addition, the instant arbitration does <u>not</u> involve an "international dispute." The arbitration is by two Blackwater entities, which are both organized under the laws of the State of Delaware and which both have their principal places of business in North Carolina, against a resident of the State of North Carolina, acting in his official capacity as the administrator of four estates whose decedents were citizens of the United States.

Blackwater's arbitration claim is for breach of four identical contracts which (1) were entered into in North Carolina, (2) set the venue for the dispute in North Carolina, and (3) are to be interpreted under North Carolina law. Finally, the conduct Blackwater alleges

# CALLAHAN & BLAINE

Mr. Michael Namias
ICDR Supervisor
April 23, 2007
Page 3

constitutes a breach of the relevant contracts is the filing of a lawsuit in North Carolina Superior Court and media stories associated therewith. Blackwater's breach of contract claim simply does not involve any "international dispute" whatsoever.

The claim was erroneously filed by Blackwater with the ICDR, under the International Arbitration Rules, since the contracts do not call for arbitration under the International Arbitration Rules, the Court's Order does not call for arbitration under the International Arbitration Rules, and the claim does not involve an "international dispute." Now that the District Court has ordered the parties to arbitration on Blackwater's claim, it is critical that the arbitration proceed in the proper division of the American Arbitration Association and under the correct rules.

Respondent Nordan hereby respectfully demands that the ICDR halt any further prosecution of the instant claim, and that it be transferred forthwith to the American Arbitration Association to proceed under its Commercial Arbitration Rules. In that the alleged breach of contract claim arose in North Carolina, concerning two North Carolina companies and a North Carolina resident, and is to be governed by North Carolina law, Respondent Nordan requests that the claim be transferred to the AAA's Domestic Case Management Center in Atlanta, Georgia, where it will be commenced anew.

The termination of the instant proceeding at the ICDR, in favor of transferring the claim to the appropriate AAA regional center, is not only the proper course of action, but also will not cause any prejudice to any of the parties. The Order compelling the arbitration was just entered last Friday, and there has not yet been a Preliminary Hearing in this matter.

The only thing that has occurred thus far is that Blackwater has unilaterally selected three arbitrators of its choice—two of whom have substantial conflicts, including one who sits on the board of a company with one of Blackwater's officers. As you acknowledged in your email dated April 10, 2007, a portion of this case at the ICDR proceeded *without* notice to Respondent Nordan's counsel after Blackwater requested that our office be cut out of communications simply because we objected to the jurisdiction of this proceeding absent a ruling from the District Court on the petition to compel the arbitration.

Therefore, commencing this arbitration claim anew, following the District Court's Order directing the arbitration, will not prejudice any of the parties and will remove the impenetrable taint that now lies over Blackwater's unilateral selection of conflicted arbitrators and the ICDR's conduct in proceeding without notice to Respondent's counsel at the urgence of Blackwater. More importantly, this arbitration claim simply does not belong in the ICDR or under the International Arbitration Rules for the reasons listed above.

CALLAHAN & BLAINE

Mr. Michael Namias
ICDR Supervisor
April 23, 2007
Page 4


      I look forward to hearing from you in the very near future concerning the transferring of this claim to the proper regional case management center of the AAA. Should you have any questions or comments, please do not hesitate to contact me at any time.

      Very truly yours,

      MARC P. MILES


MPM:jsr

Enclosure

cc:   Richard P. Nordan, Esq.
     Daniel J. Callahan, Esq.
     Brian J. McCormack, Esq.
     David Kirby, Esq.
     Michael Socarras, Esq.
     Brigitte Omane - International Case Manager
     Thomas Ventrone - Vice President (ICDR)
     Chauncey Davis - Vice President (Atlanta Case Management Center)


G:\2525\2525-02\Cor\Namias 042307.wpd

 **International Centre for Dispute Resolution**

Thomas Ventrone
Vice President

April 27, 2007

1633 Broadway, 10th Floor, New York, NY 10019
Telephone: 212-484-4181 Facsimile: 212-246-7274
Internet: http://www.adr.org/ICDR

**VIA ELECTRONIC MAIL ONLY**

Michael P. Socarras, Esq.
McDermott Will & Emery
600 Thirteenth Street, N.W.
Washington, DC  20005-3096

Daniel Callahan, Esq.
Callahan & Blaine, APLC
3 Hutton Center Drive 9 Floor
Santa Ana, CA  92707

Marc P. Miles, Esq.
Callahan & Blaine, APLC
3 Hutton Center Drive 9 Floor
Santa Ana, CA  92707

David F. Kirby, Esq.
Kirby & Holt, LLP
3201 Glenwood Avenue
Suite 100
Raleigh, NC  27612

Richard P. Nordan, Esq.
3605 Glenwood Avenue
Suite 240
Raleigh, NC 27612

Re: 50 181 T 00524 06
    Blackwater Security Consulting, LLC & Blackwater
    Lodge and Training Center, Inc.
    vs
    Richard P. Nordan

Dear Parties:

After careful review of the comments submitted by the parties, the ICDR **(a division of the American Arbitration Association)** has determined to resume administration of the above captioned case pursuant to the International Rules before the Panel of Arbitrators already appointed.

In addition, the parties are requested to advise the undersigned of their conference call availability for the dates and times below.

- **May 3, 2007 from  4pm to 5pm ET**
- **May 4, 2007 from 10am – 12pm , 2pm – 5pm ET**
- **May 7, 2007 from 2:30pm – 5pm ET**

Sincerely,

*B.Omane*

Brigitte Omane
International Case Manager
212 484 4036
OmaneB@adr.org


Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

# EXHIBIT "I"

Search ⊕
Checkout ⊕

**AAA** *ONLINE* **Assistant** 

| ABOUT US | DISPUTE RESOLUTION SERVICES | FILE A CASE | EDUCATION | NEUTRALS | CONTACT US |
| HOME |

## AAA PRE-FILING FACTS

- BEFORE YOU FILE A CASE
- CASE FILING FEES
- TRANSLATION AND OTHER RESOURCES
- WHERE TO FILE YOUR CASE

### DOMESTIC CASE MANAGEMENT CENTERS

Western Case Management Center map & directions
Administers cases in AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY

John Bishop
Vice President, Case Management Center
6795 N. Palm Avenue, 2nd Floor
Fresno, CA 93704
877-528-0880 Fax: 559-490-1919
Email: BishopJ@adr.org

Southeast Case Management Center map & directions
Administers cases in AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA

Chauncey Davis
Vice President, Case Management Center
2200 Century Parkway, Suite 300
Atlanta, GA 30345-3203
404-325-0101 Fax: 404-325-8034
Email: DavisCh@adr.org

Northeast Case Management Center map & directions
Administers cases in CT, DE, ME, MA, MI, NH, NY, NJ, PA, RI, VT, WV

Catherine Shanks
Vice President, Case Management Center
950 Warren Avenue
East Providence, RI 02914
866-293-4053 Fax: 401-435-6529
Email: ShanksC@adr.org

Central Case Management Center map & directions

Administers cases in AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI

Molly Bargenquest
Vice President, Case Management Center
1750 Two Galleria Tower
13455 Noel Road
Dallas, TX 75240-6636
972-702-8222 Fax: 972-490-9008
Email: BargenquestM@adr.org

**FILE A CASE**    CONTACT US

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED



## INDEPENDENT CONTRACTOR SERVICE AGREEMENT

THIS AGREEMENT is dated as of ___M̲a̲r̲c̲h̲ ̲1̲6̲__, 2004 and is by and between
Blackwater Security Consulting, LLC, a Delaware Limited Liability Company ("BSC")
and _S̲t̲e̲p̲h̲e̲n̲ ̲S̲.̲ ̲H̲e̲l̲v̲e̲n̲s̲t̲o̲n̲_ an independent contractor residing at █████████████

██████████████████

RECITALS
A. BSC is a Delaware Limited Liability Company that operates a business which
provides security, protective, training and logistical and air support services in the United
States and in foreign countries (the "Business"); and
B. Contractor is experienced in providing the Services utilized in the Business; and
C. BSC and a private entity or individual (the "Customer" or "Principal") have entered
into a contract (the "Engagement") whereby BSC will conduct security and close
protective operations in various locations, either domestically or overseas as they travel
(collectively, the "Services"); and
D. Contractor has voluntarily agreed to serve as an independent contractor to BSC and to
otherwise facilitate the Engagement; and
E. BSC desires to engage the services of Contractor and Contractor desires to provide
services to BSC pursuant to the terms and conditions of this Agreement.

AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises and covenants contained
herein, the receipt and sufficiency of which is hereby acknowledged, the above recitals
are incorporated in this Agreement, and the parties mutually agree as follows:

1. DEFINITIONS.
1.1 "Affiliate" shall mean any person, partnership, corporation, limited liability company,
trust, member or other entity or association, directly or indirectly, through one or more
intermediaries, controlling, controlled by, or under common control of a shareholder or a
shareholder's successor or assigns of BSC, including Blackwater Lodge and Training
Center, Inc., Blackwater Target Systems LLC, Aviation Worldwide Services LLC
("AWS") and any and all of their Affiliates and shareholders, members or managers).
The term "control" as used in the immediately preceding sentence, means, with respect to
a corporation, the right to exercise, directly or indirectly, more than fifty percent (50%) of
the voting rights attributable to the controlled corporation, and, with respect to any
person, partnership, limited liability company, trust, other entity or association, the
possession, directly or indirectly, of the power to direct or cause the direction of the
management or policies of the controlled entity.

1.2 "Air Service" or "Air Services" shall mean engaging in or providing services directly
or indirectly as a pilot, navigator, flight engineer, mechanic or serving as a crew member
in connection with any aircraft, rotorcraft, fight or other aviation transportation delivery
or other aviation related services.