Blackwater Security Consulting, LLC et al v Nordan | Doc. 20 Att. 6
Case 2:06-cv-00049-F   Document 20-7   Filed 05/04/2007   Page 1 of 9

18

1   of the parties to set dates down. And if the -- Mr.
2   Nordan's counsel wish to interpose any view whatsoever
3   as to their availability, the convenience or anything
4   else, they can seek to do so in the same way they have
5   interposing their objections and views throughout the
6   case.
7            THE COURT: Would you clear up this issue as
8   to how this panel is empowered to address the personal
9   liability of Richard Nordan?
10           MR. SOCARRAS: Yes. Mr. Nordan, personally,
11  is not signatory to the arbitration agreement.
12           THE COURT: Do you contend that he's -- he may
13  well be personally liable?
14           MR. SOCARRAS: If an administrator of an
15  estate, knowing that he has no right to do so,
16  nonetheless asserts rights and prosecutes actions that
17  he knows he has no right to do and causes damages as a
18  result, he should be personally liable, is my
19  understanding.
20           THE COURT: Before an arbitration panel?
21           MR. SOCARRAS: Correct, because the
22  arbitration jurisdiction extends not only to the
23  signatory of the arbitration agreement, but to those
24  that are agents and associated with the signatory; for
25  example, an executive of a company. If the company is a

1   signatory of an arbitration agreement, and the company
2   becomes involved in a dispute, and the executive is
3   involved in his personal capacity because of some
4   allegation, that fact does not defeat the ability of the
5   arbitration panel to look not only at the claims
6   asserted against the company, not only executive agency,
7   because all of the allegations arise from the same set
8   of facts. And to contend that the agent or the
9   affiliate of the signatory of the agreement does not
10  come under the arbiter jurisdiction would defeat the
11  purpose of the Federal Arbitration Act.
12           THE COURT: And therefore the agent, as you
13  refer to Mr. Nordan, has waived his right to a jury
14  trial on any such issue?
15           MR. SOCARRAS: By accepting the commission to
16  act as an ancillary arbitrator of the estate, and
17  knowingly acting without right to cause damages, he has
18  become -- he has brought himself into the jurisdiction
19  of the arbiter panel.
20           THE COURT: And is subject to personal
21  liability up to the amount in dispute?
22           MR. SOCARRAS: Correct.
23           THE COURT: Well, probably -- you and I took a
24  different constitutional law class.
25           All right. Go ahead.

1  THE COURT: That is how someone else agreed,
2  not Mr. Nordan.
3  MR. SOCARRAS: Mr. Nordan, pursuant to a case
4  that I understand was argued by Louis Smith with Smith
5  Anderson back in 1922, is bound by the agreements of the
6  estate administrator.
7  MR. KIRBY: Judge, I -- I think that's a
8  little --
9  THE COURT: Let him finish. Well, with regard
10  to the right of the deceased and the liabilities of the
11  deceased, but I don't think that case would necessarily
12  dictate that an agreement to arbitrate would bind him to
13  personal liability before an arbitration panel.
14  MR. SOCARRAS: Well, Your Honor, what would be
15  the remedy if an estate administrator is appointed,
16  despite an agreement in which they then say accept all
17  the risks of being deployed into a war zone overseas.
18  THE COURT: It may well be responsibility and
19  liability are determined by a court of competent
20  jurisdiction where a person was properly sued and a jury
21  of 12 citizens so declared. That would be the proper
22  remedy, the one that I'm most familiar with, frankly,
23  sir, in terms of personal liability of the executor.
24  MR. SOCARRAS: Now, the arbitration, sir, is
25  also a claim against the estate, because the estates

1   have the same obligations as the decedents. And the
2   obligation made in the contract was not to file suit, to
3   release from all claims and liabilities. And that is
4   also in the arbitration. So it is not solely a claim
5   against Mr. Nordan, it's also the estates through him,
6   because the estates are without assets, too. They're
7   wrongful death estates. So it's incorrect and
8   prejudicial in the motion, TRO motion to have the
9   statement somehow Blackwater sued the families.
10  Blackwater has not sued the families. It's not made a
11  claim.
12           THE COURT: Well, it was my understanding that
13  this lawsuit is about claims of the deceased through
14  their estate against Blackwater.
15           MR. SOCARRAS: Yes, sir.
16           THE COURT: And those were the claims that
17  would ultimately be resolved either by a state court or
18  federal court, or an arbitration panel. And any
19  counterclaim that Blackwater may have.
20           MR. SOCARRAS: Correct, that's part of the
21  arbitration, sir.
22           THE COURT: Well, I would think that would be
23  the arbitration --
24           MR. SOCARRAS: It is.
25           THE COURT: -- in the absence of any other

```
 1    raised no other argument as to why this is not
 2    arbitrable.
 3              THE COURT:  Mr. Ashe, do you agree that
 4    Richard Nordan is personally, can be held personally
 5    liable by the arbitration panel if this matter proceeds
 6    and the panel addresses that issue and were to make such
 7    a determination?
 8              MR. ASH:  Your Honor, I guess I have two
 9    responses to that.  First, I've not been involved in the
10    arbitration, but there have been so many, I'm going to
11    say ancillary proceedings, to what Mr. Warner and I are
12    engaged in, which is the local proceedings in your court
13    and before Judge Fox, that we certainly have become
14    acquainted with the arbitration proceedings.  And we
15    have reviewed the case law and the arguments that Mr.
16    Socarras has reviewed with you, and we think that there
17    are meritorious arguments.  I have really nothing to add
18    on the substance of what Mr. Socarras said.
19              THE COURT:  So you agree with that?
20              MR. ASH:  I think the law supports that claim.
21    I do.
22              THE COURT:  All right.  Ms. Holland, do you
23    join in that?
24              MS. HOLLAND:  Your Honor, with all due
25    respect, I only represent Justin McQuown.  I keep coming
```

1  only be mutually consensual.

2  THE COURT: That's true even when the filed
3  action in a court of competent jurisdiction to question
4  the validity of the arbitration agreement, you would
5  just proceed on with the arbitration, any way.

6  MR. SOCARRAS: Yes, sir.

7  THE COURT: Unless you're enjoined by a court,
8  or did you proceed even if you were enjoined?

9  MR. SOCARRAS: It is an extraordinary remedy
10 in which for months the arbitration had been pending,
11 they have not sought, while looking after their
12 interests very effectively in the arbitration, subject
13 to objection.

14 As far as balance of the equities is
15 concerned, which is another point Mr. Kirby made, that
16 we would not be prejudiced. That may be the federal
17 test, but I understand the North Carolina test is that
18 they need to show irreparable harm. I don't see how
19 they can show irreparable harm by proceedings with a
20 proceeding which they have the --

21 THE COURT: Well, I believe Richard Nordan
22 individually can certainly show irreparable harm.

23 MR. SOCARRAS: Mr. Nordan has the right to
24 present his arguments and his evidence in the
25 arbitration, just like he would any other place.

1   THE COURT: I'd be real uncomfortable if I
2   were Richard Nordan in that forum under these
3   circumstances. Frankly, sir, based upon what you've
4   described to me, I would have thought the law went in
5   reverse about a hundred years.
6   MR. SOCARRAS: Sir, I, with all respect --
7   THE COURT: You and I just disagree on that.
8   MR. SOCARRAS: I want to say one other thing,
9   because it looks like the hearing may be winding down.
10  Your Honor expressed some concerns about civility in the
11  memorandum recently sent to counsel.
12  THE COURT: Yes, sir. That was pretty clear.
13  MR. SOCARRAS: I want to say that that was
14  very clear, that it did register, and that we are
15  mindful of it through me and the entire team.
16  THE COURT: Good. Good. Well, then, I guess
17  we won't have any civility issues if everybody
18  understands.
19  MR. SOCARRAS: We'll try very hard, sir.
20  We're going to talk after this hearing.
21  THE COURT: And that memo wasn't addressed to
22  one person, that was addressed to everybody.
23  MR. SOCARRAS: I understand.
24  THE COURT: I've had -- you know, I'm not used
25  to that. I'm not used to that.

1        Well, I don't know what I'm going to do.  I do
2   know that I'm going to restrain, at least for ten days,
3   the arbitration panel from considering any aspect of the
4   matter before that panel with regard to Richard Nordan
5   individually.  Once I do that -- once I do that I go
6   back to the first thing I asked you, why do I care.
7        MR. KIRBY:  Well, Your Honor, the response
8   that I would give you is that Mr. Nordan, while he
9   clearly I think has been improperly, improperly brought
10  into this, I think our parties will also be prejudiced,
11  Judge, if you have read the correspondence and if you'd
12  seen whose been placed on this arbitration panel, we
13  belief, Judge, that we should at least have the
14  opportunity to have either this court or federal court
15  determine whether proceeding in an arbitration is
16  proper.
17        THE COURT:  Well, but in the event it
18  ultimately is so determined --
19        MR. KIRBY:  Right.
20        THE COURT:  -- you still live with the
21  mechanism by which the deceased wittingly or unwittingly
22  agreed.
23        MR. KIRBY:  That's correct, Your Honor.  The
24  only relief sought today is to try to preserve the
25  status quo.  That is all.

1  MR. SOCARRAS: Thank you. By way of the TRO
2  so the Triple A arbitrator will know what is enjoined.
3  THE COURT: I'm not going to enjoin them, I'm
4  going to enjoin your clients.
5  MR. SOCARRAS: I understand.
6  THE COURT: Can't enjoin them.
7  MR. SOCARRAS: As I explained, there is more
8  in the arbitration than personal claims against Mr.
9  Nordan.
10  THE COURT: I realize that.
11  Mr. Ashe, tell me what is pending by way of
12  motions filed by Defendants that I have not scheduled.
13  MR. ASH: Your Honor, from memory, perhaps.
14  THE COURT: I assume it's a motion to dismiss.
15  MR. ASH: A motion to dismiss. There's a
16  motion to stay. There is the motion regarding the pro
17  hoc issues. Those matters --
18  THE COURT: The motion to dismiss is based on?
19  MR. ASH: Primarily based on two arguments, as
20  I recall, one is the defense base active immunity as
21  well as political question. I take it Mr. Socarras --
22  THE COURT: And the motion to stay was based
23  on the contention that there is an arbitration provision
24  that applies, and that the matter should be referred to
25  arbitration, and the arbitration should be allowed to