UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:06-CV-49-F

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC and BLACKWATER LODGE AND TRAINING CENTER, INC., )<br>)<br>)<br>)<br>)<br>Petitioners, )<br>)<br>vs. )<br>)<br>RICHARD P. NORDAN, as Ancillary Administrator for the Separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO, and WESLEY J.K. BATALONA, )<br>)<br>)<br>)<br>)<br>)<br>Respondent. ) | MEMORANDUM IN SUPPORT OF RICHARD P. NORDAN'S MOTION FOR RELIEF FROM JUDGMENT **(MOT)** |

Richard P. Nordan, Individually, pursuant to Local Rules 7.1(d) and 7.2, E.D.N.C., submits this Memorandum in Support of his Motion for Relief from Judgment from this Court's Order of April 20, 2007, compelling arbitration of the claims listed in Petitioners', Blackwater Security Consulting, LLC (hereinafter "Blackwater Security"), and Blackwater Lodge and Training Center, Inc. (hereinafter "Blackwater Lodge") (collectively "Petitioners" or "Blackwater"), Petition for Order Directing Arbitration (hereinafter "Petition"), in which it shows the Court:

**STATEMENT OF THE CASE**

On March 16, 2004, Stephen S. Helvenston ("Helvenston") signed an Independent Contractor Service Agreement ("ICSA") which contained the following provision under Paragraph 20.1:

> This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, applicable to contracts made and to be fully performed therein, excluding its conflict of laws principles. Contract and BSC [Blackwater Security] hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina. The arbitrators may award attorneys fees to the prevailing party in any arbitration proceeding. All costs and expenses of the arbitration, including actual attorney's fees, shall be allocated among the parties according to the arbitrator's discretion. The arbitrator's award may be confirmed and entered as a final judgment in the courts noted above and enforced in accordance with rules of the American Arbitration Association. Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact or relief of an injunctive nature. Contractor hereby waives any rights to seek removal of any dispute to the state or federal courts.

On February 1, 2004, March 10, 2004, and March 25, 2004, Jerko ("Jerry") Gerald Sovko (hereinafter "Sovko"), Wesley J.K. Batalona ("Batalona"), and Mike R. Teague ("Teague"), respectively, each signed a substantially similar ICSA containing the exact same arbitration provision highlighted above.

On March 31, 2004, Helvenston, Sovko, Batalona, and Teague (collectively "the Decedents"), were killed in Fallujah, Iraq by a mob of insurgents while escorting a military convoy through the city. Following their deaths, the separate Estates of Helvenston, Sovko, Batalona, and Teague (hereinafter "the Estates"), retained the

2

California law firm of Callahan & Blaine, APLC, to pursue a wrongful death claim against Blackwater. As none of the attorneys of Callahan & Blaine were members of the North Carolina Bar, North Carolina being the appropriate venue for an action against Blackwater, the firm of Callahan & Blaine associated for purposes of this lawsuit with the Raleigh, North Carolina law firm of Kirby & Holt, LLP. Kirby & Holt, in order to institute a wrongful death suit against Blackwater in North Carolina asked Richard P. Nordan to serve as Ancillary Administrator for the Separate Estates so that the action might be filed in Wake County, North Carolina.

On January 5, 2005, Richard P. Nordan, after receiving appropriate letters of ancillary administration, filed suit against Blackwater in Wake County Superior Court, in an action styled *Richard P. Nordan, as Ancillary Administrator for the separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Sovko, and Wesley J.K. Batalona, Plaintiff v. Blackwater Security Consulting, LLC; Blackwater Lodge and Training Center, Inc., and Justin L. McQuown, Defendants*, bearing file number 05 CVS 173 (hereinafter "Wake County Action"). In the Wake County Action, Richard P. Nordan, on behalf of the Estates, in his role as Ancillary Administrator for the Separate Estates, brought claims against Blackwater for Wrongful Death and Fraud.

After various attempts to remove the case to Federal Court[1], or in the alternative to have the case dismissed, were unsuccessful Petitioners filed on December 20, 2006 the present action captioned above, in an attempt to compel Richard P. Nordan, as Ancillary Administrator for the Separate Estates, to proceed solely in arbitration

---

[1] Petitioners' grounds for removal were based on their assertion that the Defense Base Act provided Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331. The action was subsequently remanded by Judge Flanagan, and Petitioner's appeal was dismissed by the United States Court of Appeals for the Fourth Circuit. Writ of Certiorari was denied by the United States Supreme Court.

3

against them. The Summons issued pursuant to the Petition itself names in the caption, as Defendant, "Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, et al.", and the Summons was served on Richard P. Nordan, Attorney at Law, at his law office, and signed by Debbie Leonard, the front receptionist for the firm.

Coinciding with the filing of the Petition, a Civil Cover Sheet was filed stating the parties to the Petition and most importantly, for purposes of this motion, the basis for this Court's subject matter jurisdiction over the parties. The parties, as named on the Cover Sheet, are as Plaintiffs, "Blackwater Security Consulting, LLC, a Delaware Limited Liability Co., et al.", and as Defendants, "Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, et al." Further, the basis of jurisdiction claimed in Section II on the Cover Sheet is "Diversity". Further, in Section III, the Defendants are claimed to be "Citizen of Another State".

Within the Petition, there appears a further explanation of the citizenship of the parties, which bears particularly on Blackwater's claim that this Court had the appropriate subject matter jurisdiction over the causes of action Blackwater petitioned to this Court to compel jurisdiction. In Paragraph 1, Blackwater states:

> Petitioner Blackwater Secuirty is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Moyock, Currituck County, North Carolina.

In Paragraph 2, Blackwater goes on to state that:

> Petitioner Blackwater Lodge and Training Center, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Moyock, Currituck County, North Carolina.

4

Although it is important to note the claimed citizenship of the Petitioners, which establishes Blackwater in its various forms as a citizen of the State of North Carolina for purposes of establishing diversity of citizenship, it is of paramount importance to look at their description of the citizenship of the Defendants, described in Paragraph 3. This paragraph states:

> Respondent Richard P. Nordan is, upon information and belief, a resident of Wake County, North Carolina. He is named in this action *in his official capacity as ancillary administrator of the separate estates of the Decedents*:
>
> a. Decedent Stephen S. Helvenston was, at the time of his death, a resident of the State of California;
> b. Decedent Mike R. Teague was, at the time of his death, a resident of the State of Tennessee;
> c. Jerko Gerald Sovko was, at the time of his death, a resident of the State of Hawaii; and
> d. Wesley J. K. Batalona was, at the time of his death, a resident of the State of Ohio.[emphasis added].

Finally, Blackwater made its claim of subject matter jurisdiction in Paragraph 4 of the Petition, stating:

> This Court has subject matter jurisdiction over this proceeding under Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) and under 28 U.S.C. § 1332 because this is a civil matter between citizens of different states wherein the amount in controversy exceeds $75,000, exclusive of interest and costs.

In the Petition itself, aside from the statements relating to citizenship and subject matter jurisdiction, Blackwater states allegations only against the "Respondent", which can only refer to caption which reads: "Richard P. Nordan, as Ancillary Administrator for the separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Sovko, and Wesley J.K. Batalona." Further, the Petition itself contains an allegation that "Petitioners are entitled under Section 4 of the Federal Arbitration Act to

5

an Order directing Respondent to proceed in Currituck or Camden County with binding arbitration of the Respondent's alleged claims."

As an attachment to the Petition, Blackwater included its Demand for Arbitration filed with the American Arbitration Association. In the Demand, Blackwater demanded arbitration pursuant to the "International Dispute Resolution Procedures Arbitration Rules". Named in the Demand for Arbitration is Respondent "Richard P. Nordan". Also in the Demand, under the section bearing the heading "Nature of the Dispute", it reads:

> As administrator of the estates of four Blackwater professionals killed by a mob of insurgents on 3/31/04 in Fallujah, Iraq, Respondent has breached decedents' contractual obligations not to sue, not to seek publicity and to protect classified and confidential information, to release Blackwater & all affiliates from all claims, and to assume all rules of "being shot, ... killed by a firearm .... terrorist activity, hand to hand combat" et. in Iraq. In order to safeguard both its own confidential information as well as sensitive information implicating the interest of the United States at war, Blackwater is filing its Memorandum in Support of this Demand under Article 34 of the above Rules ("Confidential")

That is the entirety of the guidance provided to this Court, outside of the Petition, as to the nature of the claims Blackwater wished to arbitrate.

Based on the representations and allegations contained in the Petition, and the other documents filed with this Court, Richard P. Nordan believed that he was served only in his representative capacity as Ancillary Administrator of the Estates. [Nordan Affidavit, ¶ 7]. Further, he believed that Blackwater only sought to compel arbitration of the claims alleged in the Wake County Action, and that he personally was not a party to the arbitration. [Nordan Affidavit, ¶ 9]. Finally, he could only assume, along with this court, and counsel for the separate Estates, that the arbitration would not include any

6

claims by Blackwater against him personally. [Nordan Affidvait, ¶'s 7-9]. Despite Richard P. Nordan's individual assumptions, and presumably the assumptions of this Court, based on the documents not included in the record before this Court, Blackwater intended, apparently all along, to arbitrate claims against Richard P. Nordan individually, and subject his personal assets to an award of damages in arbitration. Moreover, according to a document filed by Blackwater in the Wake County Action and statements of Blackwater's counsel in a motion hearing before the Honorable Judge Donald W. Stephens, Wake County Senior Resident Superior Court Judge, Blackwater affirmatively, and without equivocation, makes it perfectly clear that Blackwater intends to arbitrate not only the Estates' claims against them, but intends to bootstrap their personal claims against Richard P. Nordan, Individually, to the ordered arbitration. The document filed in the Wake County Action was a "Memorandum of Law in Opposition to Issuance of TRO" (hereinafter "TRO Memorandum"). This document was served on Richard P. Nordan, as Ancillary Administrator of the Separate Estates by and through Kirby & Holt, representatives of Richard P. Nordan, in his capacity as administrator.

On April 20, 2007, presumably without being presented with a transcript of the motion hearing, or the TRO Memorandum, but only knowing of the issuance of a Temporary Restraining Order against the parties, this Court issued its Order granting Blackwater's Petition to compel arbitration. However, the Order itself does not address Blackwater's current intention to bring claims of personal liability against Richard P. Nordan, individually, outside of his role as Ancillary Administrator for the Separate Estates. There is similarly no mention in the Order regarding Blackwater's individual claims against Richard P. Nordan, individually, who presumably was not a party to the

7

Petition. The Order itself does state in its conclusion that "the parties are ORDERED to proceed with arbitration in the manner provided for in the Service Agreements." Because Richard P. Nordan cannot confidently determine whether Blackwater's claims against him individually were before the Court by means of Blackwater's Petition, and based on his assertion that even if such claims were before the Court, they would operate to remove subject matter jurisdiction from this Court, he filed this Motion for Relief, and in the alternative, for clarification of this Court's Order.

## ARGUMENT

This motion is before this Court requesting initially that the Order itself be voided (1) for lack of subject matter jurisdiction, as Richard P. Nordan, individually as a party would destroy diversity of citizenship and this Court's ability to enter an Order over this dispute, and (2) the misrepresentation or fraud worked upon this Court by Blackwater for either failing to openly disclose the claims it wishes to arbitrate or misrepresenting or fraudulently concealing its claims against Richard P. Nordan, individually. In the alternative, Richard P. Nordan, Individually, asks that this Court issue a clarification of its Order, specifically stating who the parties to the Petition actually are, and whether Blackwater's claims against Richard P. Nordan, individually, were actually compelled into arbitration. In further support of this Motion, Richard P. Nordan respectfully shows the Court that:

I.  THIS COURT DID NOT RETAIN THE NECESSARY SUBJECT MATTER JURISDICTION OVER BLACKWATER'S CLAIMS AGAINST RICHARD P. NORDAN, INDIVIDUALLY, SUFFICIENT TO COMPEL ARBITRATION OF THOSE CLAIMS.

In courts of the United States, where the inclusion of non-diverse parties destroys diversity, and diversity is the basis for subject matter jurisdiction of the district

8

court, a district court is without appropriate authority to compel arbitration pursuant to the Federal Arbitration Act. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999). Federal subject matter jurisdiction itself "must rest on some basis independent of the FAA." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). Further, the burden of establishing the independent basis for federal subject matter jurisdiction, whether it be by way of a federal question or diversity, falls on the party attempting to assert his or her rights in federal court. *In re Mercury Const. Corp.*, 656 F.2d 933, 938 (4th Cir. 1981). Other federal District Courts have long held that that in order for a federal court to entertain an action under the Federal Arbitration Act, there must be diversity of citizenship, the proper amount in controversy and the matter must relate to maritime transactions or interstate commerce. *San Carlo Opera Co. v. Conley*, 72 F.Supp. 825, 828 (D.C.N.Y. 1946).

As stated above, Blackwater relied upon 28 U.S.C. § 1332, requiring diversity of citizenship, to show that this Court had the requisite subject matter jurisdiction to compel arbitration. In doing so, they represented to this court that the citizenship of Richard P. Nordan, Individually, was unimportant, and that the substance of their Petition was to force the Estates, as represented by Richard P. Nordan, to arbitrate the wrongful claims brought against Blackwater. [Petition, ¶ 3, 20]. However, after filing the Petition itself, counsel for Blackwater made numerous, unequivocal statements of their intent to arbitrate not only the claims of the Estates against them, but also their own claims against Richard P. Nordan, individually. Such claims were not within the scope of this Court's Order, and similarly, should they have been included, would operate to deprive this Court of its subject matter jurisdiction over Blackwater's claims.

9

The alleged claims against Richard P. Nordan have now been spelled out explicitly in the TRO Memorandum filed in Wake County, months after the Petition was filed in this Court, in which document Blackwater for the first time stated that:

> In the arbitration, Blackwater is claiming damages against Nordan *personally* for breach of contract, including his breach of the decedents' contractually binding covenant not to sue and their duties of confidentiality and non-publicity, both of which are binding on Nordan as estate administrator. [emphasis in original] (See "TRO Memorandum", ¶ 6).
>
> In the arbitration, Blackwater claims $10 million from Nordan personally for breach not only of the liability provisions of the decedents' contracts with Blackwater, but also for breach of the confidentiality and non-publicity provisions of those contracts. The covenants are binding on Nordan, and he is personally liable for their breach. (See "TRO Memorandum", ¶ 9).
>
> Knowing full well that the arbitration is about Nordan's personal liability, Nordan falsely states to the Court that the arbitration is against the families. Who the arbitration is against can be easily verified by checking the first box in the upper left-hand corner of the Demand for Arbitration, where it states "Name of Respondent" and says underneath "Richard P. Nordan." Nordan is trying to enjoin a claim against himself. (See "TRO Memorandum", ¶ 11).

A true copy of the TRO Memorandum filed by Blackwater in Wake County Superior Court is attached as Exhibit D to the motion filed by Richard P. Nordan in his individual capacity. Further, the following statements were made by counsel for Blackwater in open court:

> If an administrator of an estate, knowing that he has no right to do so, nonetheless asserts rights and prosecutes actions that he knows he has no right to do and causes damages as a result, he should be personally liable, is my understanding. ...
>
> [B]ecause the arbitration jurisdiction extends not only to the signatory of the arbitration agreement, but to those that are agents and associated with the signatory; ....

> By accepting the commission to act as an ancillary arbitrator of the estate, and knowingly acting without right to cause damages, he has become – he has brought himself in the jurisdiction of the arbiter panel....
>
> Now, the arbitration, sir, is also a claim against the estate, because the estates have the same obligations as the decedents. And the obligation made in the contract was not to file suit, to release from all claims and liabilities. And that claim is also in the arbitration. So it is not solely a claim against Mr. Nordan, it's also the estates through him, because the estates are without assets, too. They're wrongful death estates. So it's incorrect and prejudicial in the motion, TRO motion to have the statement somehow Blackwater sued the families. Blackwater has not sued the families. It's not made a claim....

Excerpted portions of the transcript of the motion hearing in the Wake County Action are attached as Exhibit E to the motion filed by Richard P. Nordan, Individually. By making such statements, counsel for Blackwater revealed the true nature of the claims they seek to arbitrate, expressly contradicting the representations made to this Court by way of their Petition. It is these personal claims which operate to destroy this Court's subject matter jurisdiction over this dispute. It is also these personal claims which would operate to void any portion of this Court's Order, with respect to any claim Blackwater seeks to arbitrate against Richard P. Nordan individually.

Richard P. Nordan, individually, is, like Blackwater, a citizen of the State of North Carolina. Actions between citizens of the same State, even for purposes of compelling arbitration pursuant to the Federal Arbitration Act, must be brought in State Court; as such disputes do not give rise to the required subject matter jurisdiction of this Court. *See* 28 U.S.C. § 1332. This Court was therefore without the authority to order into arbitration Blackwater's claims against Richard P. Nordan, individually. The

question that then arises is what is the effect of this Court's Order compelling presumably only the Estates to arbitrate their claims against Blackwater.

> Rule 60(b), of the Federal Rules of Civil Procedure, states as follows:
>
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; ... or (6) any other reason justifying relief from the operation of the judgment.... This rule does not limit the power of a court to ... set aside a judgment for fraud upon the court.

The United States Court of Appeals for the Fourth Circuit recently held in *Wendt v. Leonard*, 431 F.3d 410, (4th Cir. 2005), that "[a]n order is 'void' for purposes of Rule 60(b)(4) only if the court rendering the decision lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process of law." *Id.* at 412. Subject matter jurisdiction for this case would be destroyed if this Court in any way compelled into arbitration any claims that Blackwater may have against Richard P. Nordan personally. To the extent that this Court's Order of April 20, 2007 included such claims, the Order would necessarily be voided.

> II. TO THE EXTENT THAT BLACKWATER FRAUDULENTLY MISREPRESENTED THE NATURE OF THE CLAIMS IT SOUGHT TO ARBITRATE IN ITS PETITION BEFORE THIS COURT, RICHARD P. NORDAN INDIVIDUALLY IS ENTITLED TO RELIEF FROM COMPLYING WITH THIS COURT'S ORDER.

Rule 60(b)(3) authorizes a court to revoke or grant relief from an order when it has evidence of a "fraud upon the court". *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 130 (2000). The Supreme Court itself has stated that District Courts are inherently bestowed with the equitable power to set aside a judgment whenever its enforcement would be "manifestly unconscionable" because of "fraud upon the court."

*Ibid*, citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-245 (1944). Further, a District Court is empowered to grant relief from an unfairly procured judgment procured by garnered by the misconduct of an adverse party such that it would be inequitable for that party to retain the benefit of the verdict. *Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 240 F.Supp.2d 465, 476 (M.D.N.C. 2002).

In this case, the asserted fraud or misconduct of Blackwater is their misrepresentation to this Court regarding the true nature of the claims it wished to compel into arbitration. Neither the Petition, nor the other documents of record filed with this Court, point to the claims brought up by counsel for Blackwater in the Wake County Action. Nowhere in the Petition is there any indication that Blackwater was seeking to compel into arbitration claims that they allegedly have against Richard P. Nordan, individually. In fact, the Petition itself states in Paragraph 3 that Richard P. Nordan was named as a party to the Petition only in his official capacity as Ancillary Administrator for the Separate Estates.

While Blackwater may assert that reference to the Demand for Arbitration itself indicates their intention to arbitrate personal claims against Richard P. Nordan individually, the Demand for Arbitration says nothing at all which would indicate to any reasonable person their attempt to recover from Richard P. Nordan's personal assets the amount of $10 million. Further, in reviewing Blackwater's Confidential Memorandum in Support of Demand for Arbitration, there is nothing at all within the Memorandum which would indicate that Richard P. Nordan individually would be liable for the damages Blackwater claims it has suffered by way of the Estates' lawsuit. In fact, in Paragraph 34, Blackwater states:

> Decedents' estates, through Nordan's actions on their behalf
> including the Court Action and through his media strategy to
> influence the courts, are obligated to pay Blackwater ... damages
> for material breaches of the non-suit, non-publicity, and other
> provisions of the ICSAs

This statement directly contradicts Blackwater's statements before Judge Stephens in the Wake County Action.

The naming of Richard P. Nordan, Ancillary Administrator for the Separate Estates, as the Respondent in Blackwater's Petition to this Court is further evidence of the claims they wished this Court to compel into arbitration, and illustrates their intention not to reveal the actual claims on which they sought to hold Richard P. Nordan individually liable. In North Carolina, a party sued in his capacity as executor cannot be held personally liable for damages awarded. *Beaty v. Gingles et al, Ex'rs*, 53 N.C. (8 Jones) 302 (1860). The North Carolina Supreme Court's holding in *Beaty* has gone uncontradicted for one-hundred and forty-seven years, and still today stands as good law.

The premise of the case is that an executor cannot be personally liable for causes of action created by his decedent, and similarly, that an estate cannot be held liable for the personal tortious actions of the executor after the decedent dies. *Ibid.* In so holding, the North Carolina court held that in an action against the executor personally, the case should be nonsuited if the claim is brought against the executor in his capacity as the executor, because in so naming, the ultimately liable party would be the estate, and not the executor. *Ibid.*

What the *Beaty* decision makes clear, and what would have been transparent to any attorney, is that there is a legal distinction between an administrator,

individually, and an administrator in his role as administrator. Such a distinction would apply, as here, due to the fact that in an action for damages, the assets of the estate would be subject to an award if brought against the administrator as the administrator, and the administrator's personal assets would be subject to an award against the administrator personally. Further, based upon the manifest contradiction between the stance Blackwater has taken before this Court in obtaining the Order, and the position they argued before Judge Stephens in the Wake County Action, Blackwater also recognized the same legal distinction. In recognizing that distinction, this Court can only come to the conclusion that Blackwater willfully withheld any information regarding their claims against Richard P. Nordan knowing that revealing such information would deprive this Court of jurisdiction to enter their desired Order.

In conclusion, Blackwater withheld from this Court the true nature of the claims they wished to compel to arbitration, knowing that if revealed, those claims would deprive this Court of the appropriate subject matter jurisdiction to enter an order in their favor. What is also clear is that Blackwater has taken two completely inapposite positions before separate tribunals. If this Court's Order was obtained through such pretenses, Richard P. Nordan, individually, is entitled to relief. The relief requested is for this Court to either lift its Order, or to issue a clarification, stating exactly who and what has been ordered to arbitration.

III. RICHARD P. NORDAN INDIVIDUALLY HAS NEVER APPEARED IN THIS ACTION, WAS NOT NAMED AS A PARTY TO THIS ACTION, AND NEVER RECEIVED PROPER SERVICE OF PROCESS OF THIS PETITION.

Richard P. Nordan, Individually, was not named as a party in Blackwater's Petition to Compel Arbitration. Additionally, Richard P. Nordan, Individually, was never

properly served with a copy of the Summons and Petition, pursuant to the requirements of Fed. R. Civ. P., Rule 4. Finally, Richard P. Nordan, Individually, never consented to be bound to the arbitration provisions of the ICSAs, and was personally not a signatory to the ICSA or any other agreement with either of the Petitioners, and therefore, should this Court's Order compelling arbitration encompass claims against Richard P. Nordan, Individually, it would act to deprive Richard P. Nordan, Individually, of, among other things, his right to a jury trial guaranteed by Article 1, Section 25 of the North Carolina Constitution. For the foregoing reasons, Richard P. Nordan, individually, is entitled to relief from this Court's Order pursuant to Fed. R. Civ. P., Rule 60(b)(6).

The provisions of Rule 60(b)(6) were enacted to provide a "grand reservoir of equitable power to do justice in a particular case. *Compton v. Alton Steamship Co.*, 608 F.2d 96, 106 (5th Cir. 1979). The provision itself "vests power in courts adequate to enable them to vacate judgment whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). Although the requirements for requesting relief under this provision necessitate a showing of "extraordinary circumstances", this standard is met here.

Based on the facts that Richard P. Nordan, individually, was never a signatory to any arbitration agreement with Blackwater, he had the right not to expect to be hauled before an arbitration panel to explain or defend allegations which, if found, would deprive him of his personal assets and lifetime earnings. Further, because the Summons and actual Petition filed in this case made no mention of him personally being liable to Blackwater for damages, he had no reason to expect such an action. Moreover, had he been actually apprised, consistent with the requirements of due process, of the

actual claims against him, he would have then been able to enter a proper defense, and could then have asserted defenses on his own behalf. Precedent for allowing this motion can be found within this federal circuit. The Fourth Circuit has upheld a District Court's order allowing a motion under Rule 60(b)(6), in a case where the movant lacked any real knowledge regarding the substantive matter of the claims. *Nat. Credit Union Admin. v. Gray*, 1 F.3d 262, 266 (4th Cir. 1993). Although arising under a different set of facts, the Fourth Circuit's decision in *Nat. Credit Union* only shows that when a party is deprived of the opportunity to truly learn the nature of the claims presented against him, it is proper for a Court to grant "extraordinary" relief.

## CONCLUSION

Based on the unique facts of this case, Richard P. Nordan, Individually, is entitled to his requested relief. Even should the Court not go as far to vacate its original Order, a clarification of the original Order is warranted to so that Richard P. Nordan, Individually, be able to present a proper defense to this Court, be allowed an opportunity to appeal, and, should this Court not be persuaded to grant his requested relief, be properly appraised of the defenses he must raise in the arbitration proceeding.

This the 4th day of May, 2007.

BAILEY & DIXON, L.L.P

By:/s/ David S. Coats
   David S. Coats, N.C. Bar # 16162
By:/s/ J.T. Crook
   J.T. Crook, N.C. Bar # 35232
   Attorneys for Movant
   P.O. Box 1351
   Raleigh, North Carolina 27602-1351
   Telephone: (919) 828-0731
   Facsimile: (919) 828-0731

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on May 4, 2007, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notification of such filing was given, as indicated below, by the CM/ECF system to those registered, or by mailing a copy of the same by U.S. Mail, postage paid, to parties who are not registered to receive a Notice of Electronic Filing for this case:

David F. Kirby
William B. Bystrynski
Kirby & Holt, LLP
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27612

Daniel J. Callahan
Marc P. Miles
Callahan & Blaine, APLC
3 Hutton Centre Drive, Suite 900
Santa Ana, California 92707

Michael P. Socarras
McDermott, Will, & Emery, LLP
600 13th Street N.W.
Washington, D.C. 2005

Kirk G. Warner
Mark Ash
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
Post Office Box 2611
Raleigh, North Carolina 27602-2611

This the 4th day of May, 2007

                            /s/ David S. Coats
                            David S. Coats