# EXHIBIT A
# PART 2

Dockets.Justia.com

| STATE OF NORTH CAROLINA | ▶ *File No* 07 CVS |
|---|---|

WAKE County

In The General Court of Justice
☐ District  ☒ Superior Court Division

| Name of Plaintiff    RICHARD NORDAN | **GENERAL** |
|---|---|
| Tax ID/SSN | **CIVIL ACTION COVER SHEET** |
| Name of Plaintiff 2 | ☒ **INITIAL FILING**   ☐ **SUBSEQUENT FILING** |
| | Rule 5(b), Rules of Practice For Superior and District Courts |
| Tax ID/SSN | *Name and Address Of Attorney Or Party, If Not Represented* |
| Name of Plaintiff 3 | (complete for initial appearance or change of address) |
| | David S. Coats |
| | Post Office Box 1351 |
| | Raleigh, North Carolina 27602 |
| Tax ID/SSN | |

**VERSUS**

| Name of Defendant   BLACKWATER SECURITY CONSULTING | **Attorney Bar No.**   16162 |
|---|---|

| *Tax ID/SSN* | **Summons Submitted** ☒ Yes ☐ No | ☐ Initial Appearance in Case | ☐ Change of Address |
|---|---|---|---|
| *Name of Defendant 2*     *BLACKWATER LODGE AND TRAINING CENTER, INC.* | | **Name of Firm** Bailey & Dixon, L.L.P. | |
| *Tax ID/SSN* | **Summons Submitted** ☒ Yes ☐ No | | |
| *Name of Defendant 3* | | **Tax ID No.** 56-0647766 | **Telephone No.** (919) 828-0731 | **FAX No.** (919) 828-6592 |
| *Tax ID/SSN* | **Summons Submitted** ☐ Yes ☐ No | **Counsel for** ☒ All Plaintiffs ☐ All Defendants ☐ Only (*List Party(ies) represented*) | |

☒ Jury Demanded in Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

| **TYPE OF PLEADING** | **CLAIMS FOR RELIEF FOR:** |
|---|---|
| *(check all that apply)* | |
| ☐ Amended Answer/Reply  (AMND-Response) | ☐ Administrative Appeal  (ADMA) |
| ☐ Amended Complaint  (AMND) | ☐ Appointment of Receiver  (APRC) |
| ☐ Answer/Reply (ANSW-Response) | ☐ Attachment/Garnishment (ATTC) |
| ☒ Complaint (COMP) | ☐ Claim and Delivery  (CLMD) |
| ☐ Confession of Judgment  (CNFJ) | ☐ Collection on Account  (ACCT) |
| ☐ Counterclaim vs.  (CTCL) | ☐ Condemnation  (CNDM) |
| ☐ All Plaintiffs ☐ Only (*List on back*) | ☐ Contract  (CNTR) |
| ☐ Crossclaim  vs. (List on back)  (CRSS) | ☐ Discovery Scheduling Order  (DSCH) |
| ☐ Extend Statute of Limitations, Rule 9  (ESOL) | ☐ Injunction (INJU) |
| ☐ Extend Time For Answer  (MEOT-Response) | ☐ Medical Malpractice (MDML) |
| ☐ Extend Time For Complaint  (EXCO) | ☐ Minor Settlement (MSTL) |
| ☐ Rule 12 Motion In Lieu Of Answer  (MDLA) | ☐ Money Owed  (MNYO) |
| ☐ Third Party Complaint *(List Third Party Defendants o Back)* (TPCL) | ☐ Negligence – Motor Vehicle  (MVNG) |
| | ☐ Negligence – Other (NEGO) |
| Other:  *(specify)* | ☐ Motor Vehicle Lien G.S. 44A  (MVLN) |
| | ☐ Limited Driving Privilege *(Out-of-State Convictions*  PLDP) |
| **NOTE:**  *Small claims are exempt from cover sheets.* | ☐ Possession of Personal Property (POPP) |
| | ☐ Product Liability  (PROD) |
| | ☐ Real Property  (RLPR) |
| | ☐ Specific Performance  (SPPR) |
| | ☐ Other:  *(specify)* |

| *Date*  05/04/07 | *Signature of Attorney/Party* |
|---|---|

**NOTE:**  All papers filed in civil actions, special proceedings and estates shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a
format prescribed by the Administrative Office of the Courts.  The Clerk of Superior Court shall require a party to refile any paper which does not include the required
cover sheet.

| NO. | ☐ Additional Plaintiff (s) | Tax ID/SSN |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| NO. | ☐ Additional Defendant (s) ☐ Third Party Defendant (s) | Tax ID/SSN | Summons Submitted |
|---|---|---|---|
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |
|  |  |  | ☐ Yes ☐ No |

| *Plaintiff(s) Whom Counterclaim Asserted* |
|---|
|  |
|  |
|  |
|  |

| *Defendant(s) Against Whom Crossclaim Asserted* |
|---|
|  |
|  |
|  |
|  |

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS _____

RICHARD P. NORDAN,                    )
                                      )
                 Plaintiff,           )
                                      )
vs.                                   )
                                      )          VERIFIED COMPLAINT FOR
BLACKWATER SECURITY                   )     DECLARATORY JUDGMENT AND MOTION
CONSULTING, L.L.C. and                )     FOR TEMPORARY RESTRAINING ORDER
BLACKWATER LODGE AND                  )        AND PRELIMINARY INJUNCTION
TRAINING CENTER, INC.,                )                **(COMP/MOT)**
                                      )
                 Defendants.          )

Plaintiff Richard P. Nordan, complaining of the Defendants Blackwater Security

Consulting, L.L.C. (hereinafter "Blackwater Security") and Blackwater Lodge and Training

Center, Inc. (hereinafter "Blackwater Lodge") (collectively "Blackwater" or "Defendants"),

alleges and says as follows:

## PARTIES

1.      Plaintiff Richard P. Nordan, Individually, is a citizen and resident of Wake

County, North Carolina.

2.      Defendant Blackwater Security is a limited liability company, formed

under the laws of the State of Delaware, residing in and with a principal place of business in

Currituck County, North Carolina.

3.      Defendant Blackwater Lodge is a corporation, formed under the laws of

the State of Delaware, residing in and with a principal place of business in Currituck County,

North Carolina.

## JURISDICTION AND VENUE

4.      Subject matter jurisdiction over this cause and personal jurisdiction over Defendants is conferred upon this Court under and by virtue of G.S. §§ 1-75.4, 7A-240, and 7A-243.

5.      Venue for this cause is properly in this Court pursuant to and in accordance with G.S. § 1-82.

## FACTUAL ALLEGATIONS

6.      On March 10, 2004, W.J. Batalona (hereinafter "Batalona") entered into an Independent Contractor Service Agreement (hereinafter "ICSA") with Defendant Blackwater Security wherein Batalona agreed to perform security services for Defendant Blackwater Security in alleged return for salary and other consideration ('the Batalona ICSA Agreement").

7.      On March 16, 2004, Stephen Helvenston (hereinafter "Helventston") entered into an Independent Contractor Service Agreement with Defendant Blackwater Security identical in substance to the ICSA signed by Batalona, with the same obligations and upon information and belief for equal or similar consideration ("the Helvenston ICSA Agreement").

8.      On March 25, 2004, Mike R. Teague (hereinafter "Teague") entered into an Independent Contractor Service Agreement with Defendant Blackwater Security identical in substance to the ICSA signed by Batalona and Helvenston, with the same obligations and upon information and belief for equal or similar consideration ('the Teague ICSA Agreement").

9.      On February 1, 2004, Jerko Gerald Sovko (hereinafter "Sovko") entered into an Independent Contractor Service Agreement with Defendant Blackwater Security identical in substance to the ICSA signed by Batalona, Helvenston, and Teague, with the same obligations

and upon information and belief for equal or similar consideration ("the Sovko ICSA Agreement").

       10.    In the performance of their contractual duties to Defendant Blackwater Security, Batalona, Helvenston, Teague and Sovko were deployed to Iraq sometime prior to March 31, 2004.

       11.    On March 31, 2004, while escorting a United States military supply convoy through Fallujah, Iraq, Batalona, Helvenston, Teague, and Sovko were attacked and killed by a mob of insurgents.

       12.    On January 5, 2005, Plaintiff Richard P. Nordan, as Ancillary Administrator for the separate Estates of Batalona, Helvenston, Teague, and Sovko, (collectively "the Estates"), filed suit against Defendants for wrongful death and rescission of contract for fraud, in Wake County Superior Court, styled *Richard P. Nordan, as Ancillary Adminstrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Sovko and Wesley J.K. Batalona, Plaintiffs, v. Blackwater Security Consulting, L.L.C., a Delaware Limited Liability Company; Blackwater Lodge and Training Center, Inc., a Delaware Corporation, Justin L. McQuown, an individual; and Thomas Powell, an individual, Defendants*, bearing file number 05 CVS 00173 (hereinafter "*Blackwater I*").

       13.    On January 24, 2005, Defendants filed a Notice of Removal to Federal District Court in the Eastern District of North Carolina in *Blackwater I* on the basis of contended federal question subject matter jurisdiction.

       14.    After extensive briefing and motions of the parties, *Blackwater I* was remanded back to Wake County Superior Court by order of the Honorable Chief Judge Flanagan

on August 11, 2005, for lack of subject matter jurisdiction over the claims of the Estates against Blackwater.

15.    On August 30, 2005, Defendants' appealed the District Court's remand of *Blackwater I* back to Wake County Superior Court to the U.S. Fourth Circuit Court of Appeals. Concurrently with their appeal of Judge Flanagan's remand, Defendants requested that the U.S. Fourth Circuit Court of Appeals issue a Writ of Mandamus ordering the District Court to Review and Reverse its Order of Remand.

16.    On August 31, 2005, Defendants moved in Wake County Superior Court to stay proceedings in *Blackwater I* pending their appeal of the District Court's order to remand proceedings back to North Carolina State Court. This motion was denied by the Honorable Senior Resident Superior Court Judge Donald Stephens on October 4, 2005.

17.    Following the remand of *Blackwater I* to Wake County Superior Court, Defendants filed an Amended Motion to Dismiss on October 13, 2005, at that time arguing, among other bases, that Plaintiff must pursue his claims of fraud as Ancillary Administrator for the Estates in arbitration. This motion has not yet been ruled upon.

18.    On August 24, 2006, the Honorable Allyson K. Duncan entered an Order dismissing Defendants' appeal to the U.S. Fourth Circuit Court of Appeals.

19.    On December 14, 2006, following dismissal of Defendants' appeal to the U.S. Fourth Circuit Court of Appeals, Defendants filed a Demand for Arbitration against Richard Nordan as administrator of the Estates requesting $10,000,000.00 in damages for various alleged acts of Plaintiff as Ancillary Administrator for the Estates. A true copy of this Demand for Arbitration is attached hereto as Exhibit A.

20.    In support of their Demand for Arbitration, Defendants pointed to the

Arbitration clause contained within the ICSA signed by Decedents. This clause, found in Article

20.1 of the ICSA, reads as follows:

> Contractor and BSC hereby agree that any dispute regarding interpretation
> or enforcement of any of the parties' rights or obligations under this
> Agreement shall be resolved by binding arbitration according to the rules
> of the American Arbitration Association and shall be conducted in
> Currituck or Camden County in North Carolina. The arbitrators may
> award attorneys fees to the prevailing party in any arbitration proceeding.
> All costs and expenses of the arbitration, including actual attorney's fees,
> shall be allocated among the parties according to the arbitrator's
> discretion. The arbitrator's award may be confirmed and entered as a final
> judgment in the courts noted above and enforced in accordance with the
> rules of the American Arbitration Association. Proceeding to arbitration
> and obtaining an award thereunder shall be a condition precedent to the
> bringing or maintaining of any action in any court with respect to any
> dispute arising under this Agreement, except for the institution of a civil
> action of a summary nature where the relief sought is predicated on there
> being no dispute with respect to any fact or relief of an injunctive nature.
> Contractor hereby waives any rights to seek removal of any dispute to the
> state or federal courts.

21.    The acts entitling Defendants to alleged damages include Plaintiff's

alleged disclosure of politically and militarily sensitive and confidential information, which have

allegedly caused Blackwater to sustain material damages.

22.    On December 21, 2006, Defendants filed a Petition for Order Directing

the Arbitration with the U.S. District Court for the Eastern District of North Carolina, requesting

that the District Court order the proceeding into arbitration. A true copy of this Petition is

attached hereto as Exhibit B.

23.    The claims alleged against Plaintiff individually by Defendants which

Defendants intend to arbitrate, as described in a "Memorandum of Law in Opposition to Issuance

of TRO" sound solely in Breach of Contract, for breach of the Decedent's covenant not to sue

and the Decedent's duties of confidentiality and non-publicity, contained or incorporated into

each ISCA, not in Tort. A true copy of the "Memorandum of Law in Opposition to Issuance of

TRO" filed by Defendants in *Blackwater I* is attached hereto as Exhibit C, and the alluded to

description of Defendants claims against Plaintiff individually can be found in both Paragraphs 6

and 9.

   24. Plaintiff has not been served in his individual capacity with either

Defendants' Demand for Arbitration or the Petition to the U.S. District Court to Direct

Arbitration.

### FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT

   25. The allegations contained in Paragraphs 1 through 24 of this Complaint

are realleged and incorporated herein by reference.

   26. This action is commenced pursuant to G.S. § 1-253, the Uniform

Declaratory Judgment Act, seeking a declaration of the rights, status, and obligations of Plaintiff

and Defendants pursuant to the aforementioned ICSA Agreements and Defendants'

aforementioned Demand for Arbitration.

   27. Plaintiff was not a party to the ICSA Agreements entered into between the

Decedents and Defendant Blackwater Security which contained the relevant arbitration

agreement.

   28. Plaintiff has never signed the ICSA or any other agreement with either

Defendant whereby Plaintiff agreed to arbitrate Defendants' alleged claims against Plaintiff

individually.

   29. Plaintiff has never entered into any contract at any time with either of the

Defendants.

30.    Plaintiff has never stated that he is and he is not subject to the provisions of any ICSA Agreement individually.

31.    Defendants are aware that Plaintiff was not a party to any ICSA Agreement and Defendants cannot produce any evidence which would demonstrate Plaintiff's consent or agreement to be personally subject to the arbitration of any claims brought by either Defendant in Arbitration.

32.    Plaintiff has never consented to the Arbitration proceeding initiated by the Defendants before the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA").

33.    The law of the State of North Carolina, the United States Supreme Court, and the Federal Arbitration Act all require that, prior to being subject to an arbitration proceeding, a party to the proceeding must have consented or agreed to arbitration.

34.    Absent consent or agreement, Plaintiff cannot be compelled to participate in arbitration of Defendants' claims against him as Plaintiff was not a party to the ICSA upon which Defendants found their Demand for Arbitration.

35.    Pursuant to North Carolina law, an executor, administrator, or personal representative cannot be individually liable for breach of a contract entered into by the decedent, and therefore Defendants' claims which they seek to arbitrate are barred as a matter of law.

36.    Plaintiff has never received service of process in his individual capacity of Defendants' Demand for Arbitration or Defendants' Petition to the Federal District Court, and as such Defendants' proceeding against Plaintiff individually in arbitration is in violation of his rights as a citizen of the State of North Carolina pursuant to the North Carolina State Constitution, Article 1, Section 19.  Furthermore, Plaintiff has never waived his right to a jury

trial and Plaintiff desires a trial by jury in North Carolina, pursuant to Article 1, Section 25, of the North Carolina State Constitution, of any alleged claims that either of the Defendants allegedly have brought or may bring against him.

       37.    Plaintiff is entitled to a Judgment declaring the following:

          (a)    Plaintiff has never consented or otherwise agreed to arbitration of any matter with either of the Defendants; and

          (b)    Plaintiff is not subject to any alleged claims in any arbitration forum which have been or which may be brought against him in his individual capacity by either of the Defendants, including but not limited to any claims alleged in Defendants' aforementioned Demand for Arbitration;

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

       Plaintiff moves the Court, pursuant to G.S. § 1A-1, Rule 65, for a temporary restraining order and a preliminary injunction prohibiting Defendants from proceeding against Plaintiff individually in Arbitration before ICDR as Plaintiff has never at any time consented or agreed in his individual capacity to arbitrate any dispute that may arise between himself and Defendants; and Plaintiff has not waived and wishes to preserve his right to demand a jury trial with respect to any claim that has or may be brought against him by either of the Defendants; and Plaintiff has never received service of process in his individual capacity, rendering the Arbitration of Defendants' Claims against Plaintiff a violation of his rights as a citizen of the State of North Carolina pursuant to the North Carolina State Constitution, Article 1, Section 19, until such time as this Court resolves Defendants' ability to compel arbitration against Plaintiff.

In support of its Motions, Plaintiff offers the facts as pled in its verified Complaint for a Declaratory Judgment.  As additional support, Plaintiff shows the following:

1.    Pursuant to the allegations of this Verified Complaint, Plaintiff has made a prima facie showing of irreparable harm by presenting evidence that Plaintiff never consented individually to arbitration to resolve any dispute that may arise between himself, individually, and Defendants.

2.    Plaintiff cannot make an appearance in the Arbitration proceedings allegedly against him without waiving his objections to the ability of Defendants' to arbitrate their claims against him.

3.    Should the Arbitration proceedings against him continue without his involvement, Defendants may obtain an arbitration award against Plaintiff, and force Plaintiff to participate in further litigation to object to whatever arbitration award Defendants might win against him at such time Defendants attempt to obtain court approval of their potential arbitration award.

4.    A temporary restraining order is necessary so that Defendants may not continue to seek to proceed with Arbitration against Plaintiff individually for which they apparently contend entitlement to damages of $10,000,000.00.

5.    Should a temporary restraining order not issue, Plaintiff will more likely than not be subject to a judgment – without the benefit of a right to a jury trial - which may rise to the amount of $10,000,000.00, as a result of a proceeding in which he has not agreed to participate in, cannot constitutionally be forced to participate in, and in the event Plaintiff did participate, would result in a waiver of his rightful and valid objections to the arbitration proceeding.

6.      Plaintiff has given notice to Defendants by and through counsel for Defendants that it is seeking a temporary restraining order and preliminary injunction to enjoin Defendants from proceeding in Arbitration on claims against Plaintiff individually.

7.      Notice to Defendants, prior to the issuance of a temporary restraining order, would not be not necessary in this case as the Verified Complaint shows that Plaintiff, individually, and not as Ancillary Administrator of the Estates has never at any time consented to arbitration of any disputes that may arise between himself individually and Defendants.

8.      Whatever damage or harm Defendants may suffer as a result of the issuance of a Temporary Restraining Order and/or Preliminary Injunction is minimal when compared to the likelihood of substantial harm to Plaintiff as Defendants are not prevented from arbitrating whatever claims they may have against the Estates for breach of the provisions of the ISCA signed by the Decedents.

9.      Immediate issuance of a Temporary Restraining Order is necessary to prevent Defendants from conducting a Preliminary Hearing of their arbitration claims against Plaintiff individually, scheduled to occur on or shortly after May 14, 2007.

WHEREFORE, Plaintiff respectfully prays the Court that:

1.      A Temporary Restraining Order be issued prohibiting Defendants from proceeding against Plaintiff in his individual capacity in arbitration;

2.      A hearing on Plaintiff's Motion for a Preliminary Injunction be scheduled as soon as practicable and, specifically, on May 15, 2007, at 10:00 a.m. at the Wake County Courthouse, Courtroom 10-D;

3.      A Permanent Injunction be issued permanently enjoining Defendants from proceeding against Plaintiff in his individual capacity in arbitration;

4.     This Court issue a Declaratory Judgment declaring (a) that Plaintiff, in his

individual capacity, has never consented to arbitration of any dispute

arising between himself individually and the Defendants, and (b) that

Plaintiff is not subject to any alleged claims in any arbitration forum

which have been or which may be brought against him in his individual

capacity by either of the Defendants, including but not limited to any

claims alleged in Defendants' aforementioned Demand for Arbitration;

5.     Plaintiff have and receive a trial by jury in this action on all claims so

triable; and

6.     Plaintiff be granted such other and further relief as the Court may deem

just and proper.

This the  4  day of May, 2007.

BAILEY & DIXON, L.L.P.

By:  _____

David S. Coats
J.T. Crook
Attorneys for Plaintiff
Post Office Box 1351
Raleigh, North Carolina 27602-1351
Telephone: (919) 828-0731

## VERIFICATION

RICHARD P. NORDAN, first being duly sworn, deposes and says that he as read the foregoing and attached Complaint, and that the facts stated therein are true of his own personal knowledge, except such matters as are stated on information and belief, and as to those matters he believes them to be true.

LAURA ANN FLORES
NOTARY PUBLIC
WAKE COUNTY, N.C.
My Commission Expires 11-9-2008.

_____
Richard P. Nordan

Sworn to and subscribed before me,
this the ___4___ day of May, 2007.


_____
NOTARY PUBLIC

My Commission Expires: 11-9-08

12

# **EXHIBIT A**

Case 2:06-cv-00049-F    Document 1    Filed 12/20/200□    Page 2 of 2

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

International Dispute Resolution Procedures _____ **ARBITRATION RULES**
(ENTER THE NAME OF THE APPLICABLE RULES)
**Demand for Arbitration**

| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box. There is no additional administrative fee for this service.* | | | | | ☐ |
|---|---|---|---|---|---|
| Name of Respondent<br>Richard P. Nordan | | | Name of Representative (if known)<br>David F. Kirby | | |
| Address:<br>3605 Glenwood Avenue, Suite 240 | | | Name of Firm (if applicable):<br>Kirby & Holt, LLP | | |
| | | | Representative's Address<br>3201 Glenwood Avenue, Suite 100 | | |
| City<br>Raleigh | State<br>NC | Zip Code<br>27612 | City<br>Raleigh | State<br>NC | Zip Code<br>27612 |
| Phone No.<br>919.782.9322 | | Fax No.<br>919.782.8113 | Phone No.<br>919.861.2111 | | Fax No.<br>919.781.8630 |
| Email Address:<br>mordan@wnslaw.com | | | Email Address:<br>dkirby@kirby-holt.com | | |

The named claimant, a party to an arbitration agreement dated __various_____, which provides for arbitration under the __unspecified_____ Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE Breach of contract: As administrator of the estates of four Blackwater professionals killed by a mob of insurgents on 3/31/04 in Fallujah, Iraq, Respondent has breached decedent's contractual obligations not to sue, not to seek publicity and to protect classified and confidential information, to release Blackwater & all affiliates from all claims, and to assume all risks of "being shot, . . . killed by a firearm . . . , terrorist activity, hand to hand combat" etc. in Iraq. In order to safeguard both its own confidential information as well as sensitive information implicating the interest of the United States at war. Blackwater is filing its Memorandum in Support of this Demand under Article 34 of the above Rules ("Confidential").

| Dollar Amount of Claim $ 10,000,000.00 | Other Relief Sought: ☒ Attorneys Fees  ☒ Interest<br>☒ Arbitration Costs  ☐ Punitive/ Exemplary ☐ Other |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $ 14,000.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:

The three (3) arbitrators should be knowledgeable in both military and government contract law, preferably with personal battlefield experience.

Hearing locale __Currituck County, N.C.____ (check one) ☒ Requested by Claimant  ☒ Locale provision included in the contract

| Estimated time needed for hearings overall:<br><br>__7__ hours or __0__ days | Type of Business: Claimant Contractor supporting U.S. Armed Forces & other U.S. Government clients in war zones<br><br>Respondent Legal Representative of Deceased Private Security Professionals |
|---|---|

Is this a dispute between a business and a consumer?  ☐Yes ☒ No
Does this dispute arise out of an employment relationship?  ☐Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA ☐ Dallas, TX ☐ East Providence, RI ☐ Fresno, CA ☒ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within the timeframe specified in the rules, after notice from the AAA.

| Signature (may be signed by a representative)    Date:<br>12/14/06 | Name of Representative<br>Michael P. Socarras LLP |
|---|---|
| Name of Claimant<br>Blackwater Security Consulting, LLC | Name of Firm (if applicable)<br>McDermott Will & Emery |
| Address (to be used in connection with this case):<br>P.O. Box 1029 | Representative's Address:<br>600 Thirteenth Street, N.W. |
| City<br>Moyock | State<br>NC | Zip Code<br>27958 | City<br>Washington | State<br>DC | Zip Code<br>20006 |
| Phone No.<br>252.435.2488 | | Fax No.<br>252.435.6388 | Phone No.<br>202.756.8110 | | Fax No.<br>202.756.8087 |
| Email Address:<br>handrew@blackwaterusa.com | | | Email Address:<br>msocarras@mwe.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION (ELIZABETH CITY)

BLACKWATER SECURITY CONSULTING,
LLC, a Delaware Limited Liability Company;
and BLACKWATER LODGE AND TRAINING
CENTER, INC., a Delaware Corporation

       Petitioners,
       vs.

RICHARD P. NORDAN, as Ancillary
Administrator for the Separate Estates of
STEPHEN S. HELVENSTON, MIKE R.
TEAGUE, JERKO GERALD ZOVKO, and
WESLEY J. K. BATALONA,

       Respondent.

Civil Action No. _____

## PETITION FOR ORDER DIRECTING ARBITRATION
## PURSUANT TO THE FEDERAL ARBITRATION ACT

Petitioners Blackwater Security Consulting, L.L.C., and Blackwater Lodge and Training Center, Inc. (hereinafter "Petitioners") hereby petition this Court for an Order pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, directing Richard P. Nordan (hereinafter "Respondent"), as ancillary administrator for the separate estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J. K. Batalona (hereinafter "Decedents") to proceed in this judicial district with arbitration in accordance with the terms of the Independent Contractor Service Agreements (hereinafter, "Service Agreements") entered into between each Decedent and Blackwater Security Consulting, L.L.C. (hereinafter, "Blackwater Security").

### PARTIES

1.    Petitioner Blackwater Security is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Moyock, Currituck County, North Carolina.

2.  Petitioner Blackwater Lodge and Training Center, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Moyock, Currituck County, North Carolina.

3.  Respondent Richard P. Nordan is, upon information and belief, a resident of Wake County, North Carolina.  He is named in this action in his official capacity as ancillary administrator of the separate estates of the Decedents:

      a.  Decedent Stephen S. Helvenston was, at the time of his death, a resident of the State of California;

      b.  Decedent Mike R. Teague was, at the time of his death, a resident of the State of Tennessee;

      c.  Jerko Gerald Zovko was, at the time of his death, a resident of the State of Hawaii; and

      d.  Wesley J. K. Batalona was, at the time of his death, a resident of the State of Ohio.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this proceeding under Section 4 of the Federal Arbitration Act (9 U.S.C. §4) and under 28 U.S.C. §1332 because this is a civil matter between citizens of different states wherein the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.  This Court has personal jurisdiction over Respondent pursuant to N.C.G.S. § 1-75.4.  Respondent is a resident of North Carolina and was appointed as ancillary administrator of Decedents' separate estates in North Carolina.  In violation of a written arbitration agreement, Respondent has instituted an action against Petitioners in the Superior Court of North Carolina.

Additionally, Decedents entered into Service Agreements with Blackwater Security, a resident of this State, and Decedents agreed that the Service Agreements would be governed by North Carolina law and that any disputes would be resolved by binding arbitration in Currituck or Camden County, North Carolina.

6.    Venue is appropriate in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391 because:  (a) the Service Agreements entered into between each Decedent and Blackwater Security require that disputes about the respective rights and obligations of the Decedents and Blackwater Security under the Service Agreements be resolved by binding arbitration in "Currituck or Camden County" (within this judicial district), and (b) Respondent has breached the Service Agreements within this judicial district.

7.    Assignment of this case to the Northern Division is appropriate pursuant to Local Rule 40.1 because Blackwater Security and Blackwater Lodge and Training Center, Inc. maintain their principal offices in Currituck and Camden Counties.  Additionally, the Service Agreements provide for arbitration in Currituck or Camden County, within the Northern Division of this judicial district.

## BACKGROUND

In support of this Petition, Petitioners respectfully show the Court as follows:

8.    As part of their work for Blackwater Security, each of Decedents executed an Independent Contractor Service Agreement ("Service Agreement").  True and accurate copies of each of the four Service Agreements, which are identical in all material respects, are attached hereto as Exhibits A-D.

9.    In the Service Agreements, Decedents expressly agreed to binding arbitration. Specifically, Section 20.1 of the Service Agreements requires that "any dispute regarding

interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association."

10.    Nordan, as ancillary administrator of the estates of Decedents, is bound by Section 20.1 of the Service Agreements.

11.    Decedents' written agreements to arbitrate are valid and enforceable and require Respondent to submit to binding arbitration all of Respondent's obligations and Petitioners' rights under the Service Agreements.

12.    Blackwater Security and Respondent have a dispute about Blackwater Security's rights under the Service Agreements, and about the Decedents' obligations under the Service Agreements. Respondent filed a lawsuit on January 5, 2005, as ancillary administrator of the separate estates of the Decedents in the Superior Court of North Carolina in Wake County, alleging claims for wrongful death and seeking rescission of the Service Agreements (hereinafter, the "Lawsuit"). A true and accurate copy of the Complaint in the Lawsuit is attached hereto as Exhibit E. The Lawsuit allegedly arises out of a March 31, 2004, incident in Fallujah, Iraq, in which Iraqi insurgents murdered the Decedents. At the time of their ambush and brutal murders, Decedents were working for Blackwater Security in support of the U.S. Armed Forces in Iraq escorting a kitchen supply convoy to U.S. Army Camp Ridgeway. (Ex. E ¶¶ 12, 59).

13.    By seeking rescission of the Service Agreements in the Lawsuit, Respondent denies that Decedents have any obligations, and that Blackwater Security has any rights, under the Service Agreements. Blackwater Security maintains that it and its affiliates and employees, including Blackwater Lodge and Training Center, Inc., which is also a Defendant in the Lawsuit,

4

have legally valid and enforceable rights under the Service Agreements, including without limitation their right to be released from any and all claims by the Respondent as administrator of Decedents' estates, as well as the right not to have claims for wrongful death made, to keep Decedents' work confidential and out of the public domain, and to have Decedents assume all of the risks of their work in Iraq.

14.     Rescission of the Service Agreements, including rescission of the arbitration contracts in the Service Agreements, on grounds of fraud or otherwise, is for the arbitrators to decide. As recently stated by the United States Supreme Court, "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. ____, 126 S. Ct. 1204, 1209 (2006); *accord Peoples Security Life Ins. v. Monumental Life Ins.*, 867 F.2d 809, 813-14 (4th Cir. 1989).

15.     The arbitration provision in the Service Agreements is enforceable by all Defendants in the Lawsuit because the claims brought against Defendants are based on the same operative facts, allege that the Defendants acted in concert, and are inherently inseparable from each other. The Lawsuit in its entirety, including all claims therein, is a dispute covered by Respondent's valid and enforceable duty to arbitrate.

16.     Consistent with the terms of the Service Agreements, Blackwater Security has filed a Demand for Arbitration with the American Arbitration Association, a copy of which is attached as Exhibit F.

# EXHIBIT 4

# Exhibit 4

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:06-CV-49 (F)

BLACKWATER SECURITY                      )
CONSULTING, LLC, a Delaware Limited      )
Liability Company; BLACKWATER            )
LODGE AND TRAINING CENTER, INC.,         )
a Delaware Corporation,                  )
                                         )   **DEFENDANT'S MOTION TO DISMISS,**
          Plaintiffs/Petitioners,        )   **OR IN THE ALTERNATIVE,**
                                         )   **MOTION TO STAY**
     v.                                  )
                                         )
RICHARD P. NORDAN, as Ancillary          )
Administrator for the separate Estates of )
STEPHEN S. HELVENSTON, MIKE R.           )
TEAGUE, JERKO GERALD ZOVKO and           )
WESLEY J.K. BATALONA,                    )
                                         )
          Defendant/Respondent.          )
_____)

          COMES NOW Defendant in the above-entitled action, pursuant to 28 U.S.C. § 12(b)(3)

and (6), as well as the *Colorado River* abstention doctrine, and hereby moves the Court for an

Order dismissing Plaintiff's entire action, including the Petition for Order Directing Arbitration,

or in the alternative, staying the entire proceeding until the resolution of the pending, duplicative

North Carolina state court action. This motion is based upon the following grounds:

          1.     Pursuant to the abstention doctrine articulated by the U.S. Supreme Court in

*Colorado River Water Conservation District v. United States*, 420 U.S. 800 (1976), the instant

matter should be dismissed in favor of Plaintiff's compulsory counterclaim in the pending state

court action entitled *Richard P. Nordan, etc. v. Blackwater Security Consulting, LLC, et al.*

(Case No. 05CV000173).

1

2.     The Plaintiff's petition for order directing arbitration fails to state a claim upon which relief may be granted, since the claim may not be brought by way of an independent action, but instead is a compulsory counterclaim to the pending state court action entitled *Richard P. Nordan, etc. v. Blackwater Security Consulting, LLC, et al.* (Case No. 05CV000173), and thus should be dismissed pursuant to *Federal Rules of Civil Procedure* Rule 12(b)(6).

3.     This Court is the improper venue for the instant petition to compel arbitration, since the arbitration claim brought by Plaintiff is a compulsory counterclaim to the pending state court action entitled *Richard P. Nordan, etc. v. Blackwater Security Consulting, LLC, et al.* (Case No. 05CV000173), and thus should be dismissed pursuant to *Federal Rules of Civil Procedure* Rule 12(b)(3).

In support of this motion to dismiss, or in the alternative, motion to stay, the Defendant concurrently submits herewith the Defendant's Memorandum of Law in Support of Motion to Dismiss, or in the alternative, Motion to Stay and a Request for Judicial Notice.

WHEREFORE, Defendant, by his undersigned attorneys, moves this Court for an Order dismissing the instant action in its entirety, or in the alternative, staying the matter until the resolution of the pending state court case.

This 10th day of January 2007.

CALLAHAN & BLAINE, APLC

By: _____

DANIEL J. CALLAHAN (Cal. Bar No. 91490)
BRIAN J. McCORMACK (Cal. Bar No. 167547)
MARC P. MILES (Cal. Bar No. 197741)
3 Hutton Centre Drive, Suite 900
Santa Ana, California 92707
(714) 241-4444
Fax: (714) 241-4445

2

Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary Administrator of
the separate Estates of STEPHEN S. HELVENSTON,
MIKE R. TEAGUE, JERKO GERALD ZOVKO and
WESLEY J.K. BATALONA

KIRBY & HOLT, LLP

By:

DAVID F. KIRBY (N.C. Bar # 7841)
WILLIAM B. BYSTRYNSKI (N.C. Bar # 20883)
P.O. Box 31665
Raleigh, North Carolina 27622
(919) 881-2111
Fax: (919) 781-8630
LR 83.1 Counsel
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary Administrator of
the separate Estates of STEPHEN S. HELVENSTON,
MIKE R. TEAGUE, JERKO GERALD ZOVKO and
WESLEY J.K. BATALONA

3

## CERTIFICATE OF SERVICE

I hereby certify I electronically served **Defendant's Motion to Dismiss, or in the Alternative, Motion to Stay** by sending notification via email addressed to the following:

Kirk G. Warner
kwarner@smithlaw.com
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
P. O. Box 2611
Raleigh, NC 27602

This the _10_ day of January, 2007.

KIRBY & HOLT, L.L.P.

David F. Kirby
N.C. Bar #7841

### THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION
### NO. 2:06-CV-49 (F)

| | | |
|---|---|---|
| BLACKWATER SECURITY CONSULTING, LLC, a Delaware Limited Liability Company; BLACKWATER LODGE AND TRAINING CENTER, INC., a Delaware Corporation, | ) ) ) ) ) | |
| Plaintiffs/Petitioners, | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY** |
| v. | ) ) ) | |
| RICHARD P. NORDAN, as Ancillary Administrator for the separate Estates of STEPHEN S. HELVENSTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO and WESLEY J.K. BATALONA, | ) ) ) ) ) ) | |
| Defendant/Respondent. | ) ) | |

The Defendant hereby submits this memorandum of law in support of his Motion to Dismiss, or in the alternative, Motion to Stay, in accordance with *Federal Rules of Civil Procedure* Rule 12(b)(3) and (6), the *Colorado River* abstention doctrine, and Local Rule 7.1 of the U.S. District Court for the Eastern District of North Carolina.

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.    The Case Should Be Dismissed Under the *Colorado River*
          Abstention Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         1.    The Federal Proceeding is Parallel to the Pending
              State Court Matter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

         2.    The Supreme Court Balancing Factors Weigh in
              Favor of Abstention. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             a.    Jurisdiction Over Property. . . . . . . . . . . . . . . . . . . . . . . 9

             b.    The Inconvenience of the Federal Forum. . . . . . . . . . . . 10

             c.    Avoiding Piecemeal Litigation. . . . . . . . . . . . . . . . . . . . 11

             d.    Order in Which Jurisdiction Was Obtained by
                 the Concurrent Forums. . . . . . . . . . . . . . . . . . . . . . . . . . 12

             e.    Rule of Decision on the Merits. . . . . . . . . . . . . . . . . . . . 13

             f.    Adequacy of State Court Proceeding. . . . . . . . . . . . . . . 13

             g.    Reactive Nature of the Federal Suit. . . . . . . . . . . . . . . . 14

         3.    Dismissal is the Proper Application under the *Colorado River*
              Abstention Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     B.    This Case Should be Dismissed for Failure to State a Claim Upon
          Which Relief May Be Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     C.    This Case Should Be Dismissed for Improper Venue. . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

## TABLE OF AUTHORITIES

**Cases**

*Automated Systems and Programming, Inc. v. Cross*, 176 F.Supp.2d 458 (D.Md. 2001) . . . . . .7

*Colorado River Water Conservation District v. United States*, 420 U.S. 800 (1976) . . . . . . .4, 12

*Gillikin v. Eastern Dredging & Construction, Inc.*, 1996 U.S. Dist. LEXIS 17259
(E.D. Va 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Great American Insurance Company v. Gross*, 468 F.3d 199, *17-18 (4th Cir. 2006) . . . . . . . .5

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Holland v. Hay*, 840 F.Supp. 1091 (E.D. Va 1994) . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 11, 13, 14

*In Re Blackwater Security Consulting, LLC*, 460 F.3d 576 (4th Cir. 2006) . . . . . . . . . . . . . . . . .3

*McLaughlin v. United Virginia Bank*, 955 F.2d 930, 935 (4th Cir. 1992) . . . . . . . . . . . . . . . . .14

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 17-18,
fn 20 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073
(4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Nordan v. Blackwater Security Consulting, LLC*, 382 F.Supp.2d, 801 (E.D.N.C. 2005) . . . . . . .3

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996 . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F.Supp. 1323, 1326 (D.Del. 1987) . . . . . . . . .6

*Stevens v. Henry*, 121 N.C. App.150, 464 S.E.2d 704 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . .17

*STO Corporation v. Lancaster Homes, Inc.*, 11 Fed.Appx. 182, 186 (4th Cir. 2001) . . . . . . . . .5

*Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 2006 U.S. App. LEXIS 31515
(4th Cir. December 22, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 343 (4th Cir. 2002) . . . . . . . . . .15

**Statutes**

*F.R.C.P.* 12(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*F.R.C.P.* 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*F.R.C.P.* 13(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 16, 18

G.S. §1A-1, Rule 13(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 17

## **INTRODUCTION**

This case is a classic example of forum shopping. Plaintiffs Blackwater Security Consulting, LLC and Blackwater Lodge and Training, Inc. (collectively, "Blackwater") are parties to another civil action arising out of the same transaction and events, which is currently pending in the North Carolina state court (Case No. 05-CV-000173). Blackwater has only instituted this federal court action after two years of unsuccessful attempts to remove the pending state court case to federal court.

More specifically, Blackwater previously removed the state court case to federal court. This District Court (Western Division) found that the removal was improper and remanded the case back to state court. Blackwater appealed that decision to the Fourth Circuit Court of Appeals. The Fourth Circuit dismissed the appeal and denied its petition for writ of mandamus.

Now, Blackwater has instituted this federal proceeding, which constitutes a compulsory counterclaim to the action pending in the state court. Since Blackwater failed in its attempts to remove the state court action to federal court, it has gone forum shopping by filing the instant matter in federal court, as opposed to properly filing its compulsory counterclaim in state court.

Under a well-established Supreme Court abstention doctrine, this matter should be dismissed in favor of the already-pending state court proceeding. This action is not one involving federal law or a case over which this Court has original jurisdiction. Instead, this Court's jurisdiction is premised solely upon diversity of citizenship (a source of federal jurisdiction Blackwater could not obtain as a defendant in this pending state court action).

This case is simply a breach of contract claim, where the contract in question calls for the application of North Carolina state law. Therefore, the only reason that this matter is presently before this District Court is because Blackwater failed at its prior attempts to obtain federal

1

jurisdiction in the pending state court action. This forum shopping is not only improper, but also flies in the face of long-standing principles of judicial economy, which dictate that all disputes between parties be resolved in a single action instead of piecemeal litigation in several forums.

This Court should not be burdened with the instant case, in light of the fact that the matter truly constitutes a compulsory counterclaim under state law, in a state court action which has been pending for two years. Thus, the case should be dismissed, or in the alternative, stayed until the resolution of the state court proceeding.

## STATEMENT OF FACTS

On March 31, 2004, four American security contractors working for Blackwater were ambushed, killed, beaten, burned, dragged through the streets of Fallujah, Iraq, and strung up from a bridge for the entire world to see. These deaths were the result of Blackwater's intentional conduct, wherein it failed to provide the men with certain tools, protections, and information in favor of increasing its profit margin. By way of an example, it was contractually mandated that these men operate in armored vehicles. Blackwater chose not to provide these men armored vehicles in favor of saving $1.5 million. In addition, there are many other instances of intentional conduct by Blackwater which caused these mens' death, including a grudge by a Blackwater manager against one of the security contractors which ultimately lead to the manager sending these four men into the heart of Fallujah (which at that point in time was one of the most dangerous places in Iraq) undermanned, under-gunned, without armored vehicles, and without even so much as a map. [*See Complaint* (Exhibit "A")][1]

---

[1] Exhibits are attached to the concurrently-filed Request for Judicial Notice.

On January 5, 2005, Richard P. Nordan, as the ancillary administrator of the separate estates of the four security contractors, filed an action for wrongful death and fraud in the Superior Court of North Carolina, Wake County. [Exhibit "A"]  On January 24, 2005, Blackwater improperly removed the case to federal court, to the Western Division of the Eastern District of North Carolina. [Exhibit "B"]  On August 11, 2005, Chief U.S. District Judge Louise W. Flanagan granted a motion for remand, finding that the federal court was without subject-matter jurisdiction over the case. *See Nordan v. Blackwater Security Consulting, LLC*, 382 F.Supp.2d, 801 (E.D.N.C. 2005) [Exhibit "C"].

Thereafter, Blackwater filed a petition for writ of mandamus and an appeal with the Fourth Circuit, challenging Judge Flanagan's remand order.  After extensive briefing and oral argument, on August 24, 2006, the Fourth Circuit dismissed Blackwater's appeal and denied its petition for writ of mandamus. *See In Re Blackwater Security Consulting, LLC*, 460 F.3d 576 (4th Cir. 2006) [Exhibit "D"].

Following the Fourth Circuit's dismissal of Blackwater's appeal, a motion was filed to lift the stay that had been placed on the state court action during the Fourth Circuit's appellate review.  Prior to the hearing of that motion to lift stay, Blackwater filed a Petition for Rehearing and Rehearing En Banc to the entire Fourth Circuit.  Those petitions were denied. [Exhibit "E"]  Blackwater then filed a motion to stay the issuance of the Fourth Circuit's mandate, so that it could file a Petition for Certiorari with the U.S. Supreme Court.  That motion for stay was denied. [Exhibit "F"]  Blackwater then filed a motion to stay with the U.S. Supreme Court.  That motion was similarly denied by Chief Justice John Roberts. [Exhibit "G"]

On November 27, 2006, the North Carolina state court lifted the stay that was imposed during appellate review of the remand order, permitting the case to proceed.  Shortly thereafter,

3

Nordan obtained an out-of-state commission for the taking of a deposition of a material witness in Anchorage, Alaska. In response thereto, Blackwater filed an application to compel arbitration of the state court proceeding. Blackwater also filed a motion to dismiss. Despite the filing of the application to compel arbitration, the state court found that Nordan could proceed in discovery with the deposition of the material witness in Alaska. [Exhibit "H"]

On or about December 20, 2006, Blackwater filed the instant action in an effort to compel arbitration of its breach of contract claim arising out of the contract that each of the four decedents had with Blackwater. More specifically, Blackwater's arbitration claim stems from an allegation that the estates breached a provision in the decedents' respective contracts by filing the North Carolina state court action. Thus, the arbitration claim which is the subject of this federal court proceeding not only arises out of the same transaction and events as the state court proceeding, but is inextricably intertwined with the state court action since it is that state case that forms entire basis for the alleged breach of contract. As described in greater detail below, Blackwater's arbitration claim is a compulsory counterclaim to the state court action, which justifies abstention in this proceeding in favor of the state court matter that has been pending for two years.

## STATEMENT OF LAW

A.    The Case Should Be Dismissed Under the *Colorado River*

Abstention Doctrine.

In the seminal case of *Colorado River Water Conservation District v. United States*, 420 U.S. 800 (1976), the U.S. Supreme Court created a new ground for federal courts to abstain from consideration of matters over which they have jurisdiction. The *Colorado River* abstention

doctrine applies in limited cases where there exists concurrent federal and state court proceedings, wherein the federal court abstains from consideration of its proceedings in deference to the pending state court matter.

The Fourth Circuit and the District Courts therein have adopted and applied the abstention doctrine of *Colorado River*. The Fourth Circuit articulated this doctrine as follows:

> The Supreme Court, however, has indicated that in certain limited instances, federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest. These exceptional circumstances inevitably relate to a policy of avoiding unnecessary constitutional decisions and of accommodating federal/state relations. [Internal quotes and citations omitted] *Great American Insurance Company v. Gross*, 468 F.3d 199, *17-18 (4th Cir. 2006).

The analysis of the application of the *Colorado River* abstention doctrine is a two-step process. First, the court must decide whether the federal and state suits are parallel. Second, if they are, the court applies a seven-factor balancing test. "The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits. If parallel suits exist, then we must carefully balance several factors with the balance heavily weighed in favor of the exercise of jurisdiction." *See Id.* at *21-22. Citing to the U.S. Supreme Court, the Fourth Circuit has recognized that abstention should only be applied in "exceptional circumstances."

> We start with the premise that "abstention from the exercise of federal jurisdiction is the exception, not the rule." [Citation.] The federal courts have a "virtually unflagging obligation . . . to exercise jurisdiction given to them." [Citation.] However, Colorado River held that in certain exceptional circumstances, a federal court should abstain in the face of a state court's contemporaneous exercise of jurisdiction. [Citation.] Colorado River abstention rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." [Citation.] *STO*

5

*Corporation v. Lancaster Homes, Inc.*, 11 Fed.Appx. 182, 186 (4th Cir. 2001).

As demonstrated below, the instant case is one which meets this "exceptional circumstances" test for abstention under *Colorado River*. First, the instant federal case is parallel to a North Carolina state court case that has been pending for two years. Second, the applicable factors of the balancing test articulated by the Supreme Court weigh in favor of abstention.

    1.    <u>The Federal Proceeding is Parallel to the</u>

           <u>Pending State Court Matter.</u>

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). The proceedings need not be identical, but rather substantially similar. *See Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F.Supp. 1323, 1326 (D.Del. 1987).

Here, the pending North Carolina state court action is for wrongful death and fraud in the inducement of the decedents' employment contracts with Blackwater. The instant federal proceeding is Blackwater's petition to compel arbitration of a breach of contract claim, where the alleged breach stems from the filing of the state court case itself. Moreover, this federal proceeding concerns an attempt to enforce a contractual provision of a contract which itself is the subject of a fraud in the inducement cause of action in state court that could render the entire contract rescinded. Not only is the arbitration claim a parallel matter to the state court action, it is in fact a compulsory counterclaim, which <u>must</u> be asserted in the state court proceeding and not in a different forum.

North Carolina law on compulsory counterclaims [G.S. §1A-1, Rule 13(a)] is identical to the federal law on compulsory counterclaims [*F.R.C.P.* Rule 13(a)]. Both define a compulsory

counterclaim as follows:

> A pleading shall state as a counterclaim any claim which at the
> time of serving the pleading the pleader has against any opposing
> party, if it arises out of the transaction or occurrence that is the
> subject matter of the opposing party's claim and does not require
> for its adjudication the presence of third parties of whom the court
> cannot acquire jurisdiction. *F.R.C.P.* Rule 13(a); and G.S. §1A-1,
> Rule 13(a).

Here, Blackwater's breach of contract claim is precisely a compulsory counterclaim.

Blackwater's breach of contract stems from the filing of the state court action. As such, *by its*

*very nature*, it existed at the time the state court action was served on Blackwater and necessarily

includes the exact same issues as contained in the lawsuit itself. Moreover, it involves the

identical parties to the state court action, and does not require the presence of third parties for its

adjudication. Thus, Blackwater's arbitration claim for breach of contract, which arises directly

out of the state court lawsuit, is a classic compulsory counterclaim, which <u>must</u> be asserted in the

state court proceeding, under both North Carolina and federal law.

Directly on point with the instant case, it has been decided that if a federal court action

constitutes a state court compulsory counterclaim, that proceeding is a "parallel suit" for the

purpose of the *Colorado River* abstention analysis. In *Holland v. Hay*, 840 F.Supp. 1091 (E.D.

Va 1994), the court found that because the federal plaintiff's claim was also a compulsory

counterclaim to a pending Georgia state court action, "the issues involved in the two suits are

substantially similar, if not identical," for the purpose of the parallel suit analysis under the

*Colorado River* abstention doctrine. *Id.* at 1099-1100. Similarly, in *Automated Systems and*

*Programming, Inc. v. Cross*, 176 F.Supp.2d 458 (D.Md. 2001), the court found that although

Maryland does not have a compulsory counterclaim rule comparable to that of the federal courts,

*if it did*, that would weigh in favor of abstention under the *Colorado River* analysis. *Id.* at 462-63.

In addition to the issues being substantially similar between the state court action and Blackwater's arbitration claim which it is attempting to prosecute through this federal proceeding, the parties are nearly identical. In the state court action, the plaintiff is Richard P. Nordan, as the Ancillary Administrator of the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, who brought an action against defendants Blackwater Security Consulting, LLC, Blackwater Lodge and Training Center, Inc., and one of its managers Justin L. McQuown. In the instant arbitration claim, plaintiffs Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. have instituted an action against Richard P. Nordan, as the Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko, and Wesley J.K. Batalona. As such, the parties are almost identical—the only exception being the individual Blackwater manager named as a defendant in the state court action. This variation is immaterial.

In all, the arbitration claim which Blackwater is prosecuting through this federal proceeding is a "parallel suit" to the already-pending state court case in North Carolina. Since it constitutes a parallel suit, the next step in the abstention analysis is to weigh the factors articulated by the Supreme Court.

2.   **The Supreme Court Balancing Factors Weigh in Favor of Abstention.**

In *Holland v. Hay*, 840 F.Supp. 1091 (E.D. Va 1994), the court analyzed a case shockingly similar to the instant action. As such, since the *Holland* decision is directly on point, it will be discussed along with the analysis of the Supreme Court factors for abstention. In *Holland*, the plaintiff filed a state court action in Georgia for breach of a franchise agreement. The defendant attempted to remove the case to federal court, but was unsuccessful. After the

removal failed, the defendant instituted a *new* proceeding in the District Court in Virginia. The claims alleged in the federal court matter were identical to those asserted in its compulsory counterclaim in the Georgia state court matter. Thus, the defendants to the federal court proceeding moved to dismiss or stay the case pending the resolution of the Georgia state court action, in light of the abstention doctrine articulated by the Supreme Court in *Colorado River*.

After satisfying itself that the two cases were parallel suits, the court articulated the factors to be considered in analyzing abstention:

> In Colorado River, the Supreme Court identified several factors courts should consider in determining whether exceptional circumstances exist in a particular case: (1) whether property is involved over which the state court has assumed jurisdiction; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. [Citations.] Later, the Court added additional factors, including whether federal law provides the rule of decision on the merits, inadequacy of the state court proceeding to protect plaintiff's rights, and whether either the state or federal suit was a contrived, defensive reaction to the other. [Citations.] Courts are not to use the factors as a "mechanical checklist;" rather they should balance the important factors applying in a given case against their heavy obligation to exercise jurisdiction. [Citation.] *Holland* 840 F.Supp. at 1099.

The following analysis of these factors weighs substantially in favor of abstention.

### a.    Jurisdiction Over Property.

This first factor is inapplicable to the instant action. There is no dispute that there is not any property involved in the subject litigation over which the state court has assumed jurisdiction, in that both actions are for money damages and equitable relief.

b.     The Inconvenience of the Federal Forum.

Here, the federal forum required by this proceeding is significantly more inconvenient than the North Carolina state court forum. Inconvenience of the federal forum refers to, among other things, the "relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), cited with approval in *Colorado River*, 424 U.S. at 818.

This federal proceeding consists of a petition to compel Blackwater's arbitration claim. Blackwater filed its arbitration claim with the International Centre for Dispute Resolution ("ICDR"), located in New York, New York. Litigating the matter in New York will constitute a substantial burden and inconvenience in compelling the attendance of witnesses, as well as the costs associated therewith.

Moreover, with respect to compelling attendance of unwilling witnesses, it would be nearly impossible. The ICDR does not have the subpoena power that the North Carolina court possesses. In addition, many of the witness are located in different states throughout the country. In North Carolina, the parties will be able to obtain out-of-state commission orders for the taking of depositions in a foreign state, which, pursuant to the Full Faith and Credit Clause of the U.S. Constitution, will be able to be turned into deposition subpoenas in the various states where the witnesses are located. No such procedure for obtaining subpoenas in foreign states would be available from the ICDR, as the Courts in the various states would not be compelled to issue subpoenas based on an order from the ICDR.

Therefore, although the federal court in which the instant action is pending is in North Carolina, the actual forum in which Blackwater seeks to compel this arbitration is in New York

at the International Centre for Dispute Resolution, where Blackwater filed its arbitration claim.

More importantly, the ICDR does not have the "availability of compulsory process for attendance

of unwilling witnesses." Consequently, this factor concerning the inconvenience of the federal

forum weighs in favor of abstention to allow the pending state court action to proceed.

c.     <u>Avoiding Piecemeal Litigation.</u>

This third factor has been defined as follows:

> The Supreme Court has referred to the policy of avoiding
> piecemeal litigation as by far <u>the most important Colorado River
> factor</u>. [Citation.] Consideration of this factor requires an "inquiry
> into the scope of the proceeding and nature of available defenses in
> the pending State court action." [Citation.] The federal court may
> consider whether "the claims of all parties in interest can
> satisfactorily be adjudicated in that proceeding, whether necessary
> parties have been joined, and whether such parties are amenable to
> process in that proceeding." [Citation.] [Emphasis added.]
> *Holland*, 840 F.Supp. at 1101.

In analyzing the two parallel suits in the *Holland* case, the court found that "there is little

doubt that denial of defendants' motion for stay or dismissal will result in two separate lawsuits

over essentially the same issue." *Id.* The same result would occur in the instant case. As

described above, Blackwater's arbitration claim is a compulsory counterclaim, which <u>must</u> be

asserted in the pending state court action. The current procedural posture of the state court action

is that Blackwater has not yet answered, but instead filed a motion to dismiss. Assuming that the

motion to dismiss is denied, Blackwater will undoubtedly be filing its compulsory counterclaim,

which will mirror its arbitration claim. The result will be that there will be two separate actions,

deciding the same issues.

To the extent that both of these proceedings are permitted to continue, there is the

undesirable potential for inconsistent results. For example, there exists the possibility that the

11

state court could rescind the subject employment contracts as procured by fraud, while at the same time Blackwater prosecutes its arbitration claim for breach of those rescinded contracts. To complicate matters further, Blackwater has also filed a motion to compel arbitration of the state court action. If this federal proceeding is allowed to continue, there could potentially be two separate arbitration panels litigating the very same issues.

Such scenarios would constitute the piecemeal litigation of these disputes, very likely resulting in inconsistent results. As the Supreme Court has noted, the principles behind the *Colorado River* abstention doctrine "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. Since not staying the instant federal proceeding will result in piecemeal litigation, this "most important" factor weighs in favor of abstention.

d.  **Order in Which Jurisdiction Was Obtained by the Concurrent Forums.**

The state court action was initiated two years ago on January 5, 2005. Only after two years of Blackwater attempting removal and then fighting the remand order all the way to the U.S. Supreme Court did Blackwater commence this federal proceeding. Not only does this factor balance in favor of abstention due to the fact that the state court action was commenced two years prior, the progress of the case also leans toward abstention. The state court action is in the discovery phase. The plaintiff has served written discovery and filed motions to compel Blackwater to answer said discovery. In addition, the state court has ordered the deposition of a material witness named John Potter to be taken in the near future. [Exhibit "H"] On the other hand, this federal case is lagging behind, as the matter was initiated only about 20 days ago, and

it is still at the motion to dismiss stage.

Therefore, the North Carolina state court was first to obtain jurisdiction over the dispute and has progressed further in terms of the prosecution of the case. Hence, this factor weighs in favor of abstention.

e.     **Rule of Decision on the Merits.**

The state court proceeding will be governed by North Carolina law. The contracts which are the subject of Blackwater's arbitration claim contain a choice of law provision in favor of North Carolina law. On its face, this factor may appear to be neutral. However, it is not. If the instant federal proceeding seeking to compel arbitration is permitted to proceed, this matter will <u>not</u> be governed by North Carolina procedural law, but instead by the rules of the American Arbitration Association. Following the procedural rules of the American Arbitration Association is contrary to the rules currently governing the North Carolina state court action, as well as the choice of law provision in the contracts themselves, which call for the application of North Carolina law (including North Carolina procedural law).

Therefore, this factor concerning the rules governing the action weighs in favor of the application of North Carolina law procedural rules, as opposed to those of the American Arbitration Association. This factor similarly weighs in favor of abstention under *Colorado River*.

f.     **Adequacy of State Court Proceeding.**

"This factor involves the ability of the state court to adequately protect plaintiffs' rights and its ability to provide for relief." *Holland*, 840 F.Supp. at 1101. Here, the relief requested by

Blackwater's arbitration claim (monetary damages for breach of contract) are equally available on its compulsory counterclaim in the state court proceeding. There is nothing special in the relief requested by the arbitration claim that requires the case to be litigated in federal court or the requested arbitration forum. As such, since there is adequacy of relief for Blackwater in the state court proceeding, this factor weighs in favor of abstention.

### g.   Reactive Nature of the Federal Suit.

As stated by the Supreme Court, "the vexatious or reactive nature of either the federal or state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 17-18, fn 20 (1983). The Fourth Circuit has accepted the reactive nature of the suit as one of the factors to be considered when determining the propriety of abstention. *See McLaughlin v. United Virginia Bank*, 955 F.2d 930, 935 (4th Cir. 1992).

In *Holland*, the court noted that the defendant instituted the federal court proceeding in an effort to sidestep the Georgia state court's jurisdiction, and only after its attempts to remove the case to federal court failed. *See Holland*, 840 F.Supp. at 1101. "Hence, a stay or dismissal is warranted as a means to deter vexatious use of the courts." *Id.*

Here, Blackwater has similarly instituted this federal proceeding as a reactive or defensive measure only after its numerous attempts to avoid state court jurisdiction failed. The state court action has been pending for more than two years now, during which time Blackwater has been exclusively dedicated to avoiding state court jurisdiction. Initially, Blackwater improperly removed the case to federal court. When the matter was remanded by Judge Flanagan, Blackwater appealed her decision to the Fourth Circuit.

When the Fourth Circuit dismissed Blackwater's appeal, it filed for a petition for rehearing and rehearing en banc. When these petitions for rehearing were denied, Blackwater filed a motion to stay the issuance of the mandate, which would divest the federal court of jurisdiction and give cause of the state court to lift the stay that had been in place during the pendency of the appellate review. When the Fourth Circuit refused to grant the motion to stay, Blackwater then filed an application with the U.S. Supreme Court requesting a stay of the state trial court action. That application was denied by Justice Roberts.

Not once in the past two years did Blackwater ever raise its "breach of contract" claim or institute this federal proceeding. It was only after all of these attempts to avoid state court jurisdiction failed and within days of the state court lifting its stay on November 27, 2006, that Blackwater filed its arbitration claim on December 14, 2006, and instituted this federal proceeding on December 20, 2006. After waiting two years and marching all the way to the U.S. Supreme Court to avoid state jurisdiction and losing at every stage along the way, Blackwater commenced this reactive or defensive federal court proceeding. This factor weighs heavily in favor of abstention. "To validate this strategy would undermine several traditional valued tenants of wise judicial administration." *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 343 (4th Cir. 2002) (Fourth Circuit found district court abused its discretion in not abstaining under *Colorado River*.)

Applying the foregoing factors, there exists exceptional circumstances to justify abstention of the instant case. The proposed proceeding in this Court and the pending North Carolina state court case are unquestionably parallel suits, in that the instant arbitration claim constitutes a compulsory counterclaim, which involves precisely the same issues and parties. Moreover, the balancing of the seven factors articulated by the Supreme Court weighs in favor of

15

applying the *Colorado River* abstention doctrine.

3.     **Dismissal is the Proper Application under the**

       **_Colorado River_ Abstention Doctrine.**

Since no money damages are sought by the instant proceeding, the proper course of action

is for this court to dismiss the proceedings. "[W]here the relief being sought is equitable in

nature or otherwise discretionary, the federal courts not only have the power to stay the action

based on abstention principles, but can also, in otherwise appropriate circumstances, decline to

exercise jurisdiction altogether by either dismissing the suit or remanding it to state court."

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 721 (1996).

Here, the instant proceeding only asks for a discretionary order compelling the Defendant

to participate in the arbitration. Thus, it is not one for money damages, but instead only seeks

equitable relief, and can be dismissed in light of the abstention doctrine. Nonetheless, to the

extent that the Court does not dismiss the proceeding, it is respectfully suggested that the

alternative application of abstention is to stay the proceeding pending the resolution of the state

court case. *See Id.*

B.     **This Case Should be Dismissed for Failure to State a Claim**

       **Upon Which Relief May Be Granted.**

In addition to the dismissal based upon abstention, this instant proceeding should also be

dismissed for failure to state a claim upon which relief may be granted, pursuant to *F.R.C.P.*

12(b)(6). As articulated above, Blackwater's current federal claim is actually a compulsory

counterclaim in the state court action, pursuant to *F.R.C.P.* 13(a). As such, it fails to state a

16

claim in this proceeding, as such claim may only be brought in the state court action.  *"Rule 13(a) of the Federal Rules of Civil Procedure* was amended in large part to prevent a party having a claim which would be the subject of a compulsory counterclaim to avoid stating it as such by bringing an independent action in another court . . . ." *Gillikin v. Eastern Dredging & Construction, Inc.*, 1996 U.S. Dist. LEXIS 17259 (E.D. Va 1996).

This principle holds equally true under North Carolina's identical compulsory counterclaim rule. *See* G.S. §1A-1, Rule 13(a).  In *Stevens v. Henry*, 121 N.C. App.150, 464 S.E.2d 704 (1995), the court reviewed the issue of what to do with an independent action which should have been filed as a compulsory counterclaim in an already pending case.  The court first analyzed the issue by stating the policy behind Rule 13(a): "The purpose of Rule 13(a), which makes certain counterclaims compulsory, is to foster judicial economy by requiring that one court resolve all related claims in a single action." *Id.* at 155.  The court then held that because the independent action was actually a compulsory counterclaim to an already pending case, the proper disposition was to <u>dismiss</u> the subsequent independent action.

> Therefore, we hold that plaintiff's claims in the present action should have been raised as a compulsory counterclaim in the previously filed declaratory judgment action.  We, therefore, hold that the trial judge should have dismissed plaintiff's action *without prejudice* to file the claims asserted in this action as a counterclaim in the pending declaratory judgment action. *Id.* at 155.

The disposition of the instant case should similarly follow.  Since Blackwater's claim is a compulsory counterclaim in the state court action, it fails to state a claim upon which relief may be granted in this forum, and the proper procedure is to dismiss this federal proceeding to permit Blackwater to file its compulsory counterclaim in the state court case (which it still has time to do).  Thus, it is respectfully requested that the Court grant the instant motion to dismiss pursuant to *F.R.C.P.* 12(b)(6).

**C.     This Case Should Be Dismissed for Improper Venue.**

*Federal Rule of Civil Procedure* 12(b)(3) provides for dismissal of an action based on improper venue.  As articulated in detail above, Blackwater's current federal claim constitutes a compulsory counterclaim, which it <u>must</u> assert in the already-pending North Carolina state court action. *See F.R.C.P.* 13(a).  As such, the proper venue for this claim is the state court proceeding, not this federal court.

When venue of the proceeding is improper, the remedy is to <u>dismiss</u> the case in favor of the proper venue. *See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 2006 U.S. App. LEXIS 31515 (4th Cir. December 22, 2006) (Fourth Circuit affirmed dismissal of case due to improper venue under *F.R.C.P.* 12(b)(3), in favor of the case being litigated in Japan.).  Here, the proper venue is not Japan, but instead the North Carolina state court.  As such, Blackwater's instant claim is in the improper venue, since it must be litigated as a compulsory counterclaim in the state court venue.  It is respectfully requested that the Court dismiss the instant proceeding, pursuant to *F.R.C.P.* 12(b)(3).

## CONCLUSION

Based on the foregoing, the Defendant/Respondent respectfully requests that the Court <u>dismiss</u> the instant action pursuant to the *Colorado River* abstention doctrine, *F.R.C.P.* 12(b)(6) and/or *F.R.C.P.* 12(b)(3), as Blackwater's claim is a compulsory counterclaim, which must be litigated as such in the already-pending North Carolina state court action.

18

In the alternative, and based on the same grounds, the Defendant/Respondent respectfully requests that the Court stay this entire matter pending the resolution of the North Carolina state court case.

This 10th day of January 2007.

CALLAHAN & BLAINE, APLC

By: _____

DANIEL J. CALLAHAN (Cal. Bar No. 91490)
BRIAN J. McCORMACK (Cal. Bar No. 167547)
MARC P. MILES (Cal. Bar No. 197741)
3 Hutton Centre Drive, Suite 900
Santa Ana, California 92707
(714) 241-4444
Fax: (714) 241-4445
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates OF STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

KIRBY & HOLT, LLP

By: _____

DAVID F. KIRBY (N.C. Bar No. 7841)
WILLIAM B. BYSTRYNSKI (N.C. Bar No. 20883)
P.O. Box 31665
Raleigh, North Carolina 27622
(919) 881-2111
Fax: (919) 781-8630
LR 83.1 Counsel
Attorneys for Plaintiff
RICHARD P. NORDAN, as the Ancillary
Administrator of the separate Estates OF STEPHEN
S. HELVENSTON, MIKE R. TEAGUE, JERKO
GERALD ZOVKO and WESLEY J.K.
BATALONA

## CERTIFICATE OF SERVICE

I hereby certify I electronically served **Memorandum of Law in Support of Defendant's Motion to Dismiss, or in the Alternative, Motion to Stay** by sending notification via email addressed to the following:

Kirk G. Warner
kwarner@smithlaw.com
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
P. O. Box 2611
Raleigh, NC 27602

This the 10 day of January, 2007.

KIRBY & HOLT, L.L.P.

David F. Kirby
N.C. Bar #7841

# EXHIBIT 5

# Exhibit 5

# CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE

NINTH FLOOR

SANTA ANA CALIFORNIA 92707

(714) 241-4444

FAX (714) 241-4445

WWW.CALLAHAN-LAW.COM

DAN....CALLAHAN*
STE.....E. BLAINE
JIM P. MAHACEK@
MICHAEL J. SACHS†
EDWARD SUBOLIK
BRIAN J. MCCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
#ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURAU M. KOBAL
OFFICE ADMINISTRATOR

January 8, 2007

OUR FILE NUMBER:

2525-02

Ms. Brigitte Omane
International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

> RE:   **Blackwater Security Consulting, LLC, et al. v. Nordan, etc.**
>       **Arbitration No.: 05 181 T 00524 06**

Dear Ms. Omane:

Please allow this correspondence to respond to your letter dated January 3, 2007, regarding a written response in lieu of an Administrative Conference Call.

The matter filed by Blackwater arises out of an incident on March 31, 2004, during which four of Blackwater's independent contractors were ambushed, killed, beaten, burned, dragged through the streets of Fallujah, Iraq, and strung up from a bridge for the world to see. As a result of this incident, the estates of these four men filed a wrongful death and fraud action against Blackwater in North Carolina state court, where the case remains pending.

Blackwater then instituted the instant arbitration claim, contending that the filing of the lawsuit constituted a breach of the decedents' contracts, which contain a covenant not to sue provision. As such, Blackwater's arbitration claim is actually a compulsory counterclaim to the state court case. Therefore, it is anticipated that Blackwater's claim, in its current embodiment as an independent arbitration claim, will not long survive. In fact, on January 10, 2007, the estates will be filing a Motion to Dismiss the federal court proceeding Blackwater instituted in an effort to compel the estates to arbitration of this claim that belongs in the state court case.

# CALLAHAN & BLAINE

Ms. Brigitte Omane
International Centre for Dispute Resolution
January 8, 2007
Page 2

Considering the uncertainty surrounding the viability of Blackwater's arbitration claim, it is premature to respond to the question posed by your January 3rd letter; namely, "whether mediation or other methods of dispute resolution might be appropriate." That having been said, if Blackwater is amenable to mediation of its arbitration claim and the estates' claims pending in state court case, subject to certain agreeable terms, the estates would be willing to explore that option.

Please feel free to contact me at any time if you need additional information or have any questions or comments.

Very truly yours,

MARC P. MILES

MPM:cvt

cc:    Daniel J. Callahan, Esq.
       Brian J. McCormack, Esq.
       David F. Kirby, Esq.
       Michael P. Socarras, Esq.

G:\2525\2525-02\Cor\Omane 010807.wpd

# EXHIBIT 6

# Exhibit 6

01/12/2007 12:56 FAX 202756806          McDermott Will&Emery LLP                      ☑002/003

# McDermott Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Michael P. Socarras
Attorney at Law
msocarras@mwe.com
202 756 8110

January 12, 2007

*Via Facsimile and Email*

Ms. Brigitte Omane
International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, New York 10019

Re:   *Blackwater Security Consulting, LLC, et al. v. Nordan, etc.*
      No. 50 181 T 00524 06 (AAA ICDR)

Dear Ms. Omane:

     We represent the Claimants Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. This letter responds to the letter that Marc P. Miles of Callahan & Blaine sent you dated January 8, 2007. We did not receive that letter from Mr. Miles, notwithstanding being listed as a "cc" on it. Thank you for forwarding Mr. Miles' letter to me.

     Mr. Miles' letter confirms that the Respondent Richard P. Nordan refuses to participate in this Arbitration. That is consistent with David Kirby's and Daniel Callahan's refusals to participate in the administrative conference call you attempted twice to hold during the first week of this month, based on your prior written notice to both sides of December 20, 2006. By copy of this letter, we request that if the above conclusion is mistaken and the Respondent does intend to participate in this Arbitration, the Respondent should immediately inform you and us in writing, by responding to this letter, that the Respondent intends to participate in the Arbitration. In the absence of an immediate, clear and written response from the Respondent committing to participate in the Arbitration, the Claimants request that this Arbitration immediately proceed *ex parte* and without delay, while keeping the Respondent informed of actions to which it would have a right to respond so that there will be no question that an award entered by default against Respondent shall be immediately preclusive and subsequently confirmed by entry of judgment.

     We cannot accept any ambiguity about whether this Arbitration is proceeding *ex parte* or not, nor is it agreeable to the Claimants for the Arbitration to be delayed in any way. The Claimants request that this Arbitration proceed as efficiently and expeditiously as possible. The Claimants initiated this Arbitration on December 15, 2006, and arbitrators should be appointed.

U.S. practice conducted through McDermott Will & Emery LLP.

600 Thirteenth Street, N.W. Washington, D.C. 20005-3096   Telephone: 202.756.8000   Facsimile: 202.756.8087   www.mwe.com

WDC99 1355542-1

Ms. Brigitte Omane
January 12, 2007
Page 2

     To that end, we request that ICDR appoint three arbitrators no later than 10 days from today. We request that you provide us on January 17, 2007, a list of proposed arbitrators with their resumes. We request that you set a deadline of January 19, 2007, for response to that list. We further request that you permit each side to strike any number of proposed arbitrators without limitation, and to rank the remaining proposed arbitrators in order of preference. We request that the three arbitrators be appointed no later than Monday, January 22, 2007, and that the preliminary hearing take place on Friday, January 26, 2007. In deciding whether to strike proposed candidates from your list, we anticipate working with you to determine the willingness and availability of the candidates to proceed without delays in light of their respective personal and professional schedules. If strikes leave less than three candidates on the first list, we request a second list, and so on, revising the deadline(s) as necessary, until three are appointed.

     The Respondent should have the opportunity to participate in this process, even though we proceed *ex parte*, in order to eliminate any arguable grounds for the Respondent to deny that it is legally bound by the outcome of an arbitration in which it had a full opportunity to participate. However, we request that decisions made in the Arbitration not be re-opened if they are made *ex parte* and the Respondent later changes its mind. This applies, for instance, to the selection of arbitrators. The Respondent should have the opportunity to participate in arbitrator selection, and should be bound by its decision not to participate in arbitrator selection, without any possibility that appointed arbitrators might be removed merely because Respondent changes its mind about participating and demands that the Arbitration start again from scratch.

     In order to facilitate the selection of three arbitrators, the Claimants hereby withdraw their statement in their Demand for Arbitration form concerning the qualifications the arbitrators should have. In lieu of the qualifications stated in the Demand for Arbitration, the Claimants hereby state that the qualifications of the arbitrations should be the following: "U.S. Citizens who are current or former General Counsels of Fortune 100 corporations." This should broaden the qualifications sufficiently to facilitate the selection and appointment process.

     Per your December 20, 2006 letter to the parties, we expect to receive Respondent's statement of defense on January 15, 2007, if Respondent intends to participate rather than default.

     Claimants oppose mediation.

     Thank you very much for your kind attention to this important case. Your able help in keeping the arbitration process moving forward smoothly and efficiently is very welcome.

          Sincerely,

          Michael P. Socarras

cc: Marc P. Miles (via Fax)

# EXHIBIT 7

# Exhibit 7

# CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE

NINTH FLOOR

SANTA ANA CALIFORNIA 92707

(714) 241-4444

FAX (714) 241-4445

WWW.CALLAHAN-LAW.COM

DANIEL J. CALLAHAN*
STEPHEN E. BLAINE
JIM P. MAMACEK@
MICHAEL J. SACHS†
EDWARD SUSOLIK
BRIAN J. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
#ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURALI M. KOBAL
OFFICE ADMINISTRATOR

OUR FILE NUMBER:

2525-02

February 2, 2007

**VIA FAX & U.S. MAIL**

Ms. Brigitte Omane
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

    RE:    **Blackwater Security Consulting, LLC, _et al._ v. Nordan, _etc._**
             **Arbitration No.: 05 181 T 00524 06**

Dear Ms. Omane:

        In your letter dated January 18, 2007, you have requested that our office respond to the proposed list of arbitrators. Please be advised that, while reserving all rights, Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, hereby objects to all of the arbitrators on the list in that the ICDR is without jurisdiction over this matter because the subject claim is a compulsory counterclaim to a pending state court action in North Carolina (Case No. 05CV000173). There is currently a motion to dismiss pending in federal court in North Carolina (Case No. 2:06cv49) and with the ICDR. Since the ICDR is without jurisdiction over this claim, no arbitrator from the list can be selected to hear this case.

        Very truly yours,

MARC P. MILES

cc:    Daniel J. Callahan, Esq.
       David F. Kirby, Esq.
       Michael P. Socarras, Esq.

G:\2525\2525-02\CorAOmane 020207.wpd