# EXHIBIT A
# PART 4

Dockets.Justia.com

# **EXHIBIT C**

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
05 CVS 173

RICHARD P. NORDAN, as Ancillary )
Administrator for the Separate Estates of )
STEPHEN S. HELVENSTON, MIKE R. )
TEAGUE, JERKO GERALD ZOVKO, and )
WESLEY J. K. BATALONA, )
)
            Plaintiff, )
)
    v. )
)
BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation; and JUSTIN L. )
McQUOWN, an individual, )
)
         Defendants. )

## MEMORANDUM OF LAW IN OPPOSITION TO ISSUANCE OF TRO

Defendants Blackwater Security Consulting, LLC and Blackwater Lodge and Training

Center, Inc. (together "Blackwater") hereby oppose Plaintiff's Motion for Temporary

Restraining Order ("TRO Motion") seeking, without any lawful right or factual basis to do so, to

enjoin a federal arbitration which has been underway since December 14, 2006. The Court

should deny the TRO Motion. In opposition to the TRO Motion, Blackwater submits the

following Memorandum.

    1.      The exclusive forum the decedents and Blackwater contractually agreed upon is

an arbitration in Currituck or Camden County, North Carolina. The exclusivity of that forum is

protected by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, because the controversy concerns

events outside the United States involving contracts entered in support of a national war effort.

North Carolina law, moreover, uniformly upholds and respects the binding nature of such arbitration clauses. *See, e.g., Raper v. Oliver House, LLC*, 637 S.E.2d 551, 554 (N.C. Ct. App. 2006) (upholding enforceability of binding arbitration clause in contract signed by resident of assisted living facility who claimed unconscionability). Plaintiff Richard P. Nordan ("Nordan") now seeks to enjoin proceedings in the agreed forum, while levying frivolous accusations of forum shopping against Blackwater. The Court should deny the TRO Motion, because, among other reasons, (1) it lacks jurisdiction to enjoin the arbitration due to the automatic stay provisions of N.C. Gen. Stat. § 1-294 resulting from Blackwater's appeal of the Court's final order denying immunity from suit and arbitration rights; (2) Nordan has been participating in the arbitration for almost four months, subject to objection, and the "emergency" for the TRO is artificial; and (3) there is no irreparable harm to Nordan or to the estates that will result from a preliminary conference with the arbitrators scheduled for April 16, 2007. As explained below, even if the Court were to reach the merits of the TRO Motion, the relief sought here is an "extraordinary measure" imposing a heavy burden on Nordan to show likelihood of success on the merits and likelihood of irreparable loss unless the TRO and injunction are issued. *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983). Nordan's TRO Motion would fail both requirements because there is no irreparable harm to Nordan or to the estates that will result from a preliminary conference with the arbitrators scheduled for April 16, 2007. Accordingly, the Court should deny the TRO Motion.

## BACKGROUND

2.     Nordan's groundless claim of irreparable harm includes a misleading suggestion that Blackwater expedited the arbitration (TRO Motion at 2) ("The actions of Blackwater in expediting ..."). The American Arbitration Association ("AAA"), a well-known and nationally

respected provider of third-party dispute resolution services, has not placed the arbitration on any expedited track, and no one has ever asked the AAA to place it on an expedited track. It is undisputed that the arbitration commenced almost four months ago on December 14, 2006, when Blackwater demanded that the AAA initiate an arbitration in Currituck County, North Carolina, against Nordan. The next day Blackwater was in this Court announcing the just-filed arbitration and applying for a stay of proceedings in this Court under Section Three of the Federal Arbitration Act, 9 U.S.C. § 3 ("Stay of proceedings where issue therein is referable to arbitration"). The arbitration having thus been proceeding at a measured pace for four months, and no "emergency" justifying Nordan's belated TRO motion to this Court exists, there is absolutely no excuse now for Nordan's belated claim that he is being irreparably prejudiced, especially after he stood by with full notice and allowed arbitrator selection to conclude with final appointment of the arbitration tribunal.

3.    In his filing yesterday, Nordan omitted any mention of his participation in the arbitration to date. *LAST WEEK,* Nordan sent a letter to the AAA, a copy of which is attached here as Exhibit 1, entering an appearance for Kirby & Holt and Callahan & Blaine as his official representatives in the arbitration. Even before he took that step, Nordan had been participating extensively in the arbitration through his counsel. Nordan filed objections with the AAA to every one of Blackwater's selections from the AAA list of proposed arbitrators, and succeeded in striking one arbitrator selected by Blackwater (former FBI Director William S. Sessions) on the grounds that his law firm represents Blackwater on unrelated matters. Having participated to the hilt in the AAA proceedings under objection, and thereby protracting the arbitration for now almost four months, Nordan has no basis to assert that it is impossible for him to participate in

the arbitration without waiving his objecting to the arbitrators' jurisdiction. Copies of Nordan's or Callahan & Blaine's letters to the AAA are attached here as Composite Exhibit 2.

4.     Nordan claims that the trigger for his belated TRO Motion is an impending conference call with the arbitrators. Nordan asserts that the arbitrators must be prevented from having an initial preliminary hearing conference call to discuss possible dates for a final hearing. There is absolutely no reason why Nordan, having interposed objections to every proposed arbitrator, could not tell the arbitrators what his lawyers' schedules might be. Indeed, Nordan will have every opportunity to have the arbitrators also consider his "jurisdictional objections" under the rules governing the arbitration. *See* Email from Michael Namias to Richard Nordan, Dated April 10, 2007, attached here as Exhibit 3. Although arbitrators determine their own jurisdiction, a preserved objection to jurisdiction of the dispute can be raised in opposition to confirmation of an arbitration award. *Ruffin Woody & Assocs., Inc. v. Person County*, 374 S.E.2d 165, 167-68 (N.C. Ct. App. 1988).

5.     Nor was December 14, 2006, the first Nordan heard about arbitration. In its Amended Motion to Dismiss filed in October 2005, Blackwater expressly signalled this arbitration. At a November 27, 2006, hearing before this Court, Blackwater invoked several times the arbitrability of the dispute at issue in this case. At no point, until now, has Nordan ever suggested to this Court that the arbitration irreparably harms him or needs to be enjoined, futher underscoring there is no emergency justifying a TRO.

6.     A further point about the arbitration that Nordan fails to bring to the Court's attention is that while it is true that the arbitration concerns "the very subject matter of this case" (TRO Motion at 2), that is not all the arbitrator concerns. Nothing that could ever happen in this case would preclude a separate set of distinct claims Blackwater has asserted against Nordan

personally in the arbitration. In this case, Nordan is suing Blackwater for damages in his capacity as ancillary administrator on behalf of the decedents' estates, alleging wrongful death and fraudulent inducement. In the arbitration, Blackwater is claiming damages against Nordan *personally* for breach of contract, including his breach of the decedents' contractually binding covenant not to sue and their duties of confidentiality and non-publicity, both of which are binding on Nordan as estate administrator. Unlike a release of liability, "a covenant not to sue is not a present abandonment or relinquishment of the right or claim, but merely an agreement not to enforce an existing cause of action. It does not have the effect of distinguishing a cause of action; a covenant not to sue . . . may not be pleaded [in bar of the action] by the covenantee, who must seek his remedy in an action for breach of the covenant. *Simpson v. Plyler*, 128 S.E.2d 843, 846 (N.C. 1963) (internal citations omitted, brackets in original). Thus, Nordan misleads this Court when he suggests that all of Blackwater's claims can be resolved in the pending case.

       7.     Similarly, Blackwater's claims for breach of the duties of confidentiality and non-publicity, are neither defenses nor compulsory counterclaims to Nordan's wrongful death and fraud claims on behalf of the decedents' estates. They arose long after the events that allegedly gave rise to Nordan's state court claims. Despite this Court's admonition to counsel in chambers on December 15, 2006, against engaging in prejudicial publicity about this case, Nordan's California counsel, Daniel J. Callahan, and his associate, Marc P. Miles, promptly launched a massive publicity campaign built around Mr. Callahan's letter to the Speaker of the U.S. House of Representatives, Nancy Pelosi, asking her to hold congressional hearings on Nordan's allegations in this case against "very Republican companies." A copy of Mr. Callahan's letter to the Speaker is attached hereto as Exhibit 4. The direct result was that the House Government Affairs and Reform Committee held hearings in February 2007, with massive publicity before

and after, including press statements by Messrs. Callahan and Miles, seeking to try this case to journalists and politicians.

8.    Even before that open attempt to prejudice and politicize this case in the face of Your Honor's admonition to counsel, Blackwater had already filed on November 27, 2006, its Motion to Revoke *Pro Hac Vice* Admission of Daniel J. Callahan and Marc P. Miles, which is pending and is not affected by appeal. Messrs. Callahan and Miles called for and organized congressional hearings and related publicity on this specific case while a motion to disqualify them for pre-trial publicity has been pending. Blackwater reluctantly filed the disqualification motion, among other reasons, because the public relations firm of Levick Strategic Communications had informed Blackwater that it was hired by Marc P. Miles to work this case. Levick's website (http://www.levick.com/expertise/in/litigation.php) states that "Judges and juries read newspapers and they're influenced by what they read" followed by an email hyperlink labeled "Help me tip the scales of justice." It became clear that the Callahan & Blaine law firm has been generating prejudicial publicity about this case continuously since 2005 as a deliberate substitute for having any likelihood of success on the merits in any courtroom.

9.    In the arbitration, Blackwater claims $10 million damages from Nordan personally for breach not only of the liability provisions of the decedents' contracts with Blackwater, but also for breach of the confidentiality and non-publicity provisions of those contracts. These covenants are binding on Nordan, and he is personally liable for their breach. *Burch v. J.D. Bush & Co.,* 106 S.E. 489, 490 (1921) (the general rule is that personal representatives of a party are unquestionably bound by his contracts); *Whisnant v. Price,* 96 S.E. 27, 28 (N.C. 1918) ("Nothing is better settled than that an executor or administrator is not answerable in his official character for any cause of action that was not created by the act of the

Decedent himself. In actions against the personal representative on his own contract and engagements, though made for the benefit of the estate, the judgment is *de bonis propriis,* and he is, by every principle of legal analogy, to answer it with his personal property.") (internal quotations omitted). While Nordan's breach of the covenants not to sue could amount to attorneys fees, Nordan's breach of the confidentiality and non-publicity obligations has resulted in damages to Blackwater as a North Carolina employer, which will be assessed at the final hearing in the arbitration. Therefore there is no conceivable reason why this Court could be called upon to enjoin claims against Nordan that are not the claims at issue in this case, albeit that there are indeed other claims at issue in the arbitration that concern the very same subject matter at issue here, such as the releases and waivers of liability that accompany the covenant not to sue.

    10.    Further, Blackwater reserves the right to claim damages in arbitration against Callahan & Blaine, and individual attorneys at that firm, as well as Levick, for tortious interference with decedents' contracts with Blackwater, including the confidentiality and non-publicity provisions. Blackwater may make those claims at such time as it deems appropriate. Blackwater will not disclose in advance its grounds for arbitral jurisdiction and liability, but makes this point here only to underscore that what Nordan and Callahan & Blaine are seeking is to avoid personal liabilities that in the end may have nothing to do with the estates. This TRO motion is about protecting the lawyers, not about the estates or the families of the decedents.

    11.    Knowing full well that the arbitration is about Nordan's personal liability, Nordan falsely states to the Court that the arbitration is against the families. (TRO Motion at 3: "Blackwater filed a $10 million arbitration claim for breach of contract against the families of the decedents."). Who the arbitration is against can be easily verified by checking the first box

in the upper left-hand corner of the Demand for Arbitration, where it states "Name of Respondent" and says underneath "Richard P. Nordan." Nordan is trying to enjoin a claim against himself.

12.    The background facts of the arbitration therefore show that there is no basis for any claim of irreparable harm in order to enjoin a four-month-old federal arbitration in the agreed forum, some of the claims in which are not claims at issue here. They also show that there is no "emergency", as Nordan has been aware of the arbitration since it began.

## STATEMENT OF LAW

13.    The Court lacks jurisdiction to consider this TRO Motion because automatic stay provisions of N.C. Gen. Stat. § 1-294 are in effect. A denial of claims of immunity from suit and arbitration rights constitutes an immediately appealable final order. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (denial of motion to dismiss based on a colorable claim of immunity from suit must be treated as a final order); *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 554 (N.C. Ct. App. 2006) (denial of arbitration rights is immediately appealable because the right might be lost if appeal is delayed) (citing *Burke v. Wilkins*, 131 N.C. App. 687, 507 S.E.2d 913, 914 (1998)); *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (a trial court's denial of a motion to enforce arbitration rights is immediately appealable); *Corum v. University of North Carolina*, 97 N.C. App. 527, 531, 389 S.E.2d 586, 598 (N.C. Ct. App. 1990) (following *Mitchell v. Forsyth* and holding that an order denying summary judgment on a claim of absolute immunity is immediately appealable because the denial of summary judgment affected a substantial right and is subject to review), *affirmed in part and reversed in part,* 330 N.C. 761, 413 S.E.2d 276 (N.C. 1992), *certiorari denied,* 506 U.S. 985 (1992); *Sims v. Ritter Constr., Inc.*, 62 N.C. App. 52, 53, 302 S.E.2d 293 (1983). This is so as a matter of law and

without any showing by the aggrieved party that it is irreparably harmed, since the irreparable harm arises as a matter of law from the fact that the party denied immunity from suit and arbitration rights could never be made whole except by not having to litigate at all, ever. *See Corum*, 97 N.C. App. at 531, 389 S.E.2d at 598.

14.    Blackwater's pending appeal, following entry of the Order Upon Reconsideration, is not an interlocutory appeal. It is rather an appeal from a final order because it appeals from a denial of Blackwater's federally-protected right to be free of any judicial proceedings beyond filing a motion to dismiss. Blackwater filed its Amended Motion to Dismiss in October 2005, in which Blackwater invoked its rights to immunity from suit under the Defense Base Act, 42 U.S.C. § 1641(c), and to arbitration under the Federal Arbitration Act, 9 U.S.C. § 1. The Court, upon reconsideration and with briefing an argument on the parties' positions, has overruled Blackwater's objections and required Blackwater to permit its former employee, John Potter, to cooperate in discovery with the U.S. Government. By doing so, the Court has finally adjudicated immunity from suit and arbitration rights that Blackwater could never recover or made whole for, even if the Court were to enter an order dismissing this case without any testimony or discovery beyond what has been ordered thus far.

15.    Believing it is bound by the Order Upon Reconsideration to release Mr. Potter to talk to the Government, Blackwater has informed Mr. Potter through his counsel in Alaska that Blackwater, while reserving its rights, will not seek to enforce Mr. Potter's contractual confidentiality obligations to Blackwater insofar as they would prevent him from talking to the Government about this case. Mr. Potter's counsel made clear that he would not provide the Government's lawyers even copies of Mr. Potter's contracts, which are itself confidential, unless Blackwater permitted it, and this produced a demand from Maj. Pat Gary to Blackwater's

counsel in Alaska to secure the contracts in the middle of the first meeting with Mr. Potter. Blackwater consented only because it believes is bound by the Order Upon Reconsideration. If Blackwater's understanding is mistaken and Blackwater is currently not subject to any obligation to the Court to cooperate in discovery, then Blackwater requests that clarification from the Court, whereupon Blackwater would be free to immediately instruct Mr. Potter to interrupt his dealings with the Government in relation to this case.

16.     Thus, either Blackwater will instruct Mr. Potter that he may not talk to the Government about this case except if he is bound by a valid subpoena upheld by the highest court in Alaska, or Blackwater will have the right to pursue appellate review of the final and irreversible denial of its right never to have to allow Mr. Potter to engage in the exercise in which he is now engaged to assist discovery in this action. Clarification in this sense is essential to ensure that Blackwater is at zero risk of contempt, on the one hand, or prejudice from failure to appeal from the overruling of its rights, on the other hand.

17.     For the foregoing reasons, and assuming, as Blackwater has believed, that Blackwater is bound by the Order Upon Reconsideration to cooperate in discovery despite its immunity from suit and arbitration rights, then the parties are dealing with an appeal from a final order denying immunity from suit and arbitration rights, and the automatic stay provisions of N.C. Gen. Stat. § 1-294 are in effect. The Potter deposition and arbitration rights are at the heart of the appeal. This Court therefore lacks power to order a deposition or to enjoin an arbitration. To the extent Nordan believes he should, Nordan should take his motion where jurisdiction currently lies over that subject matter, which is in the Court of Appeals of North Carolina.

18.     Rule 65(a), where applicable, permits a TRO for 10 days, and Nordan thereafter seeks a preliminary injunction, but an order preliminarily enjoining an arbitration is immediately

appealable in North Carolina. *Szymczyk v. Signs Now Corp.*, 606 S.E.2d 728 (N.C. Ct. App. 2005). Therefore, even if for the sake of argument Blackwater's appeal were lacking in appellate jurisdiction now, Blackwater would have an immediate right of appeal if the preliminary injunction Nordan seeks were granted. There is hence nothing to be accomplished in preliminarily enjoining the arbitration pending the conclusion of a discovery process because the preliminary injunction would confirm Blackwater's right to appeal the question whether discovery proceedings may go forward despite immunity from suit and arbitration rights, and no discovery could take place while this appeal is pending.

19.     Even if none of the above were applicable, the county forum selection clause in the arbitration agreements is protected by the Federal Arbitration Act, which preempts any North Carolina public policy against county forum selection clauses. *Szymczyk*, 606 S.E.2d at 731 (reversing a preliminary injunction of an arbitration because the Federal Arbitration Act preempts state law on forum selection clauses); *Boynton v. ESC Medical System, Inc.*, 566 S.E.2d 730, 732-33 (N.C. Ct. App. 2002) (Federal Arbitration Act preempts state law). The Superior Court in Wake County does not have power to touch the arbitration because the parties contractually agreed to venue in Currituck or Camden County, and that forum selection is federally protected by operation of North Carolina appellate authority.

20.     Even if the Court were to reach the merits of the TRO Motion, the relief sought here is an "extraordinary measure" imposing a heavy burden on Nordan to show likelihood of success on the merits and likelihood of irreparable loss unless the injunction is issued. *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983). Nordan's TRO Motion would fail both requirements.

21.     As explained above, the arbitration arises in large part from Nordan's efforts to try this case to journalists and politicians. Nordan and his counsel have desperately tried to prejudice and politicize the case because it otherwise has no chance of success in a courtroom. There is no such thing in North Carolina state law as a duty of reasonable care in the selection of armor, weapons, and intelligence to protect the supply lines of the U.S. Army in a foreign war. The entire case, moreover, hinges on the assertion that the decedents relied on representations about armor, weapons, intelligence, and other operational arrangements that one searches in vain in an effort to find mentioned in their service agreements with Blackwater. The latter, on the other hand, contain iron-clad disclaimers of reliance on any representations outside the documents as well as express acknowledgments by each contractor of the extreme danger undertaken by accepting the agreements. The source the alleged fraudulent misrepresentations consists of intermediary contractual arrangements up the chain of contracts above Blackwater, and there is exactly nothing in the repetitious Complaint alleging how, when, and where any of the decedents ever knew at the time he signed the service agreements the precise mission he was going to be on at any particular time, much less that any of the decedents saw any contracts between intermediary companies.

22.     Before the case could ever go through discovery, there is a long list of federal constitutional and statutory doctrines barring the door to a case of this nature. One line of defenses applies at the outset, before any discovery can be had. These are the defenses currently before the Court of Appeals of North Carolina, which we respectfully submit the Court finally overruled in its Order Upon Reconsideration without hearing argument on the Amended Motion to Dismiss.

23.     Beyond all of that, the Federal Arbitration Act cannot be bypassed through Nordan's frivolous contention that, "In response to Blackwater's petition to compel arbitration in federal court, Plaintiff filed a Motion to Dismiss, in that the claims that Blackwater is seeking to assert by its arbitration are compulsory counterclaims to this pending state court action" (TRO Motion at 6). Nordan does not offer any authority for that proposition. Nordan also cites no authority for his argument that "*Colorado River* abstention doctrine" (*id.*) applies to a petition in federal court to compel arbitration of a previously filed action. Those are the arguments on which Nordan maintains it is likely to succeed in opposing Blackwater' arbitration motion in federal court. As Blackwater has shown in the District Court, Nordan's arguments would mean that federal arbitration could be defeated by the mere expedient of rushing to state court first and taking cover behind state pleading practice on compulsory counterclaims. That notion would surely earn a failing grade in a law school examination because it is counter to Supreme Court and Fourth Circuit black letter law on *Colorado River* abstention, as well as contrary to the Federal Arbitration Action's preemption of state procedural law as shown above.

24.     Nordan also misapprehends the definition and nature of compulsory counterclaims. Two of Blackwater's key claims in arbitration, breach of the covenant not to sue and breach of the covenant of non-publicity and confidentiality, were not mature at the time of the filing of Nordan's action on behalf of the estates. Respectively, they arose as a result of the complaint and after the complaint. They are not compulsory counterclaims under North Carolina Rule of Civil Procedure 13(a). Where a claim is not mature at the time of the filing of the action, failure to bring it as a counterclaim does not serve as a bar to subsequent litigation on that claim. Moreover, even where the claim matures after the pleadings have been filed but during the pendency of the action, the pleader is not required to supplement the pleadings with a

compulsory counterclaim. *Country Club of Johnston County, Inc. v. United States Fidelity & Guaranty Company*, 150 N.C. App.. 231, 242, 563 S.E. 2d 269, 276 (N.C. Ct. App. 2002).

      25.    Blackwater's claims against Nordan for breach of the covenants in the service agreements clearly are arbitrable, regardless of whether Nordan has filed wrongful death and misrepresentation claim in this court, which is one of the breaches that Blackwater seeks to address through arbitration. A pending state court action involving issues related to the subject of the arbitration agreement does not negate arbitral jurisdiction. *See Eastern Associated Coal Corp. v. Massey*, 373 F.3d 530, 533 n.1 (4th Cir. 2004) (finding no error in district court's grant of motion to compel arbitration despite pending state court proceedings); *cf. Sloan Financial Group, Inc.v. Beckett*, 159 N.C. App. 470, 583 S.E.2d. 325 (N.C. Ct. App. 2003) (allowing both arbitrable claims and non-arbitrable claims to proceed in parallel actions). Thus, even if the Court of Appeals ultimately agrees with this court that *Nordan's* claims on behalf of the estates can be heard in the courts of North Carolina, such a ruling would have no effect on Balckwater's right to have its breach of contract claims determined by the arbitration procedures the decedents agreed would govern their contractual rights and obligations. Both can proceed in parallel. *Cf. Raper v. Oliver House, LLC*, 637 S.E.2d 551, 554 (N.C. Ct. App. 2006) (upholding enforceability of binding arbitration clause in contract signed by resident of assisted living facility who claimed unconscionability).

      26.    Rule 65(c) provides: "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the judge deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Blackwater demands posting of such security to compensate it for damages in being denied its right to arbitrate it claims. Such security should

be sufficient not only to cover the additional attorneys fees Blackwater will incur, but also the additional arbitration costs and fees that it will incur in having to resume arbitration proceedings at a subsequent time as well as the continuing damage Blackwater is incurring as a result of Nordan's and his counsels' improper attempts to seek political and media advantage in this litigation by breaching the covenant of non-publicity.  Blackwater is prepared to present evidence of such damages should the court schedule a hearing for such purpose.

## CONCLUSION

For the foregoing reasons, the Court should deny the Plaintiff's Motion for Temporary Restraining Order.

This the 12th day of April, 2007.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.

By: _____

Kirk G. Warner
N.C. State Bar No. 16238
Mark A. Ash
N.C. State Bar No. 13967
Post Office Box 2611
Raleigh, North Carolina 27602
Telephone:     (919) 821-1220
Facsimile:     (919) 821-6800
*Counsel for Defendants–Appellants/Petitioners*
*Blackwater Security Consulting, LLC, &*
*Blackwater Lodge and Training Center, Inc.*

By: _____

McDermott, Will & Emery LLP
McDermott, Will & Emery LLP
600 13th Street N.W.
Washington, DC  20005-3096
Telephone:     (202) 756-8000
Facsimile:     (202) 756-8087

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing

**MEMORANDUM OF LAW IN OPPOSITION TO TRO** in the above-entitled action upon all

other parties to this case by FACSIMILE AND ELECTRONIC MAIL, addressed as follows:

> David F. Kirby
> William B. Bystrynski
> Kirby & Holt, LLP
> 3201 Glenwood Avenue, Ste. 100
> Raleigh, NC 27612
> Attorneys for Plaintiff
>
> Daniel J. Callahan
> Brian J. McCormack
> Marc P. Miles
> Callahan & Blaine, APLC
> 3 Hutton Centre Drive, Ste. 900
> Santa Ana, CA 92707
> Attorneys for Plaintiff
>
> Patricia L. Holland
> Cranfill, Sumner & Hartzog, LLP
> P.O. Box 27808
> Raleigh, NC 27611-7808
> Attorneys for Defendant Justin McQuown
>
> William C. Crenshaw
> Powell & Goldstein, LLP
> 901 New York Avenue, NW
> Third Floor
> Washington, DC 20001-4413
> Attorney for Defendant Justin McQuown

This the 12th day of April, 2007.

Mark A. Ash

# EXHIBIT 1

## WALLACE, NORDAN & SARDA, L.L.P.

ATTORNEYS AT LAW
GLENWOOD PLAZA
3605 GLENWOOD AVENUE, SUITE 240
RALEIGH, NORTH CAROLINA 27612

JOHN E. WALLACE*
PETER J. SARDA
RICHARD P. NORDAN
JOSEPH A. NEWSOME

*ALSO ADMITTED IN FLORIDA

MAILING ADDRESS
P.O. BOX 12065
RALEIGH, N.C. 27605
(919) 782-9322

FAX
(919) 782-5113

April 10, 2007

VIA FACSIMILE AND US MAIL

Ms. Brigitte Omane
International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

RE:    Blackwater Security Consulting, *et al.* v. Nordan, *ect.*
       Arbitration No..: 05 181 T 00524 06

Dear Ms. Omane:

Please be advised that Callahan & Blaine and Kirby & Holt represent me with respect to the above reference arbitration claim filed by Blackwater Security Consulting, LLC and Blackwater Lodge and Training Center, Inc. (collectively "Blackwater"). For the past three months, Callahan & Blaine has objected to the jurisdiction of the ICDR over Blackwater's claim on my behalf. In addition, both firms jointly filed a Motion to Dismiss Blackwater's petition to compel this arbitration, which is pending in the U.S. District Court for the Eastern District of North Carolina (Northern Division). Please note that the District Court has not granted the petition or otherwise issued any order compelling this arbitration.

However, I note that you recently stopped sending notices to my counsel. Please understand that I am currently, and have always been, represented by these two firms. Please send all correspondence and notices to Callahan & Blaine and Kirby & Holt.

Very truly yours,

Richard P. Nordan

CC:    Marc P. Miles
       David F. Kirby
       Michael P. Socarras

# EXHIBIT 2

# CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE

NINTH FLOOR

SANTA ANA CALIFORNIA 92707

(714) 241-4444

FAX (714) 241-4445

WWW.CALLAHAN-LAW.COM

J. CALLAHAN*
E. BLAINE
MAHACEK@
MICHAEL J. SACHS†
EDWARD SUBOLIK
BRIAN J. MCCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY‡
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
‡ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURAII M. KOBAL
OFFICE ADMINISTRATOR

January 8, 2007

OUR FILE NUMBER:

2525-02

Ms. Brigitte Omane
International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

RE:  **Blackwater Security Consulting, LLC, et al. v. Nordan, etc.**
**Arbitration No.: 05 181 T 00524 06**

Dear Ms. Omane:

Please allow this correspondence to respond to your letter dated January 3, 2007, regarding a written response in lieu of an Administrative Conference Call.

The matter filed by Blackwater arises out of an incident on March 31, 2004, during which four of Blackwater's independent contractors were ambushed, killed, beaten, burned, dragged through the streets of Fallujah, Iraq, and strung up from a bridge for the world to see. As a result of this incident, the estates of these four men filed a wrongful death and fraud action against Blackwater in North Carolina state court, where the case remains pending.

Blackwater then instituted the instant arbitration claim, contending that the filing of the lawsuit constituted a breach of the decedents' contracts, which contain a covenant not to sue provision. As such, Blackwater's arbitration claim is actually a compulsory counterclaim to the state court case. Therefore, it is anticipated that Blackwater's claim, in its current embodiment as an independent arbitration claim, will not long survive. In fact, on January 10, 2007, the estates will be filing a Motion to Dismiss the federal court proceeding Blackwater instituted in an effort to compel the estates to arbitration of this claim that belongs in the state court case.

CALLAHAN & BLAINE

Ms. Brigitte Omane
International Centre for Dispute Resolution
January 8, 2007
Page 2

Considering the uncertainty surrounding the viability of Blackwater's arbitration claim, it is premature to respond to the question posed by your January 3rd letter; namely, "whether mediation or other methods of dispute resolution might be appropriate." That having been said, if Blackwater is amenable to mediation of its arbitration claim and the estates' claims pending in state court case, subject to certain agreeable terms, the estates would be willing to explore that option.

Please feel free to contact me at any time if you need additional information or have any questions or comments.

Very truly yours,

MARC P. MILES

MPM:cvt

cc:     Daniel J. Callahan, Esq.
        Brian J. McCormack, Esq.
        David F. Kirby, Esq.
        Michael P. Socarras, Esq.

G:\2525\2525-02\Cor\Omane 010807.wpd

# CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE
NINTH FLOOR
SANTA ANA CALIFORNIA 92707
(714) 241-4444
FAX (714) 241-4445
WWW.CALLAHAN-LAW.COM

. CALLAHAN*
STEPHEN E. BLAINE
JIM P. MAHACEK@
MICHAEL J. SACHS†
EDWARD SUSOLIK
BRIAN J. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
#ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURAU M. KOBAL
OFFICE ADMINISTRATOR

OUR FILE NUMBER:
2525-02

January 15, 2007

**VIA FEDEX**

Ms. Brigitte Omane
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

    RE:    Blackwater Security Consulting, LLC, et al. v. Nordan, etc.
         Arbitration No.: 05 181 T 00524 06

Dear Ms. Omane:

       Please be advised that, while reserving all rights, Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, objects to this arbitration proceeding which Blackwater improperly instituted, in that the ICDR is without jurisdiction because the subject claim is a compulsory counterclaim to a pending state court action in North Carolina (Case No. 05CV000173). Enclosed herein please find a copy of Nordan's motion to dismiss Blackwater's petition to compel the instant proceeding. Nordan anticipates that the federal court will shortly dismiss this entire matter.

                Very truly yours,

                MARC P. MILES

cc:    Daniel J. Callahan, Esq.
       David F. Kirby, Esq.
       Michael P. Socarras, Esq.

G:\2525\2525-02\Cor\Omane 011507.wpd

# CALLAHAN & BLAINE

A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE

NINTH FLOOR

SANTA ANA CALIFORNIA 92707

(714) 241-4444

FAX (714) 241-4445

WWW.CALLAHAN-LAW.COM

.J. CALLAHAN*
. E. BLAINE
JIM . . . MAHACEK@
MICHAEL J. SACHS†
EDWARD SUBOLIK
BRIAN J. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
#ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURAU M. KOBAL
OFFICE ADMINISTRATOR

OUR FILE NUMBER:

2525-02

January 22, 2007

**VIA FAX & U.S. MAIL**

Ms. Brigitte Omane
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

RE: **Blackwater Security Consulting, LLC, et al. v. Nordan, etc.**
**Arbitration No.: 05 181 T 00524 06**

Dear Ms. Omane:

In your letter dated January 18, 2007, you have requested that our office respond to Michael P. Socarras's letter dated January 12, 2007. Please be advised that, while reserving all rights, Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, objects to this arbitration proceeding which Blackwater improperly instituted, in that the ICDR is without jurisdiction because the subject claim is a compulsory counterclaim to a pending state court action in North Carolina (Case No. 05CV000173). There is currently a motion to dismiss pending in federal court in North Carolina (Case No. 2:06cv49) and with the ICDR. Since the ICDR is without jurisdiction over this claim, none of the requests made by Mr. Socarras in his January 12th correspondence can be entertained.

Very truly yours,

MARC P. MILES

cc:    Daniel J. Callahan, Esq.
       David F. Kirby, Esq.
       Michael P. Socarras, Esq.

G:\2525\2525-02\Cor\Omane 012207.wpd

**CALLAHAN & BLAINE**
A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE

NINTH FLOOR

SANTA ANA CALIFORNIA 92707

(714) 241-4444

Fax (714) 241-4445

WWW.CALLAHAN-LAW.COM

J. CALLAHAN*
REN E. BLAINE
P. MAHACEK@
MICHAEL J. SACHS†
EDWARD SUSOLIK
BRIAN J. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
#ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURALI M. KORAL
OFFICE ADMINISTRATOR

OUR FILE NUMBER:

2525-02

February 2, 2007

**VIA FAX & U.S. MAIL**

Ms. Brigitte Omane
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

    RE:    **Blackwater Security Consulting, LLC, et al. v. Nordan, etc.**
              **Arbitration No.: 05 181 T 00524 06**

Dear Ms. Omane:

        In your letter dated January 18, 2007, you have requested that our office respond to the proposed list of arbitrators. Please be advised that, while reserving all rights, Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, hereby objects to all of the arbitrators on the list in that the ICDR is without jurisdiction over this matter because the subject claim is a compulsory counterclaim to a pending state court action in North Carolina (Case No. 05CV000173). There is currently a motion to dismiss pending in federal court in North Carolina (Case No. 2:06cv49) and with the ICDR. Since the ICDR is without jurisdiction over this claim, no arbitrator from the list can be selected to hear this case.

        Very truly yours,

MARC P. MILES

cc:    Daniel J. Callahan, Esq.
       David F. Kirby, Esq.
       Michael P. Socarras, Esq.

G:\2525\2525-02\Cor\Omane 020207.wpd

*Rec'd 3/9/07 via mail*

# CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE
NINTH FLOOR
SANTA ANA CALIFORNIA 92707
(714) 241-4444
FAX (714) 241-4445
WWW.CALLAHAN-LAW.COM

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
§ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

_ _ _ J. CALLAHAN*
_ _ EN E. BLAINE
MANACEK@
MICHAEL J. SACHS†
EDWARD SUBODIK
BRIAN J. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY§
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

LAURAU M. KOSAL
OFFICE ADMINISTRATOR

March 5, 2007

OUR FILE NUMBER:
2525-02

**VIA FAX & U.S. MAIL**

Ms. Brigitte Omane
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

    RE:   **Blackwater Security Consulting, LLC, et al. v. Nordan, etc.**
          **Arbitration No.: 05 181 T 00524 06**

Dear Ms. Omane:

        In your letter dated February 16, 2007, you advised us of the disclosure made by proposed arbitrator Edward Dreyfus. Please be advised that, while reserving all rights, Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, hereby objects to Mr. Dreyfus serving as an arbitrator in this matter, in that the ICDR is without jurisdiction over this matter because the subject claim is a compulsory counterclaim to a pending state court action in North Carolina (Case No. 05CV000173), as well as the fact that Mr. Dreyfus has a preexisting familial relationship with opposing counsel, namely, McDermott, Will & Emory. There is currently a motion to dismiss pending in federal court in North Carolina (Case No. 2:06cv49) and with the ICDR. Since the ICDR is without jurisdiction over this claim, no arbitrator can be selected to hear this case, including Mr. Dreyfus.

        Very truly yours,

        MARC P. MILES

cc:    Daniel J. Callahan, Esq.
       David F. Kirby, Esq.
       Michael P. Socarras, Esq.

G:\2525\2525-02\Cor\Omane 030507.wpd

# CALLAHAN & BLAINE
### A PROFESSIONAL LAW CORPORATION

3 HUTTON CENTRE DRIVE
NINTH FLOOR
SANTA ANA CALIFORNIA 92707
(714) 241-4444
FAX (714) 241-4445
WWW.CALLAHAN-LAW.COM

DANIEL J. CALLAHAN*
STEPHEN E. BLAINE
JIM P. MAHACEK@
MICHAEL J. SACHET
EDWARD SUBOLIK
BRIAN J. MCCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY#
SARAH O. SERPA
GREGORY B. SCARLETT
ORVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BORROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS
JILL A. THOMAS@
JENNIE J. BLONSKA

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
§ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LARRAIN M. KOBAL
OFFICE ADMINISTRATOR

March 14, 2007

OUR FILE NUMBER:
2525-02

<u>**VIA FAX AND U.S. MAIL**</u>

Ms. Brigitte Omane
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

RE:    <u>Blackwater Security Consulting, LLC, *et al.* v. Nordan, *etc.*</u>
       Arbitration No.: 05 181 T 00524 06

Dear Ms. Omane:

In your letter dated February 27th, and email dated March 13th, you advised us of the disclosures made by proposed arbitrators William Sessions and William H. Webster. Please be advised that, while reserving all rights, Richard P. Nordan, as Ancillary Administrator for the Separate Estates of Stephen S. Helvenston, Mike R. Teague, Jerko Gerald Zovko and Wesley J.K. Batalona, hereby objects to Mr. Sessions and Mr. Webster serving as an arbitrator in this matter, in that the ICDR is without jurisdiction over this matter because the subject claim is a compulsory counterclaim to a pending state court action in North Carolina (Case No. 05CV000173), as well as the fact that Mr. Sessions works for Holland & Knight who currently represents Blackwater and the fact that Mr. Webster (1) works for Milbank Tweed, who has business relationships with three of Blackwater's law firms (Kirkland & Ellis, Wiley, Rein & Fielding, and McDermott Will & Emory); (2) knows Blackwater's counsel Kenneth Starr personally, (3) knows Blackwater former counsel Fred Fielding personally; (4) is acquainted with lawyers from the Department of Justice and the Department of Defense; (5) is acquainted with personnel in the Departments of Labor, Army, Air Force and Navy; and (6) sits on the board of SinglePoint, Inc. with Blackwater's general counsel Joseph Schmitz.

## CALLAHAN & BLAINE

Ms. Brigitte Omane
International Centre for Dispute Resolution
March 14, 2007
Page 2

Moreover, there is currently a motion to dismiss pending in federal court in North Carolina (Case No. 2:06cv49) and with the ICDR.  Since the ICDR is without jurisdiction over this claim, no arbitrator can be selected to hear this case, including Mr. Sessions and Mr. Webster.

Very truly yours,

MARC P. MILES

cc:    Daniel J. Callahan, Esq.
       David F. Kirby, Esq.
       Michael P. Socarras, Esq.

G:\2525\2525-07\Cor\Omane 031407.wpd

04/10/2007 03:57 PM

To "Richard Nordan" <rnordan@wnslaw.com>

cc <MSocarras@mwe.com>, <MarcM@callahan-law.com>, <dkirby@kirby-holt.com>,
   <bbystrynski@kirby-holt.com>, <BJM@callahan-law.com>, "Brigitte Omane"
   <Omaneb@adr.org>

Subject RE: Blackwater v. Nordan

Dear Mr. Nordan:

I am sharing your most recent e-mail below with all counsel and your case manager, Brigitte
Omane.  Please be sure to exchange all future correspondence (including e-mails) with all
counsel and Ms. Omane.  The ICDR will keep you on the distribution list, as requested.

Pursuant to Article 15 of the Rules, the tribunal shall have the power to rule on its own
jurisdiction, including any objections with respect to the existence, scope or validity of the
arbitration agreement.

If you have any questions or concerns, please contact Ms. Omane.  She will remain your primary
ICDR contact throughout this proceeding.

Best regards,


Michael F. Namias
ICDR - Supervisor

 **I C**
**D R**  **International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

March 30, 2007

1633 Broadway, 10th Floor, New York, NY 10019
Telephone: 212-484-4181 Facsimile: 212-246-7274
Internet: http://www.adr.org/ICDR

**VIA ELECTRONIC MAIL ONLY**

Michael P. Socarras, Esq.
McDermott Will & Emery
600 Thirteenth Street, N.W.
Washington, DC 20005-3096

Richard P. Nordan (rnordan@wnslaw.com)
3605 Glenwood Avenue
Suite 240
Raleigh, NC 27612

Re: 50 181 T 00524 06
    Blackwater Security Consulting, LLC & Blackwater
    Lodge and Training Center, Inc.
    vs
    Richard P. Nordan

Dear Parties:

After careful review of the comments submitted by the parties and pursuant to our authority under the International Arbitration and Mediation Rules, the ICDR has determined that the challenge is hereby denied and Arbitrator Webster's appointment is therefore reaffirmed.

At this stage the arbitration may proceed.

Sincerely,

*B. Omane*

Brigitte Omane
International Case Manager
212 484 4036
OmaneB@adr.org

Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

*A Division of the American Arbitration Association*

Cc: Judge William Webster

 **I␣C**
**D␣R**
International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

March 30, 2007

1633 Broadway, 10th Floor, New York, NY 10019
Telephone: 212-484-4181 Facsimile: 212-246-7274
Internet: http://www.adr.org/ICDR

**VIA ELECTRONIC MAIL ONLY**

Michael P. Socarras, Esq.
McDermott Will & Emery
600 Thirteenth Street, N.W.
Washington, DC  20005-3096

Richard P. Nordan
Wallace, Nordan &
Raleigh, NC
Re: 50 181 T 00524 06
    Blackwater Security Consulting, LLC & Blackwater
    Lodge and Training Center, Inc.
    vs
    Richard P. Nordan

Dear Parties:

Please be advised that the ICDR has determined to uphold the challenge to Arbitrator Sessions' continued
service as a Panel Member.

Pursuant to Article 6, at the written request of any party, we will complete the appointment process by
administratively appointing a third arbitrator to serve with Arbiters Dreyfus and Webster.

Sincerely,

*B. Omane*

Brigitte Omane
International Case Manager
212 484 4036
OmaneB@adr.org

Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

*A Division of the American Arbitration Association*

# EXHIBIT 3

-----Original Message-----
**From:** Richard Nordan [mailto:rnordan@wnslaw.com]
**Sent:** Tuesday, April 10, 2007 2:36 PM
**To:** Michael Namias
**Subject:** RE: Blackwater v. Nordan

Dear Mr. Namais, You may continue to send me copies if that is not too much trouble. Sincerely, Richard Nordan

**From:** Michael Namias [mailto:NamiasM@adr.org]
**Sent:** Tuesday, April 10, 2007 12:46 PM
**To:** Michael Namias; Marc Miles; Brigitte Omane
**Cc:** David Kirby; Bill Bystrynski; Brian McCormack; MSocarras@mwe.com; Richard Nordan
**Subject:** RE: Blackwater v. Nordan

Dear Parties:

We are in receipt of Mr. Nordan's correspondence dated April 10, 2007, a copy of which is attached hereto.  Please be sure to exchange all future correspondence with opposing counsel.

Mr. Nordan, your letter is self-explanatory, and we will continue to correspond with your attorneys at Callahan & Blaine and Kirby & Holt.  Shall we continue to copy you on all correspondence, or do you prefer that we deal exclusively with your attorneys?

Best regards,

**Michael F. Namias**

ICDR - Supervisor
International Centre for Dispute Resolution
The International Division of the American Arbitration Association
1633 Broadway, 10th Floor
New York, NY 10019
U.S.A.
Phone: +01-212-484-4170
Facsimile: +01-212-246-7274
E-Mail: NamiasM@adr.org
Website: www.adr.org/ICDR

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.


-----Original Message-----
**From:** Michael Namias
**Sent:** Tuesday, April 10, 2007 11:30 AM
**To:** 'Marc Miles'; Brigitte Omane
**Cc:** David Kirby; Bill Bystrynski; Brian McCormack; MSocarras@mwe.com; Richard Nordan
**Subject:** RE: Blackwater v. Nordan

Dear Counsel:

This will acknowledge receipt of attorney Marc P. Miles' correspondence dated April 9, 2007.

Having reviewed the file, I note that Mr. Miles was not copied on the following correspondence:

(1.) letter dated March 30, 2007 from Brigitte Omane regarding the reaffirmation of Hon. William H. Webster.

(2.) letter dated March 30, 2007 from Ms. Omane regarding the removal of Hon. William S. Sessions.

(3.) letter dated April 4, 2007 from Ms. Omane regarding the appointment of Jean E. Kalicki, Esq. as Arbitrator, with Notice of Appointment and Notice of Compensation Arrangements.

(4.) e-mail dated April 5, 2007 from Ms. Omane confirming a conference call on April 16, 2007 at 11:00 a.m ET.

(5.) letter dated April 6, 2007 from Ms. Omane, outlining the proposed agenda for the pre-hearing teleconference on April 16, 2007, with Notice of Preliminary Hearing.

All of the above items are attached hereto in one (1) PDF file.  For record keeping purposes, the ICDR has previously determined to *copy* Richard Nordan on all correspondence and communications, as requested by Mr. Socarras.  However, the ICDR did not determine to cease corresponding with Callahan & Blaine, APLC.  To the extent that Ms. Omane neglected to

transmit the attached communications to Callahan & Blaine, APLC, this was an error on our part. We apologize for any inconvenience.

On another note, is it my understanding that the ICDR should copy attorney David F. Kirby, Esq. on all future correspondence and communications? Mr. Kirby, please confirm.

Mr. Miles, the ICDR is without authority to unilaterally adjourn the pre-hearing teleconference or otherwise stay these proceedings. However, you are welcome to submit an application to the Arbitrators for their consideration and determination. Upon receipt, the ICDR will invite the written comments of Claimant. I have attached contact information for each of the Arbitrators, as well as Arbitrator Kalicki's resume.

Best regards,

**Michael F. Namias**
**ICDR - Supervisor**
**International Centre for Dispute Resolution**
**The International Division of the American Arbitration Association**
**1633 Broadway, 10th Floor**
**New York, NY 10019**
**U.S.A.**
**Phone: +01-212-484-4170**
**Facsimile: +01-212-246-7274**
**E-Mail: NamiasM@adr.org**
**Website: www.adr.org/ICDR**
This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.

-----Original Message-----
**From:** Marc Miles [mailto:MarcM@callahan-law.com]
**Sent:** Monday, April 09, 2007 10:27 PM
**To:** Brigitte Omane; Michael Namias
**Cc:** David Kirby; Bill Bystrynski; Brian McCormack; MSocarras@mwe.com; Richard Nordan
**Subject:** Blackwater v. Nordan
Attached hereto please find a correspondence of today's date.

Marc P. Miles
CALLAHAN & BLAINE
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
(714) 241-4444
www.callahan-law.com

# EXHIBIT 4

## CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION

DANIEL J. CALLAHAN*
STEPHEN E. BLAINE
JIM P. MAHACEK@
MICHAEL J. SACHS†
EDWARD SUBOLIK
BRIAN J. McCORMACK
JAVIER H. VAN OORDT

CAROLINE A. MOLLOY‡
SARAH C. SERPA
GREGORY B. SCARLETT
DAVID E. HAYEN
TAE J. IM
MARC P. MILES
JAMES R. ROUSE
DOUGLAS M. CARASSO
LEE E. BURROWS
MICHAEL T. SMITH
KIMBERLY A. MAYNARD
SUE Y. PARK
KATHLEEN L. DUNHAM
REBECCA S. LEEDS

OF COUNSEL
SHELLEY M. LIBERTO
IN RABAT, MOROCCO

3 HUTTON CENTRE DRIVE
NINTH FLOOR
SANTA ANA CALIFORNIA 92707
(714) 241-4444
FAX (714) 241-4445
WWW.CALLAHAN-LAW.COM

December 13, 2006

*ALSO MEMBER OF HAWAII STATE BAR
†ALSO MEMBER OF ILLINOIS STATE BAR
‡ALSO A MEMBER OF COLORADO STATE BAR
@CERTIFIED APPELLATE SPECIALIST
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

LAURALU M. KOBAL
OFFICE ADMINISTRATOR

OUR FILE NUMBER:
2525-02

The Honorable Nancy Pelosi
235 Cannon HOB
Washington, D.C. 20515

RE:     War Profiteering and Blackwater Security Consulting

Dear Honorable Pelosi:

    Please be advised that our office currently represents the families of the four American security contractors who were beaten, burned, killed, dragged through the streets of Fallujah, and strung up over a bridge for all the world to see. Those images, which were broadcast worldwide on March 31, 2004, will be forever etched into the minds of the American people as one of the symbols of the war in Iraq. Those four men were unfortunately working for Blackwater Security Consulting at the time of their death.

    Prior to this past November's election, there were a couple of democratic subcommittees that were looking into the issue of war profiteering in Iraq. Blackwater naturally rose to the top of both of these investigations. On the Senate side, the investigation was headed by Senator Byron L. Dorgan (D-ND), who is the chair of the Senate Democratic Policy Committee. On the House side, the investigation was led by Congressman Henry Waxman (D-CA).

    Although these congressional investigations into war profiteering and Blackwater seemed to be heading in the right direction, it appears that the prior position of the democrats in Congress led to these private security companies being evasive and recalcitrant toward the committees conducting the investigations. For example, during Blackwater's testimony before the Government Reform Committee, Subcommittee on National Security, Blackwater's Chris Taylor was repeatedly evasive and non-responsive with respect to his answers, and even had to be

CALLAHAN & BLAINE

Congresswoman Nancy Pelosi
December 13, 2006
Page 2

reminded by Congressman Christopher Shays (D-CT) that he was under oath. Blackwater was then asked to produce particular documents, which it has refused to date.

In my opinion, these Congressional committees have only begun to scratch the surface of what is deplorable conduct by war profiteers such as Blackwater simply to make a buck. Not only has Blackwater's conduct potentially defrauded the American tax payers out of millions of dollars under government contracts that never even authorized Blackwater to perform security services in Iraq, it has also lead to the death of at least four American citizens -- all in the name of corporate greed. The civil lawsuit that we are currently prosecuting in North Carolina alleges that while Blackwater was being paid exorbitant amounts of money under a murky scheme of subcontracts, Blackwater cut corners and reduced costs in an effort to pad its bottom line.

For example, one of the subcontracts that we have acquired specifically states that all missions in Iraq would be conducted in no less than six-man teams and in armored vehicles. On March 31, 2004, when my clients' loved ones were working for Blackwater in Fallujah that fateful day, they were not working in six-man teams and were not operating in armored vehicles. As our lawsuit alleges, Blackwater pocketed the millions it had been paid to buy armored vehicles, and sent these four men into the most dangerous part of Iraq at the time in nothing more than soft-skin Mitsubishi Pajeros (known in the U.S. as a standard Mitsubishi Montero). Had Blackwater not attempted to increase its profits by not purchasing the armored vehicles required by its own series of contracts, those four Americans would be alive today and the war in Iraq would have taken a slightly different path (as this ambush actually caused the U.S. military to invade Fallujah ahead of schedule in what has been described as the deadliest battle of the war).

There are many other examples alleged in our precedent-setting lawsuit concerning Blackwater's wrongful conduct, including Blackwater not permitting the men to conduct a risk assessment prior to the mission, gather intelligence concerning travel routes, conduct pre-trip inspections of the routes, acquire the necessary weapons, or even obtain a map of the area. Blackwater even sent these men out operational prior to the start date of their own contract.

This particular lawsuit against Blackwater is the first of its kind concerning the lack of accountability for private security contractors operating in Iraq, and is already becoming precedent setting. So far, we have obtained favorable published decisions from the U.S. District Court in North Carolina, as well as the Fourth Circuit Court of Appeals in Richmond, Virginia. As we continue to push this case forward in North Carolina, Blackwater will be also fighting it at the U.S. Supreme Court (where Blackwater has already lost its first motion which was denied by Justice John Roberts).

Nonetheless, as American citizens, we hereby petition to you to initiate, support, and continue the Congressional investigations into war profiteering and specifically Blackwater's conduct. Now that there has been a shift in power in Congress, we are hopeful that your

# CALLAHAN & BLAINE

Congresswoman Nancy Pelosi
December 13, 2006
Page 3

investigation, as well as the investigations by Senator Dorgan and Congressman Waxman, will be taken seriously by these extremely Republican companies, such as Blackwater, who have been uncooperative to date, and that these investigations will be fruitful and meaningful. To the extent that we can provide any assistance to you or these Congressional committees, we will do so to the extent permitted by law.

We look forward to the New Direction of America, and to your dedication to putting an end to the fleecing of the American taxpayers and death to its citizens in the name of war profiteers such as Blackwater. Please do not hesitate to contact me at any time.

Very truly yours,

Daniel J. Callahan

DJC:jsr

cc:     Rep. Nancy Pelosi (District Office)
        Rep. Henry A. Waxman (Washington and Los Angeles offices)
        Senator Byron L. Dorgan
        Senator Harry Reid
        Rep. Chris Van Hollen

G:\2525\2525-02\Cor\Con Pelosi 121206.wpd