IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:06-CV-00049-F

BLACKWATER SECURITY CONSULTING,
LLC, a Delaware Limited Liability Company;
and BLACKWATER LODGE AND TRAINING
CENTER, INC., a Delaware Corporation,

    Petitioners,

vs.

RICHARD P. NORDAN, as Ancillary
Administrator for the Separate Estates of
STEPHEN S. HELVENSTON, MIKE R.
TEAGUE, JERKO GERALD ZOVKO, and
WESLEY J. K. BATALONA,

    Respondent.

**PETITIONERS' OPPOSITION TO RESPONDENT'S EMERGENCY MOTION FOR RECONSIDERATION**

This Court should deny the Emergency Motion for Reconsideration ("Motion"), because it raises no new issues and is legally unsupported. As already determined by the Court, federal subject matter jurisdiction exists, and Respondent, Richard P. Nordan ("Nordan"), must submit to arbitration of all claims relating to the Independent Contractor Service Agreements ("Service Agreements")[1] signed by Mr. Helvenston, Mr. Teague, Mr. Zovko, and Mr. Batalona (collectively "Decedents") whose estates Nordan administers, regardless of Nordan's personal liability for their breach under North Carolina law. Nordan uses the instant Motion as a basis to seek delays in the arbitrators' consideration of Petitioners' emergency request to the arbitrators to issue interim measures enjoining Nordan and his counsel from violating the non-publicity and confidentiality clauses through a media strategy that so far has resulted in a Letter of Warning being issued to counsel Marc P. Miles by The North Carolina State Bar for certain statements

---

[1] Copies of the Service Agreements previously have been provided the Court. See Docket No. 1, Exhibits A-D.

#961960_1.DOC

made by Miles about the litigation and Blackwater.[2]  In a desperate attempt to reverse this Court's April 20, 2007 Order directing the parties to proceed with arbitration ("Order"),  Nordan filed on May 4 the Emergency Motion for Reconsideration in this Court[3] and additional pleadings in Wake County Superior Court, where his tort lawsuit is pending.[4]  Blackwater now submits this brief in opposition to the Motion and demonstrates that Nordan has failed to meet the heavy burden required for reconsideration.

Nordan fails to present legal authority or facts that justify reconsideration.  Instead, the Motion misleadingly confuses two separate and distinguishable concepts – the federal statutory basis for this Court's subject matter jurisdiction and the state law obligations placed on Nordan personally as an estate administrator.  All claims at issue in Blackwater's Petition for an Order Directing Arbitration stem from Nordan's actions and standing as estate administrator.  28 U.S.C. § 1332(c)(2) deems Nordan a citizen of the same states as the estates he is administering for subject matter jurisdiction purposes.  The fact that as estate administrator he is personally liable

---

[2]  Letter of Warning, February 26, 2007 ("[T]he Committee determined that your conduct constituted an unintentional, minor, or technical violation of the Rules of Professional Conduct which may be the basis of discipline if continued or repeated . . . .  Rule 3.6, Trial Publicity, does apply to matters in pretrial status.  At the time you made statements to the media the underlying merits of the complaint filed in state court had not been tried before any court. . . .  Thus, there was a possibility that any statements made to the media could violate Rule 3.6, notwithstanding the stay of the state court action. . . .  A copy of the letter of warning may be introduced into evidence in any formal disciplinary hearing commenced against you in the next three years . . . .  If you reject the letter of warning, counsel will be instructed to prepare and file a complaint against you with the Disciplinary Hearing Commission of the North Carolina State Bar.").  Attached as Exhibit 1.

[3] Respondent also filed a Motion for Relief from Judgment with this Court on May 4.  It is based on the same faulty arguments as the Emergency Motion for Reconsideration and, therefore, could be addressed by the substance of this opposition brief.  Petitioners nonetheless will respond with separate opposition in due course.

[4] In apparent recognition that Blackwater's federal motion to show cause correctly identified Nordan's most recent state court filings as violative of this Court's Order, on May 9, 2007, Nordan's counsel, Marc Miles, attempted to conceal his attempts to by-pass this Court by

under North Carolina law for his misdeeds during estate administration is irrelevant to the issue of federal jurisdiction.

The "new evidence" trumpeted by Nordan – that Blackwater seeks in arbitration to hold Nordan personally liable for breaching certain contractual obligations he has as administrator of Decedents' estates – is not "new". The state court brief Nordan identifies was provided to this Court before it issued its Order. (See Exhibit 3, April 13, 2007 letter to Renee Miller from Mark Ash.) Moreover, Nordan has been fully aware that Blackwater had claims against him based on his breach of contracts entered into by Decedents, which state law obligates him to honor as administrator of Decedents' estates. These state law obligations impose personal liability on Nordan as administrator for misdeeds done as an administrator and have no effect on a federal court's jurisdiction. His assertions regarding "new" evidence and personal liability are false or, at best, disingenuous. He is bound by Decedents' arbitration agreements, regardless of the hat he claims to wear.

Nordan's alternative request for relief seeks to have this Court meddle in an ongoing arbitration before the American Arbitration Association ("AAA"). The Court has ordered the parties to arbitrate. The AAA now controls the case. The AAA is both legally charged with and capable of interpreting and applying its own rules. To the extent that Nordan wishes to raise arguments about arbitration procedure in court, they would only be appropriate to present, if ever, after the arbitration panel has resolved all claims in arbitration and this Court's stay is lifted. Moreover, contrary to Nordan's assertions, AAA's administration of the pending arbitration has not harmed Nordan in any way.

---

sending a letter to the state court, after the fact, purporting to request a cancellation of the May 14th hearings that were precluded by the Court's Order. Attached as Exhibit 2.

3

#961960_1.DOC

Finally, Nordan's request for certification under 28 U.S.C. § 1292(b) should be denied because he fails to demonstrate that any issues he raised meet the § 1292 criteria for certification.

**Argument**

I. **THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332(c)(2).**

**A. A legal representative of a decedent's estate is deemed a citizen of the same state as the decedent.**

As already determined by this Court, federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(c)(2): "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ." Congress passed the Judicial Improvements Act of 1988, Public Law No. 100-702, 102 Stat. 4646, to amend §1332 by adding (c)(2) to provide a clear test for settling jurisdiction when a party to a lawsuit is the legal representative of an estate. See Liu v. Westchester Co. Medical Center, 837 F.Supp. 82 (S.D.N.Y. 1993). Federal courts now ascertain the decedent's citizenship and attribute it to the personal representative or administrator of the estate. An estate administrator's own citizenship is ignored. See, e.g., Vaka v. Embraer-Empresa Brasileira De Aeronautica, S.A., 303 F.Supp.2d 1333 (S.D. Fla. 2003); Hayes v. Illinois Central RR Co., 2000 WL 33907697 (N.D. Miss. 2000) (attached as Exhibit 4); Liu v. Westchester Co. Medical Center, 837 F.Supp. 82 (S.D.N.Y. 1993). It is undisputed that Nordan is personal representative under North Carolina law to pursue certain claims on behalf of Decedents' estates. Cf. N.C. Gen. Stat. 28A-18-2(a) (a wrongful death action is brought by a "personal representative . . . of the decedent"). Nordan's citizenship, therefore, is deemed to be the same as the citizenship of Decedents, who were citizens of Ohio, Hawaii, California, and Tennessee, respectively. Blackwater is considered a citizen of North Carolina and Delaware. Complete diversity, therefore, exists.

4

## II. SUBJECT MATTER JURISDICTION IS IRRELEVANT TO THE OBLIGATIONS NORTH CAROLINA LAW PLACES ON NORDAN PERSONALLY FOR HIS ACTIONS AS ADMINISTRATOR.

The federal statutory basis for this Court's subject matter jurisdiction is unaffected by the state law obligations placed on Nordan personally as administrator for Decedents' estates. Nordan's arguments to the contrary are wholly unsupported by law. As described above, this Court's jurisdiction is controlled by 28 U.S.C. § 1332. It is undisputed that Nordan is the legal representative of Decedents' estates. Jurisdiction is proper.

Under North Carolina law, Decedents' estates exist only as names for rights, assets, and obligations to which Richard P. Nordan holds personal title in trust for the beneficiaries; Nordan is not only the appropriate but the only proper defendant on a claim for his wrongful acts in breach of the Decedents' contracts. Further, North Carolina law does not recognize any legal or factual distinction between Nordan the individual and Nordan the administrator[5] – Nordan the administrator is not a separate legal entity. See Blumenthal v. Lynch, 315 N.C. 571, 579, 340 S.E.2d 358, 362 (1986) ("The estate of a deceased person is not an entity known to the law, and is not a natural or an artificial person, but is merely a name to indicate the sum total of assets and liabilities of a decedent."). All claims brought by Nordan in state court and claims brought against Nordan in arbitration concern Nordan as an estate administrator and are based on his actions as administrator. Indeed, it is only as administrator that he maintains a wrongful death action against Blackwater. The same body of law that gives him standing to maintain a wrongful death action also exposes him to personal liability for breach of his responsibilities as administrator.

---

[5] And, indeed, neither did Nordan prior to the instant Motion. Nordan told this Court that the parties to Nordan's state court action and the arbitration are identical. Memorandum of Law in Support of Defendant's Motion to Dismiss [Dkt. 7] at 8.

5

#961960_1.DOC

Because he is serving as administrator of Decedents' estates, North Carolina law places certain duties and obligations on Nordan. One such obligation is that Nordan, as administrator, must honor Decedents' contractual commitments. See Burch v. J.D. Bush & Co., 181 N.C. 125, 128, 106 S.E. 489, 490 (1921); Shutt v. Butner, 62 N.C. App. 701, 303 S.E.2d 399 (1983).[6] The North Carolina Supreme Court also held in Swain v. Tillett, 269 N.C. 46, 54-44 (1967), that an administrator of an estate may be held personally liable in tort to a third party injured by a deer on property of the estate, explaining its holding, thus "[a]n administrator or an executor is personally liable for his own torts even though they are committed in the administration of the estate." Id. (citing Ervin, J. in Brown v. Guaranty Estates Corp., 239 N.C. 595, 602-603, 80 S.E.2d 645, 651-652). See also, Blumenthal v. Lynch, 315 N.C. 571, 340 S.E.2d 358 (1986); Whisnant v. Price, 175 N.C. 611, 96 S.E. 27 (1918).

North Carolina has made a clear policy decision to hold administrators personally liable for their actions (as opposed to imposing liabilities on the estate being administered). This serves to protect estate beneficiaries from maladministration by the estate's representative. If estates were liable for such maladministration, then estate beneficiaries would lose money from the estate and subsequently have the burden of pursuing claims for personal liability against a wrongdoing administrator. North Carolina protects beneficiaries by holding the administrator personally liable to third parties for acts committed as administrator. The Court's Order recognized this distinction and correctly ignored Nordan's citizenship for purposes of subject matter jurisdiction.

---

[6] An exception, irrelevant in this case, exists for personal service contracts in which death renders performance impossible. Burch v. J.D. Bush & Co., 181 N.C. 125, 128, 106 S.E. 489, 490 (1921).

#961960_1.DOC

**III.  NORDAN'S OBLIGATIONS AS ADMINISTRATOR – AND BLACKWATER'S ENFORCEMENT OF THOSE OBLIGATIONS – ARE NOT "NEW."**

Nordan's Motion raises no new issues.  Nordan has known since Blackwater filed its demand for arbitration in December 2006 that Blackwater sought remedies available under North Carolina law against him for his misdeeds as administrator.  It is a clear misstatement of fact for Nordan to assert that "Blackwater misled the Court through material omissions."  Memorandum of Law in Support of Emergency Motion for Reconsideration at 9.  Blackwater, in fact, submitted the very brief quoted by Nordan to this Court.  (Exhibit 3 attached hereto.)  Counsel for Nordan was copied on this correspondence.

Blackwater's December 14, 2006 Demand for Arbitration lists "Richard P. Nordan" as "Respondent" to answer for "breache[s of] decedents' contractual obligations" during his tenure as "administrator of the estates."  See Demand for Arbitration Docket entry 1, Exhibit F.  This, combined with the black letter North Carolina law outlined above, was sufficient to put Nordan on notice of his potential personal liability prior to this Court's Order.  A similar description of Blackwater's claims against Nordan for his breaches of the agreements was provided on February 7, 2007, in the course of Congressional hearings about this case.  (Excepts from this hearing are attached as Exhibit 5.)  Blackwater's identical explanation to a North Carolina state court, also prior to this Court's Order, therefore was not a new revelation by Blackwater.  Confirmation that it was not a new revelation is found in the fact that Nordan did not even bother to file any supplementary papers with this Court while it was deliberating on Petitioner's request, even after Blackwater sent its Wake County brief to this Court, and raises this issue only now that the Court has ordered him to arbitrate.  Nordan's own failure to raise this allegedly "new" issue is reason alone to deny his request.

**IV.    THIS COURT ALSO HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1331.**

An separate and independently sufficient basis for federal subject matter jurisdiction is federal question jurisdiction under 28 U.S.C. § 1331. Under the federal Defense Base Act, 42 U.S.C. §§ 901 et seq., Blackwater's exclusive liability for any injuries incurred by its professional deployed in Iraq, is under the federal workers compensation laws, specifically, the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"). See 42 U.S.C. § 1651(c) (liability as exclusive). Not only is this an underlying premise of the Service Agreements that are the subject of this case, Nordan's state court suit and the arbitration, but it also was one of the grounds asserted by Blackwater in its motion to dismiss Nordan's state court action, which this Court ordered arbitrated.

Accordingly, because one of the ultimate questions raised in the arbitration necessarily is a federal question, it is appropriate for a Federal District Court to determine the arbitrability of the claim under the Federal Arbitration Act, 9 U.S.C. § 4. <u>Discover Band v. Vaden</u>, 396, F.3d 366, 369 (4th Cir. 2005) ("[A] federal court possesses subject matter jurisdiction over a case when the controversy underlying the arbitration agreement presents a federal question."); <u>Community State Bank v. Strong</u>, 2007 U.S. App. LEXIS 9577 (11th Cir. 2007) (attached as Exhibit 6) ( "[A] district court has federal question jurisdiction over a § 4 petition to compel arbitration if the underlying dispute to be arbitrated itself states a federal question. Because at least one of the claims petitioners seek to arbitrate states a federal question, the district court had federal question jurisdiction over the petition to compel arbitration.")

**V.    NORDAN'S ALTERNATIVE REQUEST INAPPROPRIATELY SEEKS TO HAVE THIS COURT MEDDLE IN AN ARBITRATION.**

Nordan alternatively requests that this Court interfere with an ongoing arbitration to address rulings of the arbitration body on its own procedural issues. Such interference in an

8

ongoing arbitration, however, is inappropriate. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (holding "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide" (internal quotations omitted)); Dockser v. Schwartzberg, 433 F.3d 421, 423 (4th Cir. 2006) (holding that interference in an arbitration is inappropriate because the "goal [of the Federal Arbitration Act] would be undermined if we were to allow arbitration proceedings to be stalled or nullified by ancillary litigation on minor issues"). Pursuant to Article 15 of AAA's International Dispute Resolution Rules, the arbitral tribunal has the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement. See AAA International Rules, Article 15 available at http://www.adr.org/sp.asp?id=28144 (attached as Exhibit 7). Courts furthermore do not interfere in arbitrations because opportunity exists pursuant to 9 U.S.C. § 10 once the arbitration has been completed for the Court to address any serious, prejudicial errors that may have occurred during arbitration and that are actually reviewable under the Federal Arbitration Act. This Court has stayed its proceedings until completion of the arbitration. Now is not the appropriate time for Nordan to raise these matters.

   Putting aside Nordan's premature demand for judicial review, Nordan has participated in the pending arbitration since its inception (while at the same time refusing to answer the claim). He has had an opportunity to object to using AAA's International Rules and has, in fact, succeeded in striking an arbitrator from the arbitration panel. For Nordan to assert that he has been prejudiced by AAA's administration of the arbitration is a second bite at the apple, which is unwarranted and, in fact, prohibited.

**A. Nordan's assertions regarding any serious and prejudicial errors in the arbitration may be brought before a court once an arbitration award is submitted for confirmation.**

The Motion essentially alleges procedural objections to the conduct of the arbitration. To bring them to the Court now, however, is inappropriate. This Court ordered the parties into arbitration and stayed proceedings until after completion of the arbitration. See Order at 10. Furthermore, Nordan will have an opportunity to raise any alleged irregularities before a court once the arbitration has finished and the prevailing party applies for confirmation of the award in federal court. See 9 U.S.C. § 10 (stating grounds for review of arbitration awards); Gallus Investments, L.P. v. Pudgie's Famous Chicken, Ltd., 134 F.3d 231 (4th Cir. 1998).

**B. Nordan has participated in the arbitration from its commencement.**

Nordan argues that Blackwater has unilaterally prosecuted the pending arbitration and unilaterally selected the arbitration panel. Conspicuously absent from Nordan's Motion was any mention of his participation in the arbitration to date and, in particular, his participation in selecting the arbitration panel. Nordan filed objections with the AAA to every one of Blackwater's selections from the AAA list of proposed arbitrators, and succeeded in striking one arbitrator selected by Blackwater (former FBI Director William S. Sessions). See Exhibit 8, M. Miles' Feb. 2, 2007 letter to ICDR and Exhibit 9, ICDR letter to M. Socarras and R. Nordan.) Nordan sent a letter to the AAA, a copy of which is attached here as Exhibit 10, entering an appearance for Kirby & Holt and Callahan & Blaine as his official representatives in the arbitration. Nordan has moreover participated in every preliminary stage of the arbitration, including most recently the scheduling of the preliminary hearing. See Exhibit 11, B. Bystrynski's May 4, 2007 letter to ICDR.

**C. The pending arbitration is entirely consistent with the Court's Order.**

Nordan seeks to have this Court meddle in the pending arbitration by insisting that the Court's Order and the Service Agreements specify application of certain AAA rules in a certain AAA division. In fact, this Court based its Order on the Service Agreements, which do not specify any particular set of rules (other than to say that AAA rules apply). This Court's Order commanded the parties "to proceed with arbitration in the manner provided for in the Service Agreements." Order at 10. The Service Agreements provide no detail on specific AAA rules or divisions, specifying only, "binding arbitration according to the rules of the American Arbitration Association." In such situations when the parties do not specify applicable rules and AAA division forum, AAA decides these matters. See Exhibit 7 attached hereto; see also Strategic Res. Co. v. BCS Life Ins. Co., 367 S.C. 540, 545, 627 S.E.2d 687, 689-90 (2006) (holding that the court did not have authority to use injunctive powers to choose applicable AAA rules).

Arbitration pursuant to the ICDR Procedures is clearly required and appropriate in this case. The arbitration involves an international dispute. The dispute arises under four identical Service Agreements to be performed in a multinational "Duty Station," which is defined in the Service Agreements to mean "Baghdad, Iraq and the surrounding regions/Countries or such geographic place of performance as designated by BSC or Customer." (Service Agreement ¶ 1.8, Docket No. 1, Exhibits A-D.) Each of the parties to the Service Agreements agreed to binding arbitration according to the rules of the American Arbitration Association. Id., ¶ 20.1. Whether this Court, Blackwater, or Nordan deem this an international dispute, however, is beside the point; AAA made this decision, which is precisely what the Service Agreements contemplate by providing for AAA arbitration.

## VI.     THE ISSUES RAISED BY NORDAN DO NOT MERIT IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292.

Interlocutory appeals under § 1292(b) should be permitted "only in a limited number of appropriate cases," Lutch v. Huffy Corp., 2006 U.S. Dist. LEXIS 62577 (D. Pa. 2006) (attached as Exhibit 12), consistent with Congress' design "to reserve interlocutory review for exceptional cases." Id. (quoting Caterpillar, Inc. v. Lewis, 519 U.S. 61, 74, 117 S.Ct. 467, 475, 136 L.Ed.2d 437, 450 (1996)).

A party seeking to obtain certification of an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), must show that: (1) the issue involves a controlling question of law; (2) there are substantial grounds for difference of opinion as to how the question should be resolved; and (3) an immediate appeal of the order may materially advance the ultimate termination of the litigation. See Harper v. Bowen, 854 F.2d 678, 680 (4th Cir. 1988); Simon v. United States, 341 F.3d 193, 199 (3d Cir. 2003). Where the court cannot find these factors, certification is not appropriate. See, e.g., In re South Coast Boat Rentals, Inc., 1999 U.S. Dist. LEXIS 1169 (D. La. 1999) (attached as Exhibit 13) (denying request that the court certify matters for interlocutory appeal).

Nordan fails to carry his burden to demonstrate these factors. He has even failed to specify on which question of law he bases his request for certification. Both Nordan's argument concerning the Court's subject matter jurisdiction and his arguments concerning arbitration procedures may be resolved through application of well-settled questions of law. No "substantial grounds for difference of opinion" exist as to how these questions should be resolved and immediate appeal would simply prolong resolution of this dispute.

Routine interlocutory appellate consideration of stays pending arbitration would frustrate Congress' clear intent in the Arbitration Act to move the parties to an arbitrable dispute out of

12

#961960_1.DOC

court and into arbitration as quickly and easily as possible. <u>Commonwealth Ins. Co. v. Underwriters, Inc.</u>, 846 F.2d 196, 199 (3d Cir. 1988). Therefore, certification under 28 U.S.C. § 1292(b) is not appropriate.

### **Conclusion**

Blackwater respectfully requests that this Court deny Nordan's Motion for Reconsideration and the request for certification under 28 U.S.C. § 1292(b) contained therein.

This the 10th day of May, 2007.

        McDERMOTT, WILL & EMERY, LLP
        By: /s/ Michael P. Socarras
            Michael P. Socarras
            DC Bar No. 418127
            600 13th Street NW
            Washington, DC 20005
            (202) 756-8000
            Facsimile: (202) 756-8087
            msocarras@mwe.com

        SMITH, ANDERSON, BLOUNT, DORSETT,
        MITCHELL & JERNIGAN, L.L.P.
        By: /s/ Mark A. Ash
            Kirk G. Warner
            NCSB No. 16238
            Mark A. Ash
            NCSB No. 13967
            Post Office Box 2611
            Raleigh, North Carolina 27602
            (919) 821-1220
            Facsimile: (919) 821-6800
            kwarner@smithlaw.com
            mash@smithlaw.com

        ATTORNEYS FOR PETITIONERS

## CERTIFICATE OF SERVICE

I hereby certify that on May 10th, 2007 the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notification of such filing was given, as indicated below, by the CM/ECF system to those registered:

David F. Kirby
Kirby & Holt, LLP
3201 Glenwood Avenue
Suite 100
Raleigh, North Carolina  276212
E-Mail: dkirby@kirby-holt.com
*Attorneys for Respondent*

Daniel J. Callahan
Callahan & Blaine, APLC
3 Hutton Centre Drive, Suite 900
Santa Ana, California  92707
E-Mail: daniel@callahan-law.com
*Attorneys for Respondent*

David S. Coats
Bailey & Dixon, L.L.P.
P.O. Box 1351
Raleigh, NC 27602-1351
dcoats@bdixon.com
*Attorneys for Respondent*

This the 10th day of May, 2007.

    /s/ Mark A. Ash
   Mark A. Ash