# EXHIBIT 6
# PART 2

Dockets.Justia.com

Mercury Constr. Corp., 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 [*51] ...or otherwise....[Under § 4], there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." (emphasis added)); Southland Corp. v. Keating, 465 U.S. 1, 15 n.9, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) ("While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise. This seems implicit in the provisions in § 3 for a stay by a 'court in which such suit is pending' and in § 4 that enforcement may be ordered by 'any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties.'" (citation omitted)); see also Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1472 (11th Cir. 1997); Commercial Metals Co. v. Balfour, Guthrie, & Co., 577 F.2d 264, 268 (5th Cir. 1978). n3

B.

Second, the remaining necessary elements of the instant FAA petition sound in contract [*52] and do not state a federal question. A § 4 cause of action requires the allegation of only a narrow set of facts, all of them sounding in contract. To see why this is so, it is helpful to recognize that a § 4 petitioner merely asks the court to specifically enforce a contract. Section 4 "provides a remedy to a party seeking to compel compliance with an arbitration agreement." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). The right to specifically enforce an arbitration agreement, like the right to specifically enforce any contract, derives from the parties' agreement. See, e.g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964) ("[W]hether or not [a party] [i]s bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties... The duty to arbitrate [is] of contractual origin ...."); Commercial Metals, 577 F.2d at 266 ("[T]he question of whether or not a dispute arising out of a contract will be subject to the arbitration process is left solely [*53] to the agreement of the parties to the contract....Thus, in seeking to compel arbitration, ... the basis of the plaintiff's complaint is the contractual agreement of the parties to arbitrate.").

n3 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Because the right to compel arbitration is based on the parties' agreement to arbitrate, the district court, in adjudicating a § 4 petition, is limited to interpreting that agreement and may not adjudicate the substantive dispute to be arbitrated once it determines that the dispute falls within the scope of the arbitration agreement. See, e.g., AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649-50, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) ("[C]ourts...have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether [*54] there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious," so that even a claim the court finds "frivolous...is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator."); Prima Paint, 388 U.S. at 400 ("Section 4...directs the federal court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored."); Jenkins v. First Am. Cash Advance of Ga., Inc., 400 F.3d 868, 881 (11th Cir. 2005) ("[A]n arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration.").

Given the contractual basis of a party's right to compel arbitration and the district court's limited and equally contract-based role in enforcing that right, it should come as no surprise that a § 4 cause of action is defined by a narrow set of "necessary elements": "To state a claim to compel arbitration under the FAA, the plaintiff must [*55] allege: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction (evidenced by the agreement) to interstate or foreign commerce; n4 and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Larry E. Edmonson, Domke On Commercial Arbitration § 22:2 (3d ed. 2003) (citing Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)); see also InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003) ("A party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."); Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996)

(per curiam) (in adjudicating a motion to compel arbitration under the FAA, the courts use state-law contract principles to consider whether there is a valid agreement to arbitrate between the parties and whether the dispute in question falls within the [*56] scope of that arbitration agreement); Paine Webber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990) ("Before compelling an unwilling party to arbitrate, § 4...requires the court to engage in a limited review to ensure that the dispute is arbitrable -- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."). n5

> n4 The FAA only applies to arbitration agreements involving maritime disputes and contracts involving interstate commerce. See 9 U.S.C. § 2.

> n5 Even the petitioners in this case acknowledge that the basic "elements required to support [an] action to compel arbitration" are few: "Section 4 of the FAA only requires the existence of a written arbitration agreement and a refusal to comply with the agreement by one of the parties to support an action to compel compliance." Pet'rs' Resp. to Resp't's Suggestion of Mootness at 3 (emphasis added); see also id. at 5 ("A 'live' case or controversy...continues to exist under Section 4 of the FAA because there is a written arbitration agreement between Appellee and Appellants and Appellee still refuses to comply with that written arbitration agreement.").

[*57]

Applying these elements to this case, a well-pled petition necessarily would have alleged the following: (1) a dispute exists between Strong and the petitioners over whether the loan is enforceable -- as evidenced by Strong's failure to pay back the loan according to its terms, by his initiation of a lawsuit alleging that the loan is void, and by the parties' correspondence regarding arbitration; (2) the parties' written loan agreement contains an arbitration clause covering "[a]ny controversy or claim" between Strong and either the bank or Cash America "arising out of or in any way relating to" the loan; (3) the loan agreement involves interstate commerce between a South Dakota bank and a Georgia borrower; and (4) Strong has failed, neglected or refused to arbitrate the dispute, as evidenced by his response to petitioners' request that he arbitrate all disputes between them arising out of the loan and by his allegations in state court that the arbitration provision is unconscionable and unenforceable. These allegations alone, if true, suffice for petitioners to receive all the relief they seek

from the district court -- namely, for the court "to require [Strong] to individually [*58] arbitrate, in accordance with the arbitration provision...certain legal disputes." Pet. at 1-2. These essential elements of a § 4 petition make out a simple contract enforcement claim, nothing more. Most assuredly they do not raise a federal question.

### C.

Third, although the instant petition often refers to Section 27, such references are not part of a well-pled § 4 petition and thus cannot serve as the basis on which the petition states a federal question. See Westmoreland, 100 F.3d at 269 ("The fact that the face of the petition alludes to the respondents' [federal] Exchange Act claim does not vitiate th[e] result [that the § 4 FAA petition does not state a federal question]: the petition...is not a 'well-pleaded complaint.'"). Petitioners' references to Section 27 could plausibly be said to serve three purposes. None, however, is necessary to their cause of action.

First, petitioners sometimes characterize the dispute to be arbitrated as involving Section 27. As I have just explained, the existence of an arbitrable dispute between the parties is indeed one of the "essential elements" of a well-pled § 4 petition. Yet while it is true that a § 4 [*59] petition must necessarily allege the existence of a dispute between the parties, the nature of that dispute is relevant only insofar as the court, before ordering arbitration, must be satisfied that the dispute comes within the ambit of the parties' arbitration clause. Here, the dispute to be arbitrated, most simply stated, is whether the loan is valid and enforceable. n6 Given the breadth of this arbitration clause, which covers any dispute "arising out of or in any way relating to" the loan agreement, a dispute over the validity of the loan's interest rate clearly falls within the ambit of the parties' agreement to arbitrate. It is thus not necessary for petitioners to plead why one party believes the loan to be valid (because the loan, issued by the bank, is governed by Section 27), while another does not (because the loan, issued by the payday affiliates as de facto lenders, does not enjoy the protection of Section 27 and is thus subject to Georgia's usury laws).

> n6 I take my cue here from petitioners themselves, who at one point succinctly characterized Strong's claims-to-be-arbitrated as "seek[ing] to have loans made by [the bank] declared void and unenforceable." Pet'rs' Resp. to Respondent's Suggestion of Mootness at 6.

[*60]

Even if it were somehow necessary for petitioners to characterize the dispute in a way that refers to Section 27

-- say, as a dispute about "whether the loan is governed by Section 27 or by Georgia usury law" -- this mere reference would be insufficient to confer federal question jurisdiction over the petition. It is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," nor does it automatically render the cause of action "the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 813-14, 106 S. Ct. 3229, 92 L. Ed. 2d 650 & n.11 , 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986). Under the well-pleaded complaint rule, for a suit to arise under federal law, the "result" of the suit must "depend[]" on the "determination" of "a dispute or controversy respecting the validity, construction, or effect of [federal] law," Shulthis, 225 U.S. at 569; see also Franchise Tax Bd., 463 U.S. at 27-28 (1983) (federal question jurisdiction exists only when the "well-pleaded complaint establishes either [*61] that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"). The result of petitioners' suit to compel arbitration continues to depend wholly on an interpretation of the parties' agreement to arbitrate, not on an interpretation of Section 27.

Second, petitioners refer to Section 27 in an attempt to show that Strong's claims-to-be-arbitrated arise under federal law, and that their own § 4 petition arises under federal law as a result. A logical corollary of the rule that we determine federal question jurisdiction only from what necessarily appears in petitioners' statement of their cause of action is that we may not determine federal question jurisdiction from what unnecessarily appears there. While Section 27 may be one of the "necessary elements" of one or more disputes to be arbitrated, it is not a necessary element of the § 4 contract enforcement action before the court, and the well-pleaded complaint rule prevents us from considering it in determining federal question jurisdiction over that action. n7

n7 For the same reason, it is irrelevant that petitioners attach as an exhibit to their petition Strong's state court complaint. See Application of Prudential Sec. Inc., 795 F. Supp. 657, 659 n.5 (S.D.N.Y. 1992) (rejecting argument that petition to stay arbitration pleads issues of federal law by incorporating opposing party's original RICO complaint, the arbitration of which the petition sought to stop, because "[i]t is clear...that the petition to stay refers to the demand for arbitration, and attaches that document as an exhibit, merely to identify the action. Such reference does not demonstrate that the RICO laws or the federal se-

curities laws are an essential element in [the petition to stay arbitration]"); see also Albert Einstein Med. Ctr. v. Nat'l Benefit Fund for Hosp. and Health Care Employees, 740 F. Supp. 343, 348 (E.D. Pa. 1989) (mere reference to ERISA in an exhibit to the complaint does not make ERISA an "essential element" of plaintiffs' claim).

[*62]

There is a third arguable relevance that Section 27 could have to today's petition (although it is not clear that any of petitioners' actual references to Section 27 were intended for this purpose): Section 27 may serve in the petition as a substantive reply to Strong's anticipated defense. That is, in response to petitioners' claim that Strong is bound by his promise to arbitrate all disputes arising out of the loan, Strong may argue that he cannot be compelled to arbitrate under the parties' agreement because that agreement is void ab initio under Georgia usury law. And in reply, petitioners may claim that the agreement is governed by Section 27 which, under the Supremacy Clause, see U.S. Const. art. VI, cl. 2, "trumps" Georgia law (in the sense of ordinary "conflict preemption"). Or Section 27 may serve to show that Strong's anticipated defense under Georgia usury law is completely preempted, such that Strong's anticipated defense itself arises under federal law. n8

n8 See Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1121-22 (11th Cir. 2004) (distinguishing "express preemption," complete or "field preemption," and claim or "conflict preemption"). "'Conflict preemption'...arises in two circumstances: when it is impossible to comply with both federal and state law and when state law stands as an obstacle to achieving the objectives of the federal law." Id. at 1122. Complete, or field, preemption "occurs when federal regulation in a legislative field is so pervasive that we can reasonably infer that Congress left no room for the states to supplement it." Id. Unlike complete preemption, conflict preemption is quite common and a complaint raising state-law claims that are merely conflict preempted by federal law may not, on that basis, be removed to federal district court.

[*63]

Under the well-pleaded complaint rule, however, pleadings that simply anticipate the respondent's federal defense (or offer a federal reply to an anticipated state-law defense) are insufficient to bring the petitioner's own cause of action within federal jurisdiction. See Rivet v. Regions Bank of La., 522 U.S. 470, 475, 118 S. Ct. 921,

139 L. Ed. 2d 912 (1998) ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."); Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908) ("It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the [laws] of the United States. Although such allegations show that very likely, in the course of the litigation, a question under [those laws] would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under [them]."); see also Westmoreland, 100 F.3d at 269 ("The rights of the respective parties under the Exchange Act...will enter the [§ 4 FAA] dispute, if at all, only if they are raised as part of the respondents' [*64] answer to the petition. Petitioners' alleged right to stay arbitration is not derived from the Exchange Act, but from...the FAA.").

Moreover, even if the well-pleaded complaint rule allowed us to consider defenses that state a federal question, it is doubtful that Section 27 would arise as a valid defense to petitioners' § 4 claim. The defenses available to a respondent to a petition to compel arbitration, like the elements of a § 4 claim, correspondingly hew to the parties' agreement. Under Prima Paint and its progeny, an arbitration provision is severable from the remainder of the contract containing it and separately enforceable even if the remainder of the contract is later found by an arbitrator to be void. A party may successfully defeat a § 4 petition by specifically challenging the validity of the agreement to arbitrate, but not by challenging the validity of the contract as a whole; the latter kind of challenge is for the arbitrator to decide. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006). Thus, even a party's claim that a usurious finance charge renders the contract [*65] as a whole void ab initio is for the arbitrator, not the court, to decide, and is no defense to a motion to compel arbitration. Id.; see also Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002) (same); Jenkins v. First Am. Cash Advance of Ga., Inc., 400 F.3d 868, 883 (11th Cir. 2005) (allegation that "underlying payday lending transactions are void ab initio under Georgia law...is an issue for an arbitrator, not the court, to decide"). To the extent that Strong's state-court usury claims challenge the validity of the loan agreement as a whole, they would not properly appear in the instant FAA pleadings even as a response to petitioners' § 4 cause of action.

In short, regardless of whether petitioners' allegations concerning Section 27 appear in order to (1) allege the existence of a dispute between the parties, (2) allege that the claim to be arbitrated states a federal question, or (3) possibly anticipate Strong's response to their claim to arbitrate, these references to Section 27 do not appear necessarily, and thus they cannot confer federal question jurisdiction over this § 4 FAA petition. The remaining, necessary allegations [*66] of petitioners' § 4 suit merely make out a simple contract enforcement action. Under the Supreme Court's jurisprudence construing the well-pleaded complaint rule and "arising under" jurisdiction, such an action does not state a federal question. Tamiami III's rule to the contrary is thus in considerable tension with this long standing precedent.

II. Tamiami III Is in Tension with this Court's Case Law on FAA Petitions

Tamiami III's rule requiring the district court to "look through" the § 4 cause of action before them to a different dispute to be resolved before a different decision-maker, the arbitrator, is also in measureable tension with cases in which we have applied the well-pleaded complaint rule to FAA actions. Thus, for example, in Commercial Metals Co. v. Balfour, Guthrie, & Co., 577 F.2d 264 (5th Cir. 1978), the parties to a purchasing agreement containing an arbitration clause disputed whether the seller's provision of steel complied with the terms of their contract. The buyer sued in state court, alleging breach of contract on those grounds, and the seller initiated a freestanding FAA petition in federal district court seeking to compel arbitration. [*67] The petitioner alleged federal question jurisdiction under § 1331, apparently under the theory that the FAA itself confers federal question jurisdiction. A panel of the former Fifth Circuit first rejected any notion that the plaintiff's suit to compel arbitration "rest[ed] upon" § 2 of the FAA, the Act's central substantive section which provides that an arbitration provision within a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 577 F.2d at 266. The Court explained that prior to the enactment of the FAA, at common law, arbitration agreements were not specifically enforceable by courts, and that the effect of § 2 "is simply to remove the previously viable defenses of the party opposing arbitration." Id. We concluded, therefore, that instead of resting on the FAA itself, "the basis of the plaintiff's complaint is the contractual agreement of the parties to arbitrate." Id. The former Fifth Circuit then turned to the question of whether such a complaint resting on the parties' agreement and seeking to enforce that agreement "is one arising under the laws, treaties [*68] or Constitution of the United States." Id. The Court held that the answer to that question was controlled by the "landmark case" of Gully v. First National Bank, 299 U.S. 109, 57 S. Ct. 96, 81 L. Ed. 70 (1936), which

[d]eclar[ed] the general principle that "'[a] suit to enforce a right which takes its ori-

gin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends,'" 299 U.S. at 114, 57 S. Ct. at 98, quoting Shulthis v. McDougal, 225 U.S. 561, 569, 32 S. Ct. 704, 56 L. Ed. 1205 (1912) (citations omitted)...

Id. at 267 (alteration in original). In applying to the case at hand the general principle that a suit does not arise under federal law unless it "involves a [federal] dispute or controversy...upon the determination of which the result depends," the former Fifth Circuit assumed that the relevant "dispute or controversy" to be analyzed was the petition to [*69] compel arbitration, not the steel dispute to be arbitrated. And because that "alleged right to compel arbitration derives from the agreement of the parties, not from any federal law," id. at 268, the Court held that the suit did not arise under federal law under Gully.

Of course, in Commercial Metals, the dispute to be arbitrated was not federal in nature -- it was clearly an ordinary breach of contract suit. Indeed, no one suggested otherwise, and so the Court had no occasion to address the question we face today: whether the federal nature of the dispute to be arbitrated can be the basis of federal question jurisdiction over a § 4 petition to compel arbitration of that dispute.

Nevertheless, Commercial Metals sensibly suggests that the appropriate dispute to which we ought to apply the well-pleaded complaint rule is the dispute to be resolved by the district court, not the dispute which will eventually be resolved by the arbitrator. Thus, the Court analyzed the nature of the "right to compel arbitration," not the nature of the right to collect damages due to the other party's alleged failure to perform according to the specifications of a purchase agreement. Since [*70] the nature of the right to compel arbitration does not change depending on whether the underlying dispute to be arbitrated arises under federal law, applying Commercial Metals's reasoning to a § 4 petition where the underlying dispute to be arbitrated may arise under federal law should yield the same result. n9

N9 A district court has made just this point about Commercial Metals:

The Commercial Metals court applied the principles enunciated in Gully in order to determine whether the plaintiff's right arose under the laws of the United States. Finding that the "right to compel arbitration" derived from the private agreement of the parties, not from any federal law, the Commercial Metals court held that federal question jurisdiction was absent. Admittedly, unlike the present case, the dispute to be arbitrated in Commercial Metals did not involve federal law. However, the court there did not rely on the nature of the contract dispute to reject jurisdiction, but instead, following Gully, examined the source of the plaintiff's "right" as asserted in the complaint. Following this analysis, a similar result would be reached here because Prudential's alleged right to stay arbitration derives from a private contract, . . . not from federal law.

Application of Prudential Securities Inc., 795 F. Supp. 657, 660 (S.D.N.Y. 1992).

[*71]

In the instant case, at least one "dispute or controversy...upon the determination of which the result" of the arbitration proceeding "depends" is a dispute "respecting the validity, construction, or effect of" federal law. But the "dispute or controversy...upon the determination of which the result" of the § 4 FAA action "depends" is the dispute over whether Strong must arbitrate the parties' disagreements. And this dispute depends only on an interpretation of the parties' arbitration agreement, nothing more. Thus, it is not one "respecting the validity, construction, or effect of" federal law.

When determining the existence of federal jurisdiction over other FAA causes of action, we have similarly limited ourselves to a consideration of the FAA action before us and have not examined the underlying action that would be presented to the arbitrator. Thus, Baltin v. Alaron Trading Corp., 128 F.3d 1466 (11th Cir. 1997), involved whether there was subject matter jurisdiction over an action to vacate, modify, or correct the arbitration award under §§ 10 and 11 of the FAA. We first extended our analysis of §§ 3 and 4 of the FAA and held that, like them, "sections 10 [*72] and 11 of the FAA do

not provide an independent statutory grant of federal subject matter jurisdiction." 128 F.3d at 1471-72.

Next, we "turn[ed] to the second potential jurisdictional basis: federal question jurisdiction" under § 1331. Id. at 1472. Analyzing that potential basis, we again applied the well-pleaded complaint rule, and found jurisdiction lacking. We noted that under that rule, "[f]ederal question jurisdiction exists only when the 'well-pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Id. (quoting Franchise Tax Bd., 463 U.S. at 27-28). As for the first prong of the Franchise Tax Board test, we noted that even though §§ 10 and 11 appear to create causes of action, the Supreme Court has held that a suit brought pursuant to the FAA is not intrinsically a case presenting a federal question. Id.

Turning to the second prong of the Franchise Tax Board test, we determined that the plaintiffs' "right to relief did not depend on the 'resolution of [*73] a substantial question of federal law.'" Id. Importantly, in reaching this conclusion, we once again analyzed not the right to relief sought before the arbitrator, but only the right to relief sought before the district court. Thus, while it is true that in Baltin, as in Commercial Metals, the dispute in arbitration was not federal in nature, we held that the plaintiffs' FAA complaint did not state a federal question because they "moved to vacate, modify, or correct the arbitration award based only on alleged misdeeds of the arbitrators," an action which "does not require the resolution of any federal issue, let alone a 'substantial question of federal law.'" Id.

Commercial Metals and Baltin both sensibly suggest, at least as a general matter, that district courts ought to apply the well-pleaded complaint rule to the FAA cause of action before them, and not to some other underlying dispute that may be presented to the arbitrator, and as to which the district courts have no adjudicatory power.

At all events, applying the Supreme Court's Franchise Tax Board test to the instant § 4 action, the relief that petitioners seek from the district court is still [*74] specific enforcement of their arbitration agreement with Strong, notwithstanding the federal nature of at least one of the disputes they wish to arbitrate. And their right to the relief of specific enforcement still derives from the parties' agreement, not from any federal law. Specifically, petitioners' right to relief does not necessarily depend on the resolution of any substantial question concerning Section 27 of the FDIA. Instead, petitioners will succeed in compelling arbitration, if at all, solely upon an interpretation of the parties' arbitration agreement, and in interpreting their agreement, the district court need address no question of federal law (other than the FAA).

### III. Section 4 Does Not Require an Exception to the Well-Pleaded Complaint Rule

It seems clear to me that Tamiami III is not easily reconciled with the well-pleaded complaint rule, and that it travels down a path far different than the one taken by this Court's precedent which has applied that rule to FAA actions. However, Congress undeniably has the power to direct the district courts to make an exception to the well-pleaded complaint rule. Tamiami III based its holding on an interpretation of [*75] the unique language of § 4, which, after all, allows a district court to entertain a petition to compel arbitration if the court would, save for the arbitration provision, have subject matter jurisdiction over "a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Tamiami III must have interpreted the "controversy between the parties" as a reference to the underlying controversy to be arbitrated, rather than to the controversy then before the district court. This portion of § 4 had not previously been interpreted by this Court, and nothing in Commercial Metals or Baltin prevented the Tamiami III panel from reaching the interpretation it did. Nevertheless, I believe this interpretation was mistaken.

In addition to Tamiami III, the district court in this case cited Discover Bank v. Vaden, 396 F.3d 366 (4th Cir. 2005), issued by the Fourth Circuit -- the only other circuit court to hold that federal question jurisdiction over a § 4 FAA action turns on the existence of a federal question in the underlying dispute to be arbitrated. Although Vaden is of course not binding on this Court, in reaching the same conclusion as Tamiami III [*76], Vaden provides a thorough -- though, in my opinion, ultimately unconvincing -- explanation for the holding that § 4 directs district courts to take federal question jurisdiction over a petition to compel if the underlying dispute to be arbitrated states a federal question. In Vaden, the Fourth Circuit held, on facts similar to those we address today n10, that a federal question must be found, if at all, "beyond the arbitration petition" in "the overall substantive conflict between the parties" to be arbitrated. 396 F.3d at 370.

n10 In Vaden, the servicing affiliate of a bank that issues credit cards brought a collection action against a card holder in state court to recover a debt in excess of $ 10,000. The card holder responded by filing several state-law class action counterclaims, including some that alleged illegal assessment of finance charges, late fees, and interest rates. The affiliate, together with the bank, then initiated an independent § 4 petition in

district court, seeking to arbitrate the card holder's counterclaims against the affiliate, which they argued were completely preempted by Section 27. The card holder argued that subject matter jurisdiction was lacking, that the bank lacked standing to compel arbitration of claims that were not brought against it, and that she had not entered into a valid arbitration agreement. See 396 F.3d at 367-68. Addressing the jurisdictional issue on appeal, the Fourth Circuit held that three phrases of § 4 compelled the conclusion that federal question jurisdiction over a § 4 petition exists where the dispute to be arbitrated itself states a federal question. Id. at 369, 373. On remand, the district court found that the bank was the true lender and thus a party of interest in the state court action, and also that the FDIA completely preempted the card holder's counterclaims. The court then found that the arbitration agreement was valid, and compelled arbitration. Discover Bank v. Vaden, 409 F. Supp. 2d 632, 635-37 (D. Md. 2006).

[*77]

Like the Tamiami III panel, the Fourth Circuit based its holding in large part on the unique language of § 4 of the FAA, which permits a party to an arbitration agreement to "petition any United States district court which, save for such [arbitration] agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. The Fourth Circuit found three phrases significant. None of the arguments are convincing.

A. Jurisdiction "under Title 28"

First, the Fourth Circuit noted that if subject matter jurisdiction were based solely on the FAA cause of action before the district court (rather than on the cause of action or other dispute to be arbitrated), then a § 4 petition will rarely, if ever, state a federal question, since it is essentially a claim to specifically enforce a contract. As a result, the argument goes, federal courts will hear § 4 petitions essentially only when diverse parties are involved. The Fourth Circuit concluded that if Congress had intended this scenario, then it would not have referred so broadly in § 4 to "jurisdiction [*78] under Title 28." Rather, Congress would have instead referred to "jurisdiction under 28 U.S.C. § 1332," the diversity statute. See Vaden, 396 F.3d at 370.

I believe the Fourth Circuit has read too much into a benign reference to Title 28. Assuming that Congress intended subject matter jurisdiction to be determined on the basis of the § 4 petition itself (without looking "through" or "beyond" it to the dispute to be arbitrated), it is not true that diversity is the only applicable basis of federal jurisdiction under Title 28, and so there was good reason for Congress not to have limited jurisdiction over § 4 petitions to diversity jurisdiction. Thus, "when the arbitration clause sued on is part of a maritime contract, the admiralty jurisdiction [under 28 U.S.C. § 1333] will apply to the arbitration petition as well as to the underlying suit." Drexel Burnham Lambert, Inc. v. Valenzuela Bock, 696 F. Supp. 957, 964-65 (S.D.N.Y. 1988); see also Continental U.K., Ltd. v. Anagel Confidence Compania Naviera, S.A., 658 F. Supp. 809 (S.D.N.Y. 1987) (finding admiralty jurisdiction over § 4 [*79] petition).

And in a great many other cases, where the party resisting arbitration brings a federal cause of action, a district court will have supplemental jurisdiction under 28 U.S.C. § 1367 over the defendant's counterclaim to compel arbitration of the dispute. See, e.g., Slomkowski v. Craig-Hallum, Inc., 644 F. Supp. 132 (D. Minn. 1986) (entertaining § 4 motion by defendant after it removed federal securities action against it); Prudential-Bache Sec., Inc. v. Fitch, 966 F.2d 981, 989 (5th Cir. 1992) (explaining that a federal court will be able to entertain a § 4 petition if "the case is already in federal court," say, because the underlying claim to be arbitrated was brought in state court and removed, by the party seeking to compel arbitration, to federal court). n11

n11 In this regard, both Commercial Metals and the instant case are procedurally odd, in that they are freestanding § 4 petitions where the only litigation before each district court was a petition to compel arbitration. The far more typical scenario is an "embedded proceeding": the party who does not wish to arbitrate a contractual dispute instead sues, and the defendant responds by filing a motion with the same court to stay those proceedings and compel arbitration. Where the dispute to be arbitrated arises under federal law, the suit will either already be in federal court when the defendant moves to compel arbitration, or the defendant can remove it to federal court and then move to compel arbitration.

Tamiami III itself, in fact, involved a kind of embedded § 4 claim, albeit a somewhat unusual one -- there, the same party seeking to compel arbitration also brought several substantive claims before the court, at least two of which, we said, raised federal questions. As a result, the district court could have exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the § 4 claim. Thus, Tamiami III could have reached the same correct result and exercised subject matter jurisdiction over the § 4 claim without "looking

through" the controversy before the court to the controversy before the arbitrator.

[*80]

Finally, when the agreement to arbitrate itself arises under federal law, a § 4 action to enforce this federal right may state a federal question. See Valenzuela Bock, 696 F. Supp. at 965 (noting that a § 4 petition in a labor proceeding under the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), "will...be in federal court by virtue of the provisions of § 301" of the LMRA). Cf. Am. Fed'n of Television & Radio Artists, AFL-CIO v. WJBK-TV, 164 F.3d 1004, 1008 (6th Cir. 1999) (holding, in an action under § 7 of the FAA to enforce a subpoena issued by an arbitrator, that an "agreement to arbitrate itself arises under federal law" where it is part of collective bargaining agreement governed by § 301 of the LMRA). Agreements subject to the Employee Retirement Income Security Act of 1974 ("ERISA") may present a similar situation. n12 I, therefore, believe it was altogether natural for Congress to have referred to Title 28 generally, rather than to its various independent components.

> n12 Again, this was surely the case in Tamiami itself. As the panel noted in Tamiami II, 63 F.3d at 1048, the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA"), required the parties in that case to include in their contract a dispute resolution process such as arbitration. See 25 U.S.C. § 2711(b)(6); 25 C.F.R. § 531.1(k)(2). In Commercial Metals (and in most § 4 cases), "whether or not a dispute arising out of a contract will be subject to the arbitration process is left solely to the agreement of the parties to the contract," 577 F.2d at 266, and thus "the source of the alleged right to compel arbitration derives from the agreement of the parties, not from any federal law," id. at 268. In Tamiami, by contrast, whether or not the dispute will be subject to arbitration was not left "solely to the agreement of the parties" -- the IGRA required some sort of alternative dispute resolution -- and thus the source of the developer's right to compel arbitration did indeed depend on federal law. Tamiami III clearly reached the right result; I object only to the means by which it arrived at that result, and to the consequences of its § 4 holding.

[*81]

The Fourth Circuit, however, has raised a related concern about the lack of federal question jurisdiction over § 4 petitions. It concluded that the elimination of federal question jurisdiction as a basis of jurisdiction

over a § 4 petition would be "inconsistent with the 'congressional declaration of a liberal federal policy favoring arbitration agreements,'" under which "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" and arbitration agreements are placed "'upon the same footing as other contracts.'" Vaden, 396 F.3d at 372 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) and Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)). According to Vaden, "the disfavor to arbitration lies in limiting § 1331 in these cases to such an extent that the real controversy between the parties cannot reach federal court even when the [state court] plaintiff's complaint emphatically presents a federal question." Id.

This, too, misapprehends both the congressional purpose behind the FAA and the Supreme [*82] Court's interpretation of that purpose. Moses H. Cone's holding regarding the "liberal federal policy favoring arbitration," under which "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," does not refer to the jurisdictional question we address today -- nor, in fact, to any jurisdictional question. Rather, the Court was addressing a scenario in which a court has already taken jurisdiction over a § 4 petition and must decide whether to send a dispute to arbitration or adjudicate that issue itself. The Court, referring back to Prima Paint and its progeny, see supra Part I.C, reiterated that, when in doubt, both federal and state courts should find that a dispute falls within the scope of the parties' arbitration agreement and is thus "arbitrable," rather than adjudicating the dispute itself. See Moses H. Cone, 460 U.S. at 24-25 & n.31. The Supreme Court did not, however, suggest in the slightest way that, when in doubt over the existence of subject matter jurisdiction over a § 4 petition, federal courts should err on the side of taking jurisdiction. Federal courts are, after all, courts of limited subject [*83] matter jurisdiction, and the lower federal courts may exercise this power only over cases for which there has been a clear congressional grant of jurisdiction. Because the Constitution unambiguously confers this jurisdictional power to the sound discretion of Congress, "federal courts should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001) (alteration in original).

As for the policy that arbitration agreements be placed "upon the same footing as other contracts," it is difficult to see how an interpretation of § 4 that results in most freestanding § 4 petitions failing to state a federal question would be inconsistent with the FAA's policy of placing arbitration agreements on an equal footing with

other contracts, as the Fourth Circuit suggests. Actions to specifically enforce contracts, generally speaking, do not raise federal questions. Thus, finding that an action to specifically enforce an arbitration agreement does not state a federal question amounts precisely to putting that agreement "upon the same footing as other contracts." Indeed, [*84] if anything, a violation of the equal footing policy occurs when a court holds that an otherwise ordinary contract enforcement action raises a federal question on the basis of some other cause of action that may be brought before an arbitrator. The FAA was designed to "make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint, 388 U.S. at 404 n.12. It did not intend to "elevate [them] over other forms of contract." Id.

Finally, the Fourth Circuit's worry that "the real controversy between the parties cannot reach federal court even when the [state action] plaintiff's complaint emphatically presents a federal question," 396 F.3d at 372, seems to me to also be misplaced. n13 The party resisting arbitration who sues regarding the parties' federal dispute can certainly bring his case in federal court if he so chooses. And if he does not choose to do so, the defendant can remove his suit to federal court and either participate in litigation there or file a counterclaim under § 4 compelling arbitration; the federal court will have supplemental jurisdiction over the § 4 counterclaim because of the plaintiff's [*85] federal claim. n14

n13 There is only one situation in which a federal dispute that a party seeks to arbitrate "cannot reach federal court," and that is when a freestanding § 4 petition is filed in district court. Today's case is a variation on this theme. Strong, the party resisting arbitration, did indeed bring a substantive case in state court, but defendants in that case were unsuccessful at removing the case to federal court. They therefore initiated an independent § 4 action in federal court. In such scenarios, the freestanding § 4 claim itself will almost certainly not state a federal question, for the reasons I have explained in Parts I and II, above. And because the federal claim-to-be-arbitrated is not pending before the same court, there will also be no basis for the federal court to exercise supplemental jurisdiction over the § 4 action. Thus, federal question jurisdiction will be lacking (though some other basis of subject matter jurisdiction, such as diversity or admiralty, may yet apply). Independent and embedded petitions to compel arbitration present wholly different jurisdictional scenarios. See Domke on Commercial Arbitration § 21:2 (3d ed. 2003) ("When a district court exercises the authority created by the FAA

in an embedded proceeding, no difficulties with subject matter jurisdiction arise because the embedded proceeding is contained within litigation for which the subject matter jurisdiction is established. In independent proceedings, however, there must be diversity of citizenship or some other independent basis for federal jurisdiction."). Cf. Am. Fed'n of Television & Radio Artists, AFL-CIO, 164 F.3d at 1007 (noting, in an action under § 7 of the FAA seeking enforcement of a subpoena issued by an arbitrator, that "[c]are must be taken in addressing the question of jurisdiction [over this § 4 petition] because this is an independent action, rather than a claim 'embedded' in another controversy over which the district court already had subject matter jurisdiction").

[*86]

n14 This is essentially what happened in the state-court case being litigated parallel to the instant independent FAA action. In the state-court action, Strong did bring a substantive claim concerning the parties' "real controversy," and the defendants did remove that suit to federal court, where they then moved to compel arbitration of Strong's claims. (As far as I can tell from the record, the state-court payday defendants did not plead that they also sought to compel arbitration of their own declaratory judgment claim, as petitioners in the instant independent action have pleaded.) However, the district court held that Strong's claims did not, in fact, state a federal question, and it remanded the case. I express no view as to whether the district court was correct in holding that Strong's claims did not arise under federal law. I note only that the state payday defendants had an opportunity to prove that that suit belonged in federal court, and a federal district court of competent jurisdiction found that they failed to meet their burden.

The Fourth Circuit's related suggestion that its [*87] reading of § 4 responds to the pragmatic concern that litigants "do not come to court solely to resolve the collateral issue of whether or not they have an agreement to arbitrate," but rather "incur[] the expense and burdens of litigation...to resolve their real-life conflicts and move on," Vaden, 396 F.3d at 370, also strikes me as unpersuasive. Even if the motivations of litigants could or should somehow affect a court's jurisdiction, I again observe that in fact, § 4 petitioners do not come to the district court to resolve the "real-life" conflict to be arbi-

trated, but rather do go there "solely" to resolve the collateral issue of the arbitrability of that conflict; this is precisely what the party who files a § 4 claim does.

Perhaps even more basic, it is important to recognize that the denial of a federal forum in such a case is no tragedy, for in these situations no one has asked a federal court to resolve the "real controversy between the parties." The party resisting arbitration has either not brought any lawsuit at all, or has chosen to bring a federal claim in state court or to bring only state-law claims. The § 4 FAA petitioner does not seek to [*88] have any court resolve "the real controversy between the parties," much less a federal court; it only seeks the assistance of a court in ordering that "real controversy" to arbitration. I can see no error -- of law, policy, or otherwise -- in denying a federal forum to a § 4 petitioner who (A) asks of the district court merely that it enforce an ordinary contract, and (B) vigorously asks that no court adjudicate the "real [federal] controversy between the parties."

Nor are such petitioners left without a remedy. Federal and state courts have concurrent jurisdiction to enforce the FAA, see Baltin, 128 F.3d at 1469 (citing Moses H. Cone, 460 U.S. at 25); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 395 (5th Cir. 1981), and "[i]t is clear that the state courts are entirely able, as well as required, to apply the [FAA] and compel arbitration...if the statutory requisites are present," Commercial Metals, 577 F.2d at 269; see also Moses H. Cone, 460 U.S. at 25 n.32 (noting that "enforcement of the [FAA] is left in large part to the state courts"); Giangrande v. Shearson Lehman/E.F. Hutton, 803 F. Supp. 464, 474 n.23 (D. Mass. 1992) [*89] (holding that the federal nature of the underlying dispute in arbitration is irrelevant and noting that the "plaintiff is not left without a remedy, since the state courts have concurrent jurisdiction to enforce the provisions of the Federal Arbitration Act").

B. Any court "which, save for [the arbitration] agreement, would" have subject matter jurisdiction over "the controversy between the parties"

The Fourth Circuit's second and third arguments deduced from the text of § 4 are best treated together. Again, § 4 provides that a party seeking to compel arbitration may petition any court "which, save for [the arbitration] agreement, would have [subject matter] jurisdiction...[over] a suit arising out of the controversy between the parties." As for the "saving clause," the Fourth Circuit, noting that "save for" ordinarily means "but for" or "notwithstanding," held that "'save for such agreement' must mean that the district court would have jurisdiction of the case even if the agreement had never existed," and that the phrase should be read "as an instruction to set aside the arbitration agreement and then consider the

grounds for federal jurisdiction independently." Vaden, 396 F.3d at 369. [*90] As for the "controversy between the parties," the Fourth Circuit found that the "natural" reading of this phrase is as a reference to the dispute to be arbitrated. Id. at 370. As I read Vaden (and, for that matter, footnote 11 of Tamiami III), the relevant portion of § 4 could be rewritten as follows:

> A party seeking to compel arbitration may petition any district court which, putting aside the arbitration agreement and the motion to compel under it, would have subject matter jurisdiction over the dispute the party seeks to arbitrate if the party had instead brought that dispute before the district court to be adjudicated.

I read both phrases of § 4 differently. As for the saving clause, I read it as instructing the court to "set aside" not the arbitration agreement itself or the suit before it to specifically enforce that agreement, but merely the previous judicial hostility to arbitration agreements. I thus agree with several other courts in reading the saving clause as providing simply that "a court which is otherwise vested of jurisdiction of the suit would not be divested [of jurisdiction] by the arbitration agreement and may proceed to [*91] order arbitration, contrary to prior precedent." Drexel Burnham Lambert, Inc. v. Valenzuela Bock, 696 F. Supp. 957, 963 (S.D.N.Y. 1988); see also Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 267-68 & n.6 (2d Cir. 1996) (adopting the interpretation of the Drexel Burnham court); Prudential-Bache Sec., Inc. v. Fitch, 966 F.2d 981, 988 (5th Cir. 1992) (same); Klein v. Drexel Burnham Lambert, Inc., 737 F. Supp. 319, 323 n.12 (E.D. Pa. 1990) (same).

This interpretation of § 4's saving clause is fully in keeping with both the FAA's overall purpose and § 2's similar saving clause. For a long time, courts would not specifically enforce arbitration agreements, on the self-serving theory that agreements to arbitrate ousted courts of jurisdiction. Indeed, the legislative history of the FAA makes unmistakably clear that its purpose was "to ensure judicial enforcement of privately made agreements to arbitrate" by "overrul[ing] the judiciary's longstanding refusal to enforce agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-20, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) n15; see also [*92] Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11, 94 S. Ct. 2449, 41 L. Ed. 2d 270 & n.4 (1974); Jenkins v. First American Cash Advance of Ga., LLC, 400 F.3d 868, 874 (11th Cir. 2005) (purpose of FAA was to reverse judicial hostility to arbitration agreements and put them on equal footing

with other contracts); Commercial Metals, 577 F.2d at 266 ("At common law, agreement in contracts to submit disputes arising therefrom to arbitration, for various reasons, were not specifically enforced by courts....").

> n15 In making this point, the Supreme Court has quoted the following passage from the House Report accompanying the Act:

>> The need for the law arises from an anachronism of our American law. Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction. This jealousy survived for so long a period that the principle became firmly embedded in the English common law and was adopted with it by the American courts. The courts have felt that the precedent was too strongly fixed to be overturned without legislative enactment, although they have frequently criticised the rule and recognized its illogical nature and the injustice which results from it. This bill declares simply that such agreements for arbitration shall be enforced, and provides a procedure in the Federal courts for their enforcement.

Byrd, 470 U.S. at 219-20 & n.6 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1-2 (1924)).

[*93]

Section 2, the FAA's primary substantive provision, provides that written arbitration agreements shall be enforceable "save upon such grounds as exist...for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has construed this "saving clause" as reflecting the Act's overall purpose "to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint, 388 U.S. at 404 n.12. Indeed, a panel of the former Fifth Circuit had occasion to hold that "the effect of Section 2...is simply to remove the previously viable defenses of the party opposing arbitration." Commercial Metals, 577 F.2d at 266.

I think that the "saving clause" of § 4 should be read, just like that of § 2, against the background of the Act's overall purpose of overturning the judiciary's longstanding refusal to enforce agreements to arbitrate. Therefore, I would read § 4's saving clause as providing that a party seeking to compel arbitration may petition any court which, but for the common law rule that arbitration clauses oust courts of jurisdiction, "would have [subject matter] jurisdiction...[over] a suit arising out [*94] of the controversy between the parties."

As for the "controversy between the parties," this is perhaps the most ambiguous phrase in a section of the FAA replete with them. n16 The Fourth Circuit's reading of the "controversy between the parties" as a reference to the controversy to be arbitrated is plausible. However, I think the better reading of the "controversy between the parties" is as a reference to the controversy pending before the district court. See Fitch, 966 F.2d at 987 (reading the FAA as allowing courts to look to "the actual suit before the district court," not to "the underlying controversy between the parties"); Application of Prudential Securities Inc., 795 F. Supp. 657, 660 (S.D.N.Y. 1992) (same); Klein, 737 F. Supp. at 323-24 (same).

> n16 The Supreme Court did not clarify § 4's reference to the "controversy between the parties" when it wrote:

>> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under § 1331 or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue. E.g., Commercial Metals at 268-69, and cases cited. Section 3 likewise limits the federal courts to the extent that a federal court cannot stay a suit pending before it unless there is such a suit in existence. Nevertheless, although enforcement of the Act is

left in large part to the state courts, it nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate.

Moses H. Cone, 460 U.S. at 25 n.32 (emphasis added). See, e.g., Fitch, 966 F.2d at 987 n.3 (noting that "[t]he entire sentence from Moses Cone is helpful in understanding the Court's reference to the 'underlying dispute,'" and declining to "read this sentence as establishing a radical new rule for determining federal jurisdiction"); Application of Prudential Securities Inc., 795 F. Supp. 657, 660 (S.D.N.Y. 1992) (finding the Moses H. Cone footnote "capable of two interpretations" -- one requiring federal courts to take subject matter jurisdiction based upon the federal nature of the underlying dispute in arbitration, "and the other indicating that there must be an ongoing suit based on federal question jurisdiction before an order compelling arbitration can issue" -- and adopting the latter interpretation); Klein, 737 F. Supp. at 323-24 (describing Moses H. Cone's reference to the "underlying dispute" as "admittedly vague," but holding that it refers to the "arbitration dispute...before the Court").

[*95]

In many, perhaps most, cases, a § 4 claim will be brought in an embedded suit, so that the "controversy before the court" will consist not only of the § 4 claim but also of the dispute-to-be-arbitrated. Section 4 merely provides that if a district court has subject matter jurisdiction over the substantive suit (whether through original or removal jurisdiction), then the district court may now also entertain the claim to compel arbitration, notwithstanding the old rule under which such reliance on arbitration clauses ousted the court of jurisdiction.

In other cases, perhaps not contemplated by Congress, a freestanding § 4 claim will be brought, so that the only "controversy before the district court" will be whether a valid agreement requires arbitration of a particular dispute. When the parties are diverse or, say, a maritime contract is sued on, the district court will have jurisdiction over this arbitrability controversy. But because resolution of a controversy over abitrability is generally a matter of contract interpretation, a freestanding § 4 petition will usually not state a federal question.

Thus, on my reading, the relevant portion of § 4 could be rewritten this way: [*96]

A party seeking to compel arbitration may petition any district court which, notwithstanding the prior common law rule that prevented courts from specifically enforcing arbitration agreements, is otherwise vested of subject matter jurisdiction over the suit before the court.

The central reason that I would read § 4 in this way is that the Fourth Circuit's (and Tamiami III's) alternative reading has the effect, in the § 4 context, of overturning the well-pleaded complaint rule. See Westmoreland, 100 F.3d at 268 (declining "to find that FAA § 4 constitutes a legislative reversal of the general rule that 28 U.S.C. § 1331 federal question jurisdiction must be determined based on the face of a 'well-pleaded complaint'"); Klein, 737 F. Supp. at 324 ("[T]o extend federal jurisdiction based on only plaintiffs' underlying federal claims runs contrary to the well established rule that, under § 1331, federal question jurisdiction must be established on the face of a 'well-pleaded complaint.'"); Valenzuela Bock, 696 F. Supp. at 963 ("[I]f this Act is construed to provide for a federal forum [*97] whenever the underlying dispute involves a federal question, it must be seen as overturning the well-established rule that under § 1331 federal question jurisdiction must be determined based on the face of a 'well-pleaded complaint.'"). Where Congress intends to create an exception to the well-pleaded complaint rule and expand federal jurisdiction, it generally does so explicitly. See Westmoreland, 100 F.3d at 268-69 (collecting examples); Fitch, 966 F.2d at 988 ("There is no indication that Congress in enacting the FAA, or the Supreme Court in interpreting it, intended to change the rules for determining federal jurisdiction over a complaint."); Valenzuela Bock, 696 F. Supp. at 964 & n.7 (collecting examples).

Finally, analogizing the FAA to the Declaratory Judgment Act, the Fourth Circuit insists that its reading of § 4 does not, in fact, overturn the well-pleaded complaint rule but merely applies that rule in the unique procedural context of the FAA. See Vaden, 396 F.3d at 371-72. The analogy to the Declaratory Judgment Act is inapposite. A Declaratory Judgment Act plaintiff who could face a federal claim being brought against [*98] it asks the federal district court to resolve the merits of that federal claim in advance. The timing, but not the meaning, of federal question jurisdiction is altered -- the Declaratory Judgment Act plaintiff's right to relief still "necessarily depends on resolution of a substantial question of federal law," Franchise Tax Bd., 463 U.S. at 28.

By contrast, the FAA petitioner who does or could face a federal claim being brought against it does not ask a federal district court to adjudicate that federal claim.

See Fitch, 966 F.2d at 988 ("Prudential's 'well pleaded' complaint seeks one objective: to enforce its rights under its contract...and compel arbitration of the dispute....The petition does not ask the court [to] address any issues of federal law (other than the FAA which does not provide a basis for federal jurisdiction) in deciding whether the arbitration clause is enforceable."); Klein, 737 F. Supp. at 324 ("Plaintiffs do not ask the Court to decide or address underlying federal laws apart from the FAA."); Valenzuela Bock, 696 F. Supp. at 963 ("The nature of the underlying dispute, (here a claim of fraud in violation of [*99] [the federal securities laws]), is not part of a well-pleaded complaint asking the court to order arbitration...."). The FAA petitioner merely asks the federal district court to enforce the parties' agreement to send the federal dispute to an arbitrator for resolution, and the petitioner's "right to [that] relief" will usually depend solely on the parties' agreement to arbitrate. See Fitch, 966 F.2d at 988 ("The...underlying dispute,...including claims that Prudential violated the federal securities laws, is not part of Prudential's complaint."); Klein, 737 F. Supp. at 324 ("Plaintiffs' action, requesting the Court to impute a contract term to the parties' arbitration agreement, does not raise a...'federal question.'"). Moreover, not only does the FAA petitioner not ask the federal district court to adjudicate the underlying federal claim to be arbitrated, the Supreme Court has instructed us that the plain language of the FAA bars the federal courts from passing on the merits of that underlying dispute. See supra Part I.B.

Yet although no party seeks, and the FAA precludes, adjudication of the underlying dispute on the merits, Tamiami III nevertheless [*100] requires federal district courts adjudicating the § 4 FAA claim to at least pass on the underlying claim to be arbitrated in determining whether it (and thus the § 4 FAA petition) arises under federal law. In many cases, it will be obvious whether an underlying claim states a federal question. But in a significant number of cases, including today's, the matter will not be so simple. As we noted in the majority opinion, determining whether Strong's claims-to-be-arbitrated arise under federal law would require us to provide some answer to the very legal and factual questions that form the parties' underlying dispute -- a dispute which, under the clear policy of the FAA, is for an arbitrator to resolve. An interpretation of the FAA that requires the district court to strongly suggest an answer to the merits of the parties' underlying dispute, but merely as a means of determining whether it has subject matter jurisdiction to enforce a contractual agreement to send that dispute to the arbitrator for resolution, can only be described as odd. Cf. Valenzuela Bock, 696 F. Supp. at 964 n.6 ("To construe § 4 [as requiring the district court to look to the underlying dispute [*101] to be arbitrated to determine subject matter jurisdiction] would...entail needless con-

fusion and waste over jurisdiction of a simple petition to compel arbitration. A petition in a local court asking nothing more than an order compelling arbitration may undergo first removal (requiring the parties to travel what may be a great distance to the federal court), followed by a motion for remand and debate over whether the underlying dispute arises under federal or state law, and whether the right to identify its nature belongs to the plaintiff or the defendant. This can hardly be what was intended by a statute whose declared purpose was to simplify the resolution of contractual disputes by making arbitration agreements enforceable.").

## IV.

Because I do not read § 4 as requiring an exception to (or an alternative application of) the longstanding well-pleaded complaint rule in the § 4 context, I believe we ought to adhere to our ordinary understanding of that rule. And because the instant § 4 petition, were it well-pled, simply asks the district court to specifically enforce the parties' contract, I cannot see how it states a federal question. As a result, were I not bound [*102] by Tamiami III's holding requiring us to "look through" to the underlying disputes to be arbitrated, I would affirm the district court's dismissal of today's § 4 petition for lack of subject matter jurisdiction.

In reaching this conclusion, I readily admit that there is room for reasonable minds to disagree over the proper way to interpret § 4. But § 4's ambiguity -- and the great frequency of FAA litigation -- only means that more, and not less, attention should be paid by this Court and the Supreme Court to the proper method of determining federal subject matter jurisdiction over FAA petitions. n17 In a complex case in which this was far from the only question presented, Tamiami III resolved in a short footnote what five of our sister circuits, on both sides of the issue, have had occasion to spill considerable ink carefully considering. This important issue which has split the circuits merits more consideration than either this Court or the Supreme Court has given it.

n17 As should be evident from the discussion here, § 4 contains several phrases which must be read together to form a coherent whole. Moreover, § 4 is but one part of the FAA, and we should interpret it in a way that is consistent with the Act's other sections.

Although it has no bearing on today's case, it is worth noting that footnote 11 of Tamiami III appears to hold that the text of § 4 compels a district court to look to the underlying dispute not only to determine the presence of federal question jurisdiction over a § 4 petition to compel arbitra-

2007 U.S. App. LEXIS 9577, *

tion of that dispute, but also to determine the presence of federal question jurisdiction over a § 9 petition to confirm an arbitration award. See 177 F.3d 1222-23 & n.11. It is wholly unclear to me how to transport § 4's unique language into § 9 (which simply provides that where the parties have agreed that a specified court shall affirm an arbitration award, any party may so petition that court, which "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. See 9 U.S.C. § 9.).

[*103]