# EXHIBIT 1

Dockets.Justia.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### Case No. 2:06-CV-49-F

BLACKWATER SECURITY )
CONSULTING, LLC, a Delaware Limited )
Liability Company; BLACKWATER )
LODGE AND TRAINING CENTER, INC., )
a Delaware Corporation, )
 )      **VERIFIED SUPPLEMENTAL**
 )      **PETITION FOR ORDER**
Petitioners, )      **DIRECTING ARBITRATION**
 )
v. )
 )
RICHARD P. NORDAN, )
as Ancillary Administrator for the separate )
Estates of WESLEY J.K. BATALONA, )
JERKO ZOVKO, MIKE R. TEAGUE, and )
STEPHEN S. HELVENSTON, )
 )
Respondent. )
_____ )

Blackwater Security Consulting, LLC ("BSC") and Blackwater Lodge and Training

Center, Inc. ("Blackwater USA") (together, "Blackwater"), respectfully petition this Court for an

order pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 4 and 206, supplementing the

Court's Orders of April 20, 2007 and May 1, 2007, and directing Richard P. Nordan ("Nordan"),

as Ancillary Administrator for the separate Estates of Wesley J.K. Batalona, Jerko Zovko, Mike

R. Teague and Stephen S. Helvenston (the "Decedents"), to arbitrate the claims Blackwater has

asserted against him in American Arbitration Association ("AAA") case no. 50 181 T 00524 06.

Blackwater respectfully urges this Court promptly to issue a supplemental order to

protect the ongoing arbitration proceeding, and to enable Blackwater to pursue binding

arbitration against Nordan to the full extent authorized by North Carolina law.

# **INTRODUCTION**

1.      This Court entered an Order in this proceeding on April 20, 2007, granting Blackwater's motion to compel arbitration.  [DE-13]  On May 4, 2007, Nordan initiated a State Court action seeking to enjoin arbitration of Blackwater's claims, and moved for clarification and relief from the Court's April 20, 2007, Order.  Blackwater thereupon moved this Court for an order to show cause why Nordan should not be held in contempt of the April 20, 2007, Order. On May 11, 2007, the Court denied both sides' motions, explaining that the April 20, 2007, Order requires arbitration of Nordan's claims against Blackwater, but "takes no position on the propriety of Blackwater's breach of contract claim" against Nordan (May 11, 2007, Order at 3 [DE-28]).

2.      On May 25, 2007, the arbitrators initiated a preliminary hearing, but Nordan's counsel, David Coats, Esq., declined to participate.  Thereafter Callahan & Blaine issued a press release (copy attached as Exhibit A) identifying themselves as "the families' attorneys" and asserting that Blackwater's $10 million arbitration claim against Nordan as Administrator is actually against the Decedents' estates and the families, and announcing establishment of a legal defense fund for the families to pay for their own defense against Blackwater's claim. Blackwater responded by letter to Mr. Coats denying that Blackwater's claims are against the Decedents' estates or families, and requesting that Nordan arbitrate Blackwater's claims against him as Ancillary Administrator without need for judicial compulsion.  Nordan expressly refused. Moreover, the AAA has requested that Nordan advance his portion of the arbitrators' fees, but Nordan has referred the AAA's request to Callahan & Blaine, who responded to the AAA that they are unable to pay.  Thus Nordan, as Administrator, refuses to have anything to do with this entire matter, including the arbitration.

3.     As shown below, North Carolina estates procedure makes Nordan, as Administrator, the sole and unique proper party to Blackwater's claim for $10 million in damages, although he might have a right of contribution against Callahan & Blaine and against Callahan & Blaine's publicist.

4.     Accordingly, pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, Blackwater hereby petitions this Court under the FAA, 9 U.S.C. §§ 4 and 206, for an order compelling Nordan to arbitrate Blackwater's claims against him.

5.     Under 9 U.S.C. § 6, this Petition should be treated as a motion, and should be given expedited consideration in light of the FAA's "goal of moving the parties to an arbitral dispute . . . into arbitration as quickly and easily as possible." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 85 (2000).

### Parties

6.     Petitioner BSC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Moyock, Currituck County, North Carolina. Petitioner Blackwater USA is the manager and sole member of BSC.

7.     Petitioner Blackwater USA is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Moyock, Currituck County, North Carolina.

8.     Respondent Nordan is a lawyer, and a partner in a law firm, practicing in Raleigh, North Carolina. It is believed that Nordan is a citizen of the United States and a domiciliary of Wake County, North Carolina. Nordan is Ancillary Administrator for the separate Estates of the Decedents, each of whom entered into a certain Independent Contractor Service Agreement (together, "Service Agreements") with BSC. (Exhibits A-D to original Petition [DE-1].) On

March 31, 2004, in the course of performing services for BSC under the Service Agreements in Iraq, the Decedents were attacked and killed by enemy insurgents in Fallujah as they escorted a convoy of catering trucks bound for U.S. Army Camp Ridgeway. The Decedents were, at the time of their deaths, residents of the following States:

    (a)     Decedent Batalona was a resident of the State of Ohio.

    (b)     Decedent Zovko was a resident of the State of Hawaii.

    (c)     Decedent Teague was a resident of the State of Tennessee.

    (d)     Decedent Helvenston was a resident of the State of California.

As the Decedents were not residents of North Carolina, the estates Nordan administers are ancillary to the Decedents' estates where they resided at the time of death.

## Jurisdiction and Venue

9.     This is a proceeding falling under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards signed at New York on June 10, 1958, as enacted by Congress by statute and codified in chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.* (the "New York Convention"). The New York Convention provides, in 9 U.S.C. § 203, that this Petition shall be deemed to raise a federal question, and that this Court has original jurisdiction regardless of amount in controversy. This Court, accordingly, has subject matter jurisdiction under both 28 U.S.C. § 1331 and 9 U.S.C. § 203.

10.     This case falls under the New York Convention, 9 U.S.C. § 202, because each of the Service Agreements (a) is a commercial contract between Blackwater and independent contractors paid substantial fees to provide services to Blackwater's customers (Service Agreements ¶ 3.1); (b) contains an agreement requiring binding arbitration of any dispute relating to the parties' rights and obligations under the Service Agreements (*id.* ¶ 20.1); and (c) is

between citizens of the United States and envisages performance in a foreign state or bears other reasonable relation to foreign states (*id.* ¶ 1.8).  *See, e.g., Bautista v. Star Cruises*, 396 F.3d 1289, 1300 (11th Cir. 2005); *Freudensprung v. Offshore Technical Services*, 379 F.3d 327, 339 (5th Cir. 2004).

11.     The Court also has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) because this is a civil proceeding between citizens of different states, in which the matter in controversy exceeds the sum of $75,000 exclusive of interest, fees and costs.  Pursuant to 28 U.S.C. § 1332(c)(2), Nordan, as Ancillary Administrator, is deemed to be a citizen only of the same states as the Decedents.

12.     This Court has personal jurisdiction over Nordan pursuant to N.C.G.S. § 1-75.4, because Nordan is a resident of North Carolina; has been appointed as Ancillary Administrator in North Carolina; has wrongfully failed and refused to participate in arbitrations in North Carolina; and has wrongfully sued and publicized his claims against Blackwater in North Carolina.

13.     Venue is proper in this District as follows:

(a)     Under 9 U.S.C. § 204, because the arbitration contracts in the Service Agreements provide for arbitration in Currituck or Camden County, North Carolina, in this District;

(b)     Under 28 U.S.C. § 1391(b)(1), because Nordan is a resident of this District; and

(c)     Under 28 U.S.C. § 1391(b)(2), because Nordan's acts and omissions giving rise to this proceeding occurred, in substantial part, in this District.

## Grounds for the Petition

14.     As Administrator, Nordan may only assert rights that the Decedents could have asserted had they lived, and succeeds to the Decedents' rights and obligations, including the Service Agreements.  Nordan, as Administrator, succeeds to Decedents' obligations and is bound

- 5 -

by the Service Agreements as the Decedents would be bound had they lived. *See, e.g., Burch v. J.D. Bush & Co.*, 181 N.C. 125, 127, 106 S.E. 489, 490 (1921). Specifically, Nordan, as Administrator, is bound by the arbitration provisions in the Service Agreements. *Wilkerson v. Nelson*, 395 F. Supp.2d 281, 288-89 (M.D.N.C. 2005).

15. Each of the Decedents acknowledged in the Service Agreements, among other things, that he would be performing duties during a state of war (Service Agreements ¶10); acknowledged and agreed to assume all the risks of death and injury including, among other things, the risks of shooting, explosion, terrorism, and civil unrest (*id.* ¶11.1); except only for contractual benefits expressly provided therein, released BSC and its affiliates including Blackwater USA, on his own behalf and on behalf of his spouse, heirs, administrators, estate, personal representatives, successors and assigns from any claim or cause of action for any liability whatsoever for death or injury arising from his performance of services (*id.* ¶ 11.2); covenanted not to sue (*id.* ¶11.3); waived any right to file suit relating to his services (*id.* ¶ 20.16); and further confirmed that he would have no recourse against BSC or its affiliates including Blackwater USA for his death or injury even if caused in whole or in part by negligence (*id.* ¶11.4). Decedents further agreed that arbitration shall be a condition precedent to any court action (*id* ¶ 20.1). Moreover, Blackwater has a right (*id.* ¶¶ 20.2, 20.6, 20.13) never to be exposed to the risks and burdens of trial on whether the Service Agreements were fraudulently induced through any representation not expressly set forth in the Service Agreements.

16. In violation of the Decedents' explicit agreements, covenants, waivers, assumptions, acknowledgments, representations, and releases in the Service Agreements, Nordan has purported to sue Blackwater in State Court, claiming to rely on certain provisions of the

Service Agreements. A copy of the Complaint Nordan purported to file against Blackwater in the Superior Court of North Carolina in Wake County is annexed as Exhibit E to the original Petition [DE-1].

17.    Nordan, as Administrator, alleges in his Complaint, among other things, that the Service Agreements incorporate the terms and conditions of contracts between Blackwater and its customer Regency, and between Regency and Regency's customer ESS (DE-1, Exhibit E, ¶¶ 13-14, 30-31, 83), including terms and conditions allegedly providing for the use of armor and certain weapons. Thus, the Complaint claims that Blackwater is subject not only to contractual rescission, but is also liable for monetary damages for fraud (*id* ¶¶ 93-94). Nordan, as Administrator, therefore invokes the Service Agreements to claim damages from which he may be compensated, whether hourly or by commission, as Administrator.

18.    By reason of such purported reliance on the Service Agreements, Nordan is estopped to deny that he is bound by the Service Agreements, including the arbitration clauses. *International Paper Co. v. Schwabedisson Machinen & Analgen GmbH*, 206 F.3d 411, 416-17 (4th Cir. 2000); *Long v. Silver*, 248 F.3d 309, 320 (4th Cir.), *cert. denied*, 534 U.S. 894 (2001).

19.    In the Service Agreements, each of the Decedents agreed and covenanted not to disclose any information whatever relating to the services provided by Blackwater (Service Agreements, ¶20.14), and not to disclose any confidential information regarding Blackwater (*id*. ¶15.1). Blackwater is a national security contractor for whom control of information is an important client service.

20.    Any dispute between the parties relating to Blackwater's rights under the foregoing provisions, or any other provision, of the Service Agreements is contractually subject

to binding arbitration under the rules of the AAA.  Each of the Service Agreements (¶ 20.1)

states as follows:

> Contractor and [Blackwater], hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina. The arbitrators may award attorneys fees to the prevailing party in any arbitration proceeding.  All costs and expenses of the arbitration, including actual attorney's fees, shall be allocated among the parties according to the arbitrator's discretion.   The arbitrator's award may be confirmed and entered as a final judgment in the courts noted above and enforced in accordance with the rules of the American Arbitration Association.  Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Agreement, except for the institution of a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact or relief of any injunctive nature.  Contractor hereby waives any rights to seek removal of any dispute to the state or federal courts.

21.    Nordan, as Administrator, has violated the Service Agreements by filing,

prosecuting, and publicizing claims against Blackwater relating to the Decedents' services at the

Duty Station, as defined in the Service Agreements to include Iraq (¶ 1.8).

22.    Blackwater has commenced an arbitration against Nordan, in his capacity as

Ancillary Administrator, before the American Arbitration Association, Case No. 50 181 T 00524

06, seeking damages initially estimated at $10 million arising from Nordan's filing, prosecution,

and publication of his claims against Blackwater relating to Decedents' services.  (A copy of

Blackwater's Demand for Arbitration is annexed as Exhibit F to the initial Petition [DE-1].)

23.    Nordan has refused to participate in this arbitration. He has purported to "appear

specially" in the arbitration; and has asserted that he is not bound by the arbitration clauses in the

Service Agreements and is not obligated to arbitrate Blackwater's claims against him as

Administrator.  *See* Nordan's Statement of Defense and Counterclaim, filed with the AAA

(Exhibit B hereto), ¶¶ 4, 61-63, 71-74.

24.    Nordan has refused to pay fees and expenses properly demanded by the AAA, and has asserted to the AAA that he supposedly is "unable" advance his share of the arbitrators' fees and expenses, without demonstrating any genuine inability to pay such fees and expenses or any hardship that might result from his payment of those fees and expenses.

25.    By letter dated July 5, 2007 (Exhibit C hereto), the AAA informed counsel in the pending arbitration that Nordan has failed to pay the fees and expenses requested by the AAA, and "advised that it is not uncommon for Tribunals to suspend proceedings when they are informed that the [AAA] has not secured enough fund to cover their compensation requirements." Nordan's failure to pay the fees and expenses of the AAA may thus deprive Blackwater of its contractual right to pursue its claim in arbitration. As Nordan is a successful lawyer and partner in a law firm, the alleged inability to advance arbitrators' fees apparently refers to the Decedents' families, whom Callahan & Blaine publicly describe as the defendants.

26.    Nordan has also asserted that he is not personally obligated to pay damages Blackwater seeks in the arbitration unless Blackwater makes a claim against him in an individual capacity, and that he is not subject to arbitration in an individual capacity because he did not sign the Service Agreements. Nordan asserts, instead, that the only claims Blackwater may arbitrate under the Service Agreements are claims against the estates. Nordan's counsel have issued a press release (Exhibit A hereto) wrongly claiming on this basis that Blackwater made a claim of $10 million against the Decedents' estates and families. Nordan, as Administrator, has refused to arbitrate his personal obligation under North Carolina law to pay Blackwater, from his personal assets, for the obligations incurred in the course of his administration of the Decedents' estates.

27.    As is set forth more fully below, Nordan, as Administrator, is required to personally advance such payments from his personal assets, without any assurance that the Clerk of the Superior Court would approve any request Nordan might later make as Administrator to be reimbursed out of any estate assets or estate receipts.

28.    Under North Carolina law, an estate administrator must pay all obligations incurred in the course of administration, subject to an accounting and request for reimbursement to the Clerk of the Superior Court. *See In re Ledbetter*, 235 N.C. 642, 643 (1952) (Ervin, J.) (administrator's claims against an estate to cover the administrator's personal disbursements made for liens, taxes, and judgments are subject to approval by clerk under N.C. Gen. Stat. 28A-19-12); *Whisnant v. Price*, 175 N.C. 611, 96 S.E. 27, 28 (1918) (in actions against personal representative on his own acts for the benefit of estate, representative must answer "with his personal property"); *see also Blumenthal v. Lynch*, 315 N.C. 571 (1986).  This rock-ribbed North Carolina estate procedure has been well-settled since before the Civil War, *see Walton v. Avery*, 2 Dev. & Bat. Eq. 405, 22 N.C. 405, 1839 WL 648 0 (1839), and in essentially unchanged form it is currently summarized on the Internet in the North Carolina Administrative Office of the Court's *North Carolina Estate Procedure Pamphlet* (Exhibit D hereto).  Nordan consented thereto by becoming Administrator of Decedents' estates, which he did in the hope that the clerk, once this matter is resolved, would approve a 5% commission, *see* N.C. Gen. Stat. § 28A-23-3, or hourly compensation, *see id.* at § 28A-23-4, for Nordan out of any wrongful death receipts. *See In re Estate of Parrish*, 143 N.C. App. 244, 250, 547 S.E.2d 74, 78 (N.C. App. 2001) ("A clerk may compensate a personal representative out of wrongful death proceeds"); *Matter of Estate of Longest*, 74 N.C. App. 386, 393, 328 S.E.2d 804, 809 (N.C. App. 1985) (executor has no right to reach into estate assets).

29.    Blackwater's arbitrable claims are not against (a) the families of the Decedents, (b) Nordan in an individual capacity, (c) the estates of the Decedents, or (d) the beneficiaries of the Decedents. Blackwater's claims are against Nordan as Administrator. It is Nordan who, as Administrator, may make a claim against the estates, subject to the clerk's approval, to seek reimbursement of any judgment upon an arbitration award in favor of Blackwater that he has personally disbursed. Nordan is legally required as Administrator to comply with the Service Agreements in full, including arbitration clauses, and to pay personally all obligations arising from the Service Agreements, without any assurance that the Clerk of the Superior Court would approve any request for reimbursement from estate assets or receipts. Thus the Court should direct Nordan, as Administrator, to arbitrate the claims Blackwater has made against him under the Service Agreements.

30.    On June 25, 2007, counsel for Blackwater sent a letter to counsel for Nordan, asking Nordan to consent to arbitrate Blackwater's claims against Nordan as Administrator. (A copy of this letter annexed hereto as Exhibit E.)

31.    On June 26, 2007, counsel for Nordan responded in an e-mail message (Exhibit F hereto) that Nordan "does not consent to anything."

32.    Because Nordan, as Administrator, has refused Blackwater's written request to arbitrate Blackwater's claims against him as Administrator without judicial compulsion; has publicized through his lawyers at Callahan & Blaine false statements that Blackwater's $10 million claim is against the Decedents' estates and families, and that the families are responsible for legal expenses arising from Blackwater's claims for which they need the American people's financial contributions; and has refused to advance the arbitrators' fees as requested by the AAA,

- 11 -

Nordan, as Administrator, is refusing to arbitrate Blackwater's claims against him as Administrator of the Decedents' estates.

### Petition

33.     By reason of the foregoing, Blackwater is aggrieved by the failure and refusal of Nordan to arbitrate Blackwater's claims against him under the Service Agreements.

34.     Nordan's failure and refusal to advance the fees and expenses of the AAA undermines this Court's prior orders directing that he arbitrate his claims against Blackwater.

WHEREFORE, Blackwater prays that this Court enter another order directing Nordan to arbitrate Blackwater's claims against him and to advance his share of all fees and expenses required by the AAA; and awarding Blackwater its costs, attorneys' fees, and such other and further relief as may be just, proper and equitable.

This 10th day of July, 2007.

McDERMOTT WILL & EMERY LLP

By:     /s/ Michael P. Socarras
        Michael P. Socarras
        DC Bar No. 418127
        600 13th Street NW
        Washington, DC  20005
        Telephone:    (202) 756-8000
        Facsimile:    (202) 756-8087
        E-Mail:       msocarras@mwe.com


SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:     /s/ Kirk G. Warner
        Kirk G. Warner
        North Carolina State Bar No. 16238
        Mark A. Ash
        North Carolina State Bar No. 13967
        Post Office Box 2611
        Raleigh, North Carolina  27602
        Telephone:    (919) 821-1220
        Facsimile:    (919) 821-6700
        E-Mails:      kwarner@smithlaw.com
                      mash@smithlaw.com
        LR  83.1 Counsel

        *Counsel for Defendants Blackwater Security
        Consulting, LLC and Blackwater Lodge and
        Training Center, Inc.*

## VERIFICATION

Andrew G. Howell declares as follows under 28 U.S.C. § 1746:

I am the General Counsel of Blackwater Lodge and Training Center, Inc., one of the Petitioners in this matter. I have read the foregoing Petition, and the same is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Moyock, North Carolina, on July 6, 2007.

_____

- 11 -