UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:06-CV-49-F

| | |
|---|---|
| BLACKWATER SECURITY CONSULTING, LLC and BLACKWATER LODGE AND TRAINING CENTER, INC., <br> Petitioners, <br><br> v. <br><br> RICHARD P. NORDAN, as Ancillary Administrator for the Separate Estates of STEPHEN S. HELVESTON, MIKE R. TEAGUE, JERKO GERALD ZOVKO, and WESLEY J. K. BATALONA, <br> Respondent. | ORDER |

This matter is before the court for ruling on the following motions which have been fully briefed and are ripe for disposition:

**DE-97**    Respondent's Motion to Vacate Orders, or in the Alternative, for Dismissal and to Lift Stay of Proceedings;

**DE-116**    Petitioners' Petition to Confirm Arbitration Decision

The Respondent in this action is Richard P. Nordan, Ancillary Administrator for the individual estates of the named decedents (hereinafter "Nordan"). The Petitioners are Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc., (hereinafter collectively "Blackwater").[1]

The petition [DE-1] initiating this action, filed by Blackwater on December 20, 2006, sought only an order to compel arbitration as contemplated by the four Independent Contractor Service Agreements (hereinafter "Service Agreements") entered into by Blackwater and each of the Nordan's decedents, Stephen S. Helveston, Mike R. Teague, Jerko Gerald Zovko, and Wesley

---

[1] In early 2009, Blackwater changed its name to Xe, pronounced, "*zee*."

J. K. Batalona. On April 20, 2007, and May 11, 2007 [DE-13 and -28, respectively], the court ordered, specifically:

> 1. Blackwater's petition for order directing arbitration [DE-1] is ALLOWED and the parties are ORDERED to proceed with arbitration in the manner provided for in the Service Agreements.
>
> 2. This action is STAYED pending completion of the required arbitration.
>
> 3. Nordan's motion to dismiss [DE-6] is DENIED.

Order, [DE-13], at p. 10. The court later clarified that the order compelling arbitration was intended to state "no position on the propriety of Blackwater's Arbitration Breach of Contract Claim." Order, [DE-28], at p. 3.

The court-ordered mandatory arbitration proceedings were terminated by the Arbitration Panel by its Order 17 (hereinafter "Order 17"), filed June 8, 2010[2] [DE-120], Exh. 22. Now, for all intents and purposes, Nordan seeks a complete "do-over," moving the court to vacate its 2007 orders referring the matter to arbitration, even though the arbitration proceedings have been terminated and his claims dismissed because the parties failed to comply with the Panel's orders. Blackwater, on the other hand, seeks confirmation of the arbitration decision.

## FACTUAL & PROCEDURAL HISTORY

Nordan, as administrator of the estates of four Blackwater professionals killed by insurgents in Fallujah, Iraq, first filed suit against Blackwater in January 2005, in Wake County, North Carolina, Superior Court asserting claims for wrongful death and fraudulent inducement. *See Order* [DE-13], at p. 2. Blackwater removed the case to federal court, but it was remanded by Chief United States District Judge Louise W. Flanagan. *See Nordan v. Blackwater Security Consulting, LLC*, 382 F. Supp. 2d 801 (E.D.N.C. 2005), *appeal dismissed & mandamus denied,*

---

[2] Order 17 itself is dated "June 9, 2009." However, in that it references prior Order 16, dated April 5, 2010, Order 17 in fact was entered on June 9, *2010*.

2

460 F.3d 576 (4th Cir. 2006), *cert. denied*, 549 U.S. 1260 (2007). Blackwater instituted the instant action seeking an order compelling the parties to arbitrate Nordan's claims pursuant to the Service Agreements and section 4 of the Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C. § 4. *See* Petition [DE-1].

Finding that the parties' Service Agreements required disputes to be resolved by binding arbitration,[3] this court, in its April and May 2007 orders [DE-13 and -28], directed the parties to arbitrate the claims Nordan was pursuing in state court. Pending arbitration, this federal action was stayed pursuant to 9 U.S.C. § 3; *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). The court declined, however, to enter a stay of the underlying state court action, explaining that " 'the parties and the [state court] will likely conform their conduct to the expectations of law.' " Order of April 20, 2007 [DE-13], at p. 10, n.2 (quoting *United Service Protection Corp. v. Lowe*, 354 F. Supp. 2d 651, 659 (S.D.W. Va. 2005) (internal citations omitted)).

Nordan's appeal of the orders directing arbitration was dismissed as interlocutory in October 2008. *See Blackwater Security Consulting, LLC v. Nordan*, No. 07-1508, slip op. at 3 (4th Cir. Oct. 17, 2008) [DE-125] (appeal was interlocutory because the district court had not yet issued a final judgment, but rather "directed that arbitration proceed, [and] stayed the

---

[3] Section 20.1 of each Service Agreement provides in pertinent part:

> Contractor and BSC hereby agree that any dispute regarding interpretation or enforcement of any of the parties' rights or obligations under this Agreement shall be resolved by binding arbitration according to the rules of the American Arbitration Association and shall be conducted in Currituck or Camden County in North Carolina.

Service Agreements § 20.1 [DE-1], Exhs. A, B, C & D. Section 20.1 also provided, *inter alia*, that "[t]he arbitrators may award attorneys fees to the prevailing party in any arbitration proceeding. All costs and expenses of the arbitration, including actual attorney's fees, shall be allocated among the parties according to the arbitrator's discretion." *Id.*

3

federal court action before it pending completion of such arbitration"). The appellate court further observed that this court "retained jurisdiction through its stay only to enforce or vacate a forthcoming arbitration award." *Id.*, slip op. at *8.

The Service Agreements between Nordan's decedents and Blackwater required that arbitration be conducted "according to the rules of the American Arbitration Association" [hereinafter, the "AAA"]. *See* Service Agreements § 20.1, [DE-1], Exhs. A, B, C & D. Accordingly, following entry of the orders compelling arbitration, Nordan filed the requisite paperwork to assert his claims before the AAA, claiming damages in the amount of $20 million. AAA consolidated Nordan's claims with a pending arbitration initiated by Blackwater against Nordan alleging breach of contract, release and covenant not to sue, as well as breach of the confidentiality and non-publicity provisions of the Service Agreements. The matter was assigned to the AAA's International Center for Dispute Resolution (ICDR), a division of the AAA that specializes in international matters.

On April 4, 2007, then-case manager, Brigitte Omane, wrote the parties to the arbitration concerning the composition of the arbitration panel (hereinafter "the Tribunal"), and explained a number of ground rules, including that arbitrator compensation was an independent obligation of the parties who were required to deposit with the ICDR the sums required by the administrator to pay the arbitrators. *See* [DE-108] Exh. 4.[4] Additionally, the letter stated twice that "there shall be no direct telephone or any other type of contact with the arbitrators. Please note that any challenges or financial matters must be exclusively submitted to the case manager." *Id.*, p. 2.

---

[4] The Clerk of Court is DIRECTED to UNSEAL Exhibit 4 of [DE-108].

4

More than a month later, by Affidavit dated May 17, 2007, and faxed that day to the Intake/Filing Department of the American Arbitration Association Southeast Case Management Center, Nordan represented that the estates of which he was ancillary administrator had,

> no ability to pay the AAA administration fees, including the initial filing fee and the case service fee. At this point, the estates have no option but to litigate their meritorious claims with the AAA, in light of the federal courts' orders compelling arbitration, but do not have the resources to pay the AAA's administrative fees. . . . Pursuant to the AAA's hardship provision, I respectfully request that the administrative fees be waived for these estates.

Nordan Affidavit [DE-120], Exh. 3. In response, by letter of June 11, 2007, new case manager Christian Paul Alberti, LL.M., (hereinafter, "Alberti" or "case manager") advised Nordan's counsel, *inter alia*, that the ICDR would defer the non-refundable initial filing fee of $13,500, which sum might become due at the conclusion of the case, depending on the outcome. *See* Letter [DE-120], Exh. 4. Nordan's counsel signed and returned the letter indicating his agreement thereto. *Id.* Whether or not Blackwater was copied with this correspondence is not apparent and is not material.

On June 11, 2007, Alberti wrote counsel for both parties advising that he thereafter would be responsible for the administration of the arbitration proceeding as ICDR Solutions Manager. *See* Letter, [DE-108], Exh. 2.[5] Alberti enclosed the then-current invoices for the arbitrators' compensation and cautioned that "if arbitrator compensation has not been paid in full by [June 26, 2007], the ICDR may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the Tribunal may order the suspension or termination of the proceedings." *Id.*

By letter dated July 5, 2007, Alberti informed counsel for the parties that "Respondent's Counsel has advised the ICDR today via phone that Respondent is unable to advance [his] share of the Tribunal's compensation and expenses." Letter [DE-120], Exh. 5. Alberti asked

---

[5] The Clerk of Court is DIRECTED to UNSEAL Exhibit 2 of [DE-108].

Blackwater's counsel if its client would be willing to advance Nordan's "share for this proceeding." *Id.* Blackwater advanced certain sums to keep arbitration moving forward; Nordan paid none.

For the three years between 2007 and 2010, the arbitration proceeding foundered and stalled for various reasons, not the least of which was that after November 2008, *neither* party paid any sum on invoices from the ICDR for arbitrators' compensation or expenses. Prior to that time, Blackwater had advanced 100% of all sums that were paid; Nordan supplied none. Reference specifically is made herein to Blackwater's Memorandum [DE-107] and supporting documentation, Exhibits to [DE-107] & [DE-108], for the details of the Panel's efforts to move along the proceedings and the parties' responses, or lack thereof, to those efforts. Blackwater explains that it quit making payments to fund the arbitration in November 2008, because Nordan refused to pay any portion of his share.

Arbitration was suspended for non-payment of fees on October 19, 2009, pursuant to Article 33.3 of the International Arbitration Rules.[6] *See* Order 14 (Tribunal Suspension Order) [DE-120], Exh. 13. Order 14 noted that the case manager had advised the Tribunal that neither party had remitted timely payment of its share of the outstanding sums due, but allowed the parties "three month(s) from the date of this Order to comply with their balance and deposit obligations" on pain of termination of the arbitration proceedings. *Id.* Payment was not forthcoming, and the Tribunal issued an Order to Show Cause [DE-120], Exh. 14, on February 28, 2010, requiring the parties to respond in writing why the arbitration should not be

---

[6] The Administrative Fees section of the International Arbitration Rules provides in part: "**Suspension for Nonpayment**: If arbitrator compensation or administrative charges have not been paid in full, the administrator may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the ICDR may suspend the proceedings." This provision is substantively identical to R-54, Commercial Arbitration Rules and Mediation Procedures.

6

terminated. It warned that "[i]n the event a Termination Order issues, the ICDR may initiate a collection action for any unpaid, earned arbitrator compensation or administrative fees in accordance with its usual procedures." *Id.* The parties filed briefs in compliance with the Show Cause Order. *See* [DE-120], Exhs. 21, 22, 23 & 24.

On March 17, 2010, the Tribunal issued Order 15 [DE-120], Exh. 16, detailing the efforts by the ICDR and the Tribunal to work with the parties toward payment of their financial obligations. The Order speaks for itself, but concluded with the following:

> The bottom line remains that neither party has demonstrated a willingness to meet the obligations attendant upon the agreement to arbitrate. Accordingly, and with reluctance, this Tribunal concludes that unless one or both parties move forward to remove this impasse, it will have no choice but to terminate these proceedings, with prejudice to all claims presented therein. The Tribunal nonetheless extends the parties an additional 30 days' grace period to consider their positions in light of this order. If after 30 days from the date this Order is transmitted to the parties, neither party has made payment of its own 50% share of the accumulated billed but unpaid costs and billed deposits for these proceedings, the Tribunal will issue the aforementioned termination order. Correspondingly, if either party meets its respective obligations with regard to billed but unpaid costs and billed deposits, the Tribunal will lift the present suspension order and proceed to an evidentiary hearing on all claims, counterclaims and defenses.

*Id.* at ¶ 8.

Notwithstanding the directive issued three years earlier not to contact the arbitrators directly, on March 24, 2010, counsel for Nordan wrote the three arbitrators directly, via email with copies to Blackwater's counsel, expressing his dissatisfaction with Order 15 and advancing impassioned arguments about the merits of his case. For example, he queried, "[w]hen [your] family members and loved ones read about the Fallujah incident in their textbooks or in the numerous news stories, and then ask you how you handled the case, will you tell them that you just threw it out because you didn't get paid?" Letter [DE-120], Exh. 17.

On April 5, 2010, the Tribunal issued its Order 16 [DE-120], Exh. 18, which reviewed the status of the payment dispute and refused to waive compensation incurred by the

arbitrators to that date. However, the Tribunal agreed to defer collection of amounts past due from Nordan for services previously rendered and to hold an evidentiary hearing if both sides would, within 30 days, advance only their respective shares of the sums due for future services, which sum earlier had been set by the parties. *See id.* & Letter of September 28, 2009 [DE-120], Exh. 10.

Blackwater responded to Order 16 by placing its respective share in escrow to be released *only if* Nordan paid his corresponding share. Nordan's response to Order 16 was another letter from his counsel directed personally to each arbitrator via email, vividly detailing his disagreement with the order and the fact that Blackwater had stopped paying all the expenses of the arbitration, and accusing the Tribunal of unconscionability by entering Order 16, which Nordan's counsel described as imposing an impermissible "pay to play" burden on the estates. *See* April 21, 2010, Letter [DE-120], Exh. 19 (six pages, single-spaced).

Although the parties continue to argue about who was at fault and who should have stepped forward, the record reflects that the Tribunal terminated the arbitration by Order 17 [DE- 120], Exh. 22, on June 9, 2010, after the parties had been afforded multiple creative opportunities to comply with the AAA rules and requirements, case manager letters and emails, and Tribunal orders to pay. "While the record shows that the panel has worked extensively without compensation but is not longer willing to do so, the parties now have the case at a standstill with no prospect for improvement. We therefore regretfully conclude that the Arbitration should be and is hereby TERMINATED and the case is DISMISSED. " *Id.* at 2. A footnote to Order 17 explained,

> As for the question of dismissal "with prejudice" or "without prejudice," the Tribunal has expressed some doubt about the likelihood that the parties whose claims have been terminated in such circumstances could simply re-file the same claims in another forum, in contravention of the contractual agreement to arbitrate. Nonetheless, the Tribunal is prepared to leave this issue for resolution by the appropriate courts.

*Id.*

## THE STAY

Neither party opposes dissolution of the stay pending arbitration entered in this court's April 20, 2007, order. The stay imposed in this court's order [DE-13], therefore, is LIFTED.

## THE PARTIES' PENDING MOTIONS

*The merits of Nordan's claims against Blackwater are not before this court and are not relevant to the court's task in ruling on the pending motions.*

The Tribunal lay blame specifically and exclusively on neither party; its orders made plain that both parties were at fault. However, after the Tribunal exhausted its willingness to continue its work in the face of assurances that it would not receive compensation already due or yet to be incurred, it took the only course available to it by virtue of the parties' decisions and it terminated the arbitration, dismissing the case.[7] Neither party pursued review of that action, and the time for doing has expired. The undersigned FINDS and CONCLUDES that the Tribunal's Order 17, entered June 9, 2010, constituted a final order in that arbitration.

Nordan now moves this court to vacate its 2007 orders compelling arbitration and to permit his common law claims to go forward in North Carolina state court. Blackwater, on the other hand, seeks confirmation of the Arbitration Panel's decision terminating arbitration and dismissing the claims.

### A. *Nordan's's "Motion To Vacate Orders, or in the Alternative, Motion for Order of Dismissal and Lift of Stay On Court Proceedings"* [DE-97]

The gravamen of Nordan's position is that the estates of which he is Ancillary Administrator do not now, nor did they ever, have sufficient assets to engage in arbitration of their common law claims against Blackwater. Therefore, he contends, this court retroactively should vacate its orders compelling arbitration (1) pursuant to Rule 60 (b)(5) and/or (6); and/or

---

[7] After entry of Order 17, the ICDR billed the parties for outstanding unpaid expenses not associated with a hearing. The funds Blackwater had advanced on Nordan's behalf was credited to Nordan in the final accounting, and Blackwater paid an additional sum. *See* [DE-108], Exh.32 (sealed, as dollar amounts are not relevant). Nordan paid none.

9

(2) because the arbitration agreements to which his decedents were parties are unconscionable; and/or (3) because the orders compelling arbitration have become inequitable because of a significant change in circumstances, *i.e.*, termination of the arbitration proceedings; and/or (4) because Blackwater defaulted on its obligations under the arbitration agreement by failing to pay all fees and expenses of both parties thereto. *See* Memorandum [DE-98]. The professed inability to finance his share of the arbitration process is the "factual" basis for all of Nordan's legal arguments, yet he never raised it in this court until the instant motion. The ICDR accepted Nordan's May 2007, affidavit [DE-120], Exh. 3, to defer payment of the initial filing fee, and enlisted Blackwater's assistance two months later when Nordan did not advance his share of the Tribunal's fees and expenses. Nordan has failed at any point to substantiate his claim of financial impossibility of compliance with this court's order compelling arbitration or the Panel's multiple orders directing payment of fees. Nor has Nordan directed this court's attention to any ruling or other representation in the arbitration proceedings exempting him from contributing to payment for those proceedings or imposing on Blackwater the obligation to bear all costs, fees and expenses thereof.

None of Nordan's current arguments is based on sound legal or factual ground. Nordan, in his representative capacity as Ancillary Administrator of the decedents individual estates is the respondent in this action by Blackwater to compel arbitration, and was the claimant in the arbitration proceeding. As such, he is the party responsible for ensuring compliance with the orders of the Tribunal and this court on behalf of the estates. *See* N.C. GEN. STAT. § 28A-13-3(a)(14).

Nordan's argument that he had applied for and was granted pauper status with the ICDR upon his demonstration of indigency is flatly belied by the record. The record before this court contains no request by Nordan of leave from the arbitration case manager, the Tribunal, or any court to engage in court-ordered arbitration without incurring liability for payment of fees or

10

costs. Rather, he obtained a deferral of the non-refundable initial filing fee of $13,500, which sum he was informed might be billed against him, depending on the outcome of the arbitration. *See* Letter [DE-120], Exh. 4.

The record contains no application by Nordan supported by competent evidence for leave to arbitrate at no cost to himself or his clients. Indeed, Nordan has failed to draw to this court's attention any matter of record in which he disclosed his (or anyone else's) financial status in support of his claim of an inability to pay the costs (or any portion thereof) of arbitration, from the date on which Blackwater filed this action seeking to compel it, up to the present date.

The record reflects that despite all efforts by the Tribunal to craft flexible, fair and equitable fee payment options, the ultimate stalemate resulting from Blackwater's placing its share of the agreed estimated future compensation sum in escrow pending Nordan's compliance, and Nordan's refusal to make any payment whatsoever, ultimately forced the Tribunal to throw up its hands. Indeed, the Tribunal observed that *neither* party to the court-ordered arbitration proceedings appeared interested in pursuing its claims. Order 17 was based on an administrative record -- fully developed upon repeated orders and opportunities for the parties to explain and re-explain their positions -- that the Tribunal determined failed to show good cause why the proceedings should not be dismissed for the parties' dogged noncompliance with its orders.

The parties' demonstration of determination not to prosecute their claims as provided in their valid and binding Service Agreements, and the process and rationale for the Tribunal's Order 17 terminating arbitration and dismissing all the pending claims, convinces this court of the futility and inefficiency of a studied exegesis of the parties' current arguments. Not surprisingly, the undersigned has been directed by the parties to no reported case that has wrestled with the likes of the gnarly situation they have created and presented here. What is surprising, however, is the similarity of these facts to those with which the Honorable Chief U.S. District Judge William H. Steele currently is grappling in the "stagnating sinkhole of time" represented by the party-generated

11

stalemate of the court-ordered arbitration between plaintiffs Lina Scurtu and Cornelia Grozav, and defendants Hospitality and Catering Management Services, Wendco Corporation, and ISE, in the Southern District of Alabama. Chief Judge Steele's detailed, thoughtful and strongly-worded order addresses essentially all the issues raised by Nordan and Blackwater in this case and some that were not. *See Scurtu v. Hospitality and Catering Mgmt. Servs.*, No. 07-0410-WS-B, 2010 WL 2985894 (S.D. Ala. July 27, 2010) (hereinafter *"Scurtu I"*).

After the *Scurtu* plaintiffs refused to pay to replenish the arbitrator's retainer fund to its agreed-upon level and made clear that they could and would make no more fee payments going forward, the arbitrator (who, pursuant to the parties' agreement, retained discretion to allocate fees at the conclusion of arbitration), "knew that the only way he could be compensated in full for his time would be if he ruled for plaintiffs on the merits and ordered defendants to pay his full arbitration fees as part of the final award. This scenario was tantamount to a conflict of interest." *Id.*, slip op. at *2 (footnote omitted). The arbitrator emailed the parties stating that the plaintiffs should take up any request to modify or vacate the district court's order compelling arbitration with the district court. He explained, " 'I do not believe that I can proceed in the matter[.] I still remain ready and willing to arbitrate the matter, but unfortunately I do not believe that I can ethically do so under the current conditions.' " *Id.*

More than two months after the *Scurtu* arbitrator directed the parties to take up the matter of terminating arbitration with the court that compelled it, the plaintiffs filed in that court a "Motion to Proceed with Claims in this Judicial Forum." [8] *Id.* Judge Steele's order ensued, addressing the plaintiffs' three grounds for relief that: "(i) the arbitration agreements are unenforceable for lack of mutual assent and unconscionability; (ii) the arbitrator's intent was for

---

[8] Unlike this case, the *Scurtu* plaintiffs' Complaint was filed in federal district court, apparently on federal question and supplemental subject matter jurisdiction. *See id.* at *1.

Scurtu and Grozav to litigate their claims to conclusion in federal court; and (iii) arbitration is an economic impossibility for plaintiffs." *Id.* at *3.

There are obvious dissimilarities between *Scurtu* and the instant case, including but not limited to the fact that the *Scurtu* plaintiffs paid at least some of their fees before folding their arms; the arbitrator in *Scurtu* did not enter a final order, award, decision or ruling, but instead ceased his efforts because he concluded that the plaintiffs' position had created for him an ethical dilemma necessitating the court's intervention; and the *Scurtu* plaintiffs produced at least *some* evidence concerning their financial circumstances, although Judge Steele found that showing insufficient to meet the standard he announced. Judge Steele's analysis resulted in his conclusion that the plaintiffs had breached their obligation to replenish the retainer fee fund. As did the Panel in the instant case, Judge Steele set a deadline by which the money due and owing was to be paid. [9]

Judge Steele's deadline came and went but the payment was not made. The defendants in *Scurtu* sought direction whether they should move the court to approve the parties' proposed "settlement," which would have permitted the matter to languish an additional 15 months while the plaintiffs made installment payments. [10] Judge Steele declined to order the parties to pursue court approval of their proposed agreement that would add "at least" 15 months to the then-36-month old arbitration proceeding. Rather, he promised,

> if subsequent monthly status reports do not include an adequate showing to address the foregoing concerns,[11] this Court will not hesitate to issue a show cause order to

---

[9] As detailed above, the Tribunal herein set and extended several deadlines and allowed alternative courses for the parties to bring themselves into compliance with arbitration fee and expense billing.

[10] That "settlement" proposed that each plaintiff pay what amounted to $44.40 per month for 15 months to satisfy the $1,332.00 necessary to allow arbitration to proceed.

[11] Among those concerns was "the inordinate, and frankly inexcusable, pattern of delay in which the parties have engaged since this straightforward action was referred to arbitration" three years prior. *Scurtu v. Hospitality and Catering Mgmt. Servs.*, No. 07-0410-WS-B, 2010 WL 4105234, slip op. at *1 (S.D. Ala. Oct. 17, 2010) (hereinafter *"Scurtu II"*).

13

plaintiffs to explain why their conduct in the aftermath of the July 27 Order does not warrant imposition of sanctions, up to and including dismissal.

*Scurtu II*, 2010 WL 4105234, slip op. at *2.

Judge Steele's response to the conduct of the parties he compelled to arbitration is comparable to that of the Tribunal herein, although the Tribunal's accommodations of these parties arguably were even more generous. In this case, there is no suggestion in the record that the parties *ever* would satisfy further concessions. Furthermore, despite the Supreme Court's clear instruction in *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000), and the Fourth Circuit Court of Appeals' application thereof in *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001), Nordan has proffered no competent evidence to support his position that the fee payment requirements of the Service Agreements and of ICDR Rule 33 are unconscionable or inequitable as applied in this case.

The law is well-established that an arbitration agreement may be unenforceable if the party seeking to avoid arbitration proves that the costs of arbitration would preclude the effective vindication of statutory rights. *See Anders v. Hometown Mortgage Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) (internal citations omitted). To do so, however, that "party bears the burden of showing the likelihood of incurring . . . costs" that are prohibitively expensive. *Id.*; *accord Madura v. Countrywide Home Loans, Inc.*, 344 Fed. Appx. 509, 515 (11th Cir. 2009). The Fourth Circuit Court of Appeals explained, "an appropriate case-by-case inquiry must focus upon a [party's] expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the [party's] expected costs for litigation and his ability to pay those costs." *Bradford*, 238 F.3d at 556, n.5. Here, Nordan offered nothing more than arguments, relying primarily on his position that the fee payment requirements of the ICDR in fact amount to a "pay to play" scheme, whereas he could litigate in state court for free. Similarly, Nordan's claim that he is unable to afford arbitration fees is unsupported by any competent evidence. Although he so averred in an Affidavit

14

Case 2:06-cv-00049-F    Document 126    Filed 01/21/11    Page 14 of 20

submitted to the case manager in May 2007, *see* [DE-120] Exh. 3, that Affidavit contains no supporting documentation whatsoever.

Nordan failed to offer competent evidence as detailed in *Green Tree* and *Bradford* to either the ICDR case manager or the Tribunal before starting arbitration, during the three-year pendency of those proceedings, or in an effort to prevent their termination. Indeed, the Tribunal commented, "it seems apparent that Nordan (through . . . counsel) would be willing to foot the bill for aggressive jury trial litigation in North Carolina, but is unwilling to pay even half the cost of having [his] claims proceed in a more streamlined fashion in the forum which was agreed in the Independent Contractor Service Agreements." Order 15 [DE-120], Exh. 16.

The court adopts the rationale set forth in Blackwater's Memorandum [DE-107], pp. 15-27, for its conclusion that Nordan is not entitled to relief from this court's orders compelling arbitration, or the consequences thereof. The court is further persuaded by Judge Steele's careful and thorough analysis in *Scurtu I*, but finds that no record evidence exists herein to support any modification of this court's order compelling arbitration or of the Panel's decision. Accordingly, Nordan's "Motion To Vacate Orders, or in the Alternative, Motion for Order of Dismissal and Lift of Stay On Court Proceedings" [DE-97] is DENIED. [12]

### B. *Blackwater's Motion to Confirm Arbitration Decision* [DE-116]

In the Service Agreements, the parties agreed that their rights or obligations arising thereunder "shall be resolved by binding arbitration according to the rules of the American Arbitration Association," and that the "arbitrator's award may be confirmed and entered as a final judgment . . . and enforced in accordance with the rules of the American Arbitration Association." Service Agreements § 20.1 [DE-1], Exhs. A, B, C & D. Under the FAA, regardless of how the tribunal's order is labeled, if it constitutes the arbitrators' final resolution, it is an "award." *Cf. Publicis Commun. v. True North Communs., Inc.*, 206 F.3d 725, 728 (7th Cir. 2000) (affirming

---

[12] Nordan's request to lift the stay is MOOT.

15

district court's confirmation of arbitrator's decision under international, UNCITRAL Arbitration Rules, Articles 31-37, and distinguishing "final" from "interim" orders).

In *Publicis*, the issue was the "finality" for purposes of enforcement by the federal district court, of an arbitrator's order directing one party to provide tax records to the other. Publicis contended that the subject order was not final because the document did not contain the word, "award." *Id.* at 728. The appellate court rejected that interpretation.

> Publicis' position is that an arbitral ruling can be final in every respect, but unless the document bears the word "award" it is not final and is unenforceable. This is extreme and untenable formalism. The New York Convention, the United Nations arbitration rules, and the commentators' consistent use of the label "award" when discussing final arbitral decisions does not bestow transcendental significance on the term. Their treatment of "award" as interchangeable with final does not necessarily mean that synonyms such as decision, opinion, order, or ruling could not also be final. The content of a decision-not its nomenclature-determines finality.

*Id.* Noting further that the arbitrator had provided a deadline for compliance with his order, the Seventh Circuit Court of Appeals determined that the order was not "an early step moving toward the end result," or "just some procedural matter," but rather it was "the whole ball of wax." *Publicis*, 206 F.3d at 729. The panel concluded by holding that, "[d]espite some possible superficial technical flaws, and despite its designation as an "order" instead of an "award," the arbitration tribunal's decision – as to this chunk of the case – was final. And this is our final judgment." *Id.* at 731.

While its focus was on whether an arbitral award as "final" or "interim" as "a ruling on a discrete, time-sensitive issue" as opposed to one that ended the entire arbitration, the Fourth Circuit Court of Appeals' observed that "[n]otably, nothing in § 9 compelling the district court to confirm an arbitration award mandates that the award must be final." *Arrowhead Global Solutions, Inc. v. Datapath, Inc.*, 166 Fed. Appx. 39, 43-44 (4th Cir. 2006).

Here, there can be no serious contention but that the Tribunal was finished with this arbitration and that Order 17 was "final" as far as the Tribunal was concerned.[13] That the decision was not titled "Award" is of no consequence under these peculiar circumstances. The court concludes that Order 17 is an "award" for purposes of Blackwater's petition seeking confirmation.[14]

The proceedings before the Tribunal in the underlying arbitration apparently were conducted under the International Arbitration Rules. *See* American Arbitration Association, *International Dispute Resolution Procedures* (Jan. 18, 2011, 3:35 p.m.), http://www.adr.org/sp.asp?id=33994#INTERNATIONALARBITRATIONRULES. *See, e.g.*, Order 14, [DE-120], Exh. 13., at ¶ 1. In seeking confirmation of the Tribunal's decision, Blackwater invokes both Chapters 1 and 2 of the Federal Arbitration Act. Chapter 1 of the FAA applies to "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. Chapter 2 of the FAA codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2515 [hereinafter "the Convention"].[15]

---

[13] Nordan's position is unavailing that the decision is not "final" because the Tribunal declined to specify whether it was with or without prejudice. The Tribunal did not, as Nordan contends, "anticipat[e] that the parties would be returning to this District Court." [DE-120] at p. 13. The referenced footnote in fact states, "As for the question of dismissal 'with prejudice' or 'without prejudice,' the Tribunal has expressed some doubt about the likelihood that the parties whose claims have been terminated in such circumstances could simply re-file the same claims in another forum, in contravention of the contractual agreement to arbitrate. Nonetheless, the Tribunal is prepared to leave this issue for resolution by the appropriate courts." [DE-120], Exh. 22, p. 2, n.*.

[14] Nordan's decision not to appeal Order 17 renders it no less final, and the time has passed within which he may seek review pursuant to Rules 10, 11 or 12 of the FAA, or modification under Commercial Arbitration Rule R-46, as amended June 1, 2009. Furthermore, the Fourth Circuit Court of Appeals has determined that this court retains jurisdiction over the matter only to "enforce or vacate a[n] . . . arbitration award," *Blackwater Security Consulting, LLC v. Nordan*, No. 07-1808, slip op. at 8."

[15] Article I of the Convention explains that the Convention applies not only to foreign awards, but also to awards considered non-domestic in the signatory country where recognition

17

Case 2:06-cv-00049-F   Document 126   Filed 01/21/11   Page 17 of 20

Blackwater urges application of the Chapter 2 confirmation provisions because it contends the award is non-domestic. *See* 9 U.S.C. § 202 ("An . . . award arising out of [a commercial] relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, *envisages performance or enforcement abroad*, or has some other reasonable relation with one or more foreign states.") (Emphasis added). Nordan does not argue otherwise. The requirements for confirmation of an arbitration decision under Chapter 2 are as follows:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207. The grounds for refusal to confirm are set forth in Article V of the Convention, which is strictly applied and narrowly viewed in order to effectuate the policy favoring enforcement of foreign arbitral awards. *See China Minmetals Materials Import & Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 283 (3d Cir. 2003).

Chapter 1 of the FAA applies to actions and proceedings brought under Chapter 2 *to the extent* that Chapter 1 is not in conflict with Chapter 2. *See* 9 U.S.C. § 208; *Zeiler v. Deitsch*, 500 F.3d 157, 164-65 (2d Cir. 2007). Nordan makes no argument that Chapters 1 and 2 conflict. In fact, Nordan's argument relies on 9 U.S.C. § 10(a), the provision in Chapter 1 that applies when a motion has been made to *vacate* an arbitration award.[16] There is no such motion in this case. Under either Chapter 1 or Chapter 2, the burden of proof is on the party defending against confirmation or enforcement. *See, e.g., Imperial Ethiopian Government v. Baruch-Foster Corp*, 535 F.2d 334, 336 (5th Cir. 1976). That party here is Nordan.

---

and enforcement are sought." *See* Convention, art. I (1), 21 U.S.T. 2517.

[16] Section 10(a) requires that a motion to vacate must be made in the United States court "in and for the district wherein the award was made."

18

A proceeding to confirm an arbitration award under Chapter 1 – 9 U.S.C. § 9 – is intended to be summary; confirmation can be denied only if it is shown that the award has been corrected, vacated, or modified in accordance with the FAA. *See Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986). Similarly, a district court may refuse to confirm an award under Chapter 2 only if one of the seven grounds for refusal specified in the Convention is found to be applicable. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 290 (3d Cir. 2010) (citation omitted). " 'Given the strong public policy in favor of international arbitration, review of arbitral awards under the . . . Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.' " *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (citation omitted)).

Blackwater seeks to enforce the arbitrator's Order 17, which was filed with the American Arbitration Association International Centre for Dispute Resolution in Case No. 50 181 T 00524 06. Nordan opposes confirmation, arguing that Blackwater fails to cite any authority for its position that "a termination order for failure to pay fees is a final arbitration award subject to confirmation by the District Court . . . particularly . . . where the Arbitration Panel did not make any determination as to the merits of either parties' claims, did not hear any evidence, did not hear any testimony, did not conduct any hearing, and did not decide any of the issues before it." Nordan's Response [DE-120] at p. 3.

Nordan's arguments again seeking to avoid the law of this case are unavailing. He is bound by his decedents' valid and enforceable arbitration agreements. The court herein has concluded that Nordan's motions are meritless and has denied him relief from this court's order compelling arbitration. The Fourth Circuit Court of Appeals has determined that this court lacks jurisdiction to do anything other than to "enforce or vacate a[n] . . . arbitration award," *Blackwater Security Consulting, LLC v. Nordan*, No. 07-1808, slip op. at 8 (4th Cir. Oct. 17, 2008) [DE-125].

19

Upon careful review of the parties' briefs and exhibits thereto, as well as the decisions and orders of the Arbitration Panel and the Fourth Circuit Court of Appeals, the court hereby ADOPTS the rationale set forth in Blackwater's Memoranda [DE -117] pp. 9-16,[17] and [DE-123] pp. 4-8. The court finds that the prior orders of this and the appellate court, the unrefuted *material* facts contained in the record herein, the rules of this court, and applicable provisions of the Federal Arbitration Act, dictate that the decision of the Tribunal contained in its Order 17 be, and hereby is, CONFIRMED. Blackwater's Motion for Judgment on its Petition [DE-116] is ALLOWED.[18]

## SUMMARY

The stay imposed by this court's order of April 20, 2007 [DE-13], is LIFTED. Exhibits 2 and 4 of [DE-108] are UNSEALED. Nordan's "Motion To Vacate Orders, or in the Alternative, Motion for Order of Dismissal and Lift of Stay On Court Proceedings" [DE-97] is DENIED. Blackwater's Motion for Judgment on its Petition [DE-116] is ALLOWED. The Clerk of Court is DIRECTED to enter Judgment as follows:

**The Tribunal's decision reflected in Order 17 [DE-120], Exh. 22, hereby is CONFIRMED.**

This constitutes a final order in this case No. 2:06-CV-49-F, which the Clerk of Court is DIRECTED to close.

SO ORDERED. This, the 21st day of January, 2011.

JAMES C. FOX
Senior U.S. District Judge

---

[17] The court does *not*, however, adopt Blackwater's assertion at p. 15 that the "Service Agreements . . . specify courts in the Eastern District of North Carolina."

[18] The arbitration included counterclaims Blackwater lodged against Nordan, which, although subject to the Tribunal's Order 17, were not mentioned in Blackwater's petition to compel arbitration [DE-1]. Blackwater's motion [DE-116] seeking confirmation of Order 17 does not distinguish between Nordan's claims and its counterclaims, and it has not suggested that the Tribunal's dismissal of its counterclaims should *not* be confirmed.